# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE GENETICALLY MODIFIED RICE LITIGATION | ) ) | 4:06 MD 1811 CDP ALL CASES |

## AGREED ORDER REGARDING PRESERVATION OF COMMUNICATIONS, DOCUMENTS, ELECTRONIC DATA, AND OTHER TANGIBLE ITEMS

This Agreed Order Regarding Preservation of Communications, Documents, Electronic Data, and Other Tangible Items governs the Parties in the above-captioned consolidated MDL Proceedings, including individual cases during their pendency in MDL No. 1811 (the "Action"). Pursuant to the Court's duty to supervise pretrial proceedings in this Action, including discovery, and pursuant to the Court's inherent powers, the Court hereby issues the following agreed Preservation Order. The Parties recognize that they must take steps to preserve documents and other materials relevant to the claims and defenses asserted in this Action, or that may lead to the discovery of admissible evidence in this Action. The Parties recognize that the law with respect to preservation efforts is not fully developed and also recognize that such preservation efforts can become unduly burdensome and unreasonably costly unless those efforts (a) are targeted to those documents reasonably likely to be relevant or lead to the discovery of relevant evidence related to the issues in this matter; and (b) take account of the unique preservation issues presented by electronically stored information. The Parties agree that these Guidelines define the scope of their preservation obligations for the purposes of this litigation.

**I.     DEFINITIONS**

For the purposes of this Document Preservation Order, the following definitions shall apply:

1.     The term "Active File", as used herein, means any electronic data file that can be used by an electronic data processing system in any manner without modification or reconstruction. An Active File is any electronic data file that has not been deleted or otherwise destroyed and/or damaged and which is readily visible to the operating system and/or the software with which it was created.

2.     The term "Communication(s)," as used herein, means the transmission, sending, or receipt of information of any kind (in the form of facts, ideas, inquiries, or otherwise), by or through any means including, but not limited to, speech, writings, language (machine, foreign or otherwise), computer electronics of any kind (including, but not limited to, e-mail, or instant messaging), magnetic tape, videotape, photographs, graphs, symbols, signs, magnetic or optical disks, floppy disks, compact discs, CD-ROM discs, other removable or transportable media, sound, radio, or video signals, telecommunication, telephone, teletype, facsimile, telegram, microfilm, microfiche, photographic film of all types, or other media of any kind.

3.     The term "Computer," as used herein, shall include, but is not limited to, microchips, microcomputers (also known as personal computers), laptop computers, portable computers, notebook computers, palmtop computers (also known as personal digital assistants or PDAs), minicomputers, and mainframe computers.

4.     The term "Computer System,," as used herein, when used in reference to any computer, includes, but is not limited to, the following information: (a) computer

type, brand and model; (b) brand & version of all software, including operating system, private-and custom developed applications, commercial applications, or shareware; and (c) communications capability, including asynchronous or synchronous, including, but not limited to, terminal to mainframe emulation, data download or upload capability to mainframe, and computer to computer connections via network modem or direct connection.

5. The term "Concerning," as used herein, means evidencing, reflecting, incorporating, effecting, including, or otherwise pertaining, either directly or indirectly, or being in any way logically or factually connected with, the subject matter of the inquiry or request.

6. The term "Custodian," as used herein, refers to any officer, director, employee, or agent of the Parties known or believed to possess Potentially Relevant Information.

7. The term "Data," as used herein, is equivalent to the term "Electronic Data" as defined herein.

8. The term "Deleted File," as used herein, means any electronic data file that has been deleted or deleted from the electronic media on which it resided, including but not limited to any file whose File Allocation Table (FAT) entry has been modified to indicate the file as being deleted and/or which is not readily visible to the operating system and/or the software with which it was produced.

9. The term "Document(s)," as used herein, is synonymous and equal in scope to usage of this term in Fed. R. Civ. P. 34(a) and to the terms "[w]ritings and recordings," "photographs," "original" and "duplicate" defined in Fed. R. Evid. 1001.

Document means the original (or an identical duplicate if the original is not available), and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description that are fixed in any medium upon which intelligence or information can be recorded or retrieved – including, but not limited to documents fixed in tangible media or electronically or digitally stored on disk or tape in a native format.  This includes, without limitation, all Electronic Data, Active Files, and Communications.  "Document(s)" further includes the original and each non-identical copy of any book, pamphlet, periodical, letter, memorandum, diary, calendar, telex, electronic mail message, instant message, telegram, cable, report, record, contract, agreement, study, handwritten note, draft, working paper, chart, paper, print, record, drawing, sketch, graph, index, list, tape, stenographic recording, tape recording, photograph, microfilm, invoice, bill, order form, receipt, financial statement, accounting entry sheet or data processing card, or any other written, recorded, transcribed, punched, taped, filmed, or graphic matter, however produced, reproduced, or stored, which is in your possession, custody, or control.

10. The term "Electronic Data," as used herein, means the original (or identical duplicate when the original is not available), and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means.  Electronic data includes, by way of example only, computer programs (whether private, commercial or work-in-progress), programming

notes or instructions, activity listings of electronic mail receipts or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, instant messaging, operating systems, source code of all types, peripheral drivers, batch files, ASCII files, and any and all miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether such electronic data consists in an Active File, Deleted File, or file fragment. Electronic data includes any and all items stored on computer memories, hard disks, floppy disks, CD-ROMs, DVDs, removable media such as Zip disks, Snap servers, Jaz cartridges, and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, on or in any other vehicle for digital data storage or transmittal. The term electronic data also includes the file, folder tabs or containers and labels appended to, or associated with, any physical storage device associated with each original or copy thereof.

11. The term "Electronic Media," as used herein, means any magnetic or other storage device used to record electronic data. Electronic media devices may include, but are not limited to, computer memories, hard disks, floppy disks, Snap servers, DVDs, CD-ROM, and removable media and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, and any other medium for the storage or transmission of digital data.

12. The term "Employee(s)," as used herein, means any person who acted or purported to act on behalf of another person or persons, including, but not limited to, all past and present directors, officers, executives, agents, representatives, attorneys, and accountants.

13. The term "File Fragment," as used herein, means any electronic data file that exists as a subset of an original Active File. A file fragment may be active or deleted. The cause of fragmentation can include, but is not limited to the execution of ordinary file management routines such as the creation of new files over parts of previously Deleted Files, the creation of files on disks which do not have enough contiguous blocks to write the file from beginning to end, where the file has been split up between several sections of the disk (each piece a fragment). Other causes include manual intervention, electronic surges, or physical defects on electronic media.

14. The term "LLRICE," as used herein, refers to long grain rice containing Bayer's regulated or otherwise restricted genetically-modified seed traits, two of which are LLRICE 601 and LLRICE 604 and the rice seeds or crops containing those traits.

15. The term "Native Format," as used herein, means the default format of a data file created by its associated software program. For example, Microsoft Excel® produces its output as '.xls' files by default, which is the native format of Excel. Microsoft Word® produces native files with a '.doc' extension, which is the native format of Word.

16. The term "Network," as used herein, means any hardware or software combination that connects two or more computers together and which allows the computers to share or transfer data between them. For the purposes of this definition, the connection between or among the microcomputers need not be either physical or direct (*i.e.*, wireless networks, and sharing or transferring data via indirect routes utilizing modems and phone company facilities). In addition, there need not be a central file or data server nor a central network operating system in place (i.e., peer-to-peer networks

and networks utilizing a mainframe host to facilitate data transfer).

17. The term "Parties," as used herein, refers to the individuals and entities that have sued or have been properly served in the Action.

18. The term "Plaintiff(s)," as used herein, refers to the plaintiffs in any case in this Action and their officers, directors, agents, and employees.

19. The term "Policy," as used herein, means any rule, procedure, practice, or course of conduct, whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by any party to this Action.

20. The term "Potentially Relevant Information," as used herein, means a document or material containing information within the scope of the categories set forth in paragraph II(A) below.

21. The term "Produced," as used herein, with respect to any document, shall include authored, dictated, edited, reviewed, or approved, in whole or in part.

22. The term "Rotation," as used herein, means any plan, Policy or scheme that involves the re-use of an electronic media device after it has been used for backup, archival or other electronic data storage purposes, particularly if such re-use results in the alteration and/or destruction of the electronic data residing on the device prior to it being re-used.

## II. PRESERVATION ORDER

A. The Parties shall take reasonable steps to preserve all written or recorded Communications, Documents, Electronic Data, and other tangible objects within their possession, custody or control containing information that is relevant to the allegations and defenses in this Action or may lead to the discovery of admissible evidence in this Action, including but not limited to written or recorded Communications, Documents, Electronic Data and other tangible objects related to:

(1) LLRICE, including but not limited to research, development, field trials, testing, registration, post-testing destruction, volunteer monitoring, audit and inspection, contracts, communications with third parties (including parents, predecessors, subsidiaries, agents, and other affiliates), communications with governmental or administrative bodies, and other communications relating thereto;

(2) Initial notification, sampling, investigation, and management of the LLRICE biotechnology traces identified in 2006 and/or 2007 or prior in samples of commercial rice in the United States;

(3) The purchase, cultivation, possession, sale, booking, listing, transfer, or resale of rice or rice seed by Plaintiffs; and

(4) Any alleged damages claimed by Plaintiffs including information related to the revenue, costs, profits, business operation and planning documents, recalls, storage, cleaning, lost profits, goodwill, or business opportunity from any entity or individual alleged to be affected by LLRICE.

In addition, the Parties agree that Plaintiffs shall take reasonable steps to retain — to the

extent in their possession, custody, or control — samples of rice or rice seed sufficient to determine the variety, type, quality, and LLRICE content of any rice or rice seed purchased, cultivated, sold, or transferred by any entity or individual alleged to be affected by Defendants' conduct.  The fact that a particular document or tangible object may be included in the scope of this Order is not intended to, and does not, establish or suggest that the document is discoverable, relevant to, or admissible in this matter.

B. The preservation obligations set forth in this Order apply to currently-existing Communications, Documents, Electronic Data, and other tangible objects within the Parties' possession, custody, or control, as well as Communications, Documents, Electronic Data, and other tangible objects generated, produced, or otherwise created in the future during the pendency of this Action until an agreement can be reached among the Parties regarding a cutoff date.

C. Notwithstanding any other provision of this Order, persons may generate business documents without preserving dictation, drafts, interim versions or other temporary compilations of information if such documents would not have been preserved in the ordinary course of business.

D. The Parties must take reasonable steps to preserve all Communications and Documents in their original condition and Electronic Data in its native format. Such steps include, without limitation:

(1) Taking reasonable steps to identify all Custodians;

(2) Directing all Custodians and appropriate IT personnel to preserve Potentially Relevant Information (this obligation does not require the Parties provide a copy of this order to Custodians so long as reasonable steps are taken to

9

inform Custodians of the substantive provisions of this Order, as well as their individual obligations thereunder);

(3) Taking reasonable steps to preserve the oldest known complete backup of Active Files reasonably expected to contain information within the scope of this Order on servers (once this obligation is satisfied, Parties may continue to engage in the routine rotation of backup tapes going forward);

(4) Taking reasonable steps to cease all nonroutine defragmentation, compression, purging, or reformatting of digital media that may contain Electronic Data that may be subject to discovery until all Active Files containing information within the scope of this Order have been copied;

(5) Taking reasonable steps to suspend routine document preservation or retention Policies that may lead to the destruction of information within the scope of this Order;

(6) Taking reasonable steps to promptly collect and preserve in their current state all Active Files from Electronic Data sources that contain data that is within the scope of this Order. For all Custodians, a complete backup will be made of all Active Files from their current Computer without altering metadata. In addition, a complete backup will be made of all Active Files that contain information within the scope of this Order identified by Custodians that reside on any servers without altering metadata;

(7) Taking reasonable steps to promptly collect any transcripts or text files reflecting the contents of any voicemail systems, telephone conversation recording devices, and other voice recording systems that may exist; and

(8) Taking reasonable steps to preserve all security keys, encryption/decryption information, and Policies that exist or are related to any data contemplated by this Order for the sole purpose of accessing the data.

The Parties shall take reasonable steps to ensure that Communications, Documents, Electronic Data and other tangible objects that are subject to this Order are not destroyed, removed, mutilated, altered, concealed, deleted or otherwise disposed of. However, any party may delete or recycle Active Files electronically stored on servers or hard drives reasonably likely to contain Documents after the party has made and secured a copy of the Active Files which contain information within the scope of this Order contained on said data storage device. A party need not preserve information electronically stored on servers, hard drives, or similar locations not reasonably likely to contain information within the scope of this Order.

E. Absent exceptional circumstances, the Parties will not seek, and the Court will not impose, sanctions on a party for failing to provide electronically stored information lost as a result of the routine, good-faith operation of an electronic information system.

F. This Order shall continue in full force and effect until further Order of this Court.

**IT IS SO ORDERED** this 5th day of June, 2007.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE