UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE GENETICALLY MODIFIED RICE LITIGATION | ) ) ) | 4:06 MD 1811 CDP |

This order Applies to:

Randy Schafer, et al., v. Riceland Foods, Inc., et al., 4:07CV825 CDP

## MEMORANDUM AND ORDER

Plaintiffs have moved to remand this case to state court. When the Bayer defendants removed the case, they asserted that plaintiffs had no real claim against the non-diverse defendant, Riceland Foods, but had instead joined Riceland fraudulently for the purpose of defeating diversity jurisdiction. They also asserted that plaintiffs improperly joined together their claims against Riceland and their claims against Bayer, again for the purpose of defeating diversity. I conclude that defendants have not established that Arkansas law precludes the existence of plaintiffs' claims against Riceland. I also conclude that plaintiffs' joinder of their claims against the defendants was not "egregious misjoinder." I will therefore grant plaintiffs' motion to remand.

## Discussion

Plaintiffs are rice farmers, and all but two of them are members of defendant Riceland Foods, Inc., an agricultural co-op. They originally filed this action in

Arkansas state court, naming Bayer Cropscience LP, Bayer CropScience Holding Inc., and Riceland Foods, Inc. as defendants. The Bayer defendants removed the case to federal court on the basis of diversity jurisdiction. The case was transferred to me for pretrial proceedings as part of the multi-district litigation. Plaintiffs are Arkansas citizens; the Bayer defendants are citizens of states other than Arkansas, but Riceland is a citizen of Arkansas.

Bayer has developed a genetically modified (GM) long-grain rice variety known as LLRICE 601. At the time the plaintiffs planted their rice crops in the spring of 2006, that rice had not been approved for human consumption. In August of 2006, it was revealed that the United States long-grain rice supply was contaminated with LLRICE 601, and the price of rice dropped dramatically. The market for American rice suffered significantly, in part because of the European aversion to any genetically modified foods. Plaintiffs allege that Riceland knew, as early as January 2006, that some of the nations' rice supply was contaminated with GM rice; they allege that Riceland gained additional relevant information before the planting season, but did not disclose it. Plaintiffs say they would not have planted long-grain rice in the spring of 2006 had they known what Riceland knew about LLRICE 601 contamination.

Plaintiffs sued the Bayer defendants for negligently allowing the GM rice to

contaminate the rice supply. They sued Riceland for fraud and negligent non-disclosure, alleging that because Riceland had a fiduciary duty to its members and because Riceland had superior knowledge, it had a duty to tell them about the contamination before they planted their 2006 rice crop.[1]

1.  **Fraudulent Joinder**

A defendant may remove an action from state court to federal district court if the action is within the district court's original jurisdiction, unless an act of Congress expressly provides otherwise. 28 U.S.C. § 1441(a). Under the doctrine of "fraudulent joinder," a court may disregard the citizenship of a non-diverse defendant who was frivolously joined in an effort to defeat removal of a diversity case. Commercial Sav. Bank v. Commercial Fed. Bank, 939 F. Supp. 674, 680 (N.D. Iowa 1996). Bayer CropScience, L.P., as the party seeking removal and opposing remand, has the burden of establishing federal subject-matter jurisdiction. In re Business Men's Assur. Co. of America, 992 F.2d 181, 183 (8th Cir. 1993) (citing Bor-Son Bldg. Corp. v. Heller, 572 F.2d 174, 181 n. 13 (8th Cir. 1978)).

---

[1] They also allege that Riceland had a duty to the general public to disclose the information – which is necessary for the two non-members to have a claim. If there is no diversity as to the member plaintiffs, however, I must remand the case, so I need not consider the non-member plaintiffs' claims at this stage.

"Joinder is fraudulent and removal is proper when there exists no reasonable basis in fact and law supporting a claim against the resident defendants." Wiles v. Capitol Indem. Corp., 280 F.3d 868, 871 (8th Cir. 2002) (citation omitted). In analyzing fraudulent joinder, the court focuses not on the artfulness of the pleadings but on "whether there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved." Wilkinson v. Shackelford, 478 F.3d 957, 963 (2007) (quoting Filla v. Norfolk S. Ry., 336 F.3d 806, 811 (8th Cir. 2003)).

In support of their contention that Riceland is fraudulently joined, defendants argue: (1) that Riceland did not have a duty to disclose the information allegedly withheld; (2) plaintiffs have not sufficiently alleged a factual basis for the allegation that Riceland knew of the LLRICE 601 in the rice supply; (3) it was not reasonably foreseeable to Riceland that plaintiffs would plant a different crop had they known of the problem; (4) that the economic loss doctrine bars plaintiffs' claims, and (5) that plaintiffs have insufficiently pled fraud.

### a. Duty to Disclose

Plaintiffs' fraud and negligent non-disclosure claims against Riceland require that Riceland had a duty to disclose to its members what it knew about the GE contamination. See Temporomandibular Joint Implants Products Liability Lit.,

113 F.3d 1481, 1497 (8th Cir. 1997) (fraud claim under Arkansas law requires deliberate concealment or "silence in the face of a duty to speak"); Farm Bureau Policy Holders and Members v. Farm Bureau Mutual Ins. Co., 984 S.W.2d 6, 14 (Ark. 1998) ("Silence, in order to be an actionable fraud, must relate to a material matter known to the party and which it is his legal duty to communicate . . . whether the duty arises from a relation of trust, . . .").

Riceland admits that it is a fiduciary of the member plaintiffs, but defendants argue that Riceland's fiduciary duties were limited to milling and marketing, and that Riceland had no duty with regard to its members' choices of what to plant. Although defendants have cited to a few cases indicating that a co-op has a fiduciary duty with regard to milling and marketing, they point to no case law – and I have found none – that would limit this duty to those areas.

In the absence of Arkansas law precluding the existence of a duty in this situation, my job is "limited to determining whether there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved." Filla, 336 F.3d at 811. In making this determination, I must "resolve all facts and ambiguities in the current controlling substantive law in the plaintiff's favor," and I have no responsibility to definitively settle ambiguous questions of state law. Id. at 811.

The only Arkansas case cited by the defendants regarding a co-op's duties to its members dealt with contractual duties, and does not even use the term "fiduciary," so it certainly cannot be read to preclude a fiduciary duty in this situation. See McCauley v. Arkansas Rice Growers' Co-op, Ass'n, 287 S.W. 419 (Ark. 1926). Under Arkansas law, a fiduciary or confidential relationship arises "whenever there is a relation of dependence or confidence." Wesley v. Estate of Bosley, 105 S.W.3d 389, 394 (Ark. App. 2003). Courts from other jurisdictions that have considered the question have found a fiduciary relationship between a co-op and its member farmers when: "(1) one of the parties enjoyed superior or excessive influence over the other; (2) the parties had a confidential relationship and one of the parties had greater access to facts and legal resources; or (3) there was a disparity of business experience and an invitation to the party with lesser experience to place confidence in the advice of the other party." Top of Iowa Cooperative v. Schewe, 149 F. Supp. 2d 709, 718 (N.D. Iowa 2001). In Asa-Brandt, Inc. v. ADM Investor Serv., Inc., 344 F.3d 738, 745 (8th Cir. 2003), applying Iowa law, the court noted that a co-op's fiduciary duty could arise out of the co-op's advice about "growing and marketing" the members' crops.

There is no Arkansas law that says a co-op's fiduciary duty is limited to the selling end of crop production. The farmers and Riceland had an ongoing

relationship – this was not a one-time buyer/seller type relationship. It simply makes no sense to argue that a duty regarding marketing cannot extend to the issue of what crops should be marketed. I must resolve all facts and ambiguities in the current controlling substantive law in plaintiffs' favor, and under this standard I cannot conclude that, as a matter of Arkansas law, Riceland had no duty to speak. While an Arkansas court might reach that conclusion if it considered the facts of a particular case, none has done so, and it is entirely likely that there could be a factual scenario where a farmer could prove that the co-op's fiduciary duty extended to what crops to plant. Defendants have not met their burden of showing that plaintiffs lack a colorable cause of action. Filla, 336 F.3d at 810. Under these circumstances, the "better practice is for the federal court not to decide the doubtful question [of state law] in connection with a motion to remand but simply to remand the case and leave the question for the state courts to decide." Id. at 811 (quoting Iowa Public Service, 556 F.2d at 406).

      **b.    Sufficiency of Allegations that Riceland Knew of LLRICE 601 in the Rice Supply**

Defendants next argue I should find fraudulent joinder based on plaintiffs' failure to plead that Riceland knew of the contamination by LLRICE 601. Plaintiffs' complaint alleges, and Riceland has admitted, that it first knew of some

genetically engineered rice contamination in January 2006. Defendants contend that there was no confirmation that it was LLRICE 601 until after the planting season. If Riceland had any duty to disclose, the duty did not depend on its knowledge of the specific type of GM rice that had contaminated some portion of the rice supply. Plaintiffs have a colorable claim, and I will not find fraudulent joinder on this basis.

        **c.**        **Foreseeability that Plaintiffs Would Plant a Different Crop**

Defendants contend that plaintiffs' claims against Riceland must fail because it was not reasonably foreseeable that plaintiffs would have planted a different crop had they known of the contamination. Under Arkansas law, the question is whether a reasonable person would have foreseen a risk of harm in Riceland's conduct. <u>Catlett v. Stewart</u>, 804 S.W.2d 699, 703 (Ark. 1991). Defendants' argument here is really that these rice farmers would not have switched to something other than long-grain rice -- but these farmers have alleged that they would have done so, and I have no basis to conclude that this allegation is false. Foreseeability is a question of fact for the jury, and again, plaintiffs have made a colorable argument.

### d. The Economic Loss Doctrine

The economic loss doctrine bars recovery of purely pecuniary losses in certain tort cases if there is no personal injury or physical damage to property other than the property at issues in the case – usually an allegedly defective product in a products liability case. See, e.g., Transport Corp. of America, Inc. v. International Business Machines Corp., Inc., 30 F.3d 953, 956 (8th Cir. 1994). Arkansas has rejected the economic loss doctrine in strict liability cases. See Farm Bureau Ins. Co. v. Case Corp., 878 S.W.2d 741, 743 (Ark. 1994); Alaskan Oil, Inc. v. Central Flying Serv., Inc., 975 F.2d 553, 555 (8th Cir. 1992); Berkeley Pump Co. v. Reed-Joseph Land Co., 653 S.W.2d 128, 131 (Ark. 1983). Defendants cannot cite any Arkansas case that applies the economic loss doctrine to negligence claims,[2] but instead rely on In re Starlink Corn Prod. Liab. Lit., 212 F. Supp. 2d 828 (N.D. Ill. 2002) and Sample v. Monsanto Co., 283 F. Supp. 2d 1088, 1092-94 (E.D. Mo. 2003), two federal cases where the economic loss doctrine has been applied in

---

[2] Defendants cite four cases dealing with the economic loss rule under Arkansas law. Three of those cases, cited above, reject the economic loss rule for strict liability, taking the minority approach. The fourth case, Wallis v. Ford Motor Co., 208 S.W.3d 153 (Ark. 2005), held that a fraud claim could not be maintained for an allegedly defective vehicle where the only injury alleged was diminution in value of the vehicle itself. The plaintiffs had not alleged that they did not receive the automobiles they bargained for – as the vehicles had not malfunctioned in any way – and for that reason the court rejected the fraud claim. Plaintiffs here are not alleging that Riceland sold them a product that was defective or was worth less than Riceland had represented, and Wallis has no application here.

cases involving genetically modified plants.

In <u>Starlink</u>, the court applied the economic loss rules of Wisconsin and Illinois to a case involving the contamination of corn with GM corn. The court found that the economic loss doctrine did not apply because plaintiffs' non-GM crop was contaminated. 212 F. Supp. 2d at 841-42. In <u>Sample</u>, the court applied the economic loss rule under Illinois and Iowa law to bar the farmers' public nuisance and negligence claims after they had abandoned any allegations of contamination. 283 F. Supp. 2d at 1092. Neither case involved a claim of fraudulent joinder to defeat diversity jurisdiction; instead, they considered motions to dismiss or for summary judgment, and, most importantly, they applied established state law. Given that Arkansas does not apply the economic loss doctrine even in the strict liability context, there is certainly an arguably reasonable basis to conclude that it would not apply the economic loss doctrine here.

### e. Fraud Allegations

Defendants argue that plaintiffs have not sufficiently pleaded the fraud allegations with particularity. Under the circumstances of this case, where the fraud arises from silence, plaintiffs have sufficiently alleged all of the elements of their fraud claims.

## 2. Misjoinder

Defendants also argue that plaintiffs wrongfully joined their claim against Riceland with their claims against Bayer to defeat diversity jurisdiction. This theory has been referred to as "fraudulent misjoinder" or "procedural misjoinder," and requires the court to look to whether different claims have been improperly joined together. Unlike traditional fraudulent joinder arguments, this is a question of state court procedure, and does not require the court to look at the substantive merits of the claims under state law.

The theory of fraudulent misjoinder is said to have begun with Tapscott v. MS Dealeer Service Corp., 77 F.3d 1353 (11th Cir. 1996), abrogated on other grounds, Cohen v. Office Depot, Inc., 204 F.3d 1069 (11th Cir. 2000). In Tapscott, two separate groups of plaintiffs attempted to merge two distinct lawsuits in order to avoid federal jurisdiction. The combination of the two lawsuits destroyed diversity, but none of the plaintiffs or defendants overlapped between these two distinct claims. The plaintiffs conceded that the two groups of claims were not properly joined under Fed. R. Civ. P. 20(a), and instead argued that a misjoinder, no matter how egregious, could not constitute fraudulent joinder. The Eleventh Circuit disagreed, holding that "[m]isjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a

cause of action." Id. at 1360.

District court cases have reached varying results when faced with this argument. Compare In re: Diet Drugs, 294 F. Supp. 2d 667 (E.D. Pa. 2003) (applying Tapscott and finding egregious misjoinder where plaintiffs attempted to join non-diverse New Jersey plaintiffs who had no connection to the other plaintiffs except that each ingested diet drugs), with Osborne v. Metropolitan Life Ins. Co., 341 F. Supp. 2d 1123, 1127-28 (E.D. Cal. 2004) (declining to apply Tapscott's theory of misjoinder, and thus granting plaintiffs' motion to remand). The theory of procedural misjoinder articulated in Tapscott is inherently ambiguous, because the court held that "mere misjoinder" does not necessarily constitute fraudulent misjoinder. 77 F.3d at 1360. Rather, the misjoinder must be "so egregious as to constitute fraudulent joinder." Id. As one court noted, this holding requires "something more" than mere misjoinder, but "[p]recisely what the 'something more' is was not clearly established in Tapscott and has not been established since." In re Bridgestone/Firestone, Inc., 260 F. Supp. 2d 722, 728 (S.D. Ind. 2003). The parties' briefs in this case fail to even address this standard.

The Eighth Circuit has not considered the theory of procedural misjoinder. For purposes of this decision, I will assume that there are some situations where misjoinder would be so egregious that it should not defeat removal jurisdiction. I

need not determine how to define that egregiousness, however, because I conclude that the claims here were not misjoined.

Arkansas Rule of Civil Procedure 20(a) is similar to Rule 20(a), Fed. R. Civ. P., and allows all persons to be joined as defendants if the plaintiff's claims: (1) arise out of the same transaction and occurrence and (2) present a common question of law or fact. Under both federal and Arkansas law, the purpose of the rule relating to joinder is to promote trial convenience and expedite final determinations. See Mosley v. General Motors Corp., 497 F.2d 1330, 1332 (8th Cir. 1974); Pennington v. Harvest Foods, Inc., 934 S.W.2d 485, 491 (Ark. 1996). "In ascertaining whether a particular factual situation constitutes a single transaction or occurrence for purposes of Rule 20, a case by case approach is generally pursued." Mosley, 497 F.2d at 1333 (citation omitted). The Eighth Circuit has provided a very broad definition for the term "transaction":

> "Transaction" is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship. Accordingly, all "logically related" events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence. The analogous interpretation of the terms as used in Rule 20 would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary.

Id. at 1333 (citations omitted).

Applying this generous standard, the Court in Mosley held that ten plaintiffs could join their individual claims of race discrimination in a suit against their employer, even though they alleged different effects, because all claims stemmed from the defendant's same company-wide policy. 497 F.2d at 1333-34.

In this case, the claims against all defendants relate to the plaintiffs' ability to sell their rice after the rice supply became contaminated by LLRICE 601. Specifically, plaintiffs allege that Bayer's negligence allowed LLRICE 601 to escape into the nation's rice supply. Plaintiffs allege that Riceland learned of the contamination but failed to tell the farmers, so plaintiffs planted long-grain rice in ignorance of the contamination issues. This amounts to a series of interrelated transactions among all the defendants. The claims share numerous factual issues, including the issues of how the contamination occurred and what effect it had on the market. Although plaintiffs' claims against Riceland are distinct from their claims against the Bayer defendants, joinder is proper because the claims arise out of the same series of transactions or occurrences and have common questions of fact.

## Conclusion

Defendants have failed to establish that plaintiffs lack a colorable claim against Riceland, and they have failed to show that the claims against the two

defendants should not have been joined in one suit. As a result, diversity of citizenship does not exist, and I will remand the case.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion to remand [#277, #4, #9] is granted, and the Clerk of Court shall remand this matter to the Circuit Court of Lonoke County, Arkansas, from which it was removed.

**IT IS FURTHER ORDERED** that plaintiffs' motion for leave to file attachment and supplemental authority [#376, #16] is granted.

**IT IS FURTHER ORDERED** that defendants' motion for leave to serve remand-related discovery [#306, #10] is denied.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 15th day of October, 2007.