IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE GENETICALLY MODIFIED RICE LITIGATION | ) ) ) ) ) | 4:06 MD 1811 CDP<br><br>ALL CASES |

**JOINT REPORT OF LEAD COUNSEL ON
ISSUES TO BE RAISED AT MARCH 5, 2009 STATUS CONFERENCE**

COME NOW Lead Counsel for Plaintiffs and Defendants and report that the following

issues will be raised at the March 5, 2009 status conference:

I.      <u>Adjustment of Discovery Deadlines</u>.  The parties agree that due to the ice storms, some

adjustment in discovery deadlines are warranted, but do not agree on the specifics of such

adjustments.  Plaintiffs also seek adjustment in discovery deadlines on the grounds of

recent document productions by Bayer entities.

<span style="color:red">A.      Plaintiffs' Proposal:</span>

<span style="color:red">(1)      Extend deadline to take discovery directed at Bayer to June 15, 2009.</span>

<span style="color:red">(2)      Extend deadlines for individual damage experts for initial Trial Pool
Plaintiffs as follows:</span>

<span style="color:red">(a)      May 22, 2009 - Plaintiffs' individual damage reports due;</span>

<span style="color:red">(b)      June 12, 2009 - Defendants' complete depositions of Plaintiffs'
individual damage experts;</span>

<span style="color:red">(c)      June 26, 2009 - Defendants' individual damage reports due; and</span>

<span style="color:red">(d)      July 17, 2009 -  Plaintiffs' complete depositions of individual
damage experts.</span>

B. Defendants' Proposal:

(1) Extend deadlines for fact discovery against Bayer Entities in CMO 9 and Plaintiff's expert disclosures in CMO 11 from April 3, 2009 to April 17, 2009.

(2) Extend deadline for deposing plaintiffs experts in CMO 11 from May 1, 2009 to May 8, 2009.

II. Issues relating to Rule 30(b)(6) depositions of Bayer entities.

A. Bayer has proposed that some of these be held the week of April 6, 2009, which is after Plaintiffs' expert reports are due. This would require an extension of the deadline for Plaintiffs' expert reports under Plaintiffs' proposed deadlines.

B. The parties have had several productive meet-and-confer discussions on the scope of the proposed 30(b)(6) deposition of Bayer CropScience LP. However, fundamental differences remain on the appropriate scope of the deposition. The draft 30(b)(6) topic list is attached as Exhibit A to this Joint Statement and the parties set forth their respective positions in Exhibit B.

III. Document production cut-off dates. The parties remain unable to reach agreement on the appropriate cut-off dates for document production in spite of additional discussion after the February 19, 2009 hearing.

A. Plaintiffs' Position: The following documents from 2008 should be produced by Initial Trial Pool Plaintiffs:

(1) Documents necessary to show when rice was priced in 2008 to the extent market loss is claimed on those sales;

(2) 2008 documents necessary to show costs or revenue for specific

alternative crops or varieties grown in 2007, but only to the extent that those damages are being claimed for the 2007 crop year; and

(3) To the extent losses other than market losses are sought for the 2008 crop year, documents relating to those losses.

B. Defendants Position:

(1) Any plaintiff who is claiming damages for the 2008 crop year should respond to the pending document requests for documents relating to the 2008 crop year, regardless of whether those documents were created in 2007, 2008, or 2009.

(2) The Bayer Entities should not be required to process, review, and produce documents collected on or after October, 2008.

IV. Production of individual tax returns from Initial Trial Pool plaintiffs identified in December, 2008.

V. Proposed schedule for non-bellwether cases and cases to be remanded.

VI. Topics where productive discussions are ongoing among the parties but judicial resolution may likely be needed prior to next status conference:

A. Supplemental responses by Bayer CropScience LP to interrogatories relating to identification of third parties responsible for any of producer plaintiffs' alleged injuries. Related issues regarding amendment of pleadings to join LSU.

B. Supplemental depositions of Initial Trial Pool Plaintiffs who were deposed as part of the fifteen additional individuals who were not proposed class representatives—Mr. Catt, Mr. Wright, Mr. Williams, and Mr. Scott.

C. Production of documents by Initial Trial Pool Plaintiffs, including electronic

D.     Interrogatory responses of Initial Trial Pool Plaintiffs regarding the amounts of

their damage claims and their yields and costs.

E.     Rule 30(b)(6) depositions of foreign deponents.

Respectfully submitted,


/s/ Eric R. Olson
Eric R. Olson
**Bartlit Beck Herman Palenchar & Scott LLP**
1899 Wynkoop Street, 8th Floor
Denver, Colorado 80202


/s/ Terry Lueckenhoff  *(w/consent)*
Terry Lueckenhoff, #43843
**Fox Galvin, LLC**
One South Memorial Drive, 12th Floor
St. Louis, Missouri  63102

*Lead Counsel for Defendants*

<u>And</u>


/s/ Don M. Downing *(w/consent)*
Don M. Downing, #41786
**Gray, Ritter & Graham, P.C.**
701 Market Street, Suite 800
St. Louis, Missouri  63101


/s/ Adam J. Levitt *(w/consent)*
Adam J. Levitt
**Wolf Haldenstein Adler Freeman & Herz LLC**
55 West Monroe Street, Suite 1111
Chicago, Illinois  60603

*Lead Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 26, 2009, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

/s/ Eric R. Olson

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

---

|  |  |  |
|---|---|---|
| **IN RE GENETICALLY MODIFIED RICE LITIGATION** | ) ) ) ) | **4:06 MD 1811 CDP** |
|  |  | **ALL CASES** |

---

**EXHIBIT A TO 30(b)(6) NOTICE TO BAYER CROPSCIENCE**

1.      Protocols, guidelines, rules, regulations, standards, policies, and practices received, known, developed and/or utilized by you (including all drafts and revisions thereto),  to prevent the introduction or movement of LLRICE601 into commercial rice channels, and identification of documents setting out such protocols, guidelines, rules, regulations, standards, policies or practices.

2.      Protocols, guidelines, rules, regulations, standards, policies, and practices received, known, developed and/or utilized by you (including all drafts and revisions thereto) to prevent the introduction or movement of LLRICE604 into commercial rice channels, and identification of documents setting out such protocols, guidelines, rules, regulations, standards, policies or practices.

3.      Protocols, guidelines, rules, regulations, standards, policies, and practices received, known, developed and/or utilized by you (including all drafts and revisions thereto) to prevent the introduction or movement of a regulated event or article into commercial rice channels, and identification of documents setting out such protocols, guidelines, rules, regulations, standards, policies or practices.

4.      Protocols, guidelines, rules, regulations, standards, policies, and practices developed

and/or utilized by others, but known by you, to prevent the unauthorized introduction of regulated events or articles, all documents referencing the same, and the identification of documents setting out such protocols, guidelines, rules, regulations, standards, policies or practices.

5.      Protocols, guidelines, rules, regulations, standards, policies, and practices received, known, developed and/or utilized by you (including all drafts and revisions thereto) and identification of documents setting out such protocols, guidelines, rules, regulations, standards, policies or practices, regarding:

      a.      The research, development and testing of LLRICE;

      b.      The handling of LLRICE;

      c.      The shipping of LLRICE;

      d.      The labeling, containment and storage of LLRICE;

      e.      The planting of LLRICE;

      f.      The dedication, cleaning, and other use of equipment in connection with the planting, growing, and/or harvesting of LLRICE;

      g.      The devitalization of LLRICE (by destruction or any other means) in connection with or upon termination of a field test.

6.      Tests, including but not limited to lateral strip flow and PCR tests, available to determine the presence of LLRICE and the availability of such tests to cooperators, growers and any other person or entity who conducted field trials of genetically modified rice.

7.      All tests identified, provided or recommended by Bayer to LSU or any other

person or entity to test for the presences of LLRICE 601 or LLRICE 604.

8.  All testing conducted to determine the presence of LLRICE 601, LLRICE 604 or any other LLRICE event in Cheniere, Clearfield 131 or other commercial rice varieties.

9.  All testing conducted to determine the presence of LLRICE 601, LLRICE 604 or any other LLRICE event in any conventional variety grown or tested at any LSU facility.

10.  All testing conducted to determine the presence of LLRICE 601 or LLRICE 604 or any other LLRICE event in any conventional variety grown or tested at any facility in Puerto Rico.

11.  Instructions given by you to cooperators, growers and any other person or entity to test for the presence of the 35-S bar or the PAT gene in conventional rice varieties grown at or near locations where genetically modified rice was field tested.

12.  Any measures taken to monitor or otherwise detect the presence of LLRICE in the United States commercial rice seed or rice crops.

13.  Any inquiry, notification, or other communcation from any source regarding the presence or potential presence of LLRICE in United States commercial rice seed or crops.

14.  Communication of (and policies, practices or discussion about the communication of) protocols, guidelines, rules, regulations, standards, policies, and practices to any destination facility to which LLRICE was shipped.

15.  Communication of (and policies, practices or discussion about the communication of) protocols, guidelines, rules, regulations, standards, policies, and practices to cooperators, growers, and any other person or entity involved in the field testing or development trials

of genetically modified rice.

16. Communication of (and policies, practices, or discussion about the communication of) the protocols, guidelines, rules, regulations, standards, policies, and practices to any person or entity to prevent the introduction of LLRICE601, LLRICE604, LLRICE62, and/or any regulated event or article into commercial rice channels or other unauthorized movement.

17. All analysis, discussion and revision to any protocol, policy, practice, procedure, guideline or rules made:

    a.     as a result of the Starlink Corn contamination incident;

    b.     as a result of the LLRICE contamination at issue in this case;

    c.     or otherwise from 1998 to the present.

18. All efforts undertaken to inspect, audit, or otherwise monitor shippers, destination facilities, cooperators, growers and any other person or entity involved in field testing, development trials, or in possession of LLRICE to ensure compliance with protocols, guidelines, rules, regulations, standards, policies, and practices to prevent the introduction of LLRICE601, LLRICE604, or other regulated events, or articles or deregulated but non-commercialized events or articles into commercial rice channels or other unauthorized movement, and

    a.     Identity of all documents that evidence or discuss any inspection, audits or monitoring activity in regard to any cooperator, grower or other person or entity in possession of LLRICE.

19. All persons, organizations, and/or entities involved in the research, development and

testing of LLRICE and their locations.

20.     Identity of responsible individuals for overseeing shippers, destination facilities, cooperators, growers or other person or entity in the shipping, labeling, handling, storage, testing, containment, planting, harvesting, cleaning of equipment, and devitalization of LLRICE.

21.     Protocols, guidelines, rules, regulations, standards, policies, and practices regarding the marketing and promotion of LLRICE.

22.     All persons, organizations, and/or entities involved in the marketing and promotion of LLRICE.

23.     All analysis, study, discussion and efforts undertaken to determine the appropriate:

a.      isolation distances between genetically modified rice and conventional varieties in field trials of genetically modified rice, including the applicability of, and/or appropriateness of, seed certification standards to field tests of genetically modified rice;

b.      protocols, guidelines, rules, regulations, standards, policies, and practices for the handling of genetically modified rice.

c.      protocols, guidelines, rules, regulations, standards, policies, and practices for the shipping of genetically modified rice.

d.      protocols, guidelines, rules, regulations, standards, policies, and practices for the storage, labeling and containment of genetically modified rice.

e.      protocols, guidelines, rules, regulations, standards, policies, and practices for the dedication, cleaning, and other use of equipment used in the planting,

growing, and/or harvesting of genetically modified rice.

f.      protocols, guidelines, rules, regulations, standards, policies, and practices for the devitalization of genetically modified rice.

g.      protocols, guidelines, rules, regulations, standards, policies, and practices to otherwise prevent the unauthorized movement of genetically modified rice.

24.     All actions taken by you to comply with the Plant Protection Act and provisions in 7 C.F.R. Part 340 regarding the introduction of genetically modified rice.

25.     All analyses, studies, discussion, communications with APHIS or any other person or entity, and efforts undertaken by you to determine compliance with the Plant Protection Act and provisions in 7 C.F.R. Part 340 regarding the introduction of genetically modified rice.

26.     All protocols, guidelines, rules, standards, policies and practices requested or obtained from the USDA, APHIS, or any other governmental agency, person, entity or association in connection with your efforts to comply with the Plant Protection Act, 7 C.F.R. §340.0 and any performance standard set out in 7 C.F.R. §340.3(c).

27.     All other requests for information, interpretations and assistance from the USDA, APHIS, or any other governmental agency, person, entity or association in connection with your efforts to comply with the Plant Protection Act, 7 C.F.R. §340.0 and any performance standard set out in 7 C.F.R. §340.3(c).

28.     All efforts undertaken by you to research, investigate, and select cooperators, growers, or any other person or entity for the conduct of field trials of genetically modified rice.

29.     All analysis, study and discussion in regard to the selection of state, regional or foreign locations for field trials of genetically modified rice.

30.     Reasons why the following were chosen to conduct field trials of genetically modified rice:

      a.     LSU

      b.     University of Puerto Rice

      c.     University of Arkansas

      c.     Jacko Garrett

31.     Any investigation conducted or caused to be conducted, as well as any involvement in any investigation conducted, about the entry of LLRICE601, LLRICE 604, or any other regulated event or article into the commercial rice channels.

32.     Any investigation conducted or caused to be conducted, as well as any involvement in any investigation conducted, about the entry of any non-regulated but non-commercialized event or article into the commercial rice channels.

33.     Information provided to the USDA, APHIS, or any other governmental agency in connection with, and all other communications (oral or written) by, from and between Bayer (or anyone on Bayer's behalf) and the USDA, APHIS, or any other governmental agency in connection with any investigation regarding:

      a.     the entry of LLRICE601 into the commercial rice channels;

      b.     the entry of LLRICE604 into the commercial rice channels;

      c.     the entry of any regulated event or article into the commercial rice channels;

      d.     the entry of any non-regulated but non-commercialized event into the

commercial rice channels;

   e.   the unauthorized introduction of any regulated article owned, developed, or tested by Bayer other than LLRICE 601 and LLRICE 604.

34. Bayer's investigation, analysis, beliefs and opinions about:

   a.   how LLRICE 601 entered commercial rice channels.

   b.   how LLRICE 601 entered Cheniere seed stocks.

   c.   how LLRICE 604 entered commercial rice channels.

   d.   how LLRICE 604 entered Clearfield 131 seed stocks.

   e.   how any regulated event or article entered commercial rice channels.

   f.   how any non-regulated but non-commercialized event entered commercial rice channels.

35. Data, information, and your knowledge, appreciation, or understanding of the location and amount of long-grain rice exported from the United States to foreign countries prior to and after May, 2006.

36. Data, information, and your knowledge, appreciation, or understanding of the regulations, standards, policies, or practices of any foreign country regarding the import of genetically modified plants or plant materials, including long-grain rice, from the United States.

37. Data, information, and your knowledge, appreciation, or understanding of the protocols, treaties, or agreements between the United States and any foreign country addressing the development, import or export of genetically modified materials.

38. Efforts to obtain import approval for LLRICE from any foreign country.

39.     Efforts to influence the standards, policies or practices of any foreign country regarding the import of genetically modified plants or plant materials, including long-grain rice, from the United States.

40.     Analysis, calculation or discussion prior to May, 2006 regarding possible effects on the market resulting from the unauthorized release of LLRICE or other regulated article.

41.     Analysis, calculation or discussion subsequent to May, 2006 regarding the effect of the unauthorized release of LLRICE on the market.

42.     Communications (oral or written) by, from and between Bayer (or on its behalf) and any other person, entity, association or body (including legislative) regarding any proposal for amendment to the Plant Protection Act or regulations at 7 C.F.R. Part 340.

43.     Any deficiencies or failures by LSU or any other person or entity involved with LLRICE rice or other genetically modified material:

   a.     regarding adherence to protocols, guidelines, rules, regulations, standards, policies, and practices of Bayer;

   b.     regarding adherence to protocols, guidelines, rules, regulations, standards, policies and practices of any entity, association or agency regarding genetically modified material;

   b.     in receiving, handling, planting, harvesting, storing, transporting, distributing or devitalizing LLRICE 601 or LLRICE 604.

44.     Communications (oral or written) by, from and/or between Bayer (or on its behalf) and any other person, entity, association or body regarding APHIS' policies regarding low-level presence of genetically modified material.

45.     Facts supporting Bayer's defense:

a.      that plaintiffs' claims are precluded by the economic loss doctrine;

b.      of intervening and/or superseding acts or omissions for which the Bayer defendants and Bayer Corporation are not liable;

c.      that it owed no duty to the plaintiffs;

d.      that plaintiffs' claims are barred due to plaintiffs' own negligence and/or comparative fault.

e.      relating to the doctrine of assumption of risk;

f.      that plaintiffs failed to mitigate, minimize or avoid damages.

g.      that the plaintiffs' claims are not ripe;

h.      relating to plaintiffs' unclean hands, laches, waiver and/or estoppel.

i.      that plaintiffs' claims are preempted;

j.      that Bayer complied with all applicable statutes and regulations regarding genetically modified crops.

k.      that Bayer complied with state of the art industry standards.

l.      that plaintiffs' injuries were caused by an Act of God or force majeure.

m.      that plaintiffs' damages were the result of unavoidable and unpreventable circumstances;

n.      that plaintiffs' claims for punitive damages are barred.

o.      that plaintiffs' injuries were caused by acts or omissions for which Bayer is not responsible;

p.      any other defense made by you in this action

46.     Facts supporting Bayer's belief that:

    a.      LLRICE601 entered commercial rice channels.

    b.      that LLRICE604 entered commercial rice channels.

47.     Appropriate methods and procedures for:

    a.       the conduct of field trials of LLRICE 601.

    b.      the conduct of field trials of LLRICE 604.

    c.      the conduct of field trials of LLRICE 62.

    d.      for the conduct of field trials of genetically modified rice.

48.     Locations where LLRICE601 and LLRICE604 were shipped, grown, stored, tested, handled, harvested, and devitalized.

49.     Communications to and from Timothy Croughan, and otherwise in regard to, investigations to determine the presence of a regulated event, or an unregulated but non-commercialized event, in rice in Timothy Croughan's possession.

50.     All analysis, study, discussion and other efforts undertaken by you to analyze:

    a.       acceptance of genetically modified rice in the European Union;

    b.      acceptance of genetically modified rice in Japan;

    c.      acceptance of genetically modified rice in any other foreign country to which long grain rice was exported from the United States.

51.     All reports, communications and/or notifications to the USDA regarding:

    a.      the conduct of field trials,

    b.      the termination of field trials;

    c.      the location and devialization of LLRICE;

d.     the escape of genetically modified rice through any means, including but not limited to, reports of flooding .

52.     Regulatory requirements of the USDA/APHIS and any state agency for the introduction of regulated articles and/or genetically modified material.

53.     All actions taken by you to comply with any state statute regarding the introduction of genetically modified rice

54.     All consultation with, or efforts to consult with, the USDA regarding appropriate protocols for the shipping, storage, handling, use, containment, field trials or any other introductions of genetically modified rice.

55.     Genesis of the LLRICE project, including the person or persons who initially proposed research, development, and testing of LLRICE.

56.     Project leaders for the LLRICE project and the specific responsibilities for project leaders of the LLRICE project.

57.     The possibility of adventitious presence of genetically modified rice.

58.     The identity of the person(s) who communicated with LSU regarding the LLRICE project.

59.     All agreements, contracts, memoranda of understanding or similar documents (including attachments and amendments thereto) between LSU and Bayer CropScience LP or any other Bayer entity regarding genetically modified rice.

60.     All agreements, contracts, memoranda of understanding or similar documents (including attachments and amendments thereto) between Bayer CropScience LP or any other Bayer entity, and any shipper, destination facility, storage facility, cooperator,

grower or other person or entity in possession of LLRICE.

61.     Allegations contained in the Master Complaint which form the basis of the captioned

litigation.



{753476 / 061145}

# EXHIBIT B

**EXHIBIT B - Positions relating to Rule 30(b)(6) deposition of Bayer CropScience LP**

**Plaintiffs' Position**

      Plaintiffs provided Bayer a draft of topics on which they seek corporate deposition. The topics, contained in sixty-two numbered paragraphs, cover twelve categories of information.[1] In prior depositions, Bayer has objected to questioning on the ground that the witness was not produced as a corporate representative. Also, there are many subjects upon which witnesses had only partial information, including Bayer's efforts to prevent the movement and release of LLRICE, a critical issue in this litigation.[2] Bayer objects that topics covered with witnesses in their individual capacity are "duplicative" and thus "burdensome." Bayer agreed to designate Kirk Johnson (whose deposition was taken on 2/24-25) and Donna Mitten (whose deposition is scheduled) on certain identified topics. Bayer did not educate Mr. Johnson (whose personal knowledge was not complete on a number of the topics designated), and indicated its intention not to educate Dr. Mitten on topics not within her knowledge. On 2/25/09, Bayer advised that it will not designate Dr. Mitten before her scheduled deposition. Bayer is not willing to identify what deponents qualify for what topics. It is not willing to extend time for designee topics. Neither Johnson's individual nor 30(b)(6) examinations were completed.

      Testimony from a corporate designee represents the knowledge of the corporation, not of the individual deponent. *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C.); *Great American Ins. Co. of New York v. Vegas Const. Co., Inc.*, 251 F.R.D. 534, 538 (D. Nev. 2008). Thus, the corporation has a duty to prepare a Rule 30(b)(6) designee beyond matters personally known to him. *Alloc, Inc. v. Unilin Decor N.V.*, 2006 WL 2527656, at *2 (E.D. Wis. Aug. 29, 2006). "By its very nature, [Rule 30(b)(6)] requires the [corporation] to prepare a designated representative" to testify "on matters reasonably known by the [corporate] entity." *Great American,* 251 F.R.D at 539 (quoting *Alliance v. District of Columbia*, 437 F.Supp.2d 32, 37 (D.D.C.2006)).[3] *Accord Board of Trustees*, 253 F.R.D. at 526. This is a "qualitative difference" between deposing an individual and a corporate designee. *Alloc,* 2006 WL at *2. Thus, "just because [corporation] may choose to designate certain individual[s] as its corporate designees whose fact depositions have already occurred does not insulate [it] from the requirements of Rule 30(b)(6). Such a finding would eviscerate Rule 30(b)(6)," *ICE Corp.*, 2007 WL 1732369, at *3.

---

[1] Bayer also has complained that certain topics are overbroad. Counsel conferred on 2/26/09 regarding the language/scope of the topics. Bayer proposed to delay this subject until *after* this Court decides its "threshold" objection of duplication.

[2] One of the very purposes of Rule 30(b)(6) is to prevent "bandying," where "people are deposed in turn but each disclaims knowledge of the facts that are clearly known to persons in the organization and thereby to the organization itself." *Myrdal v. District of Columbia*, 248 F.R.D. 315, 317 (D.D.C. 2008). *Accord Great American*, 251 F.R.D. at 538; *Federal Deposit Ins. Corp. v. Butcher*, 116 F.R.D. 196, 199 (E.D.Tenn.1986); *Alloc,* 2006 WL 2527656 at *2.

[3] Thus, "[e]ven if the documents are voluminous and the review . . . would be burdensome," the deponent must still adequately prepare. *Board of Trustees of Leland Stanford Junior University v. Tyco Intern. Ltd.*, 253 F.R.D. 524, 526 (C.D.Cal. 2008). This is necessary because the designee is "required to testify to the knowledge of the corporation, *not* the individual." *Id. See also Great American,* 251 F.R.D. at 540 (the burden of preparing a Rule 30(b)(6) designee "is merely the result of the concomitant obligation from the privilege of being able to use the corporate form in order to conduct business.").

**Bayer CropScience LP's Position**

Bayer CropScience LP moves for a protective order on the 61 proposed Rule 30(b)(6) topics because they do not meet Rule 26's requirements that discovery not be unreasonably duplicative, that Plaintiffs have used ample alternative means to obtain this same information, and that the burden or expense of the proposed discovery not outweigh its likely benefit. *See* F.R.C.P. 26(b)(2)(C). Bayer CropScience LP does not object to, and has reserved time for, a Rule 30(b)(6) deposition on discrete and specific issues to fill gaps in prior discovery. These proposed topics, however, far exceed that scope.

After several meet-and-confer sessions, Plaintiffs remain unwilling to withdraw any of the 61 topics. These expansive topics—which Plaintiffs admit were calculated to encompass all possible factual issues in the case related to Bayer CropScience LP—will require extensive, unjustifiable duplication of testimony. In fact, 27 current and former employees of Bayer defendants have already been deposed at length, some for multiple days, on these very same topics.

Rule 26(b)(2)(C) prohibits this kind of wasteful discovery: "the court must limit the frequency or extent of discovery otherwise allowed" by the rules if "(i) the discovery sought is unreasonably cumulative or duplicative," "(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery," or "(iii) the burden or expense of the proposed discovery outweighs its likely benefit." Plaintiffs 61 proposed topics violate all three provisions of Rule 26(b)(2)(C).

## 1. The topics are unreasonably cumulative or duplicative

The 61 expansive topics seek discovery that is unreasonably cumulative and duplicative. 27 current and former employees have been deposed. These witnesses include the witnesses (except for counsel) most knowledgeable about all of the expansive topics and all of the potential corporate representatives who would be designated to respond to these topics. These six weeks of testimony have presumably already provided plaintiffs with the "information known or reasonably available to" Bayer CropScience LP on the proposed topics. Rule 30(b)(6).

In addition, Bayer CropScience LP's interrogatory responses address many of these exact issues. For example, on September 10, 2007, Bayer CropScience LP provided an extensive, five-page response to the following interrogatory:

Interrogatory No. 1: Describe each step in the process of creating, testing, growing, storing, transporting, disposing, or otherwise disseminating each variety of LLRICE, the physical location where each of those steps took place, and identify all Persons involved in each step, including the timing and scope of their involvement.

No issue has been raised with the sufficiency of that response, or similar responses, for nearly 18 months.

2. **Plaintiffs have had ample opportunity to obtain this information through discovery**

These six weeks of previous depositions, the over 1.6 million pages of documents produced, and the extensive interrogatory responses have already provided "ample opportunity to obtain the information" that Plaintiffs now seek under Rule 30(b)(6). Rule 26(b)(2)(C)(ii).

3. **The burden and expense of the proposed discovery far outweighs its likely benefit**

Plaintiffs have articulated no justification for their requested 28th omnibus bite at the apple. Because the topics largely duplicate the discovery that has already occurred, the only benefit appears to be gaining potential fodder for cross examination by having multiple depositions of the same witnesses on the same issues.

The burden and expense of preparing witnesses for this 61-topic Rule 30(b)(6) deposition would be onerous. Numerous corporate representatives will be needed to cover the wide range of topics. Not only will the corporate representatives have to review their own prior deposition on the same subject, they and counsel will have to become familiar with testimony by any of the other 27 company witnesses, in addition to undertaking a reasonable investigation regarding the company's knowledge. At this late stage in discovery, which has been ongoing against Bayer CropScience LP since July 6, 2007, preparing witnesses to testify on every factual issue in the case that relates to Bayer CropScience LP is an extraordinary burden.

Nor is the benefit at all clear for many of the proposed topics. For example, topic 45 seeks a laundry list of "Facts supporting Bayer's defense." Even if properly discoverable, a deposition is a particularly poor method of obtaining this information. The burden and expense of the proposed Rule 30(b)(6) deposition will inevitably outweigh any likely benefit. Rule 26(b)(2)(C)(iii). Rule 30(b)(6) was not intended permit duplicative depositions. To the contrary, one purpose of the rule was to prevent "an unnecessarily large number" of depositions. Rule 30(b)(6), Advisory Committee Notes, 1970 Amendment.

For the foregoing reasons, Bayer CropScience LP respectfully requests that this Court grant a protective order regarding the 61 proposed Rule 30(b)(6) deposition topics.