IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

*In re*
*Genetically Modified Rice Litigation*

This document relates to:

|  |  |
|---|---|
| VAN SILLEVOLDT RIJST B.V. | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| RIVIANA FOODS INC., | ) |
| PRODUCERS RICE MILL, INC., | ) |
| RICELAND FOODS, INC., | ) |
| BAYER CORPORATION, BAYER | ) |
| CROPSCIENCE LP,  and BAYER | ) |
| CROPSCIENCE HOLDING INC. | ) |
| | ) |
| Defendants. | ) |

Master Case No. 4:06MD1811CDP
MDL Docket No. 1811

No. 4:09-CV-00941-CDP

## SECOND AMENDED COMPLAINT OF VAN SILLEVOLDT RIJST B.V.

Plaintiff, Van Sillevoldt Rijst B.V., for its Second Amended Complaint against Riviana

Foods Inc., Producers Rice Mill, Inc., Riceland Foods, Inc., Bayer Corporation, Bayer

CropScience LP, and Bayer CropScience Holding Inc. states as follows:

### I.   PARTIES, JURISDICTION AND VENUE

1. Plaintiff, Van Sillevoldt Rijst B.V., ("VSR") is a Dutch company that purchases and imports
   rice to the European Union ("EU").

2. Riviana Foods Inc. ("Riviana") is a Delaware corporation with its principal place of business
   in Houston, Texas. Riviana is a processor, marketer, wholesaler, distributor and exporter of
   rice and rice products. Riviana exports long grain rice to customers located in, among other
   places, the EU.  Riviana maintains an office in Hazen, Arkansas, and has a presence in

1

Arkansas sufficient to constitute minimum contacts in order to meet due process requirements for personal jurisdiction.

3.    Producers Rice Mill, Inc. ("Producers") is an Arkansas agricultural cooperative corporation with its principal place of business in Stuttgart, Arkansas.   Producers exports rice and rice products to, among other places, the EU.   Producers is an Arkansas entity, conducts business in Arkansas and otherwise has a presence in Arkansas sufficient to constitute minimum contacts in order to meet due process requirements for personal jurisdiction.

4.    Riceland Foods, Inc. ("Riceland") is an Arkansas agricultural cooperative corporation with its principal place of business in Stuttgart, Arkansas.   Riceland is an Arkansas entity, conducts business in Arkansas and otherwise has a presence in Arkansas sufficient to constitute minimum contacts in order to meet due process requirements for personal jurisdiction.

5.    Bayer Corporation is an Indiana corporation with its principal place of business located at 100 Bayer Road, Pittsburgh, Pennsylvania.   Bayer Corporation, itself or through its various subsidiaries and affiliates, conducts business in Arkansas and otherwise has a presence in Arkansas sufficient to constitute minimum contacts in order to meet due process requirements for personal jurisdiction.

6.    Bayer CropScience LP is a Delaware limited partnership with its principal place of business in North Carolina. Bayer CropScience LP is the successor, by name change, to Aventis CropScience USA, LP. Upon information and belief, Bayer CropScience LP, itself and through its parent, subsidiary, affiliated, and predecessor entities — including all of the Bayer Defendants as defined in Paragraph 9 below — produces or has produced, inter alia, the genetically-modified rice seeds or the seed traits at issue here. Bayer CropScience LP

2

conducts business in Arkansas and otherwise has a presence in Arkansas sufficient to constitute minimum contacts, either itself or through its various subsidiaries and affiliates, in order to meet due process requirements for personal jurisdiction.

7.   Bayer CropScience Holding Inc. is a Delaware corporation with its principal place of business at 2 T.W. Alexander Drive, Research Triangle Park, North Carolina, 27709. Bayer CropScience Holding Inc. is Bayer CropScience LP's general partner. Under applicable law, as a general partner of a limited partnership, it is jointly and severally liable for all obligations of Bayer CropScience LP and otherwise has a presence in Arkansas sufficient to constitute minimum contacts in order to meet due process requirements for personal jurisdiction.

8.   At all times relevant to this action, there has existed and presently exists, a unity of interests in ownership between Bayer Corporation, Bayer CropScience LP, and Bayer CropScience Holding Inc.  Alternatively, they have acted as and constitute a single business enterprise and/or constitute a joint enterprise.

9.   Bayer Corporation, Bayer CropScience LP, and Bayer CropScience Holding Inc. are hereinafter referred to collectively as "Bayer" or "Bayer Defendants."

10.   The amount in controversy exceeds $75,000.00 exclusive of interest and costs, and this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

11.   Venue lies in the Eastern District of Arkansas, the transferor court, pursuant to 28 U.S.C. § 1391(a).   This action originally filed in Arkansas has been transferred pursuant to a Conditional Transfer Order dated June 15, 2009 to the Multi-District Litigation case.

## II. RELEVANT FACTS

**A.    Bayer's Contamination of the US Rice Supply**

12.    "LLRICE 601" (also referred to as "Liberty Link Rice") is a type of genetically modified
("GM") rice seed developed, manufactured, and field tested by and for Bayer.

13.    LLRICE 601 is an experimental variety of long-grain rice that has been genetically altered
with a bacterial gene that causes the rice kernel to produce a protein that makes it resistant to
Liberty 9 herbicide (also known as a glufosinate), which is a herbicide produced by a Bayer
entity. This allows the Liberty 9 herbicide to be sprayed to kill weeds in the field without
harming the rice plants.

14.    The GM rice at issue in this action was subject to the USDA notification process because it is
a genetically engineered organism.

15.    Upon information and belief, the GM rice traits at issue in this action were developed by
AgrEvo, which was acquired by Bayer CropScience LP's predecessor, Aventis CropScience
USA LP.

16.    Upon information and belief, GM rice was grown in field tests from 1998-2001 in Puerto
Rico and various southern states in the US.

17.    From the time that GM rice was initially field tested to the present, Bayer knew or should
have known that the general US rice supply (rice not genetically modified) could become
contaminated with GM rice in many ways, including but not limited to, cross-pollination and
commingling during planting, harvesting, handling, storage, transportation and disposal.

18.    Bayer, however, failed to take appropriate action to prevent the cross-pollination and
commingling of GM rice with the US rice supply.

4

19. Following its acquisition of Aventis CropScience in or about 2001, Bayer CropScience LP continued to test and develop these genetically modified rice traits.

20. As the owner of, and applicant for (either originally or as Aventis' successor) these genetically modified rice seed traits, Bayer bore responsibility for their development, testing, handling, and use. Bayer's duties were non-delegable.

21. As a genetically modified product, GM rice was subject to regulatory approval prior to commercialization.

22. Bayer never sought the approval of its GM rice for commercialization during the testing trials or thereafter until after the disclosure that Bayer had contaminated the US rice supply with GM rice.

23. In testing, growing, transporting, storing, and disposing of GM rice, Bayer failed to exercise the requisite degree of care.

24. Bayer's contamination of the US rice supply with GM rice, upon which these claims are based, is not the first time that a Bayer entity contaminated the supply of a US commodity crop.

25. In 2000, it was disclosed that Aventis CropScience, Bayer CropScience LP's corporate predecessor, had contaminated the US corn supply with StarLink corn, resulting in substantial damage to and contamination of the US corn supply.

26. Due to the StarLink matter, Bayer was clearly on notice of the dangers inherent from cross-pollination and commingling of unapproved GM rice.

27. Bayer failed to adequately instruct, oversee and control test growers to insure that its GM rice crops were adequately segregated or contained adequate buffer zones or other protections were in place to prevent the escape of those traits into the US rice supply.

28. Bayer's conduct and/or omissions caused contamination of the US commercial rice supply with GM materials.

29. A portion of the US rice supply is exported for sale in the EU each year.

30. At all relevant times, no GM rice had been approved for sale in the EU and none could be legally imported into the EU or placed in the market within the EU.

31. As set forth more fully below, some of the GM rice from the US eventually contaminated VSR's rice supply, which was destined for sale in the EU.

## Importation of Rice Into the EU

32. VSR imports, processes and sells rice exclusively for the European market.

33. In 2006, approximately 25% of the rice VSR imported was purchased from the US.

34. VSR's main suppliers of US rice were Producers, Riviana and Riceland.

35. Under Article 4 (2) and Article 16 (s) of Regulation (EC) No. 1829/2003 of the European Parliament and the Council of September 22, 2003 on genetically modified food or feed, no genetically modified food or feed is to be placed on the EU market unless it is covered by an authorization granted in accordance with the Regulation.

36. At all relevant times, there was no authorization for GM rice in the EU.

37. Therefore, at all relevant times, no GM rice had been approved for sale in the EU and none could be legally imported into the EU or placed in the market within the EU.

38. Because of the EU ban on GM rice, VSR sought and received assurances from its suppliers, including Riviana, Producers and Riceland, that they would not ship GM rice to VSR.

39. Despite providing such assurances, Riviana, Producers and Riceland did not regularly test their stocks of rice for the presence of GM rice.

6

## Contractual Obligations

### A.   Producers

40.   The raw material specifications under which Producers supplied rice to VSR required Producers to "comply to [sic] all EU law and regulations" and to provide rice free from GM materials.

41.   Under the terms of the specifications, Producers could supply rice that did not conform to the specifications only upon receipt of VSR's prior written approval.

42.   At no time did VSR provide Producers with approval to ship GM rice.

43.   At all relevant times, the EU prohibited the importation of GM rice.  Therefore, Producers could not ship GM rice to VSR without breaching its contractual obligations.

44.   Additionally, each sales confirmation sent by Producers to VSR specifically stated, "Sellers [Producers] guarantee that the rice which will be supplied is US grown and has not been genetically modified."

45.   Moreover, Producers signed a letter of guarantee specifically stating "Producers guarantees that we do not process or handle any rice that is a GMO product.  We can assure you that our rice is GMO free."

46.   Producers also signed a Food Warranty.  In that warranty, Producers stated:

> We hereby warrant that all new materials delivered by us to [VSR] are safe and wholesome in every respect (microbiological, chemical, physical) and comply with all relevant EU good legislation and regulations in general and safety legislation and regulations in particular.
>
> We further warrant that sources from whom we purchase are also aware of and accept the said legislation and regulation, and that we carry out sufficient controls over the sources of supply to ensure compliance with these regulations.  Furthermore, we hereby declare that it is

7

reasonable for [VSR] to rely on these checks under all circumstances.

47. Producers failed to comply with the terms of the product specifications, the sales confirmations, its own letter of guarantee and its warranty by failing to comply with all EU laws and regulations and by shipping GM rice to VSR.

**B. Riceland**

48. The raw material specifications under which Riceland supplied rice to VSR required Riceland to "comply to [sic] all EU laws and regulations" and to provide rice free from GM materials.

49. Under the terms of the specifications, Riceland could only supply rice that did not conform to the specifications upon receipt of VSR's prior written approval.

50. At no time did VSR provide Riceland approval to ship GM rice.

51. At all relevant times, the EU prohibited the importation of GM rice. Therefore, Riceland could not ship GM rice to VSR without breaching its contractual obligations.

52. Riceland failed to comply with the product specifications for the lots at issue herein by failing to comply with all EU laws and regulations and by shipping GM rice to VSR.

**C. Riviana**

53. Each of the contracts and the sales confirmation under which Riviana shipped rice to VSR specifically stated that Riviana certified the rice that it supplied "is U.S. grown and has not been genetically altered."

54. Riviana failed to comply with the terms of the sales confirmations by shipping GM rice to VSR.

8

## The Shipment of Non-Conforming Goods

55. Despite their contractual obligations and in violation of EU regulations, Riviana, Producers and Riceland shipped GM rice to VSR in 2006.

56. On August 18, 2006, the United States Department of Agriculture issued an advisory disclosing that it had been informed of the presence of GM rice in crops of long grain rice grown in the US in the 2005 and 2006 crop years ("the USDA Advisory").

57. Months before August 18, 2006, Riceland knew of the presence of GM rice in its supplies and did not warn VSR.

58. At the time the USDA Advisory was issued, the importation of GM rice was expressly forbidden by the 25 countries comprising the EU and it remains so today.

59. At all times pertinent to this controversy, Riviana, Producers and Riceland knew that these countries prohibited the importation and introduction of GM rice into their markets.

60. At all times pertinent to this controversy, Riviana, Producers and Riceland knew that VSR was an importer of long grain rice directly to the EU and that the rice at issue being purchased by VSR from them was for direct import to and sale in the EU.

61. After the USDA Advisory issued in August 2006, the impact on the international rice market was substantial. Rice futures prices dropped significantly. Some countries imposed absolute embargos on the importation of US long grain rice. Others, including the members of the EU, forbade the importation of US long grain rice unless it was tested and was confirmed not to contain GM rice.

62. On August 23, 2006, the EU Commission held that every EU importer of US rice was under a legal obligation to furnish documentary evidence that each shipment of US rice was GM free before placing it on the market.

9

63.   The EU member states further required every importer of US rice to test rice already on the
      market for GM materials.

64.   The impact of the USDA statement and subsequent actions by European authorities also
      attracted a lot of media attention and a number of organizations, including Green Peace and
      Friends of the Earth, which publicly stressed the alleged dangers of human consumption of
      GM rice.

65.   Following the decision of the EU Commission, VSR commenced testing samples of rice from
      all incoming shipments of US rice as well as samples from shipments already in the EU.

66.   Testing of those samples revealed that Riviana, Producers and Riceland had supplied GM
      rice to VSR.

67.   Under the European General Food Law, VSR was obligated to inform its customers of the
      test results.

68.   Following the required notification, VSR was faced with numerous requests from customers
      for recalls and credits.

69.   Moreover, due to a risk of cross-contamination and in response to customer concerns, VSR
      ceased production and fully cleaned its entire production facility.

### III. CLAIMS AGAINST RIVIANA

70.   VSR is entitled to judgment over and against Riviana based on the theories of Breach of
      Contract, Breach of Express Warranty, Breach of Implied Warranty of Merchantability,
      Breach of Implied Warranty of Fitness for a Particular Purpose, Negligence, Negligence Per
      Se and Strict Liability.

**A.        Count I Against Riviana – Breach of Contract**

71.   VSR restates and realleges all allegations set forth elsewhere herein.

72. Pursuant to the terms of the contracts and the sales confirmations, Riviana agreed to provide to VSR rice that complied with all applicable EU regulations.

73. Riviana breached its material contractual obligations to VSR by providing GM rice to VSR that did not comply with all applicable EU regulations.

74. As a direct and proximate result of Riviana's material breach, VSR has incurred damages as set forth below.

75. VSR has performed all of its obligations under the contracts and sales confirmations.

76. VSR is entitled to recover its damages pursuant to the terms of the contracts and the sales confirmations and Article 2 of the Uniform Commercial Code.

**B.      Count II Against Riviana – Breach of Express Warranty**

77. VSR restates and realleges all allegations set forth elsewhere herein.

78. Riviana expressly warranted that the rice it supplied to VSR complied with all applicable EU regulations.

79. This warranty was part of the basis of the bargain between VSR and Riviana.

80. As set forth above, Riviana breached this express warranty by supplying GM rice to VSR that did not comply with all applicable EU regulations.

81. Riviana's breach of its express warranty was the direct and proximate cause of VSR's injuries.

82. Due to Riviana's acts and omissions, VSR suffered damages as set forth below.

83. Under Article 2 of the Uniform Commercial Code, VSR is entitled to recover from Riviana the damages it sustained as a result of Riviana's breach of its express warranty.

**C.      Count III Against Riviana – Breach of Implied Warranty of Merchantability**

84. VSR restates and realleges all allegations set forth elsewhere herein.

85. Riviana impliedly warranted that the rice it supplied to VSR was fit for the ordinary purpose of importation and sale in the EU.

86. Riviana sold VSR rice that was not fit for this purpose, as Riviana's rice contained GM material. This rendered Riviana's rice unmerchantable in the EU.

87. Riviana's breach of its implied warranty of merchantability was the direct and proximate cause of VSR's damages.

88. Due to Riviana's acts and omissions, VSR suffered damages as set forth below.

89. Under Article 2 of the Uniform Commercial Code, VSR is entitled to recover from Riviana the damages it sustained as a result of Riviana's breach of its implied warranty of merchantability.

**D.   Count IV Against Riviana – Breach of Implied Warranty of Fitness for a Particular Purpose**

90. VSR restates and realleges all allegations set forth elsewhere herein.

91. By virtue of the terms of the Supply Agreement and Purchase Orders, Riviana had reason to know and, in fact, did know the particular purpose for which VSR purchased rice from Riviana.

92. Riviana also knew that VSR was relying upon Riviana's skill and judgment to furnish VSR with GM free rice that would meet its needs, including VSR's obligations under applicable EU regulations.

93. Riviana breached its implied warranty of fitness for a particular purpose by supplying VSR with GM rice that was not suitable for the particular purpose for which it was intended and did not comply with all applicable EU regulations.

94. Riviana's breach of its implied warranty of fitness for a particular purpose was the direct and proximate cause of VSR's injuries.

95. Due to Riviana's acts and omissions, VSR suffered damages as set forth below.

96. Under Article 2 of the Uniform Commercial Code, VSR is entitled to recover from Riviana the damages it sustained as a result of Riviana's breach of its implied warranty of fitness for a particular purpose.

**E.     Count V Against Riviana – Negligence**

97. VSR restates and realleges all allegations set forth elsewhere herein.

98. Riviana had a duty to exercise reasonable care in its dealings with VSR.

99. The duty Riviana owed to VSR included, but was not limited to, an obligation to (1) provide VSR with marketable rice, the possession of which would not violate applicable laws, statutes, codes and/or regulations, (2) provide rice that would not cause VSR to sustain damages such as the damages described below, and (3) take reasonable precautions to prevent and safeguard against providing GM rice.

100. Riviana breached its duties to VSR by, among other things, (1) providing VSR with rice that was not marketable because its possession violated applicable laws, statutes, codes and/or regulations, (2) providing rice that caused damages to VSR including the damages described below, and (3) failing to take reasonable precautions to prevent and safeguard against providing GM rice.

101. Riviana's breach of duty proximately caused VSR to suffer damages as set forth below.

102. VSR is entitled to recover from Riviana damages which were caused as a result of the negligence of Riviana.

**F.     Count VI Against Riviana – Negligence Per Se**

103. VSR restates and realleges all allegations set forth elsewhere herein.

104. Ark. Code Ann. §§ 2-15-201 et seq. and 7 C.F.R. Part 340 prohibited Riviana from selling, transporting, storing, processing, or otherwise handling the rice that it provided to VSR.

105. By providing VSR with GM rice, Riviana violated Ark. Code Ann. § 2-15-203 and 7 C.F.R. Part 340.

106. Riviana had a statutory duty not to violate Ark. Code Ann. § 2-15-203 or 7 C.F.R. Part 340.

107. Riviana's violations of Ark. Code Ann. § 2-15-203 and 7 C.F.R. Part 340 are breaches of its statutory duty and evidence of its negligence.

108. VSR, as a buyer and recipient of Arkansas grown rice, is in the class of persons that Ark. Code Ann. § 2-15-203 and 7 C.F.R. Part 340 were meant to protect.

109. The harm VSR incurred resulting from the purchase and receipt of GM rice is the kind of harm that Ark. Code Ann. § 2-15-203 and 7 C.F.R. Part 340 were intended to protect against.

110. Riviana's breaches of these statutory duties directly and proximately caused VSR to suffer damages as set forth below.

111. Under the doctrine of negligence per se, VSR is entitled to recover from Riviana damages as set forth below.

## G.    Count VII Against Riviana – Strict Liability

112. VSR restates and realleges all allegations set forth elsewhere herein.

113. Riviana was engaged in the business of selling or otherwise distributing rice.

114. Riviana knew that delivery of GM rice to the EU violated applicable EU regulations, that such rice would not be of a condition contemplated by a recipient in the EU, and that such rice would be unreasonably dangerous to and cause damage VSR's rice supply in the EU.

115. As a direct and proximate result of the unreasonably dangerous condition of the rice Riviana provided, VSR has suffered actual damages as set forth below.

14

## IV.   CLAIMS AGAINST PRODUCERS

116. VSR is entitled to judgment over and against Producers based on theories including Breach of Contract, Breach of Express Warranty, Breach of Implied Warranty of Merchantability, Breach of Implied Warranty of Fitness for a Particular Purpose, Negligence, Negligence Per Se and Strict Liability.

### A.      Count I Against Producers – Breach of Contract

117. VSR restates and realleges all allegations set forth elsewhere herein.

118. Pursuant to the terms of the relevant contracts, the letter of guarantee, the warranty and the sales confirmations, Producers agreed to provide VSR with rice that complied with all applicable EU regulations.

119. Producers breached its material contractual obligations to VSR by providing GM rice to VSR that could not legally be sold or imported into the EU and by failing to supply rice under the terms of the relevant contracts, the letter of guarantee, the warranty and sales confirmations.

120. As a direct and proximate result of Producers' material breach, VSR has incurred damages, including those set forth below.

121. VSR has performed all of its obligations under the relevant contracts and sales confirmations.

122. VSR is entitled to recover its damages pursuant to the terms of the relevant contracts and sales confirmations and Article 2 of the Uniform Commercial Code.

### B.      Count II Against Producers – Breach of Express Warranty

123. VSR restates and realleges all allegations set forth elsewhere herein.

124. Producers expressly warranted that the rice it supplied to VSR complied with all applicable EU regulations.

125. This warranty was part of the basis of the bargain between VSR and Producers.

15

126. Producers breached this express warranty by supplying GM rice to VSR that did not comply with all applicable EU regulations.

127.  Producers' breach of its express warranty was the direct and proximate cause of VSR's injuries.

128. Due to Producers' acts and omissions, VSR suffered damages as set forth below.

129. Under Article 2 of the Uniform Commercial Code, VSR is entitled to recover from Producers the damages it sustained as a result of Producers' breach of its express warranty.

**C.      Count III Against Producers – Breach of Implied Warranty of Merchantability**

130. VSR restates and realleges all allegations set forth elsewhere herein.

131. Producers impliedly warranted that the rice it supplied to VSR was fit for the ordinary purpose of importation and sale in the EU.

132. Producers sold VSR rice that was not fit for this purpose, as Producers' rice contained GM material.  This rendered Producers' rice unmerchantable in the EU.

133. Producers' breach of its implied warranty of merchantability was the direct and proximate cause of VSR's injuries.

134. Due to Producers' acts and omissions, VSR suffered damages as set forth below.

135. Under Article 2 of the Uniform Commercial Code, VSR is entitled to recover from Producers the damages it sustained as a result of Producers' breach of its implied warranty of merchantability.

**D.      Count IV Against Producers – Breach of Implied Warranty of Fitness for a Particular Purpose**

136. VSR restates and realleges all allegations set forth elsewhere herein.

137. By virtue of the terms of the contracts and sales confirmations, Producers had reason to know and, in fact, did know the particular purpose for which VSR purchased rice from Producers

16

and knew that VSR was relying upon Producers' skill and judgment to furnish VSR with GM free rice that would meet its needs, including VSR's obligations under applicable EU regulations.

138. Producers breached its implied warranty of fitness for a particular purpose by supplying VSR with GM rice that was not suitable for the particular purpose for which it was intended and did not comply with all applicable EU regulations.

139. Producers' breach of its implied warranty of fitness for a particular purpose was the direct and proximate cause of VSR's injuries.

140. Due to Producers' acts and omissions, VSR suffered damages as set forth below.

141. Under Article 2 of the Uniform Commercial Code, VSR is entitled to recover from Producers the damages it sustained as a result of Producers' breach of its implied warranty of fitness for a particular purpose.

## E.    Count V Against Producers – Negligence

142. VSR restates and realleges all allegations set forth elsewhere herein.

143. Producers had a duty to exercise reasonable care in its dealings with VSR.

144. The duty Producers owed to VSR included, but was not limited to, an obligation to (1) provide VSR with marketable rice, the possession of which would not violate applicable laws, statutes, codes and/or regulations, (2) provide rice that would not cause VSR to sustain damages such as the damages described below, and (3) take reasonable precautions to prevent and safeguard against providing GM rice.

145. Producers breached its duties to VSR by, among other things, (1) providing VSR with rice that was not marketable because its possession violated applicable laws, statutes, codes and/or regulations, (2) providing rice that caused damages to VSR including the damages

described below, and (3) failing to take reasonable precautions to prevent and safeguard against providing GM rice.

146. Producers' breach of duty proximately caused VSR to suffer damages as set forth below.

147. VSR is entitled to recover from Producers damages which were caused as a result of the negligence of Producers.

## F.     Count VI Against Producers – Negligence Per Se

148. VSR restates and realleges all allegations set forth elsewhere herein.

149. Ark. Code Ann. §§ 2-15-201 et seq. and 7 C.F.R. Part 340 prohibited Producers from selling, transporting, storing, processing, or otherwise handling the rice that it provided to VSR.

150. By providing VSR with GM rice, Producers violated Ark. Code Ann. § 2-15-203 and 7 C.F.R. Part 340.

151. Producers had a statutory duty not to violate Ark. Code Ann. § 2-15-203 or 7 C.F.R. Part 340.

152. Producers' violations of Ark. Code Ann. § 2-15-203 and 7 C.F.R. Part 340 are breaches of its statutory duty and evidence of its negligence.

153. VSR, as a buyer and recipient of Arkansas grown rice, is in the class of persons that Ark. Code Ann. § 2-15-203 and 7 C.F.R. Part 340 were meant to protect.

154. The harm VSR incurred resulting from the purchase and receipt of GM rice is the kind of harm that Ark. Code Ann. § 2-15-203 and 7 C.F.R. Part 340 were intended to protect against.

155. Producers' breaches of these statutory duties directly and proximately caused VSR to suffer damages as set forth below.

156. Under the doctrine of negligence per se, VSR is entitled to recover from Producers damages as set forth below.

**G.      Count VII Against Producers – Strict Liability**

157.  VSR restates and realleges all allegations set forth elsewhere herein.

158.  Producers was engaged in the business of selling or otherwise distributing rice.

159.  Producers knew that delivery of GM rice to the EU violated applicable EU regulations, that such rice would not be of a condition contemplated by a recipient in the EU, and that such rice would be unreasonably dangerous to and cause damage to VSR's rice supply in the EU.

160.  As a direct and proximate result of the unreasonably dangerous condition of the rice Producers provided, VSR has suffered actual damages as set forth below.

## V.      CLAIMS AGAINST RICELAND

161.  VSR is entitled to judgment over and against Riceland based on the theories of Breach of Contract, Breach of Express Warranty, Breach of Implied Warranty of Merchantability, Breach of Implied Warranty of Fitness for a Particular Purpose, Negligence, Negligence Per Se and Strict Liability.

**A.      Count I Against Riceland – Breach of Contract**

162.  VSR restates and realleges all allegations set forth elsewhere herein.

163.  Pursuant to the terms of the raw material specifications under which Riceland supplied rice to VSR, Riceland agreed to provide to VSR rice that complied with all applicable EU regulations.

164.  Riceland breached its material contractual obligations with VSR by providing GM rice to VSR that did not comply with all applicable EU regulations.

165.  As a direct and proximate result of Riceland's material breach, VSR has incurred damages as set forth below.

166.  VSR has performed all of its obligations under its contracts with Riceland.

167. VSR is entitled to recover its damages pursuant to the terms of its contracts with Riceland and Article 2 of the Uniform Commercial Code.

**B.      Count II Against Riceland – Breach of Express Warranty**

168. VSR restates and realleges all allegations set forth elsewhere herein.

169. Riceland expressly warranted that the rice it supplied to VSR complied with all applicable EU regulations.

170. This warranty was part of the basis of the bargain between VSR and Riceland.

171. As set forth above, Riceland breached this express warranty by supplying GM rice to VSR that did not comply with all applicable EU regulations.

172. Riceland's breach of its express warranty was the direct and proximate cause of VSR's injuries.

173. Due to Riceland's acts and omissions, VSR suffered damages as set forth below.

174. Under Article 2 of the Uniform Commercial Code, VSR is entitled to recover from Riceland the damages it sustained as a result of Riceland's breach of its express warranty.

**C.      Count III Against Riceland – Breach of Implied Warranty of Merchantability**

175. VSR restates and realleges all allegations set forth elsewhere herein.

176. Riceland impliedly warranted that the rice it supplied to VSR was fit for the ordinary purpose of importation and sale in the EU.

177. Riceland sold VSR rice that was not fit for this purpose, as Riceland's rice contained GM material. This rendered Riceland's rice unmerchantable in the EU.

178. Riceland's breach of its implied warranty of merchantability was the direct and proximate cause of VSR's damages.

179. Due to Riceland's acts and omissions, VSR suffered damages as set forth below.

180. Under Article 2 of the Uniform Commercial Code, VSR is entitled to recover from Riceland the damages it sustained as a result of Riceland's breach of its implied warranty of merchantability.

**D.      Count IV Against Riceland -- Breach of Implied Warranty of Fitness for a Particular Purpose**

181. VSR restates and realleges all allegations set forth elsewhere herein.

182. Riceland had reason to know and, in fact, did know the particular purpose for which VSR purchased rice from Riceland.

183. Riceland also knew that VSR was relying upon Riceland's skill and judgment to furnish VSR with GM free rice that would meet its needs, including VSR's obligations under applicable EU regulations.

184.  Riceland breached its implied warranty of fitness for a particular purpose by supplying VSR with GM rice that was not suitable for the particular purpose for which it was intended and did not comply with all applicable EU regulations.

185.  Riceland's breach of its implied warranty of fitness for a particular purpose was the direct and proximate cause of VSR's injuries.

186. Due to Riceland's acts and omissions, VSR suffered damages as set forth below.

187. Under Article 2 of the Uniform Commercial Code, VSR is entitled to recover from Riceland the damages it sustained as a result of Riceland's breach of its implied warranty of fitness for a particular purpose.

**E.      Count V Against Riceland – Negligence**

188. VSR restates and realleges all allegations set forth elsewhere herein.

189. Riceland had a duty to exercise reasonable care in its dealings with VSR.

190. The duty Riceland owed to VSR included, but was not limited to, an obligation to (1) provide VSR with marketable rice, the possession of which would not violate applicable laws, statutes, codes and/or regulations, (2) provide rice that would not cause VSR to sustain damages such as the damages described below, and (3) take reasonable precautions to prevent and safeguard against providing GM rice.

191. Riceland breached its duties to VSR by, among other things, (1) providing VSR with rice that was not marketable because its possession violated applicable laws, statutes, codes and/or regulations, (2) providing rice that caused damages to VSR including the damages described below, and (3) failing to take reasonable precautions to prevent and safeguard against providing GM rice.

192. Riceland's breach of duty proximately caused VSR to suffer damages as set forth below.

193. VSR is entitled to recover from Riceland damages which were caused as a result of the negligence of Riceland.

**F.      Count VI Against Riceland – Negligence Per Se**

194. VSR restates and realleges all allegations set forth elsewhere herein.

195. Ark. Code Ann. §§ 2-15-201 et seq. and 7 C.F.R. Part 340 prohibited Riceland from selling, transporting, storing, processing, or otherwise handling the rice that it provided to VSR.

196. By providing VSR with GM rice, Riceland violated Ark. Code Ann. § 2-15-203 and 7 C.F.R. Part 340.

197. Riceland had a statutory duty not to violate Ark. Code Ann. § 2-15-203 or 7 C.F.R. Part 340.

198. Riceland's violations of Ark. Code Ann. § 2-15-203 and 7 C.F.R. Part 340 are breaches of its statutory duty and evidence of its negligence.

199. VSR, as a buyer and recipient of Arkansas grown rice, is in the class of persons that Ark. Code Ann. § 2-15-203 and 7 C.F.R. Part 340 were meant to protect.

200. The harm VSR incurred resulting from the purchase and receipt of GM rice is the kind of harm that Ark. Code Ann. § 2-15-203 and 7 C.F.R. Part 340 were intended to protect against.

201. Riceland's breaches of these statutory duties directly and proximately caused VSR to suffer damages as set forth below.

202. Under the doctrine of negligence per se, VSR is entitled to recover from Riceland damages as set forth below.

**G.      Count VII Against Riceland – Strict Liability**

203. VSR restates and realleges all allegations set forth elsewhere herein.

204. Riceland was engaged in the business of selling or otherwise distributing rice.

205. Riceland knew that delivery of GM rice to the EU violated applicable EU regulations, that such rice would not be of a condition contemplated by a recipient in the EU, and that such rice would be unreasonably dangerous to and cause damage to VSR's rice supply in the EU.

206. As a direct and proximate result of the unreasonably dangerous condition of the rice Riceland provided, VSR has suffered actual damages as set forth below.

**DAMAGES**

207. As set forth more fully below, because of Riviana's, Producers' and Riceland's conduct, VSR incurred damages for which it has not been reimbursed by them, in an amount not less than $1,386,188.92.

A.      **Returned Rice**

      (i)      **VSR Contract 388**

208. By contract dated February 14, 2006, VSR purchased rice that Riviana specifically certified
     had "not been genetically altered."

209. The shipment tested positive for GM material and was returned to Riviana.   However,
     Riviana did not immediately accept the return.

210. As a result of the presence of GM rice and Riviana's delay in accepting the return, VSR
     incurred demurrage charges and charges from its forwarding agent.

      (ii)      **VSR Contract 353**

211. By contract dated January 27, 2006, VSR purchased rice that Riviana specifically certified
     had "not been genetically altered."

212. When tested, the shipment tested positive for the presence of GM rice.

213. By the time the positive test results were received, VSR had sold the rice to Nouvelle Rizerie
     du Nord ("NRN").

214. After receipt of the positive test results, NRN notified VSR that it would seek reimbursement
     from VSR for any damages and costs incurred as a result of the shipment.

215. NRN also requested that VSR retrieve the portion of the shipment still in NRN's possession
     and VSR did so.

216. The retrieved portion of the shipment was ultimately returned to Riviana.

217. VSR incurred costs, including but not limited to, transportation, storage and forwarding costs
     as a result of the presence of GM rice in the shipment.

218. The cost incurred by VSR as a result of the return of contaminated rice to Riviana under
     Contracts Nos. 388 and 353 was not less than $63,421.56.

**B.        Product Withdrawn From the Market**

219. When VSR informed its customers that rice supplied to VSR by Riviana, Producers and
     Riceland had tested GM positive, VSR customers lodged complaints and claims against VSR
     and either demanded the rice be recalled by VSR or took measures to dispose of the rice
     themselves. In either event, the customers sought compensation from VSR.

220. To date, VSR has paid at least $309,564.07 in claims from retailers incurred as a result of
     product withdrawn from the market after deduction for sales of product that could be resold
     into other markets.

221. VSR also incurred expenses in recovering the recalled product including transportation and
     storage expenses.

222. Where the rice returned by VSR's customers tested positive, it was destroyed and VSR
     incurred destruction costs.

223. In an effort to mitigate its damages, where the rice returned by VSR's customers tested
     negative, VSR reprocessed, repackaged and resold it in markets where the demand for US
     rice continued as set forth in Section D.

224. As a result of product withdrawn from the market, VSR incurred total damages of not less
     than $402,606.19.

**C.        Unusable Stock**

225. When it was learned that Riviana, Producers and Riceland had shipped GM rice to VSR for
     sale in the EU, VSR had rice in its possession that had been supplied by Riviana, Producers
     and Riceland.

226. Because it tested GM positive, that rice could not be sold anywhere in the EU.

227. At the time VSR received the test results, it had on-hand GM positive rice supplied by
     Riviana, Producers and Riceland that could not be sold in the EU and that was in various

stages of processing including: raw material (brown rice), semi-finished product (unpacked milled rice), and finished product and byproducts (milled and packed rice).

228. VSR incurred not only the cost of the unsalable rice, but also milling, packaging, transportation, storage and forwarding costs.

229. Moreover, due to a risk of cross-contamination and in response to customer concerns, VSR ceased production and fully cleaned its entire production facility.

230. VSR incurred damages as a result of this unusable stock and the need to clean out its production facility of not less than $21,908.92.

**D.     Unusable Packaging, New Packaging, Repackaging and Reshipping**

231. VSR was faced with unusable packaging as a result of Riviana's, Producer's and Riceland's shipment of GM rice.

232. Because Riviana, Producers and Riceland had supplied GM rice, many of VSR's customers were no longer interested in purchasing US rice.

233. In order to fulfill its contractual obligations to its customers and in an effort to mitigate its damages, VSR purchased substitute rice from sources outside the US.

234. In those cases where VSR's customers agreed to accept substitute rice, VSR incurred costs in both disposing of packaging that could not be used for the substitute rice and in purchasing new packaging for use with the substitute rice.

235. In addition, VSR incurred costs in repackaging and transporting product that tested GM negative so that it could be sold in other markets.

236. VSR incurred damages related to unusable packaging, new packaging, repackaging and reshipping as a result of Riviana's, Producer's  and Riceland's supply of GM rice in an amount not less than $128,497.85.

**E.      Testing Charges Incurred**

237. Because GM rice had been found in the US rice supply and specifically in rice exported to the EU by Riviana, Producers and Riceland and because of pressure from its customers for VSR to warrant its rice as GM free, VSR began testing samples from each shipment it had received after January 1, 2006 and each new shipment coming in.

238. VSR incurred charges of $20,558.88 related to testing barges from Riviana, Producers and Riceland.

**F.      Lost Profits**

239. In August 2006, the supply of US rice for the European markets consisted of approximately 25% of VSR's business.

240. Because of the shipment of GM rice by Riviana, Producers and Riceland, VSR has no market for US rice in Europe.

241. In some instances, VSR has been able to offer its European customers substitute rice. However, in other cases, VSR has simply lost the business.

242. As a result of the conduct of Riviana, Producers and Riceland, VSR has incurred lost profits totaling not less than $667,014.27.

**G.      Labor Costs**

243. Because Riviana, Producers and Riceland supplied GM rice, VSR staff and management spent considerable time dealing with the "GM Crisis".

244. In accordance with VSR's internal procedures regarding food safety and hygiene certification requirements, VSR is under an obligation when a food safety/hygiene hazard is detected to (1) form a 'crisis team' and (2) to register the time spent by each member of staff or management in dealing with the situation.

27

245. In accordance with these internal procedures, all members of VSR's management and staff who were involved with the events described herein have kept daily records of the time spent in dealing with the problems created by Riviana's, Producers' and Riceland's shipment of GM rice.

246. The value of the time spent by VSR employees as a result of Riviana's, Producer's and Riceland's conduct totals not less than $82,181.25.

## VI.   CLAIMS AGAINST BAYER

247. VSR is entitled to judgment against Riviana, Producers and Riceland for all of its damages set forth above totaling not less than $1,386,188.92 plus attorney's fees, costs and pre- and post judgment interest; alternatively, VSR is also entitled to judgment for some or all of those damages against Bayer based on theories including negligence, negligence per se, absolute liability-ultrahazardous activity, strict liability-products liability and public nuisance.

248. VSR's claims of negligence, negligence per se, absolute liability-ultrahazardous activity, strict liability-products liability, and public nuisance are expressly pleaded against Bayer as alternative and independent claims and theories of liability.

### A.   Count I Against Bayer -- Negligence

249. VSR restates and realleges all allegations set forth elsewhere herein.

250. Bayer's acts and/or omissions as set forth above constitute negligence.

251. With respect to its testing, storing, transporting and disposing of GM rice, Bayer had a duty to exercise that degree of skill and learning ordinarily used under the same or similar circumstances by an expert in Bayer's business.

28

252. As set forth above, Bayer breached this duty by failing to exercise the requisite degree of care in testing, storing, growing, transporting and disposing of GM rice to prevent it from contaminating the US rice supply.

253. As set forth above, Bayer also breached this duty by failing to notify the public and the world rice community in a timely fashion after it first learned of the contamination.

254. Such breaches are a direct and proximate cause of the contamination of rice eventually supplied to VSR, and caused damages, including the damages set forth in detail above.

255. VSR states, in the alternative, that such contamination of the US rice supply would not ordinarily occur absent negligence; Bayer had the exclusive care, custody and control of the genetically engineered LLRICE 601 and inasmuch as Bayer is in a superior position to VSR to know or have means of explaining the course or reason for such occurrence, Bayer is presumed negligent under the doctrine of *res ipsa loquitor*.

**B.     Count II Against Bayer -- Negligence Per Se**

256. VSR restates and realleges all allegations set forth elsewhere herein.

257. Bayer's acts and/or omissions as described above constitute negligence *per se* under the applicable legal standards.

258. Bayer did not comply with the applicable provisions of the Code of Federal Regulations and other applicable state codes, statutes and regulations.

259. Bayer did not obtain the necessary permits as required by various government entities relating to the regulation of rice containing characteristics of commercial impact.

260. Bayer had duties to test, grow, store, transport and dispose of GM rice in a manner that would not result in the contamination of the rice market prior to regulatory approval.

261. Bayer breached these duties by testing, growing, storing, transporting and disposing of GM rice in violation of standards that would prevent contamination.

262. Such conduct is a direct and proximate cause of the contamination of the rice eventually supplied to VSR.

C.      **Count III Against Bayer -- Absolute Liability/Ultrahazardous Activity**

263. VSR restates and realleges all allegations set forth elsewhere herein.

264. The development, growing, transporting and storing of GM rice, including LLRICE 601, constituted and continues to constitute an abnormally dangerous activity or ultra hazardous activity because such activities create a high degree of risk of harm, the harm has been and will be significant, the risk cannot be eliminated, and the harm outweighs the value of the activity. In addition, the activity was unduly dangerous and inappropriate for the places where it was conducted.

265. The type of harm suffered by VSR and stated herein is the kind of harm, the possibility of which makes the activity abnormally dangerous.

266. Bayer is thus strictly liable to VSR for all damages which have been caused or will be caused to VSR as a result of the release of GM rice into the US rice supply.

267. Such conduct is a direct and proximate cause of the contamination of VSR's rice supply.

D.      **Count IV Against Bayer -- Strict Liability-Products Liability**

268. VSR restates and realleges all allegations set forth elsewhere herein.

269. As set forth above, GM rice was a defective and unreasonably dangerous product when put to a foreseeable or reasonably anticipated use.

270. The testing, growing, storing, transporting and disposal of GM rice, including LLRICE 601 rice, has resulted in the contamination of the US rice production and handling system, causing export markets to restrict, or ban altogether, importation of US rice.

271. The GM rice was used in a manner reasonably anticipated and/or foreseen.

272. Bayer's testing, growing, storing, transporting and disposal of agricultural seeds not approved for human consumption has caused damage to VSR.

273. Given the structure and operation of the US rice production and handling system, the testing, growing, storing, transporting and disposing of GM rice by Bayer was improper.

274. Any benefit derived from the test cultivation of GM rice is greatly outweighed by the harms resulting from the contamination of the US rice supply and VSR's rice supply.

275. Such conduct is a direct and proximate cause of the contamination of VSR's rice supply.

**E.    Count V Against Bayer -- Public Nuisance**

276. VSR restates and realleges all allegations set forth elsewhere herein.

277. Bayer has created a public nuisance by causing widespread contamination of the US rice supply with GM rice, and consequent contamination of rice supplies in foreign markets such as the EU, which constitutes an unreasonable and significant interference with rights common to the general public, including that the food supply not be contaminated by rice not properly approved for human consumption.

278. This substantial interference is imposed on the community at large and on a considerable and diverse number of persons. It arises from (a) the testing, growing, storing, transporting, and disposing of GM rice by Bayer without adequate precautions to prevent contamination; and/or (b) the testing, growing, storing, transporting, and disposing of GM rice by Bayer with the knowledge that it would contaminate the general non-genetically modified US rice supply

31

by cross-pollination and commingling; and/or (c) the testing, growing, storing, transporting, and disposing of GM rice by Bayer with the knowledge that GM rice would likely contaminate the human food supply.

279. This interference is unreasonable in that it involves significant interference with the public health, the public safety, the public peace, the public comfort and/or the public convenience. It also is unreasonable in that it is prescribed by the US, EU and other law, is of a continuing nature, and has produced a permanent or long-lasting effect.

280. VSR has suffered injury from the public nuisance created by Bayer distinct from and different than that suffered by the general public in that, as described above, a part of its rice supply/inventory has been contaminated.

281. Such conduct by Bayer is a direct and proximate cause of the contamination of VSR's rice supply/inventory.

## PRAYER FOR RELIEF

**WHEREFORE**, VSR respectfully requests the following relief from Riviana, Riceland, Producers and Bayer:

a.      Trial by jury on all issues so triable;

b.      Damages in an amount to be determined at trial but totaling not less than $1,386,188.92 plus attorney's fees, costs and pre- and post judgment interest; and

c.      All other relief that a jury or court may deem just and proper.

Respectfully submitted,

/s/ Ann E. Georgehead
Ann E. Georgehead
Christopher G. Johnson
FROST BROWN TODD LLC
400 West Market Street, 32nd Floor
Louisville, KY 40202
Telephone:  502-589-5400
Facsimile:  502-581-1087
             and
Michael K. Yarbrough
FROST BROWN TODD LLC
One Columbus, Suite 2300
10 West Broad Street
Columbus, Ohio 43215-3484
Telephone: 614-464-1211
Facsimile: 614-464-1737

*Counsel for Plaintiff,*
*Van Sillevoldt Rijst B.V.*