**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE GENETICALLY MODIFIED RICE LITIGATION** ) ) ) ) ) ) ) | **4:06 MD 1811 CDP**<br><br>**ALL CASES** |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' LEAD COUNSEL'S AND**
**PLAINTIFFS' EXECUTIVE COMMITTEE'S MOTION**
**FOR AN ORDER ESTABLISHING A COMMON BENEFIT FUND**

**Dated:** August 19, 2009

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................ ii

I.      PRELIMINARY STATEMENT ................................................................- 1 -

II.     FACTUAL BACKGROUND ....................................................................- 2 -

III.    ARGUMENT ..............................................................................................- 7 -

        A.      The Court Should Establish a Common Benefit Fund for the Payment
                of Fees and Expenses to Attorneys Who Confer Common Benefits .................- 7 -

                1.      The Applicable Jurisprudence Vests the Court with Jurisdiction
                        and Authority to Grant the Requested Relief ................................................- 7 -

                2.      The Common Benefit Doctrine Is Particularly Applicable in the
                        MDL Context .........................................................................................- 8 -

        B.      The Court Should Order Defendants to Hold Back and Set Aside
                the Percentages Requested of Each Recovery .................................................- 10 -

IV.     CONCLUSION .........................................................................................- 14 -

# TABLE OF AUTHORITIES

**CASES**                                                                        **Page(s)**

*Boeing Co. v. Van Gemert,*
    444 U.S. 472 (1980) ...........................................................................................8, 12

*Central Railroad & Banking Co. v. Pettus,*
    113 U.S. 116 (1885) ...................................................................................................7

*Chambers v. NASCO, Inc.,*
    501 U.S. 32 (1991) ...................................................................................................12

*In re Air Crash Disaster at Florida Everglades,*
    549 F.2d 1006 (5th Cir. 1977) .........................................................................*passim*

*In re Bextra and Celebrex Marketing Sales Practices and Product Liability Litigation,*
    No. M:05-cv-01688-CRB, Pretrial Order No. 8 - Common Benefit Order
    (N.D. Cal. Feb. 27, 2006) ......................................................................................11, 12

*In re Diet Drugs Products Liability Litigation,*
    MDL No. 1203, Civ. No. 99-20593,
    2002 U.S. Dist. LEXIS 19396 (E.D. Pa. Oct. 3, 2002) ...................................8, 11, 13

*In re Guidant Corp. Implantable Defibrillators Products Liability Litigation,*
    Civ. MDL No. 05-1708 (DWF/AJB),
    2008 U.S. Dist. LEXIS 17535 (D. Minn. Mar. 7, 2008)....................................*passim*

*In re Guidant Corp. Implantable Defibrillators Products Liability Litigation,*
    Civ. MDL No. 05-1708 (DWF/AJB), 2006 U.S. Dist. LEXIS 9232
    (D. Minn. Feb. 15, 2006) ...........................................................................................8

*In re Latex Gloves Products Liability Litigation,*
    MDL No. 1148, 2003 U.S. Dist. LEXIS 18118 (E.D. Pa. Sept. 5, 2003)...........................13

*In re MGM Grand Hotel Fire Litigation,*
    660 F. Supp. 522 (D. Nev. 1987) .............................................................................8, 10

*In re Ortho Evra Products Liability Litigation,*
    No. 1:06-40000, Case Management Order No. 9 - Common Benefit Order
    (N.D. Ohio Aug. 28, 2006) .......................................................................................11

*In re Prempro Products Liability Litigation,*
    MDL Docket No. 4:03CV1507 WRW, Practice and Procedure Order No. 6
    (E.D. Ark. Mar. 30, 2005)..........................................................................................11

*In re Silicone Gel Breast Implants Products Liability Litigation,*
    MDL No. 926, 92-cv-10000, Order No. 13 (N.D. Ala. July 23, 1993) ............................10, 11

*In re Vioxx Products Liability Litigation,*
    MDL No. 1657, Pretrial Order No. 19 (E.D. La. Aug. 4, 2005)...........................................11

*In re Zyprexa Products Liability Litigation,*
    467 F. Supp. 2d 256 (E.D.N.Y. 2006) ...............................................................................12

*Mills v. Electric Auto-Lite Co.,*
    396 U.S. 375 (1970)...........................................................................................................8

*Smiley v. Sincoff,*
    958 F.2d 498 (2d Cir. 1992)...................................................................................8, 11, 12

*Sprague v. Ticonic National Bank,*
    307 U.S. 161 (1939)...........................................................................................................8

*Trustees v. Greenough,*
    105 U.S. 527 (1881)...........................................................................................................7

*Turner v. Murphy Oil USA, Inc.,*
    422 F. Supp. 2d 676 (E.D. La. 2006)...............................................................................10

*Walitalo v. Iacocca,*
    968 F.2d 741 (8th Cir. 1992) ........................................................................................8, 13

## STATUTES AND RULES

28 U.S.C. § 1407.........................................................................................................................7

## OTHER AUTHORITIES

*Manual for Complex Litigation (Third)* § 20.223 (1995) ..............................................................13

David F. Herr, *Annotated Manual for Complex Litigation, Fourth*
    § 22.927 (rev. ed. 2008)....................................................................................................11

"Common Fund and Substantial Benefit," *Awarding Attorneys' Fees
and Managing Fee Litigation* (Federal Judicial Center 1994)......................................................10

## I.  **PRELIMINARY STATEMENT**

Plaintiffs' Court-appointed Lead Counsel ("Lead Counsel") and Plaintiffs' Executive Committee, on behalf of themselves and other plaintiffs' counsel who, at the direction, request, and supervision of Lead Counsel, actively have assisted in prosecuting this centralized multidistrict litigation (the "Leadership Group"), respectfully submit this memorandum in support of their motion for an Order, pursuant to this Court's inherent powers, **(i)** establishing a common benefit fund to compensate attorneys for services rendered for the plaintiffs' common benefit and to reimburse them for expenses incurred in conjunction with those common benefit services; **(ii)** directing defendants to hold back and set aside (a) 8% of any gross recovery obtained by producer plaintiffs, by way of judgment, settlement, or otherwise, in each genetically-modified rice-related action for attorneys' fees; (b) 7% of any gross recovery obtained by non-producer plaintiffs, by way of judgment, settlement, or otherwise, in each genetically-modified rice-related action for attorneys' fees; and (c) an additional 3% of any gross recovery obtained by any plaintiff, by way of judgment, settlement, or otherwise, in each genetically-modified rice-related action for common benefit costs and expenses incurred by the Leadership Group herein; and **(iii)** directing defendants to place the held-back and set-aside amounts into a "common benefit trust fund" established and maintained by Lead Counsel.

For the purposes of this motion, "action" includes those cases that have been or will be: (a) part of this multidistrict litigation ("MDL"); (b) pending in a state court where a plaintiff's counsel includes at least one attorney who also serves as counsel for one or more plaintiffs, producer or non-producer, in an action that is, has been, or will be part of this MDL; and/or (c) includes any claim resolved that benefitted from plaintiffs' common benefit efforts.

## II.   **FACTUAL BACKGROUND**

On April 18, 2007, this Court signed an Order ("Leadership Order") (D.I. 182) appointing Don Downing and Adam Levitt as Co-Lead Counsel and Co-Interim Class Counsel for plaintiffs, additionally appointing Don Downing as Plaintiffs' Liaison Counsel, and appointing Richard Arsenault, Scott Poynter, William Chaney, Ralph Chapman, Joe Whatley, and Stephen Weiss as the members of the plaintiffs' Executive Committee. (A copy of the Leadership Order is attached as Exhibit A to the accompanying Declaration of Adam J. Levitt, dated August 19, 2009 ("Levitt Decl." or "Levitt Declaration").) The Leadership Order provides that Lead Counsel "***shall act on behalf of all plaintiffs*** . . . as follows:

> 1.   To direct and execute on behalf of Plaintiffs the filing of pleadings and other documents with the Court;
>
> 2.   To direct and manage pretrial proceedings on behalf of all plaintiffs, including the briefing and argument of motions and the conduct of all types of discovery proceedings;
>
> 3.   To seek the assistance of other plaintiffs' counsel, including but not limited to those on the Executive Committee, in performance of all work necessary for the prosecution of the case, including investigation, research, briefing, and discovery, with particular attention to using efficiently the resources of the other Plaintiffs' counsel in a manner commensurate with those lawyers' resources and experience;
>
> 4.   To direct the selection of counsel to act as spokespersons before the Court;
>
> 5.   To call and chair meetings of Plaintiffs' counsel;
>
> 6.   To direct and conduct settlement negotiations;
>
> 7.   To direct and arrange a system for keeping and collecting all Plaintiffs' counsel's time records; and
>
> 8.   To supervise any other matters concerning the prosecution or resolution of this litigation."

*Id.* at 5 (emphasis added).  The Court further ordered that Plaintiffs' Liaison Counsel maintain up-to-date service lists and to receive and distribute to plaintiffs' counsel, all Court Orders and any documents served by defendants.

Since the Court entered the Leadership Order over two years ago, the Leadership Group, under Lead Counsel's direction and supervision, has worked harmoniously and efficiently.  Over the past two years, the Leadership Group has spent an enormous amount of time and invested both considerable manpower and financial resources actively litigating these cases on behalf of all plaintiffs.

Those efforts that have benefitted all litigants asserting claims against defendants pertaining to the LLRICE Contamination are detailed in the accompanying Levitt Declaration and need not be repeated in detail here.  They cover a wide array of activities, such as:  (a) the investigation and research in connection with the drafting of a consolidated master complaint; (b) the negotiation of numerous discovery and other case management protocols for the conduct of the litigation; (c) extensive discovery efforts (including drafting and responding to numerous discovery requests, subpoenaing numerous third parties, completing hundreds of Plaintiff Fact Sheets, reviewing, coding and managing nearly three million pages of documents, taking or defending well over 100 depositions across the United States and internationally, engaging in extensive and protracted meet-and-confer discussions with defendants' counsel and counsel for third parties with respect to discovery and other case-related issues and engaging in motion practice relating thereto); (d) creation of an Internet website (www.bayerricelitigation.com) for the benefit of all plaintiffs and their counsel; (e) successful effectuation of service on the Foreign Bayer Defendants and opposition to defendants' motion to dismiss the claims against the Foreign Bayer Defendants for lack of personal jurisdiction; (f) successful opposition to defendants' partial summary judgment motion on federal preemption grounds; (g) coordination of pre-trial

proceedings with plaintiffs' counsel in this MDL and in related state court actions; (h) briefing and litigation of class certification-related issues; (i) identifying, interviewing and selecting from numerous candidates for consulting and testifying experts; (j) preparation of numerous opening and rebuttal expert reports (and taking discovery pertaining to defendants' experts), (k) handling mediation proceedings before Judge Limbaugh; and (l) selection and preparation of the Court-Ordered "bellwether" cases for trial. *See* Levitt Declaration at ¶¶ 6-24.

The Leadership Group continues to undertake substantial comprehensive efforts in this action on behalf of and for the benefit of all plaintiffs in this MDL and related state court actions as the bellwether cases near trial. For example, on August 17, 2009, the Leadership Group, on behalf of all plaintiffs, filed three partial summary judgment motions regarding: (i) successor, general partner, and agency status; (ii) defendants' fourth and fourteenth affirmative defenses of intervening and/or superseding causes, and the defendants' compliance with the recognized state of the art standards in the industry; and (iii) defendants' eleventh and thirteenth affirmative defenses of compliance with all applicable statutes and regulations regarding genetically-modified crops. The Leadership Group also filed *Daubert* motions seeking to limit or exclude the testimony of defendants' experts Nicholas Kalaitzandonakes, Cheryl Shuffield, Robert Winter, Alan McHughen, and Ronnie Helms. Correspondingly, on that same date, the Leadership Group was served with similar motions filed by defendants, to which the Leadership Group needs to respond by September 17, 2009. Specifically, defendants have moved for summary judgment contending that: (i) plaintiffs' claims are barred by the economic loss doctrine; (ii) there is no genuine issue of fact to support any of plaintiffs' legal theories except simple negligence; (iii) plaintiffs have no claim for punitive damages, and (iv) plaintiffs may not recover on behalf of share-rent landlords as a matter of law. Defendants also filed *Daubert* motions seeking to limit or exclude in its entirety, the testimony of plaintiffs' experts Dr.

Babcock, Dr. Van Acker, Dr. Halsey, and Mr. Stein.  Plaintiffs' researching and preparation of their voluminous motion papers and responses to defendants' motions have entailed and will entail the expenditure of considerable time and resources.  Levitt Declaration at ¶ 23.

The Leadership Group has also been working diligently with their experts, as well as with several trial and jury consultants, with whom the Leadership Group has been conducting mock jury proceedings and related trial preparation work.  It anticipates continuing to work with these consultants – and with additional consultants, as necessary – through the first bellwether trials and thereafter, in order to ensure that plaintiffs' strongest possible case is effectively and persuasively presented to the Court and jur(ies).  Finally, trial of the bellwether cases will also benefit all plaintiffs.  *See* Levitt Declaration at ¶¶ 22.

The above-described tasks – many of which are ongoing – have been performed by the Leadership Group on a contingent-fee basis and for the common benefit of all rice producers and non-producers with claims against the defendants herein.  In addition to the enormous amount of time and personnel the Leadership Group firms have devoted to this litigation – in the form of the above-described tasks and otherwise – they have also expended significant financial resources.  From the beginning of the litigation, each of the Leadership Group firms has contributed substantial monies into a common litigation fund, which has been used to pay expert expenses, deposition transcript costs, document production costs, and a variety of other common litigation costs.  In addition, each firm has borne its own domestic travel, copying, and other office expenses, which have been significant.  The depositions of the Foreign Bayer Defendants in Europe and numerous other depositions of Bayer and third-party witnesses throughout the United States, as well the ongoing work with plaintiffs' experts and preparation for the bellwether trials, will continue to add to what is already a substantial amount of common benefit expenditures.  Indeed, to date, the Leadership Group has incurred in excess of $20,000,000 in

attorneys' fees and $2,000,000 in litigation-related expenses pertaining to the afore-described activities on behalf of all plaintiffs.[1]

The Leadership Group already has negotiated and implemented voluntary compensation and cost-sharing arrangements with numerous parties – including both producers and non-producers – in the MDL, as well as with a large group of state court producers outside of the MDL. Each of the participating non-producers has agreed to pay to the Leadership Group 7% of any recoveries and each of the participating producers has agreed to an 8% payment. Those monies would be paid into a fund, maintained by Lead Counsel, in order to compensate the Leadership Group for the enormous amount of common benefit time and effort that it has incurred in prosecuting this action. In addition, both groups have agreed to certain cost-sharing arrangements with the Leadership Group as well.

There is no practical way to limit the benefits of the Leadership Group's work product and common benefit efforts only to the plaintiffs in the MDL. The work product has been used by and is being developed for the common benefit of all plaintiffs in all genetically-modified rice-related cases – both state and federal – as well as for any other plaintiffs with as-yet unfiled or otherwise unasserted claims. The *Shafer* state court plaintiffs have already acknowledged and agreed that the work of the Leadership Group has benefitted them greatly and as a result, have agreed to an assessment and cost-sharing arrangement with the Leadership Group as well.

---

[1] While some of the firms comprising the Leadership Group have incurred a limited portion of this time and these expenses representing their individual clients and while the Court has not yet characterized or reviewed this time and these expenses, under any analysis, these time and expense figures incurred by the Leadership Group to date bespeak and confirm the Leadership Group's enormous commitment to the joint prosecution of this consolidated MDL action for the common benefit of all persons and entities damaged by defendants' conduct.

### III.   ARGUMENT

**A.     The Court Should Establish a Common Benefit**
**Fund for the Payment of Fees and Expenses**
**To Attorneys Who Confer Common Benefits**

**1.     The Applicable Jurisprudence Vests the Court with**
**Jurisdiction and Authority to Grant the Requested Relief**

The common benefit doctrine recognizes the federal courts' inherent authority, in the exercise of their equity jurisdiction, to prevent unjust enrichment by those who benefit from the efforts of designated counsel in MDL proceedings (and other "common benefit" attorneys), whose risk, investment, and effort generates, enhances, or protects a fund or benefit enjoyed by such beneficiaries.  This doctrine vests in the district courts the equitable authority to direct a just allocation of litigation proceeds to spread costs and avoid unjust enrichment and has been frequently invoked and implemented by MDL transferee courts, who have personal jurisdiction over defendants.  The most powerful feature of the common benefit doctrine is that it recognizes that the beneficiaries against whom common benefit payments may be properly assessed need not be named parties in cases filed in, or transferred to, the MDL court.

The authority of federal courts, including this Court, to implement and enforce the common benefit doctrine – to provide for the fair and equitable sharing of the cost of services performed and expenses incurred for the benefit of all plaintiffs – is well established and longstanding.  The doctrine was established by the Supreme Court in *Trustees v. Greenough,* 105 U.S. 527 (1881)[2]; refined in, *inter alia, Central R.R. & Banking Co. v. Pettus,* 113 U.S. 116

---

[2] In *Greenough*, the Supreme Court, more than a century ago – and long before the enactment of 28 U.S.C. § 1407 – made manifest the federal trial courts' equity jurisdiction to reach beyond the confines of formal joinder and case captions, to ensure that all who were the beneficiaries of efforts undertaken for the common good would contribute proportionately to reimburse those services.  *Greenough*, 105 U.S. at 532.  The common benefit doctrine acknowledges "the original authority" of the district courts "to do equity in a particular situation" to prevent unjust (continued…)

(1885); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); and approved and implemented in the MDL context in, *inter alia*, *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, MDL No. 05-1708 (DWF/AJB), 2006 U.S. Dist. LEXIS 9232 (D. Minn. Feb. 15, 2006); *Walitalo v. Iacocca*, 968 F.2d 741, 747 & n.11 (8th Cir. 1992); *Smiley v. Sincoff*, 958 F.2d 498, 501-02 (2d Cir. 1992); *In re MGM Grand Hotel Fire Litig.*, 660 F. Supp. 522, 525-29 (D. Nev. 1987); and *In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006, 1019-21 (5th Cir. 1977).

### 2.   The Common Benefit Doctrine Is Particularly Applicable in the MDL Context

The common benefit doctrine has particular significance and value in the MDL context, because MDL transferee courts are charged with conserving the resources of the judicial system and the litigants, and because it furthers the purpose of centralizing cases for coordinated proceedings by reducing and equitably allocating the transaction costs of complex civil litigation, particularly in the modern, diffuse "mass tort" context. *See In re Diet Drugs Prods. Liab. Litig.*, MDL No. 1203, No. 99 Civ. 20593, 2002 U.S. Dist. LEXIS 19396, at *49 (E.D. Pa. Oct. 3, 2002).[3]  Similarly, more than 25 years ago, the court in *In re Air Crash Disaster*, recognized the

---

(...continued)

enrichment. *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 166 (1939).  As the Supreme Court has observed in reaffirming the common benefit doctrine, "[t]o allow the others to obtain full benefit from the plaintiffs' efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiffs' expense." *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 392 (1970).

[3] It is commonly accepted in complex multiparty litigation, such as the litigation here, that a court "should appoint a committee . . . to coordinate the litigation and ease the administrative burden on the court." *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, Civ. MDL No. 05-1708 (DWF/AJB), 2008 U.S. Dist. LEXIS 17535, at *20 (D. Minn. Mar. 7, 2008) (citing *In re Diet Drugs Prods. Liab. Litig.*, 2002 U.S. Dist. LEXIS 19396, at *49).  "As a (continued...)

necessity of common benefit reimbursement orders by transferee courts in multidistrict litigation, affirming an 8% cost assessment on all prospective recoveries, to be taken from the individual lawyers' fees. 549 F.2d at 1011.   Although the *In re Air Crash Disaster* litigation was less complex than this MDL proceeding, the principles that the Fifth Circuit articulated for use by transferee courts in this analysis still stand.   Specifically, the Fifth Circuit held that where attorneys, such as the Leadership Group and others herein, perform "duties beyond their responsibilities to their own clients," assessment of prospective recoveries to reimburse counsel is "a necessary incident to the goals of multi district litigation." *Id*.[4]

MDL courts may exercise their jurisdiction over the named parties (including defendants) and their counsel to effectuate the equitable spreading of costs to compensate and reimburse costs incurred and labor expended for the common benefit. This is accomplished, as a practical matter, by ordering the defendants properly before the court to "hold back" an equitable percentage of the funds they may in future agree to pay to claimants in the settlement of claims. This "hold-back" or common benefit reserve is then available to compensate common benefit attorneys in the MDL proceeding whose work has created or enhanced the settlement value of

_____

(…continued)

corollary to this appointment, the court must be permitted to compensate fairly the attorneys who serve on such a committee." *Id.* (citing cases).

[4] In *In re Air Crash Disaster*, the Fifth Circuit further stated that a hold back does not merely reflect a fee contest between private lawyers.  Such an approach "is a nostalgic luxury no longer available in the hard-pressed federal courts.  It overlooks the much larger interests which arise in litigations such as this." *Id.* at 1012.  Because of the number of cases and the size of a modern MDL litigation, there is a "public interest on the part of the court and the world at large" that must also be served. *Id.* This public interest is served by case management orders that promote economy, discourage duplication of cost and effort, and foster coordination, to avoid the costs on the judicial system and society, of piecemeal litigation with its attendant delays of process and inconsistencies of result.

such claims, whether through the development of the law and facts common to all claims, or through the development of structures, mechanisms, or systems that facilitate or expedite the settlements themselves.

**B.      The Court Should Order Defendants to Hold Back
          and Set Aside the Percentages Requested of Each Recovery**

Just as the Supreme Court's establishment of the common benefit doctrine pre-dated the multi-district statute by many decades, the hold-back Order that the Leadership Group requests the Court to enter here extends to the efforts of the group of plaintiffs' attorneys, either appointed to leadership positions by the Court or working under Lead Counsel's direction and authorization, whose efforts have benefitted and will continue to benefit all producer and non-producer plaintiffs in actions both within and outside this MDL proceeding.  Should the Court enter the requested hold-back Order, it would be following the well-established tradition of federal courts in MDL proceedings that have issued and enforced similar common benefit assessments.  *See, e.g., In re Air Crash Disaster*, 549 F.2d 1006; *In re MGM Grand*, 660 F. Supp. 522; "Common Fund and Substantial Benefit," *Awarding Attorneys' Fees and Managing Fee Litigation*, at 51 (Federal Judicial Center 1994).

The requested hold-back is hence neither novel nor arbitrary nor excessive.  Federal courts frequently "impose set-asides in . . . complex litigation in order to preserve common-benefit fund for later distribution."  *Turner v. Murphy Oil USA, Inc.*, 422 F. Supp. 2d 676, 680 (E.D. La. 2006).  Under the common benefit doctrine, MDL transferee courts have imposed fee assessments of the size requested here.  *E.g., In re MGM Grand*, 660 F. Supp. at 525-29 (7% assessment); *In re Air Crash Disaster*, 549 F.2d at 1019-21 (8% assessment); *In re Silicone Gel*

*Breast Implants Prods. Liab. Litig.*, MDL No. 926, 92-CV-10000, Order No. 13 (N.D. Ala. July 23, 1993) (6% assessment) (copy attached as Exhibit J to Levitt Declaration).[5]

> This is also reflected in the *Manual for Complex Litigation*, which notes that:

> [t]he judge sometimes orders individual plaintiffs' lawyers to pay a certain percentage of the fees they received into a common fund to contribute to the fees of the class counsel, whose work in discovery and trial preparation contributed to the settlement of the individual cases as well.

David F. Herr, *Annotated Manual for Complex Litigation, Fourth* § 22.927, at 654 (rev. ed. 2008) (footnote omitted).  Based on the foregoing, this MDL litigation presents a compelling situation for a common benefit reimbursement levy against attorneys' fees.

Indeed, as explained above and in the Levitt Declaration, in this MDL proceeding, the Leadership Group has conducted extensive common benefit work for more than two years – the fruits of which are available to, and have been for the benefit of, others, who, like those assessed in *Greenough* and *Sprague*, avoided the time and expense of replicating these efforts – including extensive documentary and deposition party and third-party discovery and extensive expert witness work – for their own cases.  The requested hold-back amounts that the Leadership Group requests reflects far less than it would cost to reproduce their common efforts, which, as explained above, included the review and analysis of millions of pages of documents and scores of major depositions, for use in a particular case.

_____

[5] Courts nationwide broadly support this approach.  *See e.g.*, *Smiley*, 958 F.2d at 501-02 (transferee judge possesses authority to assess all counsel for work performed by committee members); *In re Diet Drugs Prods. Liab. Litig.*, 2002 U.S. Dist. LEXIS 19396; *In re Ortho Evra Prods. Liab. Litig.*, No. 1:06-40000, Case Management Order No. 9 - Common Benefit Order (N.D. Ohio Aug. 28, 2006); *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, Pretrial Order No. 19 (E.D. La. Aug. 4, 2005); *In re Prempro Prods. Liab. Litig.*, MDL Docket No. 4:03-cv-1507 WRW, Practice and Procedure Order No. 6 (E.D. Ark. Mar. 30, 2005); *In re Bextra and Celebrex Marketing Sales Practices and Prod. Liab. Litig.*, No. M:05-cv-01699-CRB, Pretrial (continued...)

The common benefit doctrine, as manifested in the scope of the requested Order here, spreads the costs of the litigation, including attorneys' fees, among all of the beneficiaries of the fund.  *See Guidant*, 2008 U.S. Dist. LEXIS 17535, at *21.  This prevents counsel for both producers and non-producers from "free-riding" (*i.e.*, obtaining a windfall) by letting other attorneys roll up their sleeves to perform the heavy lifting and to bear all of the costs of the litigation, while they sit on the sidelines waiting to reap the benefits of the other counsel's efforts.  *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 45-46 (1991); *see also Boeing,* 444 U.S. at 478-79 (1980) (in order to remedy problem of free-riding – "persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense" – the Court established the common benefit doctrine to spread the costs of litigation proportionately to all who benefit from common efforts); *In re Zyprexa Prods. Liab. Litig.*, 467 F. Supp. 2d 256, 266 (E.D.N.Y. 2006) ("The large scope and high quality of the work being performed by PSC II for the common benefit of all plaintiffs entitle it to compensation beyond the court-limited fees earned by PSC attorneys for the representation of their individual clients.").

Correspondingly, the MDL transferee judge should supervise the payment of attorneys' fees and expenses to assure that counsel new to the litigation or third parties who pursue their claims elsewhere do not ride the coattails of the parties who have performed the litigation tasks. *See, e.g.*, *Smiley*, 958 F.2d 498 (transferee judge has authority to assess all counsel for work performed by committee members).  The court in *In re Diet Drugs* likewise observed:

_____

(…continued)

Order No. 8 - Common Benefit Order (N.D. Cal. Feb. 27, 2006).  Copies of the *Ortho Evra, Vioxx, Prempro,* and *Bextra* orders are attached as Exhibits F-I to the Levitt Declaration.

> Congress created the JPML [Judicial Panel on Multidistrict Litigation] and vested it with the authority to transfer related cases to a single court for consolidated or coordinated pretrial proceedings.  See 28 U.S.C. § 1407.  It is important that the transferee court have the power to appoint and compensate a plaintiffs' committee be levying an assessment against all other plaintiffs.  We understand how this may seem unfair to some of the individual attorneys involved who did a lot of work on their individual cases.  Nonetheless, it is necessary to carry out the will of Congress for the good of the public as a whole.

*In re Diet Drugs,* 2002 U.S. Dist. LEXIS 19396, at * 61-62.

To that end, in ordering and implementing such hold-backs, courts have explicitly included cognate state court actions within the scope of their orders.  *See, e.g., In re Latex Gloves Prods. Liab. Litig.*, MDL No. 1148, 2003 U.S. Dist. LEXIS 18118, at *5 (E.D. Pa. Sept. 5, 2003) (upholding common benefit assessment including state court actions because "[p]ermitting them to use discovery information in their state cases without charge would produce an anomalous and undesirable predicament").  The Eighth Circuit also addressed the "free rider" problem in *Walitalo*, 968 F.2d 741 (cited with approval in *Manual for Complex Litigation, (Third)* § 20.223 at n.62), with the same result.  There the Court said that "[i]t is well established that courts can impose liability for court-appointed counsel's fees on all plaintiffs benefiting from their services."  *Id.* at 747.  In *Walitalo*, some lawyers tried to avoid paying their share of the common fund fees and costs by trying to dismiss their cases out of the MDL proceeding.  The Eighth Circuit would not countenance such a subterfuge, stating:

> Appellants' argument that the parties to a case can avoid liability for their share of court-appointed counsels' fees by filing a stipulation of dismissal under Federal Rule of Civil Procedure 41(a)(1)(ii) is completely without merit.  If such a rule existed, a district court's power to appoint attorneys to act on behalf of other attorneys and parties in complex litigation would be meaningless.  Attorneys would be unwilling to assume this position if the parties to the litigation could avoid compensating them simply by settling and filing a stipulation of dismissal.

*Id.* at 747 n.11.

So too, here, if all producer and non-producer actions in which defendants in the MDL are implicated are not included in the scope of the requested Order, the very purpose of the

common benefit doctrine – and the MDL vehicle for that matter – will be undermined.  Simply stated, the substantial work undertaken by the Leadership Group on behalf of all plaintiffs warrants the imposition of a hold-back and set-aside, by defendants, of a percentage for fees and a separate percentage for costs of any gross recovery obtained by plaintiffs in the actions, as defined above.  This will ensure that the Leadership Group's efforts are justly compensated when the litigation concludes.  "'If lead counsel are to be an effective tool, the court must have means at its disposal to order appropriate compensation for them.'"  *Guidant*, 2008 U.S. Dist. LEXIS 17535, at *20 (quoting *In re Air Crash Disaster*, 549 F.2d at 1016).  The relief requested herein is the very sort of "appropriate compensation" that the applicable jurisprudence contemplates.

Here, it cannot genuinely be disputed that the Leadership Group's extensive efforts to date in prosecuting this MDL litigation – as discussed above and as set forth in the Levitt Declaration – have benefited, and will continue to benefit, *all* producer and non-producer plaintiffs, both in this MDL and in state court actions – in prosecuting their claims against defendants here.  This is ***precisely*** the kind of work that benefits all plaintiffs and their counsel and thus amply warrants the creation of a common benefit fund of the scope and in the manner requested herein.

## IV.   CONCLUSION

For the reasons set forth above, the Court should **(i)** establish a common benefit trust fund to compensate and reimburse attorneys for services rendered and for expenses incurred for plaintiffs' common benefit, **(ii)** direct defendants to hold back and set aside (a) 8% of any gross recovery obtained by producer plaintiffs, by way of judgment, settlement, or otherwise, in each genetically-modified rice-related action for attorneys' fees; (b) 7% of any gross recovery obtained by non-producer plaintiffs, by way of judgment, settlement, or otherwise, in each genetically-modified rice-related action, for attorneys' fees; and (c) an additional 3% of any

gross recovery obtained by any plaintiff, by way of judgment, settlement, or otherwise, in each genetically-modified rice-related action for common benefit costs and expenses incurred by the Leadership Group herein.  The Court should direct that this be done in all cases that have been or will be (i) part of this MDL; (ii) pending in a state court where a plaintiff's counsel includes at least one attorney who also serves as counsel for one or more plaintiffs, producer or non-producer, in an action that is, has been, or will be part of this MDL; and/or (iii) include any claim resolved that benefitted from plaintiffs' common benefit efforts.  Further, the Court should direct defendants to place the held-back and set-aside amounts into a "common benefit trust fund" established and maintained by Lead Counsel.

**Dated:**   August 19, 2009

Respectfully submitted,

**WOLF HALDENSTEIN ADLER
   FREEMAN & HERZ LLC**

By: /s/  Adam J. Levitt
Adam J. Levitt
Stacey T. Kelly
55 West Monroe Street, Suite 1111
Chicago, Illinois  60603
Tel:  (312) 984-0000
Fax:  (312) 984-0001
levitt@whafh.com

*Plaintiffs' Designated Co-Lead Counsel*

**GRAY, RITTER & GRAHAM, P.C.**

By: /s/  Don M. Downing
Don M. Downing, Bar # 41786
701 Market Street, Suite 800
St. Louis, Missouri  63101-1826
Tel:  (314) 241-5620
Fax:  (314) 241-4140
ddowning@grgpc.com

*Plaintiffs' Designated Co-Lead and Liaison
Counsel*

- 15 -

Richard J. Arsenault
John Randall Whaley
Jean Paul P. Overton
**NEBLETT BEARD & ARSENAULT, LLP**
2220 Bonaventure Court, P.O. Box 1190
Alexandria, Louisiana  71301
Tel: (800) 256-1050
Fax: (318) 561-2591

Scott E. Poynter
**EMERSON POYNTER LLP**
500 President Clinton Avenue, Suite 305
Little Rock, Arkansas  72201
Tel:  (501) 907-2555
Fax:  (501) 907-2556

Stephen A. Weiss
Diogenes P. Kekatos
**SEEGER WEISS LLP**
One William Street
New York, New York  10004
Tel:  (212) 584-0700
Fax:  (212) 584-0799

Joe R. Whatley Jr.
Deborah Clark Weintraub
Adam P. Plant
**WHATLEY DRAKE & KALLAS LLP**
2001 Park Place North, Suite 1000
Birmingham, Alabama  35203
Tel: (205) 328-9576
Fax: (205) 328-9669

William Chaney
James L. Reed
William J. French
Michael Kelsheimer
Drew York
**LOOPER REED & MCGRAW**
1601 Elm Street Suite 4100
Dallas, Texas  75201
Tel:  (214) 237-6403
Fax:  (214) 953-1332

Ralph E. Chapman
Sara B. Russo
**CHAPMAN, LEWIS & SWAN**
501 First Street

P. O. Box 428
Clarksdale, Mississippi  38614
Tel:  (662) 627-4105
Fax:  (662) 627-4171

***Plaintiffs' Executive Committee***

15037

**<u>CERTIFICATE OF SERVICE</u>**

I, the undersigned, do hereby certify that I have this 19th day of August 2009, electronically filed a copy of the foregoing with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the parties of record.


<u>/s/ Adam J. Levitt</u>