**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE GENETICALLY MODIFIED** | **4:06 MD 1811 CDP** |
| **RICE LITIGATION,** | |

_____

**This document relates to:**

| | | |
|---|---|---|
| **TILDA LTD** | | **PLAINTIFF** |
| **v.** | **No. 4:07-CV-00457 CDP** | |
| **RICELAND FOODS, INC.;** | | **DEFENDANTS** |
| **PRODUCERS RICE MILL, INC.;** | | |
| **BAYER CROPSCIENCE INC.;** | | |
| **BAYER CROPSCIENCE LP;** | | |
| **BAYER CROPSCIENCE HOLDING, INC.;** | | |
| **BAYER CROPSCIENCE, LLC; and** | | |
| **BAYER CORPORATION** | | |

_____

| | | |
|---|---|---|
| **RICKMERS REISMUEHLE GMBH,** | | **PLAINTIFF** |
| **v.** | **No. 4:08-CV-00499-CDP** | |
| **RICELAND FOODS, INC.,** | | **DEFENDANT** |

_____

| | | |
|---|---|---|
| **RICKMERS REISMUEHLE GMBH** | | **PLAINTIFF** |
| **v.** | **No. 4:08-CV-00500-CDP** | |
| **PRODUCERS RICE MILL, INC.,** | | **DEFENDANT** |

_____

| | | |
|---|---|---|
| **VAN SILLEVOLDT RIJST, BV** | | **PLAINTIFF** |
| **v.** | **No. 4:09-CV-00941-CDP** | |

**RIVIANA FOODS, INC.;**                                   **DEFENDANTS**
**PRODUCERS RICE MILL, INC.;**
**RICELAND FOODS, INC.;**
**BAYER CORPORATION; BAYER CROPSCIENCE LP; and**
**BAYER CROPSCIENCE HOLDING, INC.**
_____

**WESTMILL FOODS, a division of**                          **PLAINTIFF**
**ABF Grain Products, Ltd.**

       **v.**                    **No. 4:09-CV-00938-CDP**

**RIVIANA FOODS, INC.;**                                   **DEFENDANTS**
**PRODUCERS RICE MILL, INC.;**
**BAYER CORPORATION; BAYER CROPSCIENCE LP; and**
**BAYER CROPSCIENCE HOLDING, INC.**


**RESPONSE OF TILDA LTD;**
**RICKMERS REISMUEHLE GMBH; VAN SILLEVOLDT**
**RIJST, BV; AND WESTMILL FOODS IN OPPOSITION TO THE**
**MOTION OF PLAINTIFFS' LEAD COUNSEL AND PLAINTIFFS' EXECUTIVE**
<u>**COMMITTEE FOR AN ORDER ESTABLISHING A COMMON BENEFIT FUND**</u>

## TABLE OF CONTENTS

TABLE OF CONTENTS...........................................................................................................i

TABLE OF AUTHORITIES ..................................................................................................ii

I.     PRELIMINARY STATEMENT ...............................................................................1

II.    FACTUAL BACKGROUND....................................................................................3

III.   ARGUMENT............................................................................................................11

       A.   The Interests of the ENPs are not sufficiently Similar to Lead Counsel's to Support the Imposition of a Common Fund. .......................................................12

       B.   The ENPs did not Receive Sufficient Tangible Benefits to Support the Imposition of a Common Fund Benefiting Lead Counsel ...................................14

       C.   Rickmers Has Only Sued the Mills; Lead Counsel Has Only Sued Bayer...........16

       D.   Tilda, Westmill and VSR are Willing to Pay Costs Incurred by Lead Counsel in Copying and Providing Bayer Document Productions......................16

IV.    CONCLUSION ........................................................................................................16

## **<u>TABLE OF AUTHORITIES</u>**

**Cases**

*Case v. Continental Airlines Corp.*, 1992 U.S. App. LEXIS 19148 (10th Cir. Aug. 11, 1992) ................................................................................................................. 13

*Consol. Edison Co. of N.Y., Inc. v. Bodman*, 445 F.3d 438 (D.C. Cir. 2006).................. 11, 12, 15

*DuPont v. Shackelford*, 369 S.E.2d 673 (Va. 1988) ...................................................... 15

*Fletcher v. Coomes*, 285 F. 893 (D.C. Cir. 1992) ......................................................... 12

*Haynes v. Rederi A/S Aladdin*, 362 F.2d 345 (5th Cir. 1966) ....................................... 12

*In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006 (5th Cir. 1977) .......................... 2

*Lamar v. Hall & Wimberly*, 129 F. 79 (5th Cir. 1904) .................................................. 12

*Nolte v. Hudson Nav. Co.*, 47 F.2d 166 (2d Cir. 1931).................................................. 11

*U.S. v. Tobais*, 935 F.2d 666 (4th Cir. 1991) ............................................................... 15

*Worldcom, Inc. Sec. Litig.*, 2004 U.S. Dist. LEXIS 22991 (S.D. N.Y. Nov. 10, 2004) .............. 15

**Treatise**

20 AM. JUR. 2d *Costs*  §§ 65–66 (2005) ....................................................................... 14

# I. PRELIMINARY STATEMENT

As the Court is aware, Tilda Ltd. ("Tilda"); Rickmers Reismuehle GMBH ("Rickmers"); Van Sillevoldt Rijst, BV ("VSR") and Westmill Foods ("Westmill") (collectively referred to as "Respondents"), along with Veetee Rice Limited ("Veetee") form a distinct group of plaintiffs in this litigation who have come to be known as the European Non-Producer Plaintiffs ("ENPs") and are represented by their own separate, Court-appointed Liaison Counsel, John K. Baker of Little Rock.  Respondents object to the application of the provisions of the common benefit fund proposed by Lead Plaintiffs' Counsel and Plaintiffs' Executive Committee ("Lead Counsel") to the ENPs' separate cases in this litigation.  Respondents herein take no position as to whether the compensation sought by Lead Counsel is appropriate with regard to the producer plaintiffs or any non-producer plaintiffs who are not ENPs.

Throughout the history of this MDL, the ENPs have actively pursued their own claims and incurred the fees and costs associated with so doing.  Awarding Lead Counsel a portion of any recovery obtained by the ENPs would, in fact, require the ENPs to pay twice for the prosecution of their claims.  It would not serve the underlying purpose of the common fund doctrine of preventing passive litigants from receiving a "free ride" at the expense of active litigants.  In fact, as examined in greater detail below, the unique claims of the ENPs have made reliance on Lead Counsel's efforts impossible.  The ENPs, with the sole exception of Rickmers, have sued both the Bayer entities and rice millers such as Riceland Foods, Inc., Producers Rice Mill, Inc. and Riviana Foods, Inc. (collectively, the "Mills") for damages related directly to contamination of the ENPs' rice stocks and products in Europe.  Conversely, the parties represented by Lead Counsel, and the parties for whom Lead Counsel have led the charge, have sued the Bayer entities only, and the damages Lead Counsel seek to recover from the Bayer

entities are related to the downturn in the price available for rice on the Chicago Board of Trade. Highlighting the disparate interests of the five (5) ENPs from the thousands of other Plaintiffs is the fact that Lead Counsel is advancing the interests of the very Mills sued by the ENPs in the Mills' claims against Bayer. Certainly, no one would suggest Lead Counsel has done anything to assist the ENPs in their claims against these Mills. The distinct nature of the ENPs' claims has required the ENPs to actively pursue those claims and foreclosed the option of relying on Lead Counsel to advance those claims.

To prevail on their Motion, Lead Counsel must show they conferred some tangible, traceable benefit to the ENPs by performing acts beyond those necessary for the advancement of their own clients' interest. As Lead Counsel's own Brief points out, "the Fifth Circuit held that where attorneys, such as the Leadership Group and others herein, perform 'duties beyond their responsibilities to their own clients,' assessment of prospective recoveries to reimburse counsel is a 'necessary incident to the goals of multi district litigation.'" *See* Lead Counsel's Brief at p. 9 (citing *In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006, 1011 (5th Cir. 1977)). The ENPs do not dispute that Lead Counsel have pursued their own agenda in moving the claims of the thousands of producer plaintiffs forward as expeditiously as possible, but the implementation of this agenda would have occurred whether or not the ENPs were involved in the MDL. Outside of providing the ENPs with CDs containing raw electronic documents produced as part of routine discovery, there simply are no substantive actions that Lead Counsel have taken or performed with regard to the ENPs that were beyond the duty that Lead Counsel owed to their own clients.

Even a cursory examination of the facts reveals that the ENPs are by no means attempting to "free-ride" on the efforts of Lead Counsel. Instead, the five (5) ENPs pursued their

similarly situated cases in their own separate orbit—one that has created for them their own "ride" at their own cost.  To apply the proposal sought by Lead Counsel to the ENPs would not only be inequitable, it would create a windfall for Lead Counsel.

## II.  FACTUAL BACKGROUND

The ENPs simply did not reap the same benefits as the other Plaintiffs from the twelve (12) areas identified in Lead Counsel's Motion as the basis for an award of fees and costs. Rather, these twelve areas highlight the separate work done by the ENPs to advance their own claims as set forth below:

(a) The ENPs have never had any interest in or participated in consolidation of their claims into a master complaint nor did Lead Counsel ever communicate with the ENPs about their possible inclusion in the master complaint.  *See* Exhibit "1" at ¶ 5. The claims advanced by each of the ENPs stand alone based upon each particular ENP's contracts, facts, and circumstances.  This is a fact that Lead Counsel cannot dispute.  Any efforts put forth by Lead Counsel in this regard were for the benefit of plaintiffs other than the ENPs.

(b) With regard to the negotiation of "discovery and other case management protocols" in this MDL, Plaintiffs' Lead Counsel never communicated in advance with the ENPs seeking their thoughts or input with respect to such matters. *See* Exhibit "1" at ¶ 6.   After Lead Counsel had already negotiated and secured entry of the major CMO protocols, the ENPs, led by Tilda's counsel, successfully advocated for the entry of DN 363 (adopted in CMO 4 at item 6) under which the ENPs are treated uniquely with respect to document production. Separate treatment of the ENPs for

3

discovery purposes was necessary after Lead Counsels' proposed protocols failed to ensure that the ENPs would not be sucked into an expensive vortex of electronic discovery requirements that they were not well-situated to accommodate. Since the appointment of the ENPs' Liaison Counsel, the ENPs' interest with respect to the scheduling of their cases has been monitored and argued by the ENPs in their own filings with no assistance from Plaintiffs' Lead Counsel. *Id.*

(c) The ENPs admit that Lead Counsel has conducted extensive discovery, both written and by deposition, with regard to the Bayer entities, but, because of the difference in the nature of their claims, the ENPs were not able to rely upon the efforts of Lead Counsel in this regard. Instead, all ENPs but Rickmers and the newly added VSR and Westmill have propounded their own written discovery to the Bayer entities and attended and asked questions at Bayer and Bayer-related depositions that were determined applicable to their cases. Moreover, Lead Counsel never communicated with the ENPs seeking their thoughts or input with respect to topics for consideration for the depositions of personnel of Bayer, and/or of third parties, and never provided to the ENPs any outlines of the topics they believed warranted exploration during such depositions. *See* Exhibit "1" at ¶ 7.

Thus, from the outset, the ENPs have had to pursue their own interests in conducting discovery against Bayer. ENPs were not provided with copies of any Bayer or Bayer-related deposition transcripts by Lead Counsel but had to purchase copies at their own cost.

The ENPs also jointly coordinated, noticed, and conducted all depositions of the personnel of the Mills at their sole cost and with no involvement by Lead

Counsel and with no participation by Lead Counsel or their appointee at said depositions.  *See* Exhibit "1" at ¶ 8.  In addition, the ENPs have conducted all of their own written discovery, document production and document management with regard to the Mills without the involvement of Lead Counsel.  *Id.* at ¶ 9.  The ENPs have also coordinated, briefed, argued for, and secured third party document productions, such as those from the USA Rice Federation, on their own time and at their own expense without any assistance or input from Lead Counsel.  *Id.* at ¶ 10.  Finally, all discovery disputes experienced by the ENPs have been handled, briefed and argued solely by counsel for the ENPs.  *Id.* at ¶ 11.

(d) The creation of the internet site (www.bayerricelitigation.com) has yielded no benefit to the ENPs whatsoever.  The cite amounts to nothing more than an electronic bastion of barratry.  Indeed, the only functional part of the site offering any possible assistance to MDL litigants is the "Upcoming Deposition" section and its intended "Description" section which the Court instructed be included so that MDL attorneys would have an idea of who it was that was scheduled to be deposed.  With the exception of a handful of depositions, Lead Counsel abandoned adhering to the Court's instruction and have provided no "Descriptions" for the deponents it has posted on its site.   *See* Exhibit "2."  Without such descriptions, Lead Counsel's website is no more informative about the depositions than the ECF filings counsel automatically receive upon the filings of Notices of Depositions.

(e) None of the ENPs are maintaining any claims against foreign Bayer entities in this litigation, and the ENPs have garnered no benefit whatsoever from the service of process on these foreign entities by Lead Counsel.  Likewise, the ENPs gained no

benefit from the extraordinary time and expense Lead Counsel spent deposing jurisdictional witnesses, obtaining written discovery on jurisdictional issues and briefing and arguing jurisdictional issues.  In fact, the protective order under which the documents related to the foreign Bayer entities were produced specifically prohibits parties who have not sued the foreign Bayer entities, such as the ENPs, from even viewing those documents.  (*See* DN 608 at Exhibit "A" p. 2 ).

(f) With regard to Bayer's motion for partial summary judgment on grounds of express preemption, the position taken by Lead Counsel in its response did not address the legal issues unique to the ENPs, and counsel for the ENPs were required to prepare separate briefs and separately argue their position with regard to Bayer's motion. Specifically, Lead Counsel's response did not address the "in foreign commerce" provision of the subject statute as it concerned the ENPs.

(g) The coordination of the MDL proceedings with plaintiffs' counsel in pending state court actions has been of no benefit to the ENPs.  The state court actions to which Lead Counsel's Brief refers involve producer plaintiffs who have interests in line with those of Lead Counsel in the MDL and which have no relation to the claims of the ENPs.  The only involvement with any state case that the ENPs have had was to brief and argue a motion before this Court to compel Riceland to provide the ENPs with copies of depositions of Riceland personnel taken in conjunction with *Schafer*, a state court case pending in Arkansas.  Again, Lead Counsel had no involvement in the fight and offered no aid to the ENPs in their efforts.

(h) The ENPs had no involvement or interest in Lead Counsel's briefing and litigation of class certification-related issues.  As stated earlier herein, there is no commonality in

the classes of damages being sought by the ENPs against the Bayer entities and the classes of damages being sought by Lead Counsel against the Bayer entities.  The ENPs never were a member of the class sought to be named.  *See* Exhibit "1" at ¶ 5.  The ENPs have never pursued their claims on behalf of a putative class.  *Id*. at ¶ 5.

(i)  The efforts put forth by Lead Counsel in identifying, interviewing, and selecting consulting and testifying experts has yielded no benefit to the Respondents.  Moreover, Lead Counsel never communicated with the ENPs seeking their thoughts or input with respect to such experts and what topics for expert testimony might be needed to assist in proving the ENPs' claims.  *See* Exhibit "1" at ¶ 12.  The parties represented by Lead Counsel and the ENPs are under completely different disclosure timelines with respect to expert reports.  Veetee is the only ENP which has elected to co-retain some of Lead Counsel's experts, but Veetee also has agreed to enter into an agreement to off-set the expenses incurred by Lead Counsel for said experts.  *Id*.  However, the remaining four (4) ENPs have all undertaken their own process of identifying, interviewing, and selecting consulting and testifying experts of their own without any involvement or input by Lead Counsel.  *Id*. In addition, the time and expense that Lead Counsel have gone to in developing the damages claims of the producer plaintiffs, both factually and through expert witnesses, has not benefitted the ENPs at all.  Each of the ENPs, with no assistance from Lead Counsel, have hired their own experts to address their own damages claims.

(j)  For the reasons stated in (i) above, Respondents have gained no benefit from the preparation of expert reports or the taking of expert witness depositions by Lead Counsel.  At this point, because they are not due to be disclosed for some time, the

(k) With regard to the mediation proceedings before Judge Limbaugh, the ENPs have actively advanced their own claims at their own expense.  *See* Exhibit "1" at ¶ 13.  At the last such conference that the ENPs are aware of, the ENPs attended themselves and requested a separate conference with Judge Limbaugh, Bayer, Riceland, Producers and Riviana.  *Id*. Judge Limbaugh recognized that the ENPs' claims were unique and distinct and so, at the request of the ENPs, Judge Limbaugh addressed the ENPs' claims by a separate session. *Id*. Evidencing the distinct nature of the ENPs claims and the lack of common interest among the ENPs and Lead Counsel, Lead Counsel did not participate in the ENPs' settlement session with Judge Limbaugh and Bayer. *Id*.  Since the last mediation, the ENPs have continued to pursue settlement opportunities staying in contact, themselves, with Judge Limbaugh in an attempt to make sure that their cases are given due consideration in any scheduled settlement conferences. *Id*.

(l) None of the Court-ordered "bellwether" cases involves any of the ENPs.  This Court acknowledged the disconnectedness between at least two ENPs' suits and an upcoming bellwether case in denying VSR's and Westmill's Motion to Intervene into one of the bellwether trials.  The Court stated "The movants' interest in the current litigation is only indirect at best, and is not of the type that that necessitates intervention by right."  (4:08-cv-00375; DN 97).

Notwithstanding the areas addressed above, details of the experience of the ENP's throughout the course of this litigation merit further discussion.  At the outset of this MDL, Tilda

was the only ENP involved.  In the latter part of 2007, Veetee was brought into the MDL.  In the first half of 2008, Rickmers was brought into the MDL.  Only recently, in the first half of 2009, were Westmill and VSR brought into the MDL.

At one of the earliest status hearings, in April of 2007, Tilda's counsel attended in person to address the Court in an effort to illustrate the unique nature of its claims as an ENP and to inform the Court that a number of other similarly situated parties would be entering the MDL in the near future. At that same hearing, the Court heard argument from several groups who sought to be appointed as the plaintiffs' leadership group.  It was represented to the Court by the group that eventually became Lead Counsel that the interests of non-farmer plaintiffs would be fully represented on plaintiffs' executive committee by its proposed group.  Following the April 2007 hearing, the Court issued its Order Appointing Leadership Counsel (DN 182).  As part of this Order, a specific attorney was appointed to plaintiffs' executive committee to represent the interests of "non-farmer plaintiffs" in the MDL.  No counsel for any ENP was appointed to the plaintiffs' executive committee.

The lack of representation and involvement proved to be a logistical problem for the ENPs.  The first manifestation of a problem occurred by way of the CMOs that addressed discovery protocols, deadlines and limitations.  More than once, the ENPs were forced to interject themselves into status hearings before the Court in order to bring it to the Court's attention that the ENPs' cases were not addressed by the CMOs proposed to the Court.  Although the issues were eventually addressed by the ENPs' repeated interjections, these occurrences further illustrate the fact that, from the very beginning, the ENPs were left to row their own boat – and incur the expense of doing so.  Once depositions in the MDL began to be scheduled, this problem intensified.  The ENPs were not consulted by Lead Counsel or by any member of

plaintiffs' executive committee as to the selection of potential deponents or with regard to the scheduling of depositions. The ENPs' first knowledge of scheduled depositions in the MDL came by way of ECF filings of deposition notices filed after Lead Counsel and Defendants' Lead Counsel had already made up their minds about who would be deposed, as well as when and where. While this lack of notice worked a significant hardship on the ENPs, the ENPs worked together to ensure attendance and representation at the relevant depositions.

On the other side of the deposition coin, the ENPs had to offensively fight to carve out time for the depositions needed for their cases so that interference with the schedule of Lead Counsel would be minimized. *See* Exhibit "1" at ¶ 8. The ENPs insisted that Lead Counsel include and report to the Court the development of the ENP Carve Out Schedule which they did by their filing of DN 931. In keeping with the ENP Carve Out Schedule, the ENPs have jointly coordinated, noticed, and conducted all depositions of the personnel of the defending rice mills at their sole cost, all with no involvement by Plaintiffs' Lead Counsel and with no attendance by Plaintiff's Lead Counsel or their appointee at said depositions. *Id*.

Because the ENPs' interests were being ignored, at the status hearing in December of 2008, the ENPs approached the Court regarding their representation, or lack thereof, on plaintiffs' executive committee. At the status conference, the Court appointed Rickmers' counsel, John K. Baker, to ensure that the interests of the ENPs were well-represented. Prior to the appointment of Rickmers' counsel as liaison counsel, between April of 2007 and December of 2008, the ENPs were never invited to participate in the setting of topics for the Court's consideration at any status conference. *Id*. at ¶ 4.

The mere fact that the Court appointed separate Liaison Counsel for the ENPs is indicative of why Lead Counsel's Motion is inappropriate to the extent it seeks contribution to a

common fund for fees and costs from the ENPs.  Liaison Counsel for the ENPs is not seeking, and has no plans to seek, any form of compensation for his court appointed role because the ENPs are cohesively working together and sharing fees and expenses where the conduct of one benefits the others.

### III. <u>ARGUMENT</u>

The circumstances surrounding the prosecution of the ENPs' claims simply do not support requiring the ENPs to pay 10% of any recovery to Lead Counsel in addition to the legal fees and costs they are already paying.  There is no dispute that this Court has the authority to establish a common benefit fund in the appropriate circumstances.  Deviating from the general rule that each litigant bears its own fees and costs, the common benefit fund doctrine is an equitable doctrine that requires passive litigants to contribute to the fees and costs incurred by active litigants only when failing to do so would result in the passive litigants being unjustly enriched.  *See, e.g.*, *Consol. Edison Co. of N.Y., Inc. v. Bodman*, 445 F.3d 438 (D.C. Cir. 2006). Such a finding of unjust enrichment must be premised on common interests among the passive and active litigants and tangible benefits conferred to the passive litigants by the active litigants. *See, e.g.*, Jean F. Rydstrom, L.L.B., Annotation, *Construction and Application of "Common Funds" Doctrine in Allocating Attorneys' Fees Among Multiple Attorneys Whose Effects Were Unequal in Benefitting Multiple Claimants*, 42 A.L.R.  FED. 134, 136 (1979 and 2008–09 Supp.

The ENPs have not been unjustly enriched by the actions of Lead Counsel.  As the facts demonstrate, they have been represented by their own counsel, actively pursued their own claims and born their own fees and costs.  As the court noted in *Nolte v. Hudson Nav. Co.*,  "[t]he theory on which the expenses as well as the benefits are to be shard [sic] rests on the assumption that those who act represent the others, …, and so, where [litigants] are represented by counsel of

their own choice, who do in fact act for them, they cannot be compelled to share in the expenses incurred by the employment of other counsel by other [litigants]."  47 F.2d 166, 168 (2d Cir. 1931) (citing *Lamar v. Hall & Wimberly*, 129 F. 79 (5th Cir. 1904) and *Fletcher v. Coomes*, 285 F. 893 (D.C. Cir. 1992)); *see also, Consol. Edison Co. of N.Y., Inc.*, 445 F.3d at 458 ("Even where court action is the source of the relief sought, the fact that the parties with interests in the common fund were separately represented may militate against the award of a common fund."). *Haynes v. Rederi A/S Aladdin*, 362 F.2d 345, 351 (5th Cir. 1966) (holding it would be "wholly unfair and unwarranted" to award plaintiff a fee from intervener's recovery where intervenor employed its own attorney, who actively pursued the intervenor's own distinct interests during the litigation).

In fact, the circumstances of this case would make it inequitable to impose an obligation on the ENPs to contribute to a common fund.  The ENPs' interests are distinctly different from those pursued by Lead Counsel and the ENPs have seen little to no benefit from the efforts of Lead Counsel.  Moreover, the ENPs have actively prosecuted their own claims at their own expense.  Imposing an obligation to contribute to a common fund on the ENPs would not cure any "free ride."  It would, in fact, require the ENPs to pay twice for the pursuit of their claims and result in the unjust enrichment of Lead Counsel.

### A.   The Interests of the ENPs are not Sufficiently Similar to Lead Counsel's to Support the Imposition of a Common Fund.

The ENPs are suing parties whose interests Lead Counsel are actually advancing.  All of the ENPs are pursuing claims against the Mills that shipped them GMO rice.  Those Mills are pursuing claims against the Bayer Defendants.  *Lead Counsel is not pursuing any claims against the Mills on behalf of their own clients.*  In fact, Lead Counsel is directly assisting the Mills in the Mills' pursuit of claims against Bayer.  *See, e.g.*, Mills' arguments in support of the subject

Motion in DN 1511 (Riviana) and DN 1517 (Producers).  Upon information and belief, Lead Counsel has entered into agreements with the very Mills that the ENPs have sued, which agreements allow the Mills to co-retain the experts hired by Lead Counsel in this matter.  Lead Counsel has no interest in seeing the ENPs prevail on their claims against the Mills.  Because of the disparate interests, the ENPs could not sit back and rely on Lead Counsel to develop their claims.

The ENPs have had no choice but to actively pursue their own claims.  Understandably, given the divergent interests, Lead Counsel has not assisted the ENPs in pursuing their claims against parties whom Lead Counsel's clients have asserted no claims and companies with whom Lead Counsel is actually aligned in asserting claims against Bayer.  To this point, Lead Counsel has not participated in any of the ENPs' numerous depositions of personnel of the Mills.  *See* Exhibit "1" at ¶ 8.

Throughout this litigation, the ENPs' claims against the Mills have advanced solely because of the efforts of the counsel for the ENPs and at the expense of the ENPs.  Thus, it would be inequitable and improper to award Lead Counsel a percentage of any recovery the ENPs may receive from the Mills.[1]  *See, Case v. Continental Airlines Corp.*, 1992 U.S. App. LEXIS 19148 (10th Cir. Aug. 11, 1992) (holding trial court abused its discretion in requiring subset of plaintiffs who had derived no traceable benefit from Lead Counsel's actions to deposit 3% of their recovery into a common benefit fund).

---

[1] As noted in Part III.C., Rickmers has only sued the Mills and no Bayer entities, the inquiry into whether Rickmers should be required to contribute *any* amount to the common fund should end here and Lead Counsel should be awarded no part of Rickmers' recoveries.  Although the remaining ENPs are pursuing claims against some of the Bayer Defendants, the Lead Counsel's pursuit of claims against Bayer has not inured to the benefit of the ENPs sufficiently to entitle Lead Counsel to a portion of any recovery the ENPs may receive from Bayer as set forth in Section B.

**B.     The ENPs did not Receive Sufficient Tangible Benefits to Support the Imposition of a Common Fund Benefiting Lead Counsel**

To be entitled to any percentage of the ENPs recovery, Lead Counsel must establish that the ENPs received traceable, tangible benefits from Lead Counsel's efforts. *See, e.g.*, 20 AM. JUR. 2d *Costs* §§ 65–66 (2005).  As set forth above, there can be no genuine argument to rebut the fact that the ENPs alone have advanced their claims against the Mills.  Thus, the only remaining issue is the extent to which those ENPs who have sued the domestic Bayer Defendants have benefited from Lead Counsel's actions.

The facts and circumstances surrounding the ENPs' prosecution of their claims against the Bayer Defendants demonstrate that they have neither sought nor received a "free ride." Respondents have conducted their own discovery, secured their own experts, briefed and argued their own motions and paid their own attorneys' fees and costs incurred in so doing.  While it is true that Lead Counsel noticed and set up the depositions of the Bayer personnel deposed (without seeking any input from the ENPs as to such the scheduling of such depositions), the ENPs still had to cross-notice, attend and ask their own questions at these depositions at their own cost.  In one instance, the final deposition of Bayer representative Margaret Gadsby, the ENPs issued their own cross-notice and had their own counsel travel to North Carolina to participate in the deposition only to be told by the witness that she had not prepared for the topics raised by the ENPs cross-notice.  As a result, the ENPs are still working with Bayer's counsel, without any assistance from Lead Counsel, to reschedule another day of deposition for this witness so that the witness can address the topics stated in the ENPs' prior deposition notice. The only traceable, tangible benefit the ENPs have received from Lead Counsel's actions with respect to the Domestic Bayer entities is the receipt of CDs containing documents produced by the domestic Bayer Defendants.  These millions of pages of Bayer documents have been

14

produced to Lead Counsel after no major discovery battles being waged.  Lead counsel simply received disks, copied them and handed them over to the ENPs.

Courts routinely recognize that where, as here, a litigant retains and actively utilizes its own counsel, concerns about "free riding" diminish and requiring payment by these litigants into a common fund is inappropriate.  *See, United States v. Tobais*, 935 F.2d 666, 668 (4th Cir. 1991) ("Generally, a fund claimant who is represented by counsel . . . is deemed not to have taken a 'free ride' on the efforts of another's counsel"); *Consol. Edison Co. of N.Y., Inc. v. Bodman*, 445 F.3d 438, 443 (D.C. Cir. 2006) ("In some cases, of course, a subset of potential beneficiaries will have stakes large enough to call forth ample litigation effort; if so, the free-rider concern declines, possibly to nil.").

Where, as here, there is no free ride, there is no basis for the application of the common fund doctrine.   Under these circumstances, it would be inequitable to award Lead Counsel any portion of any recovery the ENPs obtain from the domestic Bayer Defendants as well as from the Mills.  *DuPont v. Shackelford*, 369 S.E.2d 673 (Va. 1988) (upholding trial courts refusal to award fees and expenses under common fund doctrine where all parties were actively represented by counsel who participated in the proceedings); *see also, In re Worldcom, Inc. Sec. Litig.*, 2004 U.S. Dist. LEXIS 22991 (S.D. N.Y. Nov. 10, 2004) (refusing to award liaison counsel any fees on recoveries obtained by plaintiffs whose causes liaison counsel did not advance and awarding liaison counsel 1% of any recovery obtained by plaintiffs for whom liaison counsel performed administrative functions such as acting as a clearing house for information).

**C.      Rickmers Has Only Sued the Mills; Lead Counsel Has Only Sued Bayer.**

Lead Counsel is not entitled to contribution in any amount from Rickmers to the common benefit fund because Rickmers simply has not received any benefit from Lead Counsel. Rickmers is believed to be the only party in the entire MDL who is not suing any of the Bayer entities.  Instead, Rickmers has only brought claims against the Mills.  Lead Counsel's pursuit of Bayer for the producers and non-producer plaintiffs is wholly inapposite to Rickmers' exclusive pursuit for justice against the Mills.  As noted above, Lead Counsel's time and efforts have been devoted to pre-trial discovery and procedures relating to the Bayer entities, not the Mills. Rickmers, on the other hand, has aggressively pursued its claims against the Mills, and as a result has incurred its own fees and costs for which it has footed the bill.  Because Lead Counsel is pursuing totally different parties distinct from those pursued by Rickmers, Rickmers has not benefitted from Lead Counsel's work in any regard.  Accordingly, Lead Counsel is not entitled to a contribution from Rickmers to the common benefit fund.

**D.      Tilda, Westmill and VSR are Willing to Pay Costs Incurred by Lead Counsel in Copying and Providing Bayer Document Productions.**

As has been repeatedly stated throughout this Response, Tilda, Westmill and VSR did receive a minimal benefit from Lead Counsel's copying and providing them with numerous CDs containing the raw document production made by Bayer.  Tilda, Westmill and VSR agree that Lead Counsel are entitled to recover their reasonable expenses incurred in copying and providing these documents.

**IV.  <u>CONCLUSION</u>**

The equitable basis for the application of the common benefit fund doctrine simply does not exist on the ENPs' claims in this action.  Rather than enjoying a free ride, the ENPs have had to actively pursue their own claims and expend their own resources in so doing.  Failing to

impose a common benefit fund obligation on the ENPs would not unjustly enrich the ENPs. Conversely, awarding Lead Counsel any portion of the ENPs' recovery would result in a windfall to Lead Counsel.  Under these circumstances, the ENPs respectfully request that the Court deny Lead Counsel's Motion to the extent it seeks any contribution to a common fund from the ENPs.

Respectfully submitted,

BARBER, McCASKILL, JONES & HALE, P.A.
Attorneys for Tilda Ltd.
400 West Capitol Avenue, Suite 2700
Little Rock, Arkansas 72201
(501) 372-6175

By:____/s/ Perry L. Wilson (with permission)
William H. Edwards, Jr.       AR BIN 80040
Perry L. Wilson                    AR BIN 00017


MITCHELL WILLIAMS
Attorneys for Rickmers Reismuehle GMBH
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201
(501) 688-8800

By:____/s/ John K. Baker_____
John K. Baker             AR BIN 97024
Alex T. Gray              AR BIN 2008127


FROST BROWN TODD
Attorneys for Van Sillevoldt Rijst, BV and
Westmill Foods


By:____/s/ Ann E. Georgehead (with permission)
Michael K. Yarbrough        OH BIN 0023054
Ann E. Georgehead           KY BIN 85567
Christopher G. Johnson       KY BIN 91540

## <u>CERTIFICATE OF SERVICE</u>

      This is to certify that I have this 17th day of September, 2009, electronically filed a copy of the foregoing with the Clerk of Court to be served by operation of the Court's electronic filing system upon the parties of record.

                                            /s/ John K. Baker

18