IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | ) | |
|---|---|---|
| IN RE GENETICALLY MODIFIED RICE LITIGATION | ) ) ) ) ) | 4:06 MD 1811 CDP<br><br>ALL CASES |

## MEMORANDUM IN SUPPORT OF MOTION TO STRIKE THE SUPPLEMENTAL EXPERT REPORTS OF COLIN CARTER AND BRUCE BABCOCK

Plaintiffs' untimely disclosure of new opinions concerning additional and projected damage theories from their economic experts is prejudicial to the Bayer Defendants because they do not have the opportunity before trial to fully respond, will result in significant and unnecessary expense, and prevents an orderly and efficient briefing of Rule 702/*Daubert* issues for these first and important bellwether trials.

The length and extent of any market impact from the LLRICE incident is one of the significant disputes between the parties in this case. Plaintiffs' experts Bruce Babcock and Colin Carter, in their initial reports, offered opinions only as to market impacts occurring in the 2006/07 marketing year and the 2007/08 marketing year.

## I. THESE EXPERT REPORTS ARE UNTIMELY

Paragraph 4 of Case Management Order 11 (D.E. 914) states that "Initial Trial Pool plaintiffs must disclose all expert witnesses and provide the reports required by Rule 26(a)(2), Fed.R.Civ.P., no later than **April 3, 2009**." Paragraph 5 states that "All Initial Trial Pool case discovery shall be completed by **August 14, 2009**." These new reports were served on September 28, six weeks after the close of discovery, and nearly five months after the relevant Case Management Order deadline.

Plaintiffs attempt to evade these deadlines by labeling these reports "supplemental reports" and claiming that they fall under the Rule 26(e) deadline for supplementing expert reports. These are not supplemental reports as referred to in Rule 26(e) because they contain new and additional opinions that were not addressed in the initial reports or depositions.

As discussed below, the experts were not asked to look at damages in 2008/09 and beyond at the time of their initial report. This limiting request by counsel means that their new opinions about damages in 2008/09 and beyond do not fall under Rule 26(e)'s scope, which requires supplementation if "the disclosure or response is incorrect or incomplete." The experts were evidently asked to evaluate potential damage through 2007/08 and did so. Nothing in these purported "supplemental reports" relates to those initial disclosures being incomplete because the subject matter falls outside the scope of their assignment.

Plaintiffs' proposed interpretation of Rule 26(e) would render the Case Management Order deadlines meaningless. Here, unlike with Dr. Kalaitzandonakes, the experts are not correcting or revising prior opinions. Rather, as shown below, these experts were not asked to look at these issues of damages after 2007/08 during expert discovery and, then, after the close of discovery, expanded their analysis to include analysis and estimates of damages in 2008/09 and beyond.

"Discovery of expert opinion must not be allowed to degenerate into a game of evasion." *Voegeli v. Lewis*, 568 F.2d 89, 97 (8th Cir. 1977). Indeed, as Judge Schreier in the District of South Dakota explained:

> The purpose of supplemental reports is to supplement the experts' opinion in their initial report, not to provide an extension of the deadline by which a party must deliver the lion's share of its expert information. Rule 26(e) permits supplemental reports only for the narrow purpose of correcting inaccuracies or adding information that was not available at the time of the initial report. If disclosed after the deadline for Rule 26(a)(2) disclosures, any wholly new opinions

2

contained in a revised expert report are subject to the sanctions imposed by Rule 37(c).

*Sheesley v. Cessna Aircraft Co.*, 71 Fed. R. Evid. Serv. 724 (D.S.D. 2006) (citations and quotations omitted).

These reports, for the first time, contain estimates of impact in 2008/09 and beyond. These estimates rely on forecasts and assumptions about exports, projected importer reaction, farm production, and market shifts. The basis for these assumptions and forecasts is only minimally disclosed and has a significant impact on the conclusions of impact. For example, Dr. Carter compares, in a cursory fashion, LLRICE and Starlink and concludes by predicting EU governmental policy: "it is highly unlikely that EU policy will change, given the overall concern that EU consumers have towards any risk associated with genetically modified crops." Ex. 1, Supplemental Report of Dr. Carter ¶ 20.[1] Dr. Babcock similarly prognosticates, without any citation to authority, that "U.S. exports to the valuable EU market will be depressed for years to come." Ex. 2, Supplemental Report of Dr. Babcock ¶ 18. These opinions are new, not supplemented, and are therefore untimely.

Plaintiffs evidently claim that their disclosure obligations were satisfied because they stated in a footnote in an individual damage expert report: "Plaintiffs expect to submit supplemental reports before trial that include any market losses incurred during the 2008/2009 marketing year and a reasonable estimate of future losses based on data available at that time." Revised Expert Report of Eric Frye and Colin Carter, June 10, 2009, n.1.

But, of course, expert disclosures cannot be satisfied by stating that additional opinions are forthcoming. Rule 26(a)(2)(B)(i) requires disclosure of "a complete statement of all opinions the witness will express and the basis and reasons for them."

---

[1] Exhibits 1 through 9 are attached to the September 29, 2009, Affidavit of Eric R. Olson.

## II. THESE EXPERTS EXPRESSLY DISAVOWED ANY OPINION OF IMPACT BEYOND 2007/08 IN THEIR DEPOSITIONS.

Both experts testified at their most recent deposition that the reason they offered no opinions on impact after 2008 was because they were "not asked to" do so. Dr. Babcock stated:

> Q. Do you believe that there was any price impact that continued into the 2008 marketing year from the LLRICE announcements?
> A. I don't know.
> Q. Have you studied that?
> A. No.
> Q. Why not?
> A. I haven't been asked to.

Ex. 3, Babcock Dep. 189:20-190:3, May 1, 2009.

Dr. Carter stated:

> Q. So what other data would you have needed to determine whether the market losses continued beyond July 25th of 2008?
> A. I didn't actually look at that question. I didn't look at '08-'09, and I think I explained why in my report.
> Q. Which is what?
> A. I wanted to err on the side of being conservative in terms of the overall damages. I wasn't -- ***I wasn't asked to look at '08-'09,*** and the data were not all available -- the trade data, for example. The pricing data is -- is pretty current, but there's significant lag with the trade data.

Ex. 4, Carter Dep. 252:2-16, Apr. 30, 2009 (emphasis added).

Nowhere in these experts' initial reports or depositions was any mention made of the possibility that any future damage calculations would be performed regarding 2008-09, or any other year. Rather, the reports were silent as to that possibility and no methodology whatsoever for estimating impact was disclosed.

## III. THE EXPERTS' OWN REPORTS DISCREDIT PLAINTIFFS' PROPOSED JUSTIFICATION FOR DELAY

Plaintiffs appear to claim that the reason they waited until the eve of trial to disclose these new opinions is because 2008/09 data was unavailable. This claim is false.

4

First, the data that they now rely on was available at the time of their initial reports. Dr. Carter relies on data from Rice Outlook, a USDA publication that he summarizes on Table 1 of his Supplemental Report. Ex. 1, Supplemental Report of Dr. Carter 2. Attached as Exhibit 5 to the Olson Affidavit is the March 12, 2009 issue of Rice Outlook, which was available at the time of Dr. Carter's initial report. In Table 2 on page 18 of the March Rice Outlook, projected 2008/09 numbers are provided and highlighted in yellow on the exhibit.

Dr. Babcock relies on World Agricultural Supply and Demand Estimates in his Supplemental Report. Ex. 2, Supplemental Report of Dr. Babcock ¶ 2. Attached as Exhibit 6 to the Olson Affidavit is the March 11, 2009 issue of World Agricultural Supply and Demand Estimates. On page 14 of the March World Agricultural Supply and Demand Estimates, highlighted in yellow, are the 2008/09 estimates which were available at the time of Dr. Babcock's initial report. Indeed, Dr. Babcock used estimates from this very publication for his work in his initial report, as he discussed in the opening paragraphs of his supplemental report where he stated: "The first step in estimating market price impacts for the 2008/09 marketing year was to check to see if USDA updated their data for the 2007/08 marketing year relative to their March 2009 estimates." Ex. 2, Supplemental Report of Dr. Babcock ¶ 3.

The USDA makes projections and estimates throughout the year, and the Bayer Defendants would have no quarrel if plaintiffs had done no more than Dr. Babcock did in paragraphs 3 through 6 of his supplemental report—use estimated numbers for his initial analysis and then update that analysis to reflect more recently published estimates.

Second, Dr. Carter and Dr. Babcock use projections and estimates, not actual data, for the calculations in their supplemental reports. In a note to Dr. Carter's Table 1 on page 2 of his supplemental report, he states:

Source: USDA "Rice Outlook" various issues. Net exports are calculated as exports minus imports. *2008/09 figures are estimated and 2009/10 figures are projections*.

Similarly, Dr. Babcock claimed to "calibrate[his models] to the *September 11, 2009 USDA estimates* for the 2008/09 marketing year." Ex. 2, Supplemental Report of Dr. Babcock ¶ 7.

Estimated data for 2008/09 was available to them at the time they submitted their initial reports, and the analysis and projections contained in the Supplemental Reports could have been performed at that time.

## IV. THESE NEW OPINIONS OF IMPACT MORE THAN DOUBLE PLAINTIFFS' DAMAGE CLAIMS BASED ON PREVIOUSLY UNDISCLOSED ASSUMPTIONS AND FORECASTS

Now, in these supplemental reports, these experts are offering opinions as to future and continuing impact for the first time. Their opinions of impact have more than doubled based on these new reports. The table below summarizes their old and new opinions of impact in a per hundredweight basis per marketing year.

|  | Dr. Carter | Dr. Babcock |
|---|---|---|
| 2006/07 | $1.08 | $1.13 |
| 2007/08 | $1.01 | $0.78 |
| **Original Total** | **$2.09** | **$1.89** |
|  |  |  |
| 2008/09 | $0.72 | $0.65 |
| 2009/10 | $0.62 | $0.48 |
| 2010/11 | $0.53 | $0.36 |
| 2011/12 | $0.45 | $0.27 |
| 2012/13 | $0.38 | $0.21 |
| 2013/14 | $0.33 | $0.16 |
| **New Total** | **$5.12** | **$4.02** |

The 2006/07 and 2007/08 data are from the Report of Dr. Babcock, figures 1 & 3, attached as Exhibit 7, and the Report of Dr. Carter ¶ 110, attached as Exhibit 8. The 2008/09 and future data are from Exhibit 2, the Supplemental Report of Dr. Babcock, and Exhibit 1, the Appendix to the Supplemental Report of Dr. Carter.

Applied to all long grain rice farmers using average production levels from USDA, these new opinions increase plaintiffs' damage claims by between $330 million (Dr. Babcock) to $470 million (Dr. Carter).

## V.     THE BAYER DEFENDANTS ARE PREJUDICED BY THIS UNTIMELY DISCLOSURE

These supplemental reports prejudice the Bayer Defendants for three reasons. First, responding to these new opinions of impact will require extensive, additional, and unexpected expert discovery of plaintiffs' experts, and additional expert discovery from the Bayer Defendants which will create significant, additional costs. Had these opinions been disclosed as required under the Case Management Orders, these additional opinions could have been addressed along with the other opinions making for orderly and efficient discovery. Now, new depositions, travel arrangements, and additional work getting back up to speed on the complicated details of the original reports are required.

Second, by waiting until the eve of trial to disclose these new opinions, plaintiffs prevented the Bayer Defendants from addressing the Rule 702/*Daubert* issues raised by these opinions in an efficient and orderly fashion. These motions related to these experts will now be written piecemeal and under significant time pressures. Counsel for plaintiffs also had the benefit of reviewing the Rule 702 motion filed regarding Dr. Babcock before Dr. Babcock crafted this new report, bestowing a one-sided advantage not permitted under the briefing schedule.

Third, these new reports were not expected and disrupt the Bayer Defendants pretrial preparations. These reports were not permitted under the Case Management Orders and the experts disavowed any such work when the Bayer Defendants asked them explicitly about 2008 and beyond in their deposition. In addition, the Bayer Defendants believed that plaintiffs were

7

preparing their case in light of this Court's comments at the October 16, 2008 status conference that "I think you're going to have a hard time convincing whoever ends up deciding it that the damages go on forever." Ex. 9, Status Conference Hr'g 6:20-22, Oct. 16, 2008.

Because these new reports were not expected, the Bayer Defendants' experts are not available over the next three weeks to evaluate these new opinions, assist lead counsel in preparing for expert depositions, and prepare rebuttal reports. Dr. Kalaitzandonakes, the Bayer Defendants' main economic expert, is scheduled to be in Brussels beginning next week and is unavailable to assist in evaluating these reports. The brevity of plaintiffs' reports belies their complexity, much of which is disclosed in the nine Excel spreadsheet files provided along with the reports. Without substantial assistance from testifying and consulting experts, the Bayer Defendants cannot evaluate whether the disclosure is sufficient or prepare any rebuttal reports.

## VI. PLAINTIFFS' UNTIMELY DISCLOSURE IS WITHOUT SUBSTANTIAL JUSTIFICATION

Rule 37(c)(1) states that "[i]f a party fails to provide information . . . as required by Rule 26(a) . . . , the party is not allowed to use that information . . . at a trial, unless the failure was substantially justified or was harmless." *See also Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008 (8th Cir. 1998) (affirming exclusion of expert under Rule 37 because report was untimely under Rule 26(a)). Here, as discussed above, this failure to disclose was prejudicial and therefore not harmless.

Nor was it substantially justified. Plaintiffs had access to this information at the time they submitted their initial reports and could have made estimates of future impact at that time. Even if some of the information was estimated or projected, they could have disclosed their methodologies and then supplemented the work that they had done. They did not do so, but rather chose to wait until the eve of trial when the Bayer Defendants had insufficient time to

8

evaluate and respond to these new opinions. *See Wegener v. Johnson*, 527 F.3d 687, 693 (8th Cir. 2008) (affirming exclusion of untimely disclosed testimony, in part, because "[c]ounsel's preparation for the cross examination or possible rebuttal of an expert witness on a matter of expertise can be extensive" and the "district court could well have concluded that the two-and-a-half weeks remaining before trial would not have provided sufficient time to prepare a rebuttal and cross examination involving expert testimony"). The urgency here is wholly unnecessary and created entirely by the plaintiffs. Their delay was not substantially justified and the reports should be stricken under Rule 37.

## VII.  CONCLUSION

For the foregoing reasons, the Bayer Defendants respectfully request that the "Supplemental Expert Report of Colin Carter" and the "Supplemental Expert Report of Bruce Babcock" be stricken in their entirety, with the exception of paragraphs 3-6 of Dr. Babcock's report which update an analysis he disclosed in his initial report.

Dated: September 29, 2009                                         Respectfully submitted,

                                                                  */s/ Eric R. Olson*
                                                                  Eric R. Olson

William F. Goodman, III                                           Terry Lueckenhoff, #43843
Joseph J. Stroble                                                 **FOX GALVIN LLC**
Elizabeth M. Gates                                                One South Memorial Drive, 12th Floor
**WATKINS & EAGER**                                               St. Louis, Missouri 63102
The Emporium Bldg.
400 East Capitol Street, Suite 300                                Glen E. Summers
Post Office Box 650                                               Lester Houtz
Jackson, Mississippi 39205-0650                                   Eric R. Olson
                                                                  John M. Hughes
Mark E. Ferguson                                                  **BARTLIT BECK HERMAN PALENCHAR &**
Stephen Cowen                                                     **SCOTT LLP**
**BARTLIT BECK HERMAN PALENCHAR &**                               1899 Wynkoop Street, 8th Floor
**SCOTT LLP**                                                     Denver, Colorado 80202
Courthouse Place
54 West Hubbard Street, Suite 300
Chicago, Illinois 60610

***ATTORNEYS FOR THE BAYER DEFENDANTS***

## **CERTIFICATE OF SERVICE**

       I hereby certify that on September 29, 2009, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

                                                      */s/ Eric R. Olson*

# Exhibit A