**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| | ) | |
| IN RE GENETICALLY MODIFIED RICE LITIGATION | ) ) ) | 4:06 MD 1811 CDP ALL CASES |
| | ) | |

## REPLY IN SUPPORT OF MOTION TO STRIKE THE SUPPLEMENTAL EXPERT REPORTS OF COLIN CARTER AND BRUCE BABCOCK

Plaintiffs do not contest three critical facts in their opposition. First, counsel did not ask Dr. Babcock or Dr. Carter to examine the question of damages in 2008/09 or beyond, until after expert discovery, including depositions, was completed. Second, these new, revised, claims of impact more than double their damage claims, adding hundreds of millions of dollars to the aggregate claim of impact. Third, there is nothing that prevented plaintiffs from disclosing this newly formulated methodology, or from using it to provide estimates of future impact in a timely fashion, during the period for expert discovery.

Dr. Carter and Dr. Babcock could have and should have disclosed all of what is now offered for calculating 2008/09 damages. Certainly, the proposed methodology could have been disclosed, and even if final market data was not available, both could have and should have provided estimates of 2008/09 damages based upon estimated data that was undisputedly published in advance of their initial expert disclosures.

As to damages beyond 2008/09, nothing prevented Dr. Carter and Dr. Babcock from timely disclosing their opinions concerning market damages for future rice crops. That entirely predictive effort was not dependent on receiving final data for 2008/09, and again, the methodology could and should have been developed and disclosed during the expert discovery period.

As to plaintiffs' contention that the Bayer Defendants somehow knew of or consented to the assertion of these new damages claims, neither is true. Plaintiffs cannot circumvent the Court's expert discovery deadlines merely by announcing their intent to provide "supplemental" reports. Bayer had no idea the extent to which plaintiffs intended to expand their already expansive damages claims, and in any case, such a unilateral statement of future intent does not substitute for proper and timely disclosure.

The rules do not permit this type of pre-trial gamesmanship, these disclosures prejudice the Bayer Defendants, and the reports should be stricken.

## I. PLAINTIFFS CONTRADICT THEIR OWN EXPERTS' SWORN TESTIMONY IN ATTEMPTING TO EXCUSE THEIR UNTIMELY DISCLOSURE

The Bayer Defendants asked both experts their opinions on potential 2008/09 market impact at their depositions. Neither had an opinion. Dr. Babcock's response to a question regarding why he had not "studied" 2008 impact was "I haven't been asked to." Ex. 3, Babcock Dep. 189:20-190:3, May 1, 2009. Dr. Carter similarly stated "I wasn't asked to look at '08-'09." Ex. 4, Carter Dep. 252:2-16, Apr. 30, 2009.

In response, plaintiffs now state:

> Drs. Carter and Babcock were not limited by Plaintiffs' counsel to examining Plaintiffs' market loss damages for only certain years. Mem. at 2. The obvious reason they examined the price impacts for only the first two years in their April 2009 reports is because, as explained below, those were the only two years for which complete data was available.

Pls. Resp. 6 n.6, D.E. 1580. What is clear from these three statements is that they cannot all be true.

The Bayer Defendants clearly tried to learn in discovery whether any damages were going to be claimed beyond 2007/08, and were told by the experts that they had not been asked to examine those years. Now they say they have been asked to do it, and on the eve of trial seek to add new opinions, including forecasts of future harm, none of which was disclosed (or

apparently even requested) until after the close of discovery. If allowed, this tactical maneuver would more than double the damages at issue in this case. The aggregate impact, if applied across the entire group of plaintiffs, would be in the hundreds of millions of dollars.

## II. PLAINTIFFS' NEW REPORTS ARE UNTIMELY AND UNEXPECTED

Plaintiffs appear to rest their entire "disclosure" argument on the fact that after these depositions, they told counsel for the Bayer Defendants that they intended to supplement and that the Bayer Defendants did not object to those statements of future intent. Plaintiffs misstate the extent of their disclosure and cannot credibly maintain that the Bayer Defendants should have objected before any such supplemental disclosure was made.

As an initial matter, nothing suggests that the Bayer Defendants had any reason to expect a supplemental report that would do anything other than address 2008/09. *See, e.g.,* Pls. Ex. 9, Frye Dep. 679:13-16, Sept. 1, 2009 (Eric Olson stating "counsel has told me that Dr. Carter and, perhaps, Dr. Babcock are going to supplement their 2008-2009 marketing year opinions of impact"). Plaintiffs' supplemental reports went far beyond just 2008/09 impact calculations, and included, for the first time, significant and extensive forecasts of future impact. But there was no agreement, and plaintiffs cite none, that the Bayer Defendants would accept any and all supplementation. And any objection to the predicted supplemental report would have been premature before the supplemental report was offered.

As to the propriety of the now-proposed supplementation, plaintiffs cannot identify any reasonable basis for delaying disclosure of their claim to ongoing damages until now. Plaintiffs do not dispute that estimated data was largely available for 2008/09 when their experts submitted their initial reports. Using this data, plaintiffs' experts could have disclosed their opinions concerning market damage for the 2008/09 rice crop and beyond. Plaintiffs attempt to justify their failure to disclose these opinions until the last minute as follows:

> If the experts had relied on that incomplete data at trial, they could have been criticized for not using complete data and the most recent data available. In addition, events could have occurred later in the marketing year that could have had a substantial effect on both the magnitude and duration of Plaintiffs' market losses.

Pls. Resp. 6-7. This claim ignores the fact that had they timely disclosed their estimates of 2008/09 and future impact, along with all methodologies and assumptions, the Bayer Defendants would have had the opportunity to prepare to defend such claims. With such information, a supplemental report that simply updated the calculation—using the latest numbers but the same methodology—would have been much easier to address and not nearly as disruptive.

And plaintiffs' attempted justification does not apply at all to the future projections. Plaintiffs' experts were just as able to predict the future during the proper expert disclosure period as they are now. Had they done so, the Bayer Defendants could have taken discovery, considered appropriate expert responses, or made timely *Daubert* challenges, all without having to divert such significant resources from what is now the full-time job of trial preparation.

Rather than provide all disclosures that could have been timely made, plaintiffs have dumped an entirely new set of theories and calculations on the Bayer Defendants well after their disclosure deadlines. Plaintiffs' newly disclosed methodology for calculating and projecting future losses are significantly different than just applying an existing methodology to new data. They are based on new assumptions and predictions about future prices, production, and policy responses of foreign governments, which implicitly require assumptions as to future events that may impact demand and supply. While it is far from clear that any such damages analysis has sufficient certainty to be admissible, even where projections can be made reasonably, the analytical methods become subject to greater error the farther in the future they are used. Such potential errors would need to be evaluated in detail and, if appropriate, accounted for.

Finally, it is one thing to evaluate and respond to a damage methodology that looks backward (even if some of the data is estimated); that is, uses historical data and relationships to

analyze actual relationships and predict an impact. It is quite another thing, requiring much more

scrutiny, for an expert to offer a methodology that looks forward, and uses predicted

relationships to predict impact during a period when the actual performance of the relevant

market is entirely unknown. Particularly here, when the plaintiffs' damage theory depends on

observed (and now projected) impact from an assertedly abnormal level of European export

demand, predictions such as this are not by any means a matter of simple math.

In short, even if these new estimates could be performed with reliable methodologies

(which the Bayer Defendants do not concede), effective response would require significant

analysis and effort. Such a controversial approach should not be permitted to be dumped into

this case at the last minute.

Nor do plaintiffs' unilateral statements of intent to supplement their report substitute for

what Rule 26 requires: "a complete statement of all opinions the witness will express and the

basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). Even having heard plaintiffs'

declaration that a supplement was coming, it was not until the Bayer Defendants understood

what was actually in the supplemental reports that they could evaluate whether the additional

material was objectionable. The Bayer Defendants did so, and concluded that a portion of

Dr. Babcock's supplement was proper, but that the remainder of the new reports were not. As

the Court is aware, the Bayer Defendants objected immediately thereafter.

## III. THE NEW REPORTS CONTAIN OTHER NEW OPINIONS

Plaintiffs contend that other new opinions of their experts were previously disclosed. If

this were true, the new material would be unnecessary, and so striking the supplementation

would cause no problem. But, of course, what plaintiffs say here is not true.

As an example, plaintiffs significantly overstate what their experts have said about

Starlink. Dr. Carter's declaration in support of plaintiffs' response contends that he disclosed his

opinion regarding the comparison of Starlink corn to LLRICE in his earlier report: "I refer

Bayer's counsel to my April 2nd, 2009 report (page 3) where I compare the LLRICE

contamination to the Starlink incident."  Pls. Ex. 16, Decl. of Colin Carter ¶ 8.  But the earlier

report contains only one line about Starlink: "On August 18, 2006, the world grain markets were

disrupted with news very similar to the unfortunate StarLink corn food contamination in 2000

that cost U.S. farmers hundreds of millions of dollars."  Pls. Ex. 14, Rep. of Colin Carter, Apr. 2,

2009 ¶ 6.  There is no analysis or other discussion of this supposed "comparison."

In this new report, for the first time, Dr. Carter offers opinions in detail about Japan's

response to the Starlink news, the EPA registration status of Starlink, and bases his opinion on

future market responses to LLRICE on a published paper discussing Starlink that he has never

before discussed or disclosed in any previous report.  There are numerous differences between

the Starlink and LLRICE episodes.  Among others, unlike the never-marketed LLRICE, Starlink

involved corn (whose markets are dramatically different from rice), which was lawfully

marketed and which became mixed with conventional corn after it had been handled by seed

growers, dealers, farmers and food processors.  Any purported expert opinion that draws specific

comparisons between Starlink and LLRICE, using never before disclosed authority and analysis,

is new by any definition.

## IV.    CONCLUSION

Clearly, the supplemental expert opinions that are now being offered could have been

timely disclosed within the proper expert discovery period.  Just as clearly, the Federal discovery

rules do not permit trial by expert ambush.  *Arabian Agric. Servs. Co. v. Chief Indus., Inc.*, 309

F.3d 479, 483 (8th Cir. 2002) (affirming exclusion of expert calculations disclosed after

disclosure deadlines under Rule 37(c)(1) because new opinions would result in "trial by

ambush").  Substantively, the Bayer Defendants doubt that the newly disclosed material would

survive *Daubert* scrutiny.  But it is unfair to require the Bayer Defendants to do the work required to make that challenge so close to the start of a trial of this magnitude.

 For all these reasons, the Bayer Defendants ask that plaintiffs' newly disclosed expert reports be stricken and the testimony they seek to support be excluded.

Dated: October 5, 2009

Respectfully submitted,

/s/ Eric R. Olson
Eric R. Olson

William F. Goodman, III
Joseph J. Stroble
Elizabeth M. Gates
**WATKINS & EAGER**
The Emporium Bldg.
400 East Capitol Street, Suite 300
Post Office Box 650
Jackson, Mississippi 39205-0650

Terry Lueckenhoff, #43843
**FOX GALVIN LLC**
One South Memorial Drive, 12th Floor
St. Louis, Missouri 63102

Mark E. Ferguson
Stephen Cowen
**BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP**
Courthouse Place
54 West Hubbard Street, Suite 300
Chicago, Illinois 60610

Glen E. Summers
Lester Houtz
Eric R. Olson
John M. Hughes
**BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP**
1899 Wynkoop Street, 8th Floor
Denver, Colorado 80202

*ATTORNEYS FOR THE BAYER DEFENDANTS*

## CERTIFICATE OF SERVICE

       I hereby certify that on October 5, 2009, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

*/s/ Eric R. Olson*