UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


IN RE GENETICALLY MODIFIED    )     Case No.  4:06MD1811 CDP
RICE LITIGATION              )     ALL CASES


## <u>MEMORANDUM AND ORDER</u>

This order deals with the motions for summary judgment related to the

second bellwether trial, scheduled to begin in January of 2010.  The trial will

consider the claims of two groups of plaintiffs.  The Mississippi plaintiffs are

Black Dog Planting Company, Gary F. Goode II, Trey Farms, Inc., M K Farms,

Inc., ANNA Farms, Inc., and 3G Farms, Inc. (partners of Black Dog Planting

Company).  The Arkansas plaintiffs are Jim Penn and Joe Penn (partners of Penn

Brothers Partnership), Penn Brothers Landleveling, Inc., Denton Farms, Inc., Jerry

Catt, and Donna Catt.

The parties have filed a number of motions for summary judgment and to

exclude or limit expert testimony.  The Arkansas plaintiffs' motions were

combined with those of the Missouri bellwether plaintiffs, which I ruled on in an

order issued October 9, 2009.  To a large extent, the Arkansas and Mississippi

motions now before me are the same as the motions I ruled on in that order.  The

parties have appropriately referenced their previous motions and the previous

order, and I will do the same in this order. I have, however, considered the issues anew and with regard to the appropriate Arkansas and Mississippi law. Although I have not changed the substance of any of the previous rulings, there are some differences because of the state law and the nature of the plaintiffs' claims.

Both the Arkansas and the Mississippi plaintiffs seek damages for alleged violations of the North Carolina Unfair Trade Practices Act.[1] They also each seek to impose liability under negligence *per se* theories based on alleged violations of the federal Plant Protective Act and its accompanying regulations.[2] The Mississippi plaintiffs seek damages under theories of negligence, public and private nuisance, and negligence *per se* based on alleged violations of Mississippi laws.[3] The Arkansas plaintiffs seek damages under theories of negligence, public and private nuisance, and negligence *per se* based on violations of Arkansas laws.[4] Although the complaint also alleges claims for strict liability,[5] plaintiffs have indicated that they do not intend to pursue strict liability claims on behalf of these Arkansas and Mississippi plaintiffs.

---

[1] Count 33 of Plaintiffs' Master Consolidated Complaint (docket # 1010).

[2] Count 6 (Arkansas plaintiffs) and Count 17 (Mississippi plaintiffs).

[3] Counts 13 through 16.

[4] Counts 1, 2, 4, 5, and 7.

[5] Counts 3 and 8 (Arkansas plaintiffs) and 18 and 19 (Mississippi plaintiffs).

For the reasons that follow and that were described in more detail in my October 9, 2009 Memorandum and Order, I will grant the motions in part and deny them in part.[6]  I will grant defendants' motions for summary judgment on plaintiffs' claims under the North Carolina Unfair Trade Practices Act and on plaintiffs' claims for public nuisance, and I will grant plaintiffs' motions for summary judgment directed to certain affirmative defenses.  I have determined as a matter of law that the regulations under the Plant Protection Act do not allow for low level or adventitious presence of regulated genetically modified rice in the commercial rice supply, and so I will not allow any of defendants' expert witnesses to opine to the contrary.  I have limited the testimony of various expert witnesses in other relatively minor ways.  Otherwise, I have denied the remaining motions.

## 1.    <u>Violations of Statutes or Regulations</u>

In the October 9, 2009 Memorandum and Order, I determined that neither the  Plant Protection Act, 7 U.S.C. § 7701 *et seq*., nor the regulations issued under that act, 7 C.F.R. § 340 *et seq*., allow any level of adventitious presence of

---

[6]In ruling on all the summary judgment motions, I have viewed the facts and inferences in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

regulated articles such as LLRICE 601 and LLRICE 604 in the commercial rice supply. That ruling applies equally here, and has the same consequences that it had in the Missouri case.

## 2. North Carolina Unfair Trade Practices Act

The Bayer defendants have moved for summary judgment on plaintiffs' claims under the North Carolina Unfair Trade Practices Act, N.C. Gen. Stat. § 75-1.1 *et seq*. (West 2009). It is undisputed that these Arkansas and Mississippi plaintiffs have no North Carolina operations. The question presented by this motion is whether the Act provides a remedy to an out-of-state plaintiff to recover for out-of-state injuries allegedly resulting from unfair acts that occurred in North Carolina. The analysis for this claim is identical to the analysis of the same claim discussed in my October 9, 2009 order. For the same reasons that I concluded that the North Carolina Act did not apply to the Missouri plaintiffs, I also conclude that the Act does not provide a cause of action to these Arkansas and Mississippi plaintiffs.

## 3. Economic Loss Doctrine

Bayer claims that the Arkansas and Mississippi plaintiffs' tort claims are barred by the economic loss doctrine. The economic loss doctrine prohibits a plaintiff from recovering under theories of negligence, strict liability, and products

liability in certain circumstances. *See State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.*, 736 So. 2d 384, 386-87 (Miss. Ct. App. 1999). The doctrine only applies when (1) the plaintiff and defendant have a contractual, purchaser-seller, or purchaser-manufacturer relationship, (2) plaintiff can also bring contract or warranty claims for the same alleged injury, and (3) plaintiff only alleges damages to the product that is the subject of the relationship, and does not claim personal injury or injury to other property. *See generally id.*; *East Miss. Elec. Power Ass'n v. Porcelain Prods. Co.*, 729 F. Supp. 512 (S.D. Miss. 1990); *IHP Indus., Inc. v. PermAlert, ESP*, 947 F. Supp. 257 (S.D. Miss. 1996); *Lee v. Gen. Motors Corp.*, 950 F. Supp. 170 (S.D. Miss. 1996). The Mississippi Supreme Court has yet to adopt the economic loss doctrine, although some Mississippi appeals courts apply the doctrine in limited circumstances. *See State Farm Mutual*, 736 So. 2d at 387. Arkansas does not currently recognize the economic loss doctrine. *See Farm Bureau Ins. Co. v. Case Corp.*, 878 S.W.2d 741, 743-744 (Ark. 1994).

Here, the plaintiffs and defendants do not have a contractual or purchaser-seller relationship, and plaintiffs cannot assert breach of warranty or contract claims against Bayer. In addition, the plaintiffs' damages are not to any property that was the subject of a contract, and they are not claiming damage to any property that is alleged to be defective. Rather, they claim market losses and

damage to other property, including equipment, land, and rice. As a result, the doctrine is inapplicable to the plaintiffs' claims in this case.

### 4.    **Public and Private Nuisance**

The Bayer defendants have moved for summary judgment on the Arkansas and Mississippi plaintiffs' claims for public and private nuisance. In the public nuisance claims (Counts 1 and 13), these plaintiffs allege, as did the Missouri plaintiffs, that "Bayer has unreasonably interfered with the public's right to expect compliance with the federal laws" governing rice growing, and "the public's right to expect that the rice sold to the general public is free from contamination with LLRICE . . . ." In the private nuisance claims (Counts 2 and 14), plaintiffs allege that Bayer's contamination of the rice supply interferes with and impairs plaintiffs' rights to the "use and enjoyment of their interests in the land on which they grow or may grow rice."

Arkansas and Mississippi, like Missouri, recognize both public and private nuisance claims. *See e.g.*, *Taylor Bay Protective Ass'n v. Ruckelshaus*, 687 F. Supp. 1319, 1325 (E.D. Ark. 1988) (recognizing that, under Arkansas law, "a nuisance may be either private, public or mixed."); *Comet Delta, Inc. v. Pate Stevedore Co.*, 521 So. 2d 857, 859-861 (Miss. 1988) (recognizing both types of nuisance in Mississippi). In all three states, a public nuisance is one that interferes

with the rights of the whole community. Although Arkansas seems to blur the line between public and private nuisance, when the Arkansas cases allow a private damage remedy, they refer to that as a private nuisance claim. *See Taylor Bay*, 687 F. Supp. at 1325 ("Conduct that is essentially a public nuisance may, at the same time, constitute a private nuisance and is actionable as such by an individual in his private capacity."); *Ozark Poultry Prods., Inc. v. Garman*, 472 S.W.2d 714, 716 (Ark. 1971) ("The fact that a nuisance is public does not deprive the individual of his action in cases where, as to him, it is private, and obstructs the free use and enjoyment of his private property."). Mississippi, on the other hand, clearly follows the same rules as Missouri, and holds that to sue for public nuisance a plaintiff must have "sustained harm different in kind, rather than in degree, than that suffered by the public at large." *Comet Delta*, 521 So. 2d at 861.

Under neither state's laws may the plaintiffs here bring a separate claim for public nuisance. There is no evidence in the record showing the sort of public harm or negative effect on the entire community that public nuisance law was developed to remedy. But there is evidence in the record from which a trier of fact could find that Bayer's use of its cooperators' land interfered with the plaintiffs' use of their land. Plaintiffs state that because of the contamination they could not plant rice or certain types of rice on their land, and this is an interference with

plaintiffs' land sufficient to allow a claim for private nuisance to proceed to trial. Genuine disputes remain on the private nuisance claims, but I will grant summary judgment to Bayer on the public nuisance claims.

### 5. Negligence *Per Se*

In Mississippi, negligence *per se* is a "breach of a statute or ordinance [which] renders the offender liable in tort without proof of a lack of due care." *Palmer v. Anderson Infirmary Benevolent Ass'n*, 656 So. 2d 790, 796 (Miss. 1995). There is some debate over whether Arkansas recognizes a claim for negligence *per se*. In *Jackson v. Cadillac Cowboy, Inc.*, 986 S.W.2d 410 (Ark. 1999) the Arkansas Supreme Court referred to a violation of the state law prohibiting sale of alcohol to intoxicated persons both as "some evidence" of negligence and in language suggesting negligence *per se*. *Id.* at 415. But in *Branscumb v. Freeman*, 200 S.W.3d 411, 417 (Ark. 2004), the court declined to extend the holding in *Jackson* to "recognize a private cause of action for negligence against the owner of an uninsured motor vehicle based solely upon the violation" of the Arkansas motor vehicle safety statutes. I will assume without deciding that Arkansas does, in fact, recognize a negligence *per se* claim. Even under that assumption, I will grant summary judgment to defendants on both the Mississippi and Arkansas plaintiffs' claims for negligence *per se*.

As discussed in more detail in the October 9, 2009 order, the APHIS regulations cannot provide a basis for a negligence *per se* claim because those performance standards do not provide a standard of care. Defendants are therefore entitled to summary judgment on the negligence *per se* claims based on alleged APHIS violations (Counts 6 and 17).

Plaintiffs' negligence *per se* claims based on state law fail for the same reason the Missouri plaintiffs' similar claims failed: the statutes require intentional conduct. Mississippi Code § 69-49-1 provides that "Any person or entity who willfully and knowingly damages or destroys any field crop . . ." is liable for double damages. Miss. Code Ann. § 69-49-1 (West 2009). This statute on its face requires intentional, knowing conduct, and cannot be the basis for a negligence action. Arkansas Code § 2-15-101 also requires a person to "willfully and knowingly" damage a field crop. Ark. Code Ann. § 2-15-101 (West 2009). This statute also requires intentional conduct, and does not provide a standard of care on which a negligence *per se* claim can be based. I will therefore grant summary judgment to Bayer on Counts 5 (Arkansas) and 16 (Mississippi).

The Arkansas plaintiffs bring a slightly different negligence *per se* claim in Count 4, in which they argue that Bayer violated the Arkansas Rice Certification Act, which provides, among other things, that no person may introduce rice having

characteristics of commercial impact without obtaining a permit. Ark. Code Ann. § 2-15-201, § 2-15-203. This statute provides that the Arkansas State Plant Board may bring various types of civil actions, *see* § 2-15-206, but it does not provide a private civil remedy. More importantly, nothing in the act provides a standard of care on which a negligence action could be based.

Accordingly, I will grant summary judgment on the negligence *per se* claims.

### 6. Affirmative Defenses 11 and 13

Because adventitious presence is not allowed, I will grant plaintiffs' motions for summary judgment on defendants' affirmative defenses 11 and 13.[7] The undisputed facts show that the performance standards were not met here because the required result was not met: there was a release into the environment and the regulated article or its offspring has persisted in the environment.

### 7. Affirmative Defense 14 - Industry Standards

Plaintiffs are entitled to summary judgment on Bayer's affirmative defense 14, which alleged that it was not liable because it complied with state-of-the art industry standards. Bayer agrees that this defense only applied to the strict

---

[7]Bayer's affirmative defense 13 and Starlink's affirmative defense 11 assert that defendants are not liable for any injuries because they "complied fully with all applicable statutes and regulations regarding genetically modified crops."

liability claims, which plaintiffs have withdrawn.

### 8. Affirmative Defense 4 - Intervening Cause

Bayer asserts in affirmative defense 4 that it cannot be held liable "due to the intervening and/or superseding acts or omissions of parties or non-parties to this action for whose acts or omissions the BCS Defendants and Bayer Corporation are not liable." The Arkansas and Mississippi plaintiffs, like the Missouri plaintiffs, are entitled to summary judgment on this defense.

Under Mississippi law, "an original actor's negligence may be superceded [*sic*] by a subsequent actor's negligence, if the subsequent negligence was unforeseeable." *Entrican v. Ming*, 962 So. 2d 28, 35 (Miss. 2007). Arkansas law is the same. *See Larson Mach., Inc. v. Wallace*, 600 S.W.2d 1, 9 (Ark. 1980) ("The intervening cause must be such that the injury would not have been suffered except for the act, conduct or effect of the intervening agent totally independent of the acts or omission constituting the primary negligence."). However, if the subsequent negligence is reasonably anticipated or should have been anticipated by the defendant under the circumstances, the negligence is foreseeable and "does not break the chain of events between the negligence of the first actor and the injury." *Causey v. Sanders*, 998 So. 2d 393, 405 (Miss. 2008).

The evidence adduced by Bayer reveals that the negligence of third parties,

if any, was foreseeable and reasonably anticipated by defendants. As the "responsible party" allowed to introduce LL601 and LL604 into the environment, Bayer had a duty to introduce those products without negligence. Contamination of non-GM rice by LL601 and LL604 is the known and foreseeable risk that Bayer had a duty to prevent. As a matter of law, plaintiffs are entitled to summary judgment on defendants' affirmative defense of intervening cause.

### 9. *Daubert* **Motions**

Both plaintiffs and defendants again seek to exclude each others' experts under *Daubert*. These objections mirror those made to the same experts and the same testimony in the Missouri bellwether trial. With minor exceptions, the parties admit that their arguments are identical to their previous arguments. Because the parties' arguments, old and new, are sufficiently addressed in the October 9 order, I will not recite them here.

Rule 702 permits expert testimony if it "will assist the trier of fact to understand the evidence or to determine a fact in issue. . . ." Fed. R. Evid. 702. The key inquiries are the (1) factual basis of the opinion, (2) reliability of the method and application, and (3) the relevance of the testimony. *Id.*; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993).

The parties' witnesses in this case qualify as experts through education and

experience.  *See* Fed. R. Evid. 702.  They may state their opinions within the subject of their expertise, so long as it was disclosed in their expert reports, it is based in fact, and a proper foundation is laid at trial.  *Id.*; Fed. R. Civ. P. 26. While they may not testify on matters outside of their expertise, they may apply the results of another expert's calculations, if a foundation is laid showing that they are qualified to do so.  *See Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002); *see also Beck's Office Furniture & Supplies, Inc. v. Haworth, Inc.*, Nos. 95-4018, 95-4029, 1996 WL 466673, at *7-8 (10th Cir. Aug. 16, 1996).  For instance, a rice-growing expert may testify about the reasonableness of Bayer's growing practices, even though he may not testify about market damages.  An accountant may apply the results of an economist's market damages calculations to a particular farm, but the accountant may not give an opinion on the accuracy of the economist's calculations.  Experts may also critique the methodology of other experts, provided that they do so in their role as an expert based on a reliable method of analysis.

Experts may not draw legal conclusions or interpret laws or regulations. *See Garrett v. Albright*, No. 06-CV-4137-NKL, 2008 WL 697590, at * 4 (W.D. Mo. Mar. 11, 2008).  No witness may testify that the regulations allow adventitious presence or that Bayer violated or complied with a standard of care

prescribed by the regulations. Nor may witnesses testify that Bayer is liable because it is listed as the "responsible party" in its USDA filings. The experts may not recite hearsay, such as conversations with the USDA, APHIS, or the U.S. Rice Federation. *See* Fed. R. Evid. 802. Finally, expert testimony is limited to issues that are relevant to this trial. Fed. R. Evid. 402. For example, an expert's opinion about Bayer or LSU's growing practices in 2007 or 2009 is not relevant or helpful to assist the jury in understanding whether Bayer was negligent during the LLRICE 601 and 604 field trials.

### 10. <u>Agency and Successor Liability</u>

The analysis of the Arkansas and Mississippi plaintiffs' summary judgment motion seeking to establish the status of various defendants as successors, partners and agents of one another is essentially the same as in my October 9 order for the Missouri plaintiffs. And, as I concluded in that order, I conclude that genuine disputes of fact remain as to agency and joint venture liability, but certain facts are established without dispute.

### a. <u>Undisputed Facts Established for Trial</u>

The following facts are not genuinely disputed, and are therefore established for the upcoming trial:

a.     Bayer CropScience AG, as the survivor of its April 1, 2007, merger with Bayer CropScience GmbH ("BCS GmbH") assumed all

assets and liabilities of BCS GmbH, including any liabilities which arose regarding the activities related to LibertyLink rice at issue in this litigation, and therefore is the successor to BCS GmbH, including the time periods when BCS GmbH was previously known as Aventis CropScience GmbH ("ACS GmbH") or Hoechst Schering AgrEvo GmbH ("AgrEvo GmbH"), and as successor is subject to liability for the acts of its predecessors;

b.      BBS NV, as the successor by name change to Bayer CropScience NV ("BCS NV"), Aventis CropScience NV ("ACS NV"), and Plant Genetic Systems NV ("PGS"), is subject to liability for any acts which occurred regarding the activities related to LibertyLink rice at issue in this litigation during the time periods in which it was known as BCS NV, ACS NV and/or PGS;

c.      BCS LP, as the successor by name change to ACS USA LP, is subject to liability for the activities related to LibertyLink rice at issue in this litigation during the time period in which it was known as ACS USA LP and for any such liability assumed by or transferred to ACS USA LP from AgrEvo USA Company ("AgrEvo USA") or its general partners;

d.      ACS USA LP, and thus BCS LP, assumed and had transferred to it all liabilities incurred by AgrEvo USA and its general partners regarding their activities related to LibertyLink rice at issue in this litigation during the period in which they conducted those activities;

e.      Starlink, as the successor by name change to Aventis CropScience USA Holding Inc. ("ACS USA Holding"), is subject to liability as general partner of ACS USA LP related to LibertyLink rice at issue in this litigation during the period from December 1999 to December 2001;

f.      BCS Holding Inc., as the successor by name change to Aventis CropScience USA Holding II Inc. ("ACS Holding II Inc."), is subject to liability as general partner of BCS LP related to LibertyLink rice at issue in this litigation;

g.     BCS Inc., as the successor by merger and name change from Rhone Poulenc Ag Company Inc. is subject to liability of AgrEvo USA and its general partners, AgriVet, Inc. ("AgriVet") and NOR-AM Chemical Company ("NOR-AM"), related to LibertyLink rice at issue in this litigation and which may have arisen during the time such activities were undertaken by AgrEvo USA prior to the formation of ACS USA LP.

### b.     Joint Venture and Agency

Under Mississippi and Arkansas law, a joint venture is "an association of persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, efforts, skill and knowledge." *Hults v. Tillman*, 480 So. 2d 1134 1142 (Miss. 1985); *accord Pittman v. Weber Energy Corp.*, 790 So. 2d 823, 826-827 (Miss. 2001). A joint venture is formed when two or more individuals combine their interests into a joint proprietary interest for their mutual benefit with the understanding that each has a right to share profits or losses and an equal right to control. *Hults*, 480 So. 2d at 827; *accord Lovell v. Brock*, 952 S.W.2d 161, 163-64 (Ark. 1997) ("To find that a joint enterprise existed, Arkansas law requires only a showing of: (1) a common object and purpose of the undertaking; and (2) an equal right to direct and govern the movements and conduct of each other in respect to the common object and purpose of the undertaking.").

Mississippi and Arkansas law provide that a defendant may be liable as a

principal for its agents' actions when that defendant controls or has the right to control the work of its alleged agent. *Fonte v. Audubon Ins. Co.*, 8 So. 3d 161, 166 (Miss. 2009) (en banc); *accord Howard v. Dallas Morning News, Inc.*, 918 S.W.2d 178, 183 (Ark. 1996) (alleged principal's right to control agent is the "principal factor" to consider when determining whether a principal-agent relationship exists). Courts applying Mississippi law must consider a number of factors relating to the level of control the principal can exercise over the agent.[8] When the evidence is in conflict, "[t]he determination of whether an agency relationship exists is a question of fact for the jury." *Fonte*, 8 So. 3d at 166 (quotation omitted).

Plaintiffs point to several items of evidence that they claim show agency and joint venture. For the same reasons discussed in detail in the October 9 order, I conclude that genuine disputes of material fact remain on issues of principal and

_____

[8]These include: (1) whether the principal has the power to terminate the contract between the principal and agent at will; (2) whether the principal has the power to fix the price in payment for the work, or vitally controls the manner and time of payment; (3) whether the principal furnishes the means and appliances for the work performed by the agent; (4) whether the principal has control of the agent's premises; (5) whether the principal furnishes the materials upon which the work is done and receives the output thereof; (6) whether the principal has the right to prescribe and furnish the details of the kind and character of the work to be done; (7) whether the principal has the right to supervise and inspect the work during the course of the employment; (8) whether the principal has the right to direct the details and manner in which the work is to be done; (9) whether the principal has the right to employ and discharge the agent's employees and to fix their compensation; (10) whether the principal is required to pay these employees' salaries. *Fonte v. Audubon Ins.* Co., 8 So. 3d 161, 166 (Miss. 2009) (en banc); *Kisner v. Jackson*, 132 So. 90, 91 (Miss. 1931).

agency and joint venture under both Arkansas and Mississippi law, and so I will deny the plaintiffs' motions.

## 11. Share-Rent Landlord Damages

Defendants seek summary judgment on the Arkansas plaintiffs' claims to recover amounts that plaintiffs would be required to pay their "share-rent landlords." I believe that genuine disputes remain regarding this issue. As I mentioned in the October 9 order, the parties' briefs discuss in great detail whether the relationships between plaintiffs and the landowners can be characterized as leaseholds or as tenancies in common. In *Smith v. McNew*, the Missouri Court of Appeals noted:

> Contracts to farm on shares are apparently very common, but the proper construction of such contracts, as creating the relationship of landlord and tenant, or other legal status, is the subject of widely divergent views.

381 S.W.2d 369, 372 (Mo. Ct. App. 1964). As I noted before, this is an understatement. It would be more accurate to say the views are "wildly" – rather than "widely" – divergent. In general, however, if a share-rent arrangement is characterized as a lease, then the tenant has the right to possession of the crop until it is harvested and divided, and so any right to sue a third party for damage to the crops belongs to the tenant, not to the landlord. *E.g.*, *Babcock v. Miss. River Power Co.*, 113 F.2d 398, 399 (7th Cir. 1940); *see also Ringering v. Cleveland*,

161 Ill. App. 43 (Ill. App. Ct. 1911); *Tex. & Pac. Ry. Co. v. Bayliss*, 62 Tex. 570 (Tex. 1884). On the other hand, if the relationship is characterized as a tenancy in common, then both the landlord and the tenant can sue, but each can seek only his own portion of the damages. *E.g.*, *Sayers v. Mo. Pac. Ry. Co.*, 107 P. 641, 642 (Kan. 1910); *Moulton v. Robinson*, 27 N.H. 550 (N.H. 1853).

Arkansas law is consistent with this general rule. *Compare St. Louis, I.M. & S.R. Ry. Co. v. Hall*, 74 S.W. 293, 294 (Ark. 1903) (tenant may recover for loss of crop against third-party tortfeasor, while landlord may recover for permanent damage to the property), *with Harnwell v. Ark. Rice Growers' Co-Op. Ass'n*, 276 S.W. 371, 373 (Ark. 1925) (if agreement between "the landlord and a person making the crop on his place shows the intention of the parties to become tenants in common, then the title to the crop raised vests as any other chattels held in common, and either one of the common owners may maintain his action against one who has converted the property. . . .").

In this case, the exact contours of the plaintiffs' arrangements with their landowners is a fact question involving many considerations, including the intent of the parties. Many of these facts remain disputed, and so I will deny the motion for summary judgment.

12.   **Punitive Damages**

The Bayer defendants have moved for summary judgment on plaintiffs' punitive damages claims. The parties agree that the standards for punitive damages under Arkansas and Mississippi law are the same as those under Missouri law. As under Missouri law, plaintiffs' claims for punitive damages survive summary judgment if plaintiffs provide enough evidence so that a reasonable juror could be clearly convinced by the evidence that the defendants acted with reckless disregard of plaintiffs' rights and interest. *Accord* Ark. Code Ann. § 16-55-206 (to recover punitive damages, plaintiff must show either that the defendant knew or ought to have known that his conduct "would naturally and probably result in injury" and that he "continued the conduct with malice or in reckless disregard of the consequences, from which malice may be inferred" or that the defendant "intentionally pursued a course of conduct for the purpose of causing injury or damage."); Ark. Code Ann. § 16-55-207 ("A plaintiff must satisfy the burden of proof required under § 16-55-206 by clear and convincing evidence in order to recover punitive damages from the defendant."); Miss. Code. Ann. § 11-1-65(1)(a) ("Punitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful,

wanton or reckless disregard for the safety of others, or committed actual fraud.");

*In re Prempro Prods. Liab. Litig*, Nos. 08-2555, 08-2711, 08-2713, 2009 WL

3518245 (8th Cir. Nov. 2, 2009) (applying Arkansas statutory law on punitive

damages); *Jowers v. BOC Group, Inc.*, 608 F. Supp. 2d 724, 744 (S.D. Miss. 2009)

(applying Mississippi statutory law on punitive damages).  The plaintiffs here

have provided evidence sufficient to meet this standard – although it is disputed –

and so I will deny defendants' motion for summary judgment on plaintiffs'

punitive damages claims.

The record on summary judgment shows that plaintiffs may be able to

present evidence from which a reasonable jury could find Bayer was conscious

that its conduct would naturally or probably result in injury.  Plaintiffs have

evidence showing that the risk of contamination by GM plants to non-GM plants

was well known at the time of the field tests here.  Bayer knew that seeds could be

"admixed" through human error as simple as failing to clean equipment or boots,

and that cross-pollination could occur.  Numerous Bayer documents show that

Bayer knew the LL601 had to be kept isolated, could not enter the food chain, and

could not enter foreign markets.  Bayer employees referred to Europe's "zero

tolerance" policies.  They discussed the effects of such an event on the market for

rice, recognizing that there could be serious economic impacts.  One 2000

memorandum even correctly forecast that if GM rice was found to have spread to conventional varieties, "We could make any national newscast . . . and the rice industry would be quite affected to say the least . . . ."

Plaintiffs have presented evidence from which a factfinder could conclude that, even given its knowledge of these risks and the potential for severe impact on the market, Bayer did not take reasonable steps to attempt to prevent the contamination. These are disputed questions of fact, and Bayer is not entitled to summary judgment on the claims for punitive damages.

## Conclusion

To summarize the decisions discussed above, I am granting summary judgment to defendants on the Arkansas and Mississippi plaintiffs' Counts 1 and 13 (public nuisance), Counts 4, 5, 6, 16, and 17 (negligence *per se*), and Count 33 (North Carolina Unfair and Deceptive Trade Practices Act). Plaintiffs have withdrawn counts 3, 8, 18 and 19 (strict liability). I am granting plaintiffs' motion for summary judgment on agent and successor liability only to the extent that certain uncontested facts are deemed established for trial. I am granting plaintiffs' motions for summary judgment on defendants' affirmative defenses 11 and 13 (compliance with regulations) and on their affirmative defense 4 (intervening cause). Defendants concede that affirmative defense 14 (compliance with industry

standards) only applied to plaintiffs' withdrawn strict liability claims. I am denying all other motions for summary judgment.

I have denied the *Daubert* motions, except that I have limited some areas of testimony, as set out above.

The claims of the Arkansas and Mississippi plaintiffs that will go to trial on January 11, 2010 are Counts 2 and 14 (private nuisance) and Counts 7 and 15 (negligence).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motions for summary judgment on defendants' affirmative defenses nos. 4 and 14 [Arkansas #1431; Mississippi #1761] are granted.

**IT IS FURTHER ORDERED** that defendants' motions for summary judgment [Arkansas #1434; Mississippi #1686] are granted in part and denied in part.

**IT IS FURTHER ORDERED** that defendants' motions to exclude testimony under Rule 702 [Arkansas #1436; Mississippi #1691] are granted only to the extent set out above and in the October 9, 2009 Order [#1604] and are denied in all other respects.

**IT IS FURTHER ORDERED** that plaintiffs' motions to exclude testimony

of Alan McHughen [Arkansas #1438; Mississippi #1685], Nicholas Kalaitzandonakes [Arkansas #1441; Mississippi #1662], Ronnie Helms [Arkansas #1443; Mississippi #1683], and Cheryl Shuffield and Robert Winter [Arkansas #1450; Mississippi #1679] are granted only to the extent set out above and are denied in all other respects.

**IT IS FURTHER ORDERED** that plaintiffs' motions for partial summary judgment on successor, general partner and agency status [Arkansas #1445; Mississippi #1693] are granted only to the extent that certain facts as set out above are deemed established for trial; the motions are denied in all other respects.

**IT IS FURTHER ORDERED** that plaintiffs' motions for partial summary judgment on defendants' affirmative defense nos. 11 and 13 [Arkansas #1447; Mississippi #1665] are granted.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 9th day of December, 2009.