UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE GENETICALLY MODIFIED | ) | 4:06 MD 1811 CDP |
| RICE LITIGATION | ) | ALL CASES |

## **MEMORANDUM AND ORDER**

This motion is before the Court as part of multidistrict litigation stemming from the spread of unapproved genetically modified long-grain rice into the U.S. commercial rice supply.  Shortly before the start of the first bellwether trial, the court-appointed plaintiffs' leadership group filed this motion to create a common benefit trust fund.  The purpose of the proposed trust is to pay fees and expenses of attorneys who perform work benefitting all of the plaintiffs.  The proposed trust would be funded by defendants' setting aside a percentage of awards or settlements in all cases related to the MDL.

Three groups of plaintiffs, as well as the Bayer defendants, object to the proposed trust.  They argue that this Court lacks authority and jurisdiction to enter the requested order, that the motion is premature, and that the leadership group has not provided them a substantial benefit.  For the reasons stated below, I will grant the leadership group's motion in part.  I will order the establishment of the trust, but it cannot be as broad as requested.

First, I will not require defendants to hold back and contribute amounts

from settlements and judgments related to cases pending in state courts. I reach this conclusion reluctantly, because it is abundantly clear that the plaintiffs in the related state-court cases have derived substantial benefit from the work of the leadership counsel in these federal cases. In fact, most of the lawyers representing plaintiffs in state cases have agreed to join in the trust. The lawyers and plaintiffs who have not agreed to join in the trust will have been unjustly enriched if they are not required to contribute to the fees of the leadership lawyers. But I do not have jurisdiction to order hold-backs for those state cases. This is so even though the plaintiffs' lawyers who have state cases also have cases before me. I urge the parties to consider the unjust enrichment issues in their settlement negotiations, and I urge the state court judges handling the cases to consider requiring participation in the fund by the parties over whom they have jurisdiction.

Second, I will reduce by one percent the amount that must be contributed to the fund for cases involving the European non-producer plaintiffs.[1] For the federal producer plaintiff cases, I will require defendants to contribute a total of 11% of any settlement or judgment to the fund. For domestic non-producer plaintiff cases, defendants must contribute a total of total of 10%. Defendants must contribute a

---

[1]Movants agree that one European non-producer plaintiff, Rickmers Reismuehle GMbH, should be exempt from the hold-back order because it has not sued Bayer (movants' reply memorandum, docket entry # 1585, at p. 22, n. 25).

total of 9% in cases where the plaintiffs are European non-producers.

## A.   Background

Approximately seven thousand plaintiffs – rice farmers and others in the rice business – have filed suit claiming that they were damaged because of the 2006 contamination of the long-grain rice supply by Bayer's unapproved genetically modified rice.  The Judicial Panel on Multidistrict Litigation transferred around 300 federal cases, involving claims of approximately five thousand plaintiffs, to this Court for consolidated handling of pre-trial matters.  Approximately two thousand additional plaintiffs have cases pending in state courts.

I designated a group of plaintiffs' attorneys as leadership counsel in an order dated April 18, 2007.  On December 22, 2008, I added John K. Baker to the leadership group as liaison counsel for the European non-producer plaintiffs, whose interests are not necessarily the same as those of the other plaintiffs.  Many attorneys filed suit in state court, and Bayer removed to federal court all the cases that had complete diversity.  Bayer also removed some cases where non-diverse defendants were sued.  I ruled in some of those cases that the  non-diverse defendants had been fraudulently joined to defeat diversity jurisdiction, but I remanded others where there was no fraudulent joinder.  Many plaintiffs' lawyers

represent plaintiffs in the federal cases as well as plaintiffs in the state cases.  In fact, all of the producer plaintiffs' attorneys who object to this motion represent plaintiffs in cases before me and in cases pending in state courts.

For almost three years, the leadership group has coordinated pre-trial preparations for all plaintiffs in this litigation with claims against the Bayer defendants.  In an early Case Management Order (CMO # 3), I ruled that depositions taken in the MDL could be cross-noticed with state cases and could be used in the state suits to the extent allowed by the applicable state courts.  The leadership group, along with other plaintiffs' counsel working with it, has prepared for and conducted several hundred depositions, has requested discovery, appears before the court regularly at hearings and conferences, prepares and opposes  motions, selects and prepares experts, and negotiates with defendants on procedural and substantive issues related to the litigation.

The leadership group shares the products of its labor with all of the plaintiffs.  All depositions and other discovery responses from the Bayer defendants have been made available to all the plaintiffs in all the cases, state and federal.  The leadership group made available to state counsel the massive document production that it received from the Bayer defendants.  At the time the leadership group filed this motion they had incurred approximately $2,000,000 in

costs and $20,000,000 in attorneys' fees.  These numbers, of course, are much higher now, because the leadership group has now conducted two bellwether trials in this court, both resulting in plaintiffs' verdicts.

One of the objecting lawyers, Martin Phipps, is currently conducting a trial of one plaintiff's case in an Arkansas state court.  Although Phipps has used his own expert witnesses, he has also used the depositions taken by the leadership group, and he has used the documents and other discovery from Bayer obtained by the leadership group.  A member of the Phipps firm attended all depositions conducted by the leadership group and asked questions at the end.  A representative of the Phipps firm was in daily attendance at the second bellwether trial.  The Phipps firm and other firms with state cases obtained large portions of the trial transcripts of the bellwether trials, including the examination and cross-examination of some of the same expert witnesses who Bayer will use in the current Arkansas trial and in other state trials.

The leadership group seeks creation of a common benefit trust fund that would reimburse attorneys for fees and expenses for work benefitting clients they do not directly represent.  To fund the trust, the leadership group asks the court to order that defendants hold back and pay into the trust 10% or 11% percent of any recoveries owed to any plaintiffs (state and federal), whether the recoveries result

from judgments or settlements.  The proposed trust would be maintained by the leadership group.  After the court establishes the trust, any attorney who performs services that benefit all of the plaintiffs could petition the trust for reimbursement. The trust funds would be disbursed in the future only by order of this court, after notice and an opportunity for any affected party to be heard.

The leadership group has proposed two contribution levels.  First, they propose that in producer (rice farmer) cases defendants contribute a total of 11% of any gross recovery.  Eight percent would be set aside to pay attorneys' fees, while 3% would be set aside for expenses.  They also request that defendants in non-producer cases contribute 7% toward attorneys fees and 3% toward expenses, for a total of 10% of any settlement or judgment.  The non-producer plaintiffs are rice mills, rice transport companies, and rice purchasers.

Attorneys for a majority of plaintiffs, including many of the non-producer plaintiffs, consent to the creation of the trust, consent to the inclusion of their state court cases, and consent to the proposed contribution levels.  According to the leadership group, attorneys for "as many as 4,000 of the 6,000 plaintiffs in this MDL support" the trust.  However, there are parties who object.  The objectors are a group of European non-producer (ENP) plaintiffs, two groups of domestic producer plaintiffs, and the Bayer defendants.  The objecting ENPs are Tilda, Ltd.,

Rickmers Reismuehle GMbH, Van Sillevoldt Rijst, BV, and Westmill Foods.  The objecting  producer plaintiffs are all represented by two legal teams.  Those two legal teams, when combined, represent almost 2,000 plaintiffs, primarily producers in Arkansas, Texas, and Louisiana.

The objecting producer plaintiffs argue: (1) that the court lacks authority or jurisdiction to establish any trust, (2) that the court lacks jurisdiction to enter orders that would affect state cases, and (3) that they have done their own work and have not benefitted from the work of the leadership group.  The ENP objectors argue that their interests are so different from those of the other plaintiffs that they should not be included.  They point out that they are suing both Bayer and other parties, including some rice mills and rice transport companies who are actually plaintiffs themselves represented by the leadership group.  The ENPs claim that they have not received a substantial benefit from the leadership group's efforts, even in their claims against Bayer, and that they have had to conduct their own discovery and retain their own experts.  The Bayer defendants raise objections similar to those of the domestic producer plaintiffs, and they also argue that the motion is premature.

**B.**     **Authority to Establish a Trust**

An MDL court's authority to establish a trust and to order contributions to

compensate leadership counsel derives from its "managerial" power over the consolidated litigation, and, to some extent, from its inherent equitable power.[2]  *In re Air Crash Disaster at Fla. Everglades*, 549 F.2d 1006, 1008 (5th Cir. 1977), is the case most often cited as the basis for allowing a common benefit trust such as this.  This managerial power to establish a trust to pay leadership counsel has been adopted by the Eighth Circuit and is reflected in the Manual for Complex Litigation.  *Walitalo v. Iacocca*, 968 F.2d 741, 747 (8th Cir. 1992); Manual for Complex Litigation (Fourth) § 20.312; *see also In re Diet Drugs*, 582 F.3d 524, 546-47 (3d Cir. 2009)  It is standard procedure to fund the trusts by ordering that a percentage of all recoveries be contributed to the trust to compensate the leadership group for its work providing a common benefit.  Manual for Complex Litigation (Fourth) § 20.312 ("MDL judges generally issue orders directing that defendants who settle MDL-related cases contribute a fixed percentage of the settlement to a general fund to pay national counsel.").

---

[2]While the court's managerial power provides a basis for the court to assure fair compensation to leadership counsel, the equitable common benefit doctrine is primarily concerned with preventing unjust enrichment.  *See Vincent v. Hughes Air West, Inc.*, 557 F.2d 759 (9th Cir. 1977); *see also Trustees v. Greenough*, 105 U.S. 527 (1881).  Both sources of authority provide the same result.  *See In re Diet Drugs*, 582 F.3d at 546-47.  Both are relevant here, but because the MDL consolidation grants me the needed managerial authority, I base this decision primarily on that managerial authority, although the equitable common benefit theory is an alternate basis supporting my determination here.

### C.    Jurisdiction Over State Cases

Plaintiffs' leadership group asks me to include the state court cases in this order, so that defendants would be required to hold back and contribute a portion of any settlements or judgments from those cases as well as from the MDL cases.[3] As stated above, I do not have jurisdiction to do this.

The leading case on this question is *In re Showa Denko K.K. L-Tryptophan Products Liability Litigation-II*, 953 F.2d 162 (4th Cir. 1992).  In that case the Fourth Circuit Court of Appeals reviewed an MDL district court's order of a set-aside that applied not only to the cases transferred to the MDL court, but also to state cases, non-transferred federal cases, and unfiled claims that might be settled and not litigated.  The Fourth Circuit found that the trial court did not have jurisdiction to order the contributions from parties who were not before it.  The court stated that the authority to consolidate cases before one MDL judge  "is merely procedural and does not expand the jurisdiction of the district court to which the cases are transferred." *Id*. at 166-67.  Most cases considering this issue have reached the same conclusion.

---

[3]They also ask me to include any federal cases that have not been transferred here.  It is my understanding that all federal cases either have been or will be transferred here, and that there have been no settlements or judgments other than the judgments in the two bellwether cases before me.  I therefore see no difficulty extending this order to all federal cases, whether they are now before me or are transferred here in the future.

In *Hartland v. Alaska Airlines*, 544 F.2d 992, 1001 (9th Cir. 1976), the Ninth Circuit reversed a similar district court order, holding that the court "had not even a semblance of jurisdiction" to order non-parties to contribute to a common benefit fund. *Accord In re Zyprexa Products Liability Litigation*, 467 F. Supp. 2d 256 (E.D.N.Y. 2006); *In re Baycol Products Litigation*, No. MDL 1431, 2004 WL 190272 (D. Minn. Jan. 29, 2004); *In re Linerboard Antitrust Litigation*, 292 F. Supp. 2d 644, 663-64 (E.D. Pa. 2003). Some courts have entered orders covering state cases where there was an agreement by the state courts or parties to do so. *See In re Diet Drugs (Phentermine/ Fenfluramine/ Dexfenfluramine) Products Liability Litigation*, MDL No. 1203, 1999 WL 124414, at *1 (E.D. Pa.  Feb. 10, 1999); *In re Guidant Corp. Implantable Defibrillators Products Liability Litigation*, MDL. No. 05-1708, 2008 WL 682174 (D. Minn. March 7, 2008). Other courts have entered orders stating that they "expect" counsel with state cases to agree to their inclusion. *See In re Orthopedic Bone Screw Products Liability Litigation*, MDL No. 1014, 1996 WL 900349, at *3 (E.D. Pa. June 17, 1996).

Leadership counsel assert in their briefs that "more recent decisions of MDL courts" have rejected the *Showa Denko* approach, but they cite only one case

doing so.[4]  The court in *In re Latex Gloves Products Liability Litigation*, 2003 US DIST LEXIS 18118 (E.D.Pa. Sept. 5, 2003), found that state court cases were properly subject to the common benefit fund assessment, because the lawyers in those cases were using the discovery materials from the MDL.  Although reaching the same result as *Latex Gloves* might be in the interest of justice, it is not allowed by the law.  I have no jurisdiction over the state cases and I cannot order the defendants to withhold amounts they may end up owing the state plaintiffs.

As I stated at the beginning of this opinion, I reach this conclusion reluctantly.  Requiring all the lawyers who have benefitted from the work of the leadership team to contribute to their fees would be in the interests of justice, but it is beyond my jurisdiction to order.  Several groups of plaintiffs' lawyers have agreed with leadership counsel to do this with regard to their state as well as their federal cases.  Those who have not agreed will be unjustly enriched by being able to use the work of leadership counsel, unless their settlement agreements or the state courts having jurisdiction over their cases rectify this unfair free-riding by requiring their participation in the fund.

---

[4]They also cite to a case where the MDL court capped contingent fees, *In re Vioxx Products Liability Litigation*, 650 F. Supp. 2d 549 (E.D. La. 2009), but the court there appears to have been granted the necessary authority by a settlement agreement.  In any event, although it states that an MDL proceeding may be treated as a "quasi-class action," it does not support the argument that I can act without jurisdiction.

### D.    **Substantial Benefit**

The objecting plaintiffs argue that a trust is inappropriate because they have not received a substantial benefit from the leadership group's work.  This argument is simply incorrect.  Substantial benefit should be determined with respect to the plaintiffs as a whole, not with respect to individual plaintiffs.  *See In re Diet Drugs*, 582 F.3d at 544 - 545; s*ee also In re Clearsky Shipping Corp.*, No. Civ. A 96-4099, 2003 WL 1563820, at *1-4 (E. D. La. Feb. 26, 2003).  All of the producer plaintiffs (including those whose cases are in state court) and all of the non-producer plaintiffs have benefitted substantially, and will continue to do so, from the work performed by plaintiffs' leadership counsel.

As set out above, the leadership group's work in discovery, motion practice, and the bellwether trials has provided a foundation for all of the cases involved in the litigation.  Evidence about what Bayer did in developing and distributing the genetically modified rice is central to the proof on all the claims in this litigation. This evidence was exclusively within Bayer's control, and the only realistic way for the evidence to be developed was through the type of centralized discovery that the leadership group conducted.  It would not have been possible for thousands of plaintiffs to separately obtain discovery from Bayer, and that, of course, is part of the reason the cases were combined in this MDL.  In addition to

coordinating and conducting all the discovery against Bayer, the leadership

lawyers have conducted two bellwether trials.  Those trials essentially provided a

preview for all other plaintiffs of the trial testimony they might expect from the

Bayer witnesses and the types of cross-examination that their witnesses and clients

might expect at trial from Bayer's counsel.  The trial preview, when combined

with the discovery, is a great benefit for all plaintiffs, whether they are producers,

non-producers, or ENPs.

The objectors' additional arguments on this issue do not diminish the

substantial benefit they have received from the leadership group's work or make

the trust inappropriate.  Complaints that the leadership group's work was poor is

belied by the evidence that was presented at the two bellwether trials before me.

That evidence was well-organized and well-presented, and two juries found it

persuasive.  These minor complaints about the organization or presentation of the

leadership group's work ignore the significant amount of time and effort the

leadership group spent in obtaining the documents and depositions in the first

place.  Additionally, I reject the objectors' arguments that because they did some

of their own pre-trial preparation, they should not have to contribute.  It was never

intended that the leadership group would perform all of the work for every

plaintiff in this litigation.  Plaintiffs are substantially benefitted by "the mere

availability" of relevant discovery, even if an objecting plaintiff chooses not use it. *In re Diet Drugs*, 582 F.3d at 544-45. In this case, of course, the objectors have actually used the leadership group's materials.

### E.     Reasonableness of the Amount of the Set-Aside

A majority of the producer and domestic non-producer plaintiffs, as well as one ENP, agree that the amounts requested by the leadership group are reasonable. The reasonableness of the amount of a contribution is a fact-dependent determination. *See In re Air Crash Disaster at Florida Everglades*, 549 F.2d at 1011-12; *Turner v. Murphy Oil*, 422 F. Supp. 2d 676, 680-82 (E.D. La. 2006). Courts have ordered contributions between 9% and 17% in MDLs for common benefit work. *See In re Protegen Sling and Vesica System Products Litigation*, MDL No. 1387, 2002 WL 31834446, at *1 (D. Md. Apr. 12, 2002) (9%); *Turner*, 422 F. Supp. 2d at 684 (12%); *In re Bone Screw*, 1996 WL 900349, at *3 (17% contribution included  5% for costs and as much as 12% for fees, although the court noted that it would reconsider the contribution amount for fees at a later date). The amounts suggested here by the leadership group are generally reasonable, although I will reduce the contribution required in the European non-producer cases.

The leadership group agrees that the non-producers have benefitted slightly

-14-

less than the producers, and this is why they have reasonably suggested a lower percentage contribution from the non-producer cases. All pools of plaintiffs need not contribute to the trust equally. *See In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Products Liability*, MDL No. 1203, 2002 WL 32154197, at *6  (E.D.Pa. Oct. 3, 2002).  For example, the court in *Diet Drugs* ordered that attorneys' fees be paid in different percentages from three different trust funds.  *Id.*  Each trust was designated to pay only certain pools of plaintiffs, such as plaintiffs who had taken diet drugs for less than six months versus plaintiffs who had taken diet drugs for longer periods.  *Id.*  Other courts have imposed different set-asides based on whether the pools of plaintiffs were in state or federal courts, or based on when they joined the litigation.  *See In re Clearsky Shipping*, No. Civ. A. 96-4099, 2003 WL 1563820, at *1-4 (E.D.La. Feb. 26, 2003).  Because the Eurpean non-producers' claims are different, however, I will order a lower contribution for their cases from that of the other non-producers. This order divides the cases into three pools – producers, non-producers, and ENPs – instead of two pools as suggested in the motion.  The expense set aside for each group will remain at 3% as requested; the fees set aside will be 8% for producer cases, 7% for non-producer cases, and 6% for European non-producer cases.  The totals will thus be 11%, 10%, and 9%, respectively.

These set aside amounts appear to provide a large enough fund to compensate the leadership group (or other plaintiffs' lawyers who have provided a substantial benefit to clients other than their own) for their common-benefit work. Additionally, I do not believe that the lower contribution amount ordered for the ENPs will have a significant effect on the trust's ability to compensate the leadership group.

The order establishing a contribution amount is not an award of attorneys' fees and, as such, it is unnecessary at this time to determine whether the leadership group has earned the entirety of the proposed contribution. *See Turner*, 422 F. Supp. 2d at 680-81. Indeed, the order I enter allows any plaintiff's attorney to petition for a distribution, and the amounts of any distributions will be made at a later time.

**F.    Prematurity**

The objectors also contest the timing of the trust, claiming that it is premature and that it should not be established until after an opportunity for discovery and an accounting. I find that the timing of this motion is entirely appropriate. *See In re Zyprexa*, 467 F. Supp. 2d at 266; *Turner*, 422 F.Supp.2d at 680 ("it has been a common practice in the federal courts to impose set-asides in the early stages of complex litigation in order to preserve common-benefit funds

-16-

for later distribution."); Manual for Complex Litigation (Fourth) § 14.215 ("Early in the litigation the court should . . . establish the arrangements for the [leadership group's] compensation, including setting up a fund to which designated parties should contribute in specified proportions").  The court in *Zyprexa* noted that, "[e]ven if no common benefit compensation had yet been earned, there would be a need to put a holdback method into place promptly."  *Id.*  Here, the leadership group has already conferred a substantial benefit upon all of the other plaintiffs and plaintiffs have already obtained favorable verdicts in two bellwether trials.  It is entirely appropriate to establish a trust at this time, and no accounting is now required.  Before any distributions are made from the fund, the court will provide an opportunity for all parties to be heard and to seek appropriate information.

### G.   **Penalty**

Some of the objectors characterize the contribution requirement as a "tax," an "assessment," a "levy," or a "penalty" and claim that the contribution encourages state court filing and gives plaintiffs an improper incentive to hire leadership group attorneys as their personal counsel.  Other courts have explicitly rejected these arguments.  *See Turner*, 422 F. Supp. 2d at 681; *In re Linerboard*, 292 F. Supp. 2d at 662-63.  I agree that this is not a penalty and that it does not burden the plaintiffs' freedom to chose their own counsel.  As demonstrated by the

-17-

agreement of so many plaintiffs' lawyers, there is no shortage of counsel who will agree to represent these plaintiffs even with the set-aside.

### H.   Bayer's Additional Objections

The establishment of the trust fund will not have a financial impact on Bayer.  Instead, Bayer will be required to deposit a portion of any award or settlement into the fund.  Bayer argues that establishing the trust now will encourage filing in state court, instead of federal court.  The plaintiffs who can do so have already sought to proceed in state court, and Bayer has removed all the cases that are removable.  I therefore do not think this is a reason to delay establishment of the trust.  I am concerned, however, that more plaintiffs might attempt to dismiss their federal cases without prejudice so they could refile in state court, but I believe my managerial authority over the cases can prevent any prejudice from this.  In the past, I had imposed conditions on certain dismissals without prejudice, at defendants' request, although I have not recently done so. Because my case management orders have prevented the defendants from filing answers in most of the individual cases, the provisions of Rule 41(a)(1)(A)(i), Federal Rules of Civil Procedure, which normally allow plaintiffs to dismiss without prejudice as of right under certain circumstances, do not apply to the cases

in this MDL.[5]  I will not authorize any further unconditional dismissals without prejudice unless they are agreed to by the defendants in the particular case.[6]

Finally, I am not concerned that the establishment of the common benefit fund will hinder settlement.  Instead, all parties will know what is expected, and that certainty should assist, not hinder, settlement negotiations.

For the reasons stated above:

**IT IS HEREBY ORDERED** that the leadership group's motion to establish a common benefit fund [#1458] is **GRANTED** to the extent set forth herein.

**IT IS FURTHER ORDERED** that motions for joinder of the leadership group's motion [## 1511, 1513, 1514, 1515, 1517, 1523, 1526, 1534, 1536, 1538, 2507] are **GRANTED**.

**IT IS FURTHER ORDERED** that the motion of the plaintiffs represented by Patrick Pendley to withdraw their objection to the establishment of the common benefit fund [#2507] is **GRANTED**.

---

[5]Arguably, these provisions do not apply in any event, because the defendants' earlier motions for summary judgment on jurisdictional and other grounds applied to all cases.

[6]Certain Notices are pending at this time, and I will direct the Clerk of Court to convert those to motions.

**IT IS FURTHER ORDERED** that:

1.      Lead Counsel shall establish a common benefit trust fund at a national bank in the name of and to be maintained by Lead Counsel, the purpose of which will be to hold funds as provided in this Order to compensate attorneys for services rendered for the plaintiffs' common benefit and to reimburse them for expenses incurred in conjunction with those common benefit services.

2.      Defendants shall hold back and set aside for placement into Lead Counsel's common benefit trust fund the following amounts related to each federal genetically modified rice case, and related to each state case where either the parties agree or the state court having jurisdiction orders:

(i)      8% of any gross recovery obtained by producer plaintiffs, by way of judgment, settlement, or otherwise, for attorneys' fees;

(ii)      7% of any gross recovery obtained by non-producer plaintiffs, except for the ENPs, by way of judgment, settlement, or otherwise, for attorneys' fees;

(iii)      6% of any gross recovery obtained by European non-producer plaintiffs, except for Rickmers, by way of judgment, settlement, or otherwise, for attorneys' fees; and

(iv)      an additional 3% of any gross recovery obtained by any plaintiff included above, except for Rickmers, by way of judgment, settlement, or

-20-

otherwise, for common benefit costs and expenses incurred by attorneys providing a common benefit.

3.      The requirements of paragraph 2 shall apply to federal cases regardless of whether a plaintiff's case is disposed of during the time it is on the docket of the this court or following remand to the transferee court or transfer to another federal district court.  The obligation shall follow the case to its final disposition including a court having jurisdiction in bankruptcy.

4.      Defendants may make contributions to the common benefit trust fund established in paragraph 1 of any amounts held back and set aside from settlements or judgments arising from any state-court case related to genetically modified rice if the plaintiffs' counsel agree to participate in the common benefit fund, or if a state court orders participation.  I encourage all plaintiffs' counsel having cases in both this federal court and in state courts to agree to participate in the fund, and I encourage defendants to seek the state court plaintiffs' agreement as part of any settlements or to seek orders for participation from the appropriate state courts.  Any funds from state court settlements or judgments will be distributed from the fund on the same basis as those from the federal cases.

5.      No disbursement shall be made from the aforesaid common benefit trust fund established by Lead Counsel and maintained by them and in their

names, as provided in paragraph 1 of this Order and funded as provided in paragraphs 2, 3 and 4 of this Order, except upon further order of this court after a hearing upon notice to all parties.  At the appropriate time, any plaintiffs' counsel (whether part of the leadership group or not) may petition for distribution of funds if that counsel believes he or she has provided a common benefit to plaintiffs other than his or her own clients.

6.     At such time as the trust account contains balances that are not necessary to be retained for the payment of fees and costs, the Court will, subject to applicable provisions of law and following a hearing, make refunds on an equitable basis, or if such balances are of small amounts, enter such orders concerning the disposition of such funds as are appropriate under the law.

**IT IS FURTHER ORDERED** that from this point forward any plaintiffs' claims may only be dismissed without prejudice by stipulation under Rule 41(a)(1)(A)(ii), Fed. R. Civ. P., or by court order on motion under Rule 41(a)(2), Fed. R. Civ. P.  If any plaintiff attempts to file a notice of dismissal without prejudice under Rule 41(a)(1)(A)(i), the Clerk of Court will docket that as a motion to dismiss without prejudice, and any objecting defendant must file its opposition (including any  request that conditions be imposed on dismissals) within seven days thereafter.  If no objections are filed within seven days, the

court will grant the motion.

**IT IS FURTHER ORDERED** that the Clerk of Court shall change the following pending notices of voluntary dismissal to motions for dismissals without prejudice, and defendants shall file any memorandum in opposition or request that the dismissal be entered on conditions, no later than **Friday, March 5, 2010**:

*LKZ, Inc. v. Bayer CropScience, et al.*, 4:08CV1210, Notice of Dismissal filed 2/18/10, docket entry # 10 (docket entry # 2556 in 4:06MD1811).

*Zachary Northcutt Farms v. Bayer CropScience, et al.*, 4:08CV1211, Notice of Dismissal filed 2/18/10, docket entry # 7 (docket entry # 2557 in 4:06MD1811).


_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE


Dated this 24th day of February, 2010.