UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE GENETICALLY MODIFIED RICE LITIGATION | ) | Case No. 4:06MD1811 CDP |
| | ) | |
| This Order Relates to: | ) | |
| | ) | |
| *Veetee Rice Ltd v. Riceland Foods, Inc.*, *et al.* | ) | Case No. 4:07CV1211 CDP |

**MEMORANDUM AND ORDER**

This case is before the Court as part of multidistrict litigation stemming from the spread of genetically modified rice into the U.S. commercial supply. Plaintiff Veetee Rice Limited claims that defendant Riviana Foods, Inc. and others wrongfully shipped genetically modified rice to Europe, causing a disruption in the European market for U.S. long-grain rice. Veetee seeks damages resulting from this market disruption, including lost profits. In its motion for partial summary judgment, Riviana asks the Court to dismiss Veetee's claims for lost profits. As discussed below, I conclude that genuine disputes of material fact remain regarding the claims for lost profits, and so I will deny the motion for summary judgment.

**Background**

Veetee Rice Limited is a U.K. company that purchases rice from around the world and imports it into the European Union. Riviana Foods, Inc. is a Texas

company that ships rice to domestic and international buyers, including Veetee. Veetee claims that a significant portion of its business results from its re-sale of U.S. long-grain rice. Before the events giving rise to this lawsuit, Veetee regularly purchased U.S. long-grain rice from Riviana.

In August of 2006, the United States Department of Agriculture reported that the U.S. long-grain rice supply had been contaminated by a genetically modified (GM) rice known as LLRICE 601. Before August of 2006, the USDA had not approved LL601 for commercial production. In the spring of 2007 the USDA announced the discovery of another version of unapproved GM rice, LLRICE604, in the commercial supplies. These strains of GM rice were developed by Bayer CropScience. Neither Riviana nor Veetee participated in the creation or testing of LLRICE 601 or 604.

At the time the contamination was discovered, the European Union prohibited the import or distribution of GM rice. After the reports of contamination, the EU required that all long-grain rice imported from the United States be certified by the shipper as GM free. Even before this announcement, Veetee had required its suppliers to certify that the rice sold to Veetee was GM free. Between August and November of 2006, several shipments of U.S. long-grain rice arrived in Europe bearing certificates that the shipments were GM free.

Some of these shipments later tested positive for GM contamination. In November of 2006, the EU instituted its own testing requirements for shipments of U.S. long-grain rice, requiring that all shipments be tested upon their arrival in the EU. Shortly after the EU instituted its border testing program, virtually all shipment of U.S. long-grain rice to Europe ceased.

Before 2006, Veetee and Riviana had entered into numerous contracts to ship U.S. long-grain rice from the United States to Europe. Riviana provided a certificate to Veetee with each shipment stating that it was GM free. Riviana admits that it never tested any of its shipments for GM contamination. Instead, Riviana issued its certificates based on a general belief that GM rice was not present in the U.S. commercial supply.

Among other damages, Veetee seeks to recover lost profits for the time it was unable to obtain U.S. long-grain rice. This damage claim is the subject of Riviana's motion for partial summary judgment; Veetee's other damage claims are not at issue on this motion. Veetee's claim relies on two arguments: (1) Riviana should have tested its rice before shipping, and its failure to do so contributed to the market disruption, which would have been less costly if the contamination had been discovered earlier; and (2) Riviana's shipment of GM contaminated rice to the EU led to the EU's border testing program. Riviana argues that its actions

cannot be the proximate cause of any of Veetee's claims for lost profits.[1]

**Discussion**

The Federal Rules allow a party to "move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim." FED. R. CIV. P. 56(b). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The party opposing the motion must demonstrate a genuine issue for trial using affidavits or other evidence. FED. R. CIV. P. 56(e). On a motion for summary judgment, courts will not weigh the evidence to decide the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Veetee bases its claim for lost profits on theories of negligence, breach of contract, and breaches of several types of warranties. Although there is some difference in the causation that must be proven for the theories, that difference

[1]Riviana also argues that it did not owe Veetee a duty to test or a duty not to ship GM contaminated rice to the EU. Riviana argues that it reasonably believed there was no GM rice grown in the United States and that any testing would have been ineffective or infeasible. A duty may arise from the relationship of the parties or from a contract. *Marlar v. Daniel*, 247 S.W.3d 473, 476 (Ark. 2007); *Texas Home Management, Inc. v. Peavy*, 89 S.W.3d 30, 34-36 (Tex. 2002). Riviana provided Veetee with certificates expressly warranting that its rice was GM free. At a minimum, it had a duty to use reasonable care to see that its certifications were true.

does not affect the outcome of the summary judgment motion here.[2] Under a negligence theory, the plaintiff must prove that Riviana's negligent actions were the proximate cause of its damages. *Sykes v. Williams*, 283 S.W.3d 209, 217 (Ark. 2008) (holding that a back injury was not caused by being un-insured); *Employees Retirement System v. Putnam, LLC*, 294 S.W.3d 309, 316 (Tex. App. 2009) ("the components of proximate cause are (1) cause-in-fact and (2) foreseeability."). For the breach of contract and breach of warranty claims, lost profits are a form of recoverable consequential damages so long as they are foreseeable. *See Reynolds Health Care Services, Inc. v. HMNH, Inc.*, 217 S.W.3d 797, 803 (Ark. 2005); *Penner Cattle, Inc. v. Cox*, 287 S.W.3d 370, 372 (Tex. App. 2009); ARK. CODE ANN. § 4-2-715, et seq. (West 2009); TEX. BUS. & COMMERCE CODE § 1.101, et seq. (Vernon 2009).

Proximate cause is typically a question of fact for the jury. *Lovell v. Brock*, 952 S.W.2d 161, 166 (Ark. 1997). Courts should find as proximate only those causes "which in a natural and continuous sequence produce damage." *Schmoll v.*

---

[2]The choice of governing law also does not affect the outcome, as the parties agree that the result would be the same under either Texas or Arkansas law. Both states have adopted the Uniform Commercial Code as the basis for their contract and warranty law. *See* ARK. CODE ANN. § 4-2-101 *et seq.* (West 2009); TEX. BUS. & COMMERCE CODE ANN. § 2.101 *et seq.* (Vernon 2009). Both states use the same elements of common-law negligence: duty, breach of duty, proximate cause. *See e.g. Fordyce Bank & Trust Co. v. Bean Timberland, Inc.*, 251 S.W.3d 267, 271 (Ark. 2007); *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006).

*Hartford Cas. Ins. Co.*, 104 Ark. App. 215, 2008 WL 5424026, at *4-5 (Ark. Ct. App. 2008); *Sykes v. Williams*, 283 S.W.3d 209, 217 (Ark. 2008) . Proximate cause must be the "efficient and responsible cause, but it need not be the last or nearest one." *Shannon v. Wilson*, 947 S.W.2d 349, 356 (Ark. 1997). Intervening causes do not absolve a defendant of liability if the defendant could have reasonably anticipated that the intervening event might, "in the ordinary course of things," follow his act of negligence. *Ouachita Wilderness Institute, Inc. v. Mergen*, 947 S.W.2d 780, 785 (Ark. 1997).

Veetee has evidence from which a jury could find that Riviana could have discovered the contamination if it had tested earlier, and that this could have lessened Veetee's losses. The November EU Commission Decision that created the border testing program stated that the reason for its border testing was that:

> Checks by Member States have also revealed the presence of genetically modified 'LL RICE 601' in some consignments despite being accompanied by an original analytical report as requested by [the Commission's August 2006 Decision]. . . in order to ensure that no contaminated product is placed on the market . . . it appears necessary. . .to carry out systematic official sampling and analysis of each consignment of specific products originating from the United States before their placing on the market.

*Commission of the European Communities Decision*, 2006 CEC (CCH) 2006/754/EC. Veetee produced admissions by Riviana that Riviana shipped GM

contaminated rice to the EU in 2006, that Riviana did not test its shipments for GM contamination, and that Riviana's shipments to Veetee bore certificates guaranteeing them to be GM free. The EU decision states that this is precisely the scenario that led it to institute border testing. Veetee also has presented evidence that the border testing disrupted shipments of U.S. long-grain rice to the EU. Veetee could not obtain U.S. long grain rice to sell, and therefore it lost the profits it would have made from those sales. A jury could find that these facts create a causal link from Riviana's actions to Veetee's lost profits.

Veetee also has provided evidence from which a jury could find that Riviana should have foreseen that its actions would lead to Veetee's lost profits. Riviana's president had recently returned from living in Europe while he was in charge of Riviana's European operations. He and others at Riviana knew that shipment of GM contaminated foods to the EU would likely result in a harsh response, and Riviana was on notice of the potential economic harm that shipping GM contaminated rice could cause to the EU rice market. Furthermore, a jury could find that Riviana should have known that the EU would institute strict requirements, such as the border testing, if shipments of rice certified by the shipper as GM free turned out to be contaminated.

A reasonable jury could find that Riviana knew that special damages would

occur if it breached its contract by shipping GM contaminated rice. Riviana admits that it shipped its rice with certificates guaranteeing that it was GM free and that some of its shipments were contaminated. Riviana's president knew of the EU's intolerance towards GM foods and, as of August 2006, knew that the EU was already taking measures to prevent shipment of GM contaminated food into the EU by requiring that shippers provide certificates that its shipments were GM free. Based on Riviana's knowledge of these facts, a jury could infer that Riviana had "more than mere knowledge," but instead actually contemplated that its participation in shipping contaminated rice to Veetee in the EU would lead to "more than ordinary damages." In *Reynolds Health Care*, the court noted that a customer's telling a bank that he was "going to hold the Bank responsible," if the bank breached its contract was sufficient to support a jury's finding that the seller tacitly agreed to be liable for lost profits. *Reynolds Health Care*, 217 S.W.3d at 806-7. The evidence presented is sufficient for the claim to survive summary judgment, because a reasonable jury could find that Riviana had notice that Veetee intended to hold it liable for more than ordinary damages at the time of contract.

**Conclusion**

For the reasons stated above, the Court finds that genuine disputes of fact remain regarding the essential elements of Veetee's claims for lost profits under its

negligence, breach of contract, and breach of warranty theories, and Riviana is therefore not entitled to summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that Riviana's motion for partial summary judgment [#143, #1364] is DENIED.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 29th day of March, 2010