UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


IN RE GENETICALLY MODIFIED     )      Case No.   4:06MD1811 CDP
RICE LITIGATION                )        ALL CASES


## MEMORANDUM AND ORDER

      This order deals with the motions for summary judgment related to the

Louisiana bellwether trial, scheduled to begin later this month. The trial will

consider the claims of two groups of plaintiffs. The two groups are the

Thibodeaux plaintiffs and the Deshotels plaintiffs. The Thibodeaux plaintiffs are

Robert D. Thibodeaux, Randy K. Thibodeaux, and Steven P. Thibodeaux,

individually and as partners in Thibodeaux Bros. Farms, and Thibodeaux Land

Company, Inc. The Deshotels plaintiffs consist of Deshotels Farm Management

and the partners that comprise the entity Danny Deshotels, Errol Deshotels,

Benjamin Deshotels, Patrick Deshotels, Julie E. Deshotels, Woodside Farms, Inc.,

D&B Plantation, LLC, P&B Plantation, LLC, and P&E Plantation, LLC.

      The parties have filed a number of motions for summary judgment and to

exclude or limit expert testimony. To a large extent, the Louisiana motions before

me are the same as the motions I ruled on in previous bellwethers. The parties

have appropriately referenced their previous motions and my previous orders, and

I will do the same in this order. I have, however, considered the issues anew and with regard to the appropriate Louisiana law. Although I have not changed the substance of any of the previous rulings, there are some differences because of the state law and the nature of the plaintiffs' claims.

The Louisiana plaintiffs seek damages for alleged violations of the North Carolina Unfair Trade Practices Act.[1] They also each seek to impose liability under negligence *per se* theories based on alleged violations of the federal Plant Protective Act and its accompanying regulations.[2] The complaint also seeks damages under theories of negligence and public and private nuisance based on alleged violations of Louisiana laws.[3] However, plaintiffs have notified the Court that they will not pursue their claims for negligence *per se* and public and private nuisance and do not oppose Bayer's motion for summary judgment on these issues.[4]

For the reasons that follow and for the reasons that were described in more detail in my October 9, 2009 Memorandum and Order [docket #1604] , I will grant

---

[1] Count 33 of Plaintiffs' Master Consolidated Complaint (docket # 1010).

[2] Count 12.

[3] Counts 9-11.

[4] Docket #2846.

the motions in part and deny them in part.[5]  I will grant defendants' motions for

summary judgment on plaintiffs' claims under the North Carolina Unfair Trade

Practices Act and on plaintiffs' claims for negligence *per se* and for public and

private nuisance, and I will grant plaintiffs' motions for summary judgment

directed to certain affirmative defenses.  I have determined as a matter of law that

the regulations under the Plant Protection Act do not allow for low level or

adventitious presence of regulated genetically modified rice in the commercial rice

supply, and so I will not allow any of defendants' expert witnesses to opine to the

contrary.  I have limited the testimony of various expert witnesses in other

relatively minor ways.  Otherwise, I have denied the remaining motions.

## 1.    <u>Violations of Statutes or Regulations</u>

In the October 9, 2009 Memorandum and Order, I determined that neither

the  Plant Protection Act, 7 U.S.C. § 7701 *et seq*., nor the regulations issued under

that act, 7 C.F.R. § 340 *et seq*., allow any level of adventitious presence of

regulated articles such as LLRICE 601 and LLRICE 604 in the commercial rice

supply.  That ruling applies equally here, and has the same consequences that it

---

[5]In ruling on all the summary judgment motions, I have viewed the facts and inferences in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

had in the earlier cases.

## 2. North Carolina Unfair Trade Practices Act

The Bayer defendants seek summary judgment on plaintiffs' claims under the North Carolina Unfair Trade Practices Act, N.C. Gen. Stat. § 75-1.1 *et seq.* (West 2009). It is undisputed that these Louisiana plaintiffs have no North Carolina operations. The question presented by this motion is whether the Act provides a remedy to an out-of-state plaintiff to recover for out-of-state injuries allegedly resulting from unfair acts that occurred in North Carolina. The analysis for this claim is identical to the analysis of the same claim discussed in my October 9, 2009 order. For the same reasons that I concluded that the North Carolina Act did not apply to the Missouri plaintiffs, I also conclude that the Act does not provide a cause of action to these Louisiana plaintiffs.

## 3. Legal Cause

Bayer moves for summary judgment on the Louisiana plaintiffs' negligence claims by arguing that plaintiffs cannot show that Bayer's actions were the legal cause of their injuries. Under Louisiana law "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. Civ. Code art. 2315 (West 2010). A party may recover for negligence under Article 2315 by showing:

> (1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element).

*Long v. State ex rel. Dept. of Transp. and Development*, 916 So.2d 87, 100-01 (La. 2005).

The fourth element of negligence – legal cause – is determined based on the facts and circumstances of each case. *Todd v. State Through Dept. of Social Services, Office of Community Services*, 699 So.2d 35, 39 (La. 1997). The proper inquiry for determining legal cause is the "ease of association of the injury with the rule of conduct that is urged." *Todd*, 699 So.2d at 39. Ease of association is determined by considering two factors – the foreseeability of the harm and whether policy considerations indicate that the allegedly breached duty was intended "to protect the particular plaintiff against the particular harm." *See id.*; *Rando v. Anco Insulations, Inc.*, 16 So.3d 1065, 1092-93 (La. 2009). A "determination of legal cause involves a purely legal question." *Todd*, 699 So.2d at 39.

In this case, plaintiffs have provided sufficient evidence that Bayer could

have foreseen the harm caused by the escape of its LL Rice. Bayer's employees stated in deposition testimony that they knew that there was a possibility of escape, that the EU would not accept genetically modified rice, and that the consequences of an escape would be damage to the EU rice market. Therefore, plaintiffs have shown that Bayer could have foreseen that its negligence would case harm to the plaintiffs by harming the EU rice market.

In addition, the duty that Bayer allegedly breached – to prevent the escape of its genetically modified rice – was intended to prevent harm to these particular plaintiffs. If LL Rice escaped, the first individuals to be affected would naturally be rice farmers, whose fields would be contaminated with Bayer's genetically modified rice. The plaintiffs in this case are rice farmers, therefore, they were the type of individuals that the duty of containment was intended to protect.

Similarly, Bayer's duty to contain its genetically modified rice was at least in part intended to prevent the particular kind of harm that plaintiffs allege. Plaintiffs seek to recover damages based on the harm to the EU rice market caused by the contamination. Bayer's duty to confine LL Rice is reflected in the Plant Protection Act, 7 U.S.C. § 7701 *et seq.* The Act was created based on an understanding that "export markets could be severely impacted by the introduction or spread of plant pests or noxious weeds into or within the United States." 7

U.S.C.A. § 7701(6) (West 2010).  Therefore, Bayer's duty to confine its

genetically modified rice was at least in part intended to prevent the precise type

of harm alleged by plaintiffs in this case.[6]  As a result, Bayer has not shown that it

is are entitled to summary judgment on this issue as a matter of law.

### 4.  <u>Negligence *Per Se* and Public and Private Nuisance</u>

The Bayer defendants have moved for summary judgment on the Louisiana

plaintiffs' claims for negligence *per se* and public and private nuisance.  Plaintiffs

do not oppose Bayer's motion on these claims and so I will grant the motion for

summary judgment on these issues.

---

[6]Bayer also argues that Louisiana courts, as a rule, prohibit claims for indirect economic losses, but Louisiana law does not make such a categorical distinction.  Bayer cites several cases in support of its argument, including *PPG Industries, Inc. v. Bean Dredging*, 447 So.2d 1058 (La. 1984); *Louisiana Crawfish Producers Ass'n-West v. Amerada Hess Corp.*, 935 So.2d 380 (La. Ct. App. 2006); *Phillips v. G & H Seed Co., Inc.*, 10 So.3d 339 (La. Ct. App. 2009); *Desormeaux v. Central Industries, Inc.*, 333 So.2d 431 (La. Ct. App. 1976).  All of these cases rely on the rule from *Robins Drydock*, which states that a "tort to the person or property of one man does not make the tort-feasor liable to another merely because the injured person was under a contract with that other unknown to the doer of the wrong."  *Robins Drydock & Repair Company v. Flint*, 275 U.S. 303 (1927).

The purpose of the rule is to prevent the tortfeasor from being held liable, not only to the victim, but to everyone who has a contract with the victim when the tortfeasor was unaware of the contract, or in other words,  to "all people for all damages."  *PPG*, 447 So.2d at 1061.  In this case, plaintiffs are not seeking to recover because of damage to the property of someone with whom they have a contract; rather, they seek to recover for their own losses that resulted directly from Bayer's acts.  In addition, even if the rule in *Robins Drydock* did apply to this case, Louisiana courts do not apply it without reference to the individual facts of the case.  *See Cleco Corp. v. Johnson*, 795 So.2d 302 (La. 2001).  As described above, plaintiffs have sufficiently shown legal cause to avoid Bayer's motion for summary judgment on this issue.

**5.     Affirmative Defenses 11 and 13**

Because adventitious presence is not allowed, I will grant plaintiffs'

motions for summary judgment on defendants' affirmative defenses 11 and 13.

Those defenses assert that defendants are not liable for any injuries because they

"complied fully with all applicable statutes and regulations regarding genetically

modified crops."  The undisputed facts show that the performance standards were

not met here because the required result was not met: there was a release into the

environment and the regulated article or its offspring has persisted in the

environment.

**6.     Affirmative Defense 14 - Industry Standards**

Plaintiffs are entitled to summary judgment on Bayer's affirmative defense

14, which alleged that it was not liable because it complied with state-of-the art

industry standards.  Bayer agrees that this defense only applied to the plaintiffs'

strict liability claims, which plaintiffs have withdrawn.

**7.     Affirmative Defense 4 - Intervening Cause**

Bayer asserts in affirmative defense 4 that it cannot be held liable "due to

the intervening and/or superseding acts or omissions of parties or non-parties to

this action for whose acts or omissions the BCS Defendants and Bayer

Corporation are not liable."  The Louisiana plaintiffs, like the Missouri, Arkansas,

and Mississippi plaintiffs, are entitled to summary judgment on this defense.

Under Louisiana law "[a]n intervening cause is one which comes into play after the defendant's negligent conduct has ceased, but before the plaintiff suffers injury." *Adams v. Rhodia, Inc.*, 983 So.2d 798, 808 (La. 2008). A tortfeasor "will not be relieved of the consequences of his or her negligence unless the intervening cause superceded the original negligence and alone produced the injury." *Id.* If the intervening cause "could or should have reasonably" been foreseen, the initial tortfeasor will be liable "notwithstanding the intervening cause." *Id.*

The evidence adduced by Bayer reveals that the negligence of third parties, if any, was foreseeable and reasonably anticipated by defendants. As the "responsible party" allowed to introduce LL601 and LL604 into the environment, Bayer had a duty to introduce those products without negligence. Contamination of non-GM rice by LL601 and LL604 is the known and foreseeable risk that Bayer had a duty to prevent. As a matter of law, plaintiffs are entitled to summary judgment on defendants' affirmative defense of intervening cause.

### 8. *Daubert* Motions

Both plaintiffs and defendants again seek to exclude each others' experts under *Daubert*. These objections mirror those made to the same experts and the same testimony in the Missouri bellwether trial. With minor exceptions, the

parties' arguments are identical to their previous arguments. Because the parties' arguments, old and new, are sufficiently addressed in the October 9 order, I will not recite them here.

Rule 702 permits expert testimony if it "will assist the trier of fact to understand the evidence or to determine a fact in issue. . . ." Fed. R. Evid. 702. The key inquiries are the (1) factual basis of the opinion, (2) reliability of the method and application, and (3) the relevance of the testimony. *Id.*; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993).

The parties' witnesses in this case qualify as experts through education and experience. *See* Fed. R. Evid. 702. They may state their opinions within the subject of their expertise, so long as they opinions were disclosed in their expert reports, are based in fact, and a proper foundation is laid at trial. *Id.*; Fed. R. Civ. P. 26. While they may not testify on matters outside of their expertise, they may apply the results of another expert's calculations, if a foundation is laid showing that they are qualified to do so. *See Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002); *see also Beck's Office Furniture & Supplies, Inc. v. Haworth, Inc.*, Nos. 95-4018, 95-4029, 1996 WL 466673, at *7-8 (10th Cir. Aug. 16, 1996). For instance, a rice-growing expert may testify about the reasonableness of Bayer's growing practices, even though he may not testify about

market damages.  An accountant may apply the results of an economist's market damages calculations to a particular farm, but the accountant may not give an opinion on the accuracy of the economist's calculations.  Experts may also critique the methodology of other experts, provided that they do so in their role as experts and the testimony is based on a reliable method of analysis.

Experts may not draw legal conclusions or interpret laws or regulations. *See Garrett v. Albright*, No. 06-CV-4137-NKL, 2008 WL 697590, at * 4 (W.D. Mo. Mar. 11, 2008).  No witness may testify that the regulations allow adventitious presence or that Bayer violated or complied with a standard of care prescribed by the regulations.  Nor may witnesses testify that Bayer is liable because it is listed as the "responsible party" in its USDA filings.  The experts may not recite hearsay, such as conversations with the USDA, APHIS, or the U.S. Rice Federation.  *See* Fed. R. Evid. 802.  Finally, expert testimony is limited to issues that are relevant to this trial.  Fed. R. Evid. 402.  For example, an expert's opinion about Bayer or LSU's growing practices in 2007 or 2009 is not relevant or helpful to assist the jury in understanding whether Bayer was negligent during the LL Rice 601 and 604 field trials.

### 9.    Agency and Successor Liability

The analysis of the Louisiana plaintiffs' summary judgment motion seeking

to establish the status of various defendants as successors, partners and agents of one another is essentially the same as in my October 9 order for the Missouri plaintiffs. And, as I concluded in that order, I conclude that genuine disputes of fact remain as to agency and joint venture liability, but certain facts are established without dispute.

### a. Undisputed Facts Established for Trial

The following facts are not genuinely disputed, and are therefore established for the upcoming trial:

a.      Bayer CropScience AG, as the survivor of its April 1, 2007, merger with Bayer CropScience GmbH ("BCS GmbH") assumed all assets and liabilities of BCS GmbH, including any liabilities which arose regarding the activities related to LibertyLink rice at issue in this litigation, and therefore is the successor to BCS GmbH, including the time periods when BCS GmbH was previously known as Aventis CropScience GmbH ("ACS GmbH") or Hoechst Schering AgrEvo GmbH ("AgrEvo GmbH"), and as successor is subject to liability for the acts of its predecessors;

b.      BBS NV, as the successor by name change to Bayer CropScience NV ("BCS NV"), Aventis CropScience NV ("ACS NV"), and Plant Genetic Systems NV ("PGS"), is subject to liability for any acts which occurred regarding the activities related to LibertyLink rice at issue in this litigation during the time periods in which it was known as BCS NV, ACS NV and/or PGS;

c.      BCS LP, as the successor by name change to ACS USA LP, is subject to liability for the activities related to LibertyLink rice at issue in this litigation during the time period in which it was known as ACS USA LP and for any such liability assumed by or transferred to ACS

USA LP from AgrEvo USA Company ("AgrEvo USA") or its general partners;

d.      ACS USA LP, and thus BCS LP, assumed and had transferred to it all liabilities incurred by AgrEvo USA and its general partners regarding their activities related to LibertyLink rice at issue in this litigation during the period in which they conducted those activities;

e.      Starlink, as the successor by name change to Aventis CropScience USA Holding Inc. ("ACS USA Holding"), is subject to liability as general partner of ACS USA LP related to LibertyLink rice at issue in this litigation during the period from December 1999 to December 2001;

f.      BCS Holding Inc., as the successor by name change to Aventis CropScience USA Holding II Inc. ("ACS Holding II Inc."), is subject to liability as general partner of BCS LP related to LibertyLink rice at issue in this litigation;

g.      BCS Inc., as the successor by merger and name change from Rhone Poulenc Ag Company Inc. is subject to liability of AgrEvo USA and its general partners, AgriVet, Inc. ("AgriVet") and NOR-AM Chemical Company ("NOR-AM"), related to LibertyLink rice at issue in this litigation and which may have arisen during the time such activities were undertaken by AgrEvo USA prior to the formation of ACS USA LP.

## b.      Joint Venture

Under Louisiana law, "the fundamental elements of a joint venture are generally the same as those of partnership, and, accordingly, joint ventures are governed by the law of partnership." *Transit Management of Southeast Louisiana, Inc. v. Group Ins. Admin., Inc.*, 226 F.3d 376, 383 (5th Cir. 2000)

(citing *Cajun Elec. Power Co-op., Inc. v. McNamara*, 452 So.2d 212, 215 (La. Ct. App. 1984)). As a result, a joint venture "is a juridical person, distinct from its partners, created by a contract between two or more persons to combine their efforts or resources in determined proportions and to collaborate at mutual risk for their common profit or commercial benefit."[7] La. Civ. Code art. 2801 (West 2005). The elements of a joint venture are:

> (1) A contract between two or more persons; (2) A juridical entity or person is established; (3) Contribution by all parties of either efforts or resources; (4) The contribution must be in determinate proportions; (5) There must be joint effort; (6) There must be a mutual risk vis-a-vis losses; (7) There must be a sharing of profits.

*Cajun Elec. Power*, 452 So.2d at 215. If the parties satisfy these elements, a joint venture is formed, regardless of the language used in the agreement and "even if the parties had not thought of such consequences or even sought to avoid certain consequences of the relationship." *Gabriel v. Hobbs*, 804 So.2d 853, 855 (La. Ct. App. 2001); *see also Smith v. Scott*, 655 So.2d 582, 585 (La. Ct. App. 1995). Joint venturers are vicariously liable for the torts of the other members of the venture. *Gabriel*, 804 So.2d at 855. The existence of a joint venture is a question of fact. *Cajun Elec. Power*, 452 So.2d at 216.

---

[7]"The principal difference between a partnership and a joint venture recognized by the jurisprudence is that a partnership is ordinarily formed for the transaction of a general business of a particular kind, while a joint venture is usually limited to a single transaction." *Coffee Bay Investors, L.L.C. v. W.O.G.C. Co.*, 878 So.2d 665, 670 n.4 (La. Ct. App. 2004).

Plaintiffs have provided some evidence that several of the Bayer entities engaged in a coordinated effort to develop and produce LL Rice, however, plaintiffs do not provide sufficient evidence on certain elements of the test to support a finding, as a matter of law, that all of the identified Bayer entities participated in a joint venture. For instance, plaintiffs have not shown that the Bayer entities shared losses, nor have they sufficiently described the participation of Bayer AG or certain other Bayer entities in the development of LL Rice. Since plaintiffs have not shown that each party actually participated or that any parties shared losses, I cannot find that the Bayer entities participated in a joint venture as a matter of law.

### c.     Agency of the Bayer Entities, LSU, & Other Cooperators

Plaintiffs also seek to establish that various Bayer entities as well as LSU, and the other cooperators, were acting as agents for Bayer CropScience AG, which in turn was acting as an agent for Bayer AG, when testing and developing LL Rice. In Louisiana, a defendant's liability for the conduct of another is dependent on whether the other is acting as the defendant's agent, employee, servant, or independent contractor.[8]  *See* La. Civ. Code art. 2320; *Bartholomew v. CNG*

---

[8]An employer or master is liable for the actions of an agent, employee, or servant if they "might have prevented the act which caused the damage, and have not done it,"  La. Civ. Code art. 2320, while a principal is liable for the actions of an independent contractor if the principal "exercise[d] operational control over those acts or expressly or impliedly authorize[d] an unsafe

*Producing Co.*, 832 F.2d 326 (5th Cir. 1987). Whether a person is acting on behalf of a principal is primarily a factual question based on the extent of the principal's right to control the actions of the agent, employee, or contractor. *Hillman v. Comm-Care, Inc.*, 805 So.2d 1157, 1162 (La. 2002).

In this case, the evidence regarding the amount of control that the Bayer entities had over one another, as well as the control they had over LSU and the other cooperators is disputed. For example, plaintiffs have identified several areas in which Bayer CropScience and Bayer AG had some influence over the other Bayer entities and LSU, but whether this influence amounted to a right to control their actions presents unresolved issues of fact. I conclude that genuine disputes of material fact remain on issues of agency under Louisiana law, and so I will deny the plaintiffs' motions.

### 10. <u>Share-Rent Landlord Damages</u>

Defendants seek summary judgment to prevent the Louisiana plaintiffs from recovering damages for the amount that plaintiffs will ultimately pay to their landlords. Bayer argues that Louisiana Civil Code Articles 2677 and 2706 prevent plaintiffs from recovering damages for the portion of their crop that they owe to their landlords in rent under what it terms "crop-share" leases. However, despite

---

practice." *Coulter v. Texaco, Inc*, 117 F.3d 909, 911-13 (5th Cir. 1997).

Bayer's characterization of plaintiffs' leases, it has not sufficiently shown that plaintiffs' leases fall under Articles 2677 and 2706.

Under Louisiana law, the rights of a farmer growing crops under a lease on a landowner's property are determined by how the farmer pays rent. *See Broussard v. Northcott Exploration Co., Inc.*, 481 So.2d 125 (La.1986). If a farmer pays rent by delivering crops to the landowner, or if the landowner reserves the right to control the crop prior to its sale, then the farmer cannot recover for damage to the crop for the portion that the farmer owes to the landlord in rent. *See* La. Civ. Code art. 2706; *Joubert v. State Through State Park and Recreation Commission*, 345 So.2d 220, 225 (La. Ct. App. 1977). This rule, however, does not apply if the farmer pays rent to the landlord in cash in either a fixed amount or as cash based on a percentage of the sale of the crop. *See Meyhoeffer v. Wallace*, 792 So.2d 851 (La. Ct. App. 2001); *Guaranty Bank and Trust Company of Alexandria v. Daniels*, 399 So.2d 790 (La. Ct. App. 1981). The question of whether a lease between a farmer and a landowner falls under Articles 2677 and 2706 is determined by considering the intent of the parties and the terms of the lease in question.[9] *See Meyhoeffer*, 792 So.2d at 855-56 ("After careful

_____

[9]Articles 2677 and 2706 reproduce the substance of Louisiana Revised Statute 9:3204. La. Civ. Code arts. 2677, 2706 cmt. 2004 Revision. Therefore, the cases determining whether R.S. 9:3204 applies to certain leases are relevant to determining whether Articles 2677 and 2706 apply to this case.

consideration of the lease . . ."); *Guaranty Bank*, 399 So.2d at 791 ("We find that the lease, when read in its entirety, clearly supports . . ."). Louisiana courts have found that provisions indicating that the landowner reserves some right to control the crop prior to sale indicates that the lease falls under Articles 2677 and 2706. *See Meyhoeffer*, 792 So.2d at 855-56; *Guaranty Bank*, 399 So.2d at 791.

In this case, the exact contours of the plaintiffs' arrangements with their landowners and the intent of the parties remain disputed, and so I will deny the motion for summary judgment. Both sets of Louisiana plaintiffs have oral leases with their landlords. The Thibodeaux plaintiffs have provided a sworn declaration stating that they retain complete control of the crop from planting through the time the crop is sold. The plaintiffs do not divide the crop prior to sale and do not consult the landowner before selling it. The rent is paid to the landowners by check, written by a rice mill, but not until the plaintiffs tell the mill the amount owed to the landowners. In response, Bayer primarily relies on one statement by Thibodeaux, that, in certain circumstances, a landowner could exert some control over a farmer's crop under a crop share lease.[10] However, this statement does not

---

[10]Contrary to Bayer's implication, it is not true that all leases that require the farmer to pay rent based on a percentage of the crop sold, either in cash or in crop automatically fall under the rule of Articles 2677 and 2706. *See Meyhoeffer*, 792 So.2d at 855-56. Articles 2677 and 2706 only apply if the farmer pays rent by delivering ownership of the crop to the landlord, but does not apply if the farmer pays rent based on a percentage of the crop in cash. *Id.* Therefore, Bayer's reliance on Thibodeaux's statements that its leases are "share rents," without some

necessarily mean that Thibodeaux's actual lease operated in this fashion, and
Thibodeaux disputed that his leases operate in this way during the same
deposition. As a result, genuine disputes remain on this issue.

Similarly, the evidence does not show without dispute that the Deshotel
leases are subject to Articles 2677 and 2706. Bayer does not dispute that the
Deshotel plaintiffs pay cash rent for all but two of its leases. For these two leases,
however, Bayer argues that, because Deshotel listed the leases as "Share Rent -
30%," the "share" in question must refer to a share of the crop, and not to a share
of the cash obtained from the sale of the crop. Bayer provides no further evidence
that these oral leases require Deshotel to pay rent in a share of the crop. As
written, the label "Share Rent" is ambiguous. As a result, viewing the evidence in
a light most favorably to the plaintiffs, I cannot conclude as a matter of law that
the two disputed Deshotel leases are subject to Articles 2677 and 2706.

## 11.   __Punitive Damages__

The Bayer defendants have moved for summary judgment on plaintiffs'
claim for punitive damages. Bayer argues that Louisiana law does not permit
punitive damages in this case. Plaintiffs do not dispute that they cannot recover
punitive damages under Louisiana law, but argue instead that North Carolina law

---

information about how the "share" is to be paid, does nothing to support Bayer's assertion that
the leases in question fall under Articles 2677 and 2706.

should govern punitive damages in this case.

A federal court sitting in diversity applies the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Co.*, 313 U.S. 487, 496 (1941). The forum state in this case is Louisiana. Louisiana's Civil Code provides its choice of law rules for punitive damages. *See* La. Civ. Code Ann. art. 3546 (West 1994). Article 3546 states that:

> Punitive damages may not be awarded by a court of this state unless authorized:
> (1) By the law of the state where the injurious conduct occurred and by either the law of the state where the resulting injury occurred or the law of the place where the person whose conduct caused the injury was domiciled; or
> (2) By the law of the state in which the injury occurred and by the law of the state where the person whose conduct caused the injury was domiciled.

La. Civ. Code Ann. art. 3546. Since it is undisputed that the injury in this case occurred in Louisiana, North Carolina law can only apply if both the "injurious conduct" occurred in North Carolina and the defendant's domicile is North Carolina under Article 3546. *See Id.*

Plaintiffs argue that Bayer's injurious conduct occurred where Bayer made various decisions and non-decisions, such as choosing to conduct the field trials at LSU, failing to monitor the tests, failing to institute containment measures, and failing to stop the testing before LL Rice contaminated the plaintiffs' fields.

Plaintiffs have not identified any evidence indicating that these decisions were actually made in North Carolina and the evidence presented earlier in this litigation indicates that most of these decisions were made by Bayer employees stationed in Europe or California.

However, even if plaintiffs had supported the assertion that the decisions were made in North Carolina, it would not prove that the negligent conduct, as intended by Article 3546, occurred in North Carolina. The regulations specifically refer to "injurious conduct," and, in a non-intentional tort case, such as a claim of negligence, the site of the physical conduct causing the injury is more important than the site where decisions, or non-decisions, were made. *See* La. Civ. Code Ann. art. 3546; *In re Train Derailment Near Amite, LA., on October 12, 2002*, No. 1531, 2004 WL 169805, at *1 (E.D. La. Jan. 26, 2004) ("Assuming *arguendo* that management-level employees located in Mississippi contributed in some way to the derailment, their actions cannot conceivably outweigh or equal the allegedly tortious conduct that occurred in Louisiana.").

In this case, the allegedly negligent physical actions, such as planting test plots too close to other fields and commingling seeds, occurred in Louisiana. Therefore, under Article 3546, even assuming plaintiffs are correct that the relevant decisions were made in North Carolina, the place of this conduct

outweighs the site of Bayer's negligent decisions, or non-decisions. Since plaintiffs cannot prove this element, it is unnecessary to consider whether Bayer is domiciled in North Carolina under Article 3546.

Finally, plaintiffs cannot rely on the "escape clause" provided by article 3547 to apply North Carolina's punitive damages law. Article 3547 states that, in an exceptional case, "if the policies of another state would be more seriously impaired if its law were not applied," then a court need not apply the choice of law rules outlined in article 3546. La. Civ. Code Ann. 3547. Since plaintiffs have not identified any evidence that any relevant conduct occurred in North Carolina, and it is undisputed that the injury occurred in Louisiana, this case does not qualify as the type of exceptional case that would warrant the application of North Carolina's punitive damages law.

## Conclusion

To summarize the decisions discussed above, I am granting summary judgment to defendants on the Louisiana plaintiffs' Counts 10 and 11 (public and private nuisance), Count 12 (negligence *per se*), and Count 33 (North Carolina Unfair and Deceptive Trade Practices Act). I am granting plaintiffs' motion for summary judgment on agent and successor liability only to the extent that certain uncontested facts are deemed established for trial. I am granting plaintiffs'

motions for summary judgment on defendants' affirmative defenses 11 and 13 (compliance with regulations) and on their affirmative defense 4 (intervening cause). Defendants concede that affirmative defense 14 (compliance with industry standards) only applied to plaintiffs' withdrawn strict liability claims. I am denying all other motions for summary judgment.

I have denied the *Daubert* motions, except that I have limited some areas of testimony, as set out above.

The only claim of the Louisiana plaintiffs that will go to trial on June 21, 2010 is Count 9 (negligence).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motions for summary judgment on defendants' affirmative defenses nos. 4 and 14 [#2688] are granted.

**IT IS FURTHER ORDERED** that defendants' motions for summary judgment [#2696] are granted in part and denied in part.

**IT IS FURTHER ORDERED** that defendants' motions to exclude testimony under Rule 702 [#2705] are granted only to the extent set out above and in the October 9, 2009 Order [#1604] and are denied in all other respects.

**IT IS FURTHER ORDERED** that plaintiffs' motions to exclude testimony of Alan McHughen [#2681], Nicholas Kalaitzandonakes [#2694], Ronnie Helms

[#2684], and Cheryl Shuffield [#2686] are granted only to the extent set out above and are denied in all other respects.

**IT IS FURTHER ORDERED** that plaintiffs' motions for partial summary judgment on successor, general partner and agency status [#2692] and motion for partial summary judgment on the agency status of Louisiana State University, Dr. Steve Linscombe, and other cooperators [#2683] are granted only to the extent that certain facts as set out above are deemed established for trial; the motions are denied in all other respects.

**IT IS FURTHER ORDERED** that plaintiffs' motions for partial summary judgment on defendants' affirmative defense nos. 11 and 13 [#2690] are granted.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 7th day of June, 2010.