UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

IN RE GENETICALLY MODIFIED         )          4:06MD1811 CDP
RICE LITIGATION                    )

# MEMORANDUM AND ORDER

This order deals with the motions for summary judgment related to the Texas bellwether trial, scheduled to begin shortly. The trial will consider the claims of plaintiffs John Gaulding and John M. Donaho, partners of Gaulding Farm; Gaulding Farm; James Gentz, Jr. and Carol Barton Gentz; and Richard Lee Hafernick and Robbie Hafernick, d/b/a Lee and Robbie Hafernick Farms.

The parties have filed a number of motions for summary judgment and to exclude or limit expert testimony. To a large extent, the Texas motions before me are the same as the motions I ruled on in previous bellwethers. The parties have referenced their previous motions and my previous orders, and I will do the same in this order. I have, however, considered the issues anew and with regard to the appropriate Texas law. Although I have not changed the substance of any of the previous rulings, there are some differences because of the state law and the nature of the plaintiffs' claims.

The Texas plaintiffs seek damages for alleged violations of the North

Carolina Unfair Trade Practices Act.[1] They also each seek to impose liability under negligence *per se* theories based on alleged violations of the federal Plant Protection Act and its accompanying regulations.[2] The complaint also seeks damages under theories of negligence and public and private nuisance based on alleged violations of Louisiana laws.[3]

For the reasons that follow and for the reasons that were described in more detail in my October 9, 2009 Memorandum and Order [docket #1604] , I will grant the motions in part and deny them in part.[4] I will grant defendants' motions for summary judgment on plaintiffs' claims under the North Carolina Unfair Trade Practices Act and on plaintiffs' claims for negligence *per se* and for public nuisance, and I will grant plaintiffs' motions for summary judgment directed to certain affirmative defenses. I have determined as a matter of law that the regulations under the Plant Protection Act do not allow for low level or adventitious presence of regulated genetically modified rice in the commercial rice supply, and so I will not allow any of defendants' expert witnesses to opine

---

[1] Count 33 of Plaintiffs' Master Consolidated Complaint (docket # 1010).
[2] Count 28.
[3] Counts 29-31; plaintiffs are not proceeding on Count 32, which was a claim alleging strict liability in tort..

[4] In ruling on all the summary judgment motions, I have viewed the facts and inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

to the contrary. I have limited the testimony of various expert witnesses in other relatively minor ways. Otherwise, I have denied the remaining motions.

### A. North Carolina Unfair Trade Practices Act

The Bayer defendants seek summary judgment on plaintiffs' claims under the North Carolina Unfair Trade Practices Act, N.C. Gen. Stat. § 75-1.1 *et seq*. (West 2009). It is undisputed that these Texas plaintiffs have no North Carolina operations. The question presented by this motion is whether the Act provides a remedy to an out-of-state plaintiff to recover for out-of-state injuries allegedly resulting from unfair acts that occurred in North Carolina. The analysis for this claim is identical to the analysis of the same claim discussed in my October 9, 2009 order. For the same reasons that I concluded that the North Carolina Act did not apply to the Missouri plaintiffs, I also conclude that the Act does not provide a cause of action to these Texas plaintiffs.

### B. Economic Loss Doctrine

Bayer argues that plaintiffs' claims are barred by the economic loss doctrine. The economic loss doctrine in Texas "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007). Texas recognizes the doctrine in three scenarios. First, the doctrine

prevents a plaintiff from asserting tort and breach of contract claims against a defendant for the same injury. *Id.* Second, the doctrine bars products liability claims where the buyer may also recover for the same injury under quasi-contract theories, such as for breach of an implied warranty. *See Sterling Chemicals, Inc. v. Texaco Inc.*, 259 S.W.3d 793 (Tex. Ct. App. 2007). Third, the doctrine prevents a plaintiff from asserting a tort claim against a third party, even when there is no contractual privity between the two, so long as the plaintiff could have recovered for the same injury by a contract action against another. *Id.*

Bayer does not allege that plaintiffs had a contract with Bayer, that they purchased rice from Bayer, or that plaintiffs could recover for their alleged injuries from a third party under a contract theory.[5] As a result, Bayer has not shown that the doctrine applies in this case and I will deny Bayer's motion.

### C. Public and Private Nuisance

Bayer argues that plaintiffs cannot support their claims for public and private nuisance. The law governing claims for public and private nuisance in Texas is substantially the same as the law in Missouri, Arkansas, and Mississippi. As a result, my ruling on this issue is substantially similar to my rulings in the earlier bellwethers.

---

[5] At most, Bayer argues that plaintiffs "could have contracted to provide that the rice they purchased was free of defects." This, however, is not the same as alleging that plaintiffs can actually recover for their injuries from a third party under a contract theory and, therefore, does not make plaintiffs' claims subject to the economic loss doctrine.

Under Texas law a public nuisance is "an unreasonable interference with a right common to the general public." *Lake Travis Independent School Dist. v. Lovelace*, 243 S.W.3d 244, 255 (Tex. Ct. App. 2007) (quoting *Jamail v. Stoneledge Condo. Owners Ass'n*, 970 S.W.2d 673, 676 (Tex. Ct. App. 1998)). "A private person . . . may not maintain an action based upon a public nuisance without showing a 'special injury' resulting from the nuisance. *Jamail*, 970 S.W.2d at 676.

Meanwhile, a "private nuisance affects an individual or a small number of individuals rather than the public at large." *Mathis v. Barnes*, 316 S.W.3d 795, 801 (Tex. Ct. App. 2010). "A nuisance is a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it." *Id*. In order to recover for a private nuisance plaintiff must show that they suffered an emotional harm or a physical injury to their property. *Id*.

The plaintiffs here cannot support a separate claim for public nuisance. There is no evidence in the record showing the sort of public harm or negative effect on the entire community that public nuisance law was developed to remedy. However, there is evidence in the record from which a trier of fact could find that Bayer's use of its cooperators' land interfered with the plaintiffs'

use of their land. Plaintiffs state that because of the contamination they could not plant rice or certain types of rice on their land, and this is an interference with plaintiffs' land sufficient to allow a claim for private nuisance to proceed to trial. Genuine disputes remain on the private nuisance claims, but I will grant summary judgment to Bayer on the public nuisance claims.

### D. Successor Liability, Agency, Joint Enterprise, and Nondelegable Duty

The analysis of the Texas plaintiffs' summary judgment motion seeking to establish the status of various defendants as successors, partners and agents of one another is largely the same as in my October 9 order for the Missouri plaintiffs. And, as I concluded in that order, I conclude that genuine disputes of fact remain as to agency and joint enterprise liability, but certain facts are established without dispute.

#### 1. Successor Liability - Undisputed Facts

The following facts are not genuinely disputed, and are therefore established for the upcoming trial:

    a.    Bayer CropScience AG, as the survivor of its April 1, 2007, merger with Bayer CropScience GmbH ("BCS GmbH") assumed all assets and liabilities of BCS GmbH, including any liabilities which arose regarding the activities related to LibertyLink rice at issue in this litigation, and therefore is the successor to BCS GmbH, including the time periods when BCS GmbH was previously known as Aventis CropScience GmbH ("ACS GmbH") or Hoechst Schering AgrEvo GmbH ("AgrEvo GmbH"), and as successor is subject to liability for the acts of its

predecessors;

      b.      BBS NV, as the successor by name change to Bayer CropScience NV ("BCS NV"), Aventis CropScience NV ("ACS NV"), and Plant Genetic Systems NV ("PGS"), is subject to liability for any acts which occurred regarding the activities related to LibertyLink rice at issue in this litigation during the time periods in which it was known as BCS NV, ACS NV and/or PGS;

      c.      BCS LP, as the successor by name change to ACS USA LP, is subject to liability for the activities related to LibertyLink rice at issue in this litigation during the time period in which it was known as ACS USA LP and for any such liability assumed by or transferred to ACS USA LP from AgrEvo USA Company ("AgrEvo USA") or its general partners;

      d.      ACS USA LP, and thus BCS LP, assumed and had transferred to it all liabilities incurred by AgrEvo USA and its general partners regarding their activities related to LibertyLink rice at issue in this litigation during the period in which they conducted those activities;

      e.      Starlink, as the successor by name change to Aventis CropScience USA Holding Inc. ("ACS USA Holding"), is subject to liability as general partner of ACS USA LP related to LibertyLink rice at issue in this litigation during the period from December 1999 to December 2001;

      f.      BCS Holding Inc., as the successor by name change to Aventis CropScience USA Holding II Inc. ("ACS Holding II Inc."), is subject to liability as general partner of BCS LP related to LibertyLink rice at issue in this litigation;

      g.      BCS Inc., as the successor by merger and name change from Rhone Poulenc Ag Company Inc. is subject to liability of AgrEvo USA and its general partners, AgriVet, Inc. ("AgriVet") and NOR-AM Chemical Company ("NOR-AM"), related to LibertyLink rice at issue in this litigation and which may have arisen during the time such activities were undertaken by AgrEvo USA prior to the formation of ACS USA LP.

## 2. Joint Enterprise

Plaintiffs seek to establish that defendants Bayer CropScience AG, Bayer BioScience NV, and Bayer CropScience LP developed LL Rice as a joint enterprise. Plaintiffs thus seek to hold these defendants jointly liable for the alleged harm caused by LL Rice. The elements of a joint enterprise are:

> (1) an express or implied agreement among the members of the group, (2) a common purpose to be carried out by the group, (3) a community of pecuniary interest in that purpose, and (4) an equal voice in the direction of the enterprise, which gives an equal right of control.

*Arthur v. Grimmett*, No. 08-07-00040-CV, 2009 WL 2461812, at *5 (Tex. Ct. App. Aug. 12, 2009) (citing *Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 718 (Tex.1995)).

Bayer responds that plaintiffs cannot prove the third element of this test – that plaintiffs shared a community of pecuniary interest in a common purpose. In order to have a community of pecuniary interest, the parties must have a monetary interest in the success of their shared enterprise. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 530-35 (Tex. 2002). The monetary interest must be an interest in a share of the profits. *St. Joseph Hosp.*, 94 S.W.3d at 531-32; *Arthur v. Grimmett*, No. 08-07-00040-CV, 2009 WL 2461812, at *7 (Tex. Ct. App. Aug. 12, 2009). The fact that the parties shared costs or expenses is not

sufficient in itself. *St. Joseph Hosp.*, 94 S.W.3d at 531-32. In addition, the interest must be shared "without special or distinguishing characteristics." *Id.* at 531. In other words, the parties must have relatively equal stakes in the outcome of the enterprise. *See id.* at 531-35; *Ely v. Gen. Motors Corp.*, 927 S.W.2d 774, 779 (Tex. Ct. App. 1996). For instance, a franchisor or a wholesaler does not have a sufficiently equal stake in the outcome of the sales of a franchisee or merchant to have a community of pecuniary interests with them, even though the franchisor does have some financial interest in the franchisee's success. *St. Joseph Hosp.*, 94 S.W.3d at 527-28; *Ely*, 927 S.W.2d at 779.

I agree that plaintiffs have not provided sufficient evidence to hold, as a matter of law, that the Bayer entities in question agreed to share profits. Factual disputes remain about the parties' relationships and agreements, and so this issue is better decided by a jury after it has had an opportunity to hear all the evidence.

### 3. Agency and Non-Delegable Duty

Plaintiffs also seek to establish that various Bayer entities as well as LSU, and the other cooperators, were acting as agents for Bayer CropScience AG, which in turn was acting as an agent for Bayer AG, when testing and developing LL Rice. In Texas, a principal is liable for the conduct of his agent "based on the principal's control or right to control the agent's actions undertaken to further the

principal's objectives." *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 686 (Tex. 2007) (citing *Baptist Mem. Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex.1998)); *McAfee, Inc. v. Agilysys, Inc.*, 316 S.W.3d 820, 829 (Tex. Ct. App. 2010) ("The critical element of an agency relationship is the right to control, and the principal must have control of both the means and details of the process by which the agent is to accomplish his task in order for an agency relationship to exist.").

In this case, the evidence regarding the amount of control that the Bayer entities had over one another, as well as the control they had over LSU and the other cooperators is disputed. Although plaintiffs have identified several areas in which Bayer CropScience and Bayer AG had influence over the other Bayer entities and LSU, a factual question remains regarding whether this influence amounted to a right to control both the means and the details of their actions. I conclude that genuine disputes of material fact remain on issues of agency under Texas law, and so I will deny the plaintiffs' motions.

Plaintiffs also argue that, regardless of any agency relationship or joint enterprise, Bayer is liable for the harm caused by LL Rice because it had a nondelegable duty to contain LL Rice. Texas law recognizes that, in some circumstances, principals may not delegate their responsibility to perform certain duties. *See MBank El Paso, N.A. v. Sanchez*, 836 S.W.2d 151, 153 (Tex. 1992).

That is, even if a principal hires an independent contractor to perform one of these nondelegable duties, the principal will be liable if the duty is breached. *Id.* The Texas Supreme Court has adopted the Restatement of Torts rule for statutorily created nondelegable duties and states that: "As a general rule, when a duty is imposed by law on the basis of concerns for public safety, the party bearing the duty cannot escape it by delegating it to an independent contractor." *Id.*; *see also Randall Noe Chrysler Dodge, LLP v. Oakley Tire Co.*, 308 S.W.3d 542, 546-47 (Tex. Ct. App. 2010); *see also* Restatement (Second) of Torts § 424 (1965). The nondelegable duty doctrine shifts liability to a principal because of the dangers, or possible dangers, associated with the activity the principal asks its agent to perform. *See MBank El Paso*, 836 S.W.2d at 153. As a result, Texas courts will not find that a public safety statute, such as a public health statute, creates a nondelegable duty in cases where no personal injury is alleged, unless the action in question is inherently dangerous. *See Randall Noe*, 308 S.W.3d at 546-47.

In this case, plaintiffs have not shown physical injury to a person or the potential for use of force or violence that Texas courts appear to require for application of the non-delegable duty doctrine. I therefore conclude that plaintiffs are not entitled to summary judgment on this issue.

### E. Affirmative Defenses 11 and 13

Because adventitious presence is not allowed, I will grant plaintiffs' motions for summary judgment on defendants' affirmative defenses 11 and 13. Those defenses assert that defendants are not liable for any injuries because they "complied fully with all applicable statutes and regulations regarding genetically modified crops." The undisputed facts show that the performance standards were not met here because the required result was not met: there was a release into the environment and the regulated article or its offspring has persisted in the environment.

### F. Affirmative Defense 14 - Industry Standards

Plaintiffs are entitled to summary judgment on Bayer's affirmative defense 14, which alleged that it was not liable because it complied with state-of-the art industry standards. Bayer concedes that compliance with industry standards does not relieve it of liability as a matter of law.

### G. Affirmative Defense 4 - Intervening Cause

Bayer asserts in affirmative defense 4 that it cannot be held liable "due to the intervening and/or superseding acts or omissions of parties or non-parties to this action for whose acts or omissions the BCS Defendants and Bayer Corporation are not liable." The Texas plaintiffs, like the Missouri, Arkansas, Louisiana, and Mississippi plaintiffs, are entitled to summary judgment on this

defense.

Under Texas law an intervening cause "supersedes the defendant's negligence by destroying the causal connection between that negligence and the plaintiff's injury thereby relieving that defendant of liability." *Dew v. Crown Derrick Erectors, Inc.*, 208 S.W.3d 448, 450 (Tex. 2006). "[I]f the intervening force was foreseeable at the time of the defendant's negligence, the force is considered to be a 'concurring cause' of the plaintiff's injuries, and the defendant remains liable for the original negligence." *Id*. at 451 (quotations omitted). "If, on the other hand, the intervening act is extraordinary under the circumstances, not foreseeable in the normal course of events, or independent of or far removed from the defendant's conduct, it may well be a superseding act." *Id.* (quotations omitted).

The evidence adduced by Bayer reveals that the negligence of third parties, if any, was foreseeable and reasonably anticipated by defendants. Bayer endeavored to introduce LL601 and LL604 into the environment and Bayer had a duty to introduce those products without negligence. Contamination of non-GM rice by LL601 and LL604 is the known and foreseeable risk that Bayer had a duty to prevent. As a matter of law, plaintiffs are entitled to summary judgment on defendants' affirmative defense of intervening cause.

### H. Punitive Damages

The Bayer defendants have moved for summary judgment on plaintiffs' punitive, or exemplary, damages claims. Under Texas law, exemplary damages are available if the plaintiff can show by clear and convincing evidence that the alleged harm was caused by defendant's fraud, malice, or gross negligence. Tex. Civ. Prac. & Rem.§41.003 (2008). Gross negligence is defined as an act or omission:

> (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and
>
> (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

Tex. Civ. Prac. & Rem. §41.001(13). The parties agree that the standard for punitive damages under Texas, Arkansas, Missouri and Mississippi law is substantially the same. Just as in the first two bellwether trials, the plaintiffs have provided sufficient evidence to raise an issue of fact regarding whether Bayer was conscious of the risk involved in proceeding with field trials of LL Rice, but proceeded nevertheless. As a result, I will deny defendants' motion for summary judgment on plaintiffs' punitive damages claims.

### I. Negligence *Per Se*

Defendants move to dismiss plaintiffs' negigence *per se* claim based on Bayer's failure to comply with 7 C.F.R. § Part 340. As discussed in more detail in the October 9, 2009 order, the regulations do not provide a basis for a negligence *per se* claim because those performance standards do not provide a standard of care. Defendants are therefore entitled to summary judgment on the negligence *per se* claims based on alleged violations of the regulations.

### J. *Daubert* Motions

Both plaintiffs and defendants again seek to exclude each others' experts under *Daubert*. These objections mirror those made to the same experts and the same testimony in the Missouri bellwether trial. With minor exceptions, the parties' arguments are identical to their previous arguments. Because the parties' arguments, old and new, are sufficiently addressed in the October 9 order, I will not recite them here.

Rule 702 permits expert testimony if it "will assist the trier of fact to understand the evidence or to determine a fact in issue. . . ." Fed. R. Evid. 702. The key inquiries are the (1) factual basis of the opinion, (2) reliability of the method and application, and (3) the relevance of the testimony. *Id.*; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993).

The parties' witnesses in this case qualify as experts through education and experience. *See* Fed. R. Evid. 702. They may state their opinions within the subject of their expertise, so long as they opinions were disclosed in their expert reports, are based in fact, and a proper foundation is laid at trial. *Id.*; Fed. R. Civ. P. 26. While they may not testify on matters outside of their expertise, they may apply the results of another expert's calculations, if a foundation is laid showing that they are qualified to do so. *See Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002); *see also Beck's Office Furniture & Supplies, Inc. v. Haworth, Inc.*, Nos. 95-4018, 95-4029, 1996 WL 466673, at *7-8 (10th Cir. Aug. 16, 1996). For instance, a rice-growing expert may testify about the reasonableness of Bayer's growing practices, even though he may not testify about market damages. An accountant may apply the results of an economist's market damages calculations to a particular farm, but the accountant may not give an opinion on the accuracy of the economist's calculations. Experts may also critique the methodology of other experts, provided that they do so in their role as experts and the testimony is based on a reliable method of analysis.

Experts may not draw legal conclusions or interpret laws or regulations. *See Garrett v. Albright*, No. 06-CV-4137-NKL, 2008 WL 697590, at * 4 (W.D. Mo. Mar. 11, 2008). No witness may testify that the regulations allow

adventitious presence or that Bayer violated or complied with a standard of care prescribed by the regulations. Nor may witnesses testify that Bayer is liable because it is listed as the "responsible party" in its USDA filings. The experts may not recite hearsay, such as conversations with the USDA, APHIS, or the U.S. Rice Federation. *See* Fed. R. Evid. 802. Finally, expert testimony is limited to issues that are relevant to this trial. Fed. R. Evid. 402. For example, an expert's opinion about Bayer or LSU's growing practices in 2007 or 2009 is not relevant or helpful to assist the jury in understanding whether Bayer was negligent during the LL Rice 601 and 604 field trials.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion for partial summary judgment on defendants' affirmative defenses no. 4 and 14 [#3218] is granted.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment [# 3219] is granted as to the claims for negligence *per se* (Count 28), public nuisance (Count 30), and the North Carolina Unfair Trade Practices Act (Count 33) and is denied in all other respects.

**IT IS FURTHER ORDERED** that defendants' motion to exclude testimony under Rule 702 [# 3229] is granted only to same extent as granted in the earlier bellwether trials.

**IT IS FURTHER ORDERED** that plaintiffs' motions to exclude testimony of Alan McHughen [# 3215], Nicholas Kalaitzandonakes [#3211], and Ronnie Helms [#3213] are granted only to the extent granted in the earlier bellwether trials.

**IT IS FURTHER ORDERED** that plaintiffs' motion for partial summary judgment on successor, general partner and agency status [#3230] is granted only to the extent that certain facts as set out above are deemed established for trial; the motion is denied in all other respects.

**IT IS FURTHER ORDERED** that plaintiffs' motion for partial summary judgment on defendants' affirmative defense nos. 11 and 13 [#3216] is granted.

**IT IS FURTHER ORDERED** that plaintiffs' motions for partial summary judgment on the agency status of LSU and Dr. Lindscome [#3235] and for vicarious liability based on the non-delegable duty doctrine [#3237] are denied.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 4th day of October, 2010.