UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE GENETICALLY MODIFIED | ) | 4:06MD1811 CDP |
| RICE LITIGATION | ) | |

**This Order Relates to**:

*Texana Rice Mill, Ltd., et al.*
*v. Bayer CropScience LP, et al.*                                         4:07CV416 CDP

*Beaumont Rice Mills, Inc.,*
*v. Bayer CropScience LP, et al.*                                         4:07CV524 CDP

*Kennedy Rice Dryers, LLC*
*v. Bayer CropScience LP, et al.*                                         4:07CV1773 CDP

*Farmers Rice Milling Co., Inc.*
*v. Bayer CropScience LP*                                                  4:07CV1780 CDP

*Planters Rice Mill, LLC*
*v. Bayer CropScience LP, et al.*                                         4:07CV1795 CDP

*Gulf Pacific Rice Co., Inc., et al.*
*v. Bayer CropScience LP, et al.*                                         4:08CV1545 CDP

*Phoenix Advisors Limited*
*v. Bayer CropScience LP, et al.*                                         4:08CV1794 CDP

**<u>MEMORANDUM AND ORDER</u>**

Bayer seeks to strike the most recent reports of the non-producer plaintiffs' damages expert, Dr. Merrill Bateman. Bayer argues that Bateman's econometric analysis report and his addenda reports for three non-producer rice mills are improper supplemental and rebuttal reports because they present previously

undisclosed methods of analysis and new categories of damages. Plaintiffs argue that the reports are proper rebuttal reports. Because the reports respond to Bayer's experts' criticisms of his earlier reports and because Bayer has ample time to respond to these reports, I will deny Bayer's motion.

## Background

Plaintiffs have retained Dr. Bateman to calculate the financial damages suffered by these non-producer plaintiffs. Bateman disclosed his initial reports in 2009 and supplemental reports in March of 2010. Bayer deposed Bateman on April 3, 2010 and Bayer's experts submitted their reports a few weeks later, on April 23, 2010. Bateman subsequently filed additional reports in early July that are the subject of this motion to strike. The parties have agreed to forego deposing defendants' experts until after the Court resolves this motion. The cases are not currently set for trial.

The broad topic of Bateman's initial reports was the financial impact of the LL Rice contamination on the non-producer plaintiffs. Bateman's primary method of quantifying the impact was a "margin squeeze" analysis, which compared the cost of rough rice to the revenue generated by milled rice. Bateman also disclosed a number of other calculations of plaintiffs' damages in his reports for the individual plaintiffs. Among other things, earlier reports discussed the

contamination's effect on milled and rough rice prices, how the contamination decreased U.S. exports of long grain rice, and the decrease in long grain rice acreage in Louisiana because of the contamination.

Bayer's experts criticized these reports on several grounds. For example, Daniel Fischel criticized Bateman for not analyzing the role of global rice markets. He also criticized Bateman for ignoring factors such as the role of country-specific events in the decline of U.S. exports. Bayer's expert Quentin Mimms disagreed that LL Rice was the cause of the decrease in U.S. long grain rice acreage. Fischel and Mimms also criticized various assumptions that Bateman relied upon and argued that his margin squeeze analysis is incorrect and inaccurate.

On July 2, 2010 plaintiffs provided a new Bateman report titled "An Econometric Analysis of the LLRICE Impact on U.S. Long Grain Rice Millers." Addenda reports relating to Bateman's analysis of damages for Texana Rice Mill, Ltd., Beaumont Rice Mills, Inc., and Farmers Rice Milling Company, Inc. were also provided.

Bateman did not label his econometric analysis report as supplemental or as rebuttal. However, beginning in the introduction, and continuing throughout the report, Bateman notes that Bayer's experts have criticized his previous reports and states that his calculations are a response to those criticisms. He also states that

his econometric analysis report "deals with my margin squeeze analysis in my main and supplemental reports" and that the purpose of this report is "to provide an additional statistical analysis using accepted econometric methods that estimate the impact that LLRICE has had on U.S. long grain millers in the southern part of the United States and to provide an additional assessment of the losses that have occurred."

Bateman's econometric analysis report discusses many of the topics addressed in the earlier reports, as well as many of the issues raised by Bayer's experts' criticisms. Bateman again discusses how the contamination affected global milled rice prices, how the contamination decreased demand for long grain rice, whether the decrease in acreage of U.S. land devoted to long-grain rice was attributable to the contamination, how the loss in acreage affected the plaintiffs' mills, and how LL Rice affected rough rice prices and milling margins, among other topics. Bateman uses a variety of previously disclosed methods to analyze these questions including a Nerlovian dynamic supply model.[1] He also applies some new methods of analysis to consider these issues. For example, Bateman uses a previously undisclosed price model to explore the contamination's effect on exports. Bateman also considered the effect of other previously unaddressed

---

[1] One of the October 2009 reports also used a modified Nerlovian dynamic supply model.

factors that may have affected plaintiffs' damages, such as increased domestic demand, global rice market prices – such as Thai and milled export prices – and weather events, such as hurricanes.

Plaintiffs also provided additional addenda reports in three non-producer cases. Bateman states that the purpose of his addenda report for Beaumont Rice Mills "is to address the criticisms made by Bayer's expert witnesses regarding the methodology used in [his] earlier reports." Bateman's earlier Beaumont report, submitted in March of 2010, calculated "Losses on Export Sales" from 2006 to 2014. He calculated Beaumont's yearly losses by multiplying an estimated lost volume of milled rice by an estimated margin the mill would have realized, were it not for the LL Rice contamination. Bateman's Beaumont addendum report performs the same calculation, but relies on slightly different underlying data and Bateman eliminates claims for damages after 2009. The new lost volume and margin estimates were derived from Bateman's econometric analysis previously addressed.

Bateman's addenda report for Texana was also prepared in response to Bayer's experts' criticisms of Bateman's earlier reports. In the addenda report, Bateman presents an estimate of Texana's losses based on an assumption that Texana would have produced a higher average of milled output if LL Rice had not

contaminated U.S. rice supplies. He reached this conclusion by estimating Texana's output for the years before the LL Rice contamination and applied that output to his calculated margin from 2006 to 2009. Bateman performed the same calculation in his October 12, 2009 report. In that report, Bateman stated that "[i]f one combines the expected milled production with the non-LL601 milling margin estimates presented in Table 14, one can estimate Texana's lost profits had they not been forced out of business."

Bateman states that the purpose of his addenda report for Farmers Rice Milling is to "address the criticisms made by Quentin L. Mimms and Daniel R. Fischel regarding the methodology used in the earlier report." The Farmers Rice Milling addendum report calculates the mills' unsold mill hours during the 2006/2007 mill year that were attributable to the contamination. Bateman reaches his conclusion by first averaging the unsold mill hours for two years that were not affected, or were minimally affected by the contamination. He then subtracted this average from the number of actual unsold mill hours for the 2006/2007 mill year, thereby producing an estimate of the number of unsold mill hours attributable to the LL Rice contamination. Bateman did not attempt to determine the number of unsold mill hours for Farmers Rice Milling in his earlier reports.

## Analysis

Bayer primarily argues that Bateman's econometric analysis is an improper rebuttal report. A report is classified as supplemental or rebuttal based on the content of the report, not the title. *See* Fed. R. Civ. P. 26(a)(2)(C)(ii), (e); *Sancom, Inc. v. Qwest Communications Corp.,* 683 F.Supp.2d 1043, 1063 (D.S.D. 2010) (finding that reports titled "supplemental" and "surrebuttal" were actually untimely rebuttal reports based on the content of the report). A report qualifies as a rebuttal report if "it is intended to contradict or rebut evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26(a)(2)(C)(ii). An expert may introduce new methods of analysis in a rebuttal report if they are offered to contradict or rebut another party's expert. Fed. R. Civ. P. 26(a)(2)(C)(ii); *see also Park West Radiology v. CareCore Nat. LLC*, 675 F.Supp.2d 314, 326 (S.D.N.Y. 2009). However, the rebuttal report must not extend "well beyond" the scope of the other party's expert reports. *Jorgenson Forge Corp. v. Consarc Corp.*, No. C00-1879Z, 2002 WL 34363668, at *1 (W.D.Wash. Jan.9, 2002); *see also Ebbert v. Nassau County*, No. CV05-5445(FB)(AKT), 2008 WL 4443238, at *13 (E.D.N.Y. Sept. 26, 2008) ("A rebuttal expert report is not the proper place for presenting new arguments, unless presenting those arguments is substantially justified and causes no prejudice.")

(quotations and citations omitted).

Although Bateman did not title his econometric analysis report a rebuttal report, it is a response to Bayer's experts' criticisms of his earlier analysis and is therefore a proper rebuttal report. Most of Bateman's econometric analysis report addresses previously disclosed methods and issues. The remainder either responds to a specific criticism by one of Bayer's experts or it responds to Bayer's experts' general criticism that Bateman's previous conclusions were incorrect. For instance, Bayer's experts criticized Bateman's analysis of the export market for failing to analyze the role of global rice markets and, in response, Bateman addressed exports and the role of global rice markets in his econometric analysis report. In a few limited instances, Bateman adopted new methods of analyses, such as the price model dealing with exports, but these methods are also offered to rebut Bayer's experts' criticisms and fall within the same subject matter as Bayer's experts' criticisms. As a result, Bateman's econometric report was "intended to contradict or rebut evidence on the same subject matter identified by" Bayer's experts.[2]

In addition, Bayer seeks to strike Bateman's econometric analysis report by

---

[2] Some of the methods that Bayer claims are entirely new, were, in fact disclosed by Bateman in 2009. For example Bayer argues that Bateman's dynamic supply model is previously undisclosed, however, Bateman used the same dynamic supply model in a 2009 report.

arguing that "[t]he issue here is whether an expert, under the guise of a 'rebuttal' report, can abandon his initially disclosed affirmative analysis in favor of entirely new affirmative analysis." However, none of Bateman's reports indicate that he intends to abandon his earlier opinions. Instead, the econometric analysis report consistently states that it is submitted in addition to his prior work, not instead of it. As a result, Bayer has not shown that the Court should strike Bateman's econometric analysis report as an improper rebuttal report.[3]

Bayer also moves to strike Bateman's addenda reports for the three non-producer rice mills because it claims that the reports propose entirely new categories of damages. However, two of the addenda reports – the reports for Beaumont Rice Mills and Texana – do not present new categories of damages. In the addenda reports for Texana and Beaumont, Bateman estimates the mills' losses that resulted from decreased milling volume attributed to the LL Rice contamination. Bateman had disclosed a calculation for lost volume damages in earlier reports for both mills. Although Bayer correctly notes that the calculations

---

[3] Bayer offers an additional argument that the Court should strike Bateman's econometric analysis report because it is inconsistent with his earlier methods of analysis, but any inconsistency can be addressed by appropriate cross-examination at trial. In any event, I am not convinced that the reports are actually inconsistent. For example, Bayer claims that Bateman's new report contradicts his previous opinion that rough rice prices rose because of the contamination. However, Bateman's earlier reports merely state that rough rice prices rose *relative* to milled rice prices, which may occur whether or not rough rice prices rose or fell relative to the previous year's rough rice prices.

in the addenda reports are based on different assumptions, altering the calculation's underlying assumptions does not change the fact that Bateman had previously disclosed this category of damages in both cases, as well as the manner for calculating those damages.

The damage calculation in Bateman's addenda report for Farmers Rice Milling, however, is new. The Farmers Rice Milling addenda report includes a calculation of the amount of unsold mill hours attributable to LL Rice. This method of estimating Farmers' loses was not previously disclosed by Bateman, even though plaintiffs did supply Bayer with documents that listed Farmers' unsold mill hours. Plaintiffs do not claim that this calculation is a response to any of Bayer's experts' opinions nor do plaintiffs claim that it is based on newly discovered evidence.

Since this calculation is not based on new information and is not a response to Bayer's experts' opinions, it should be excluded unless the delay was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). Here, the delay is harmless and Bayer will not be prejudiced by the inclusion of Bateman's new calculation. The calculation addresses generally the same type of damages that Bateman frequently investigated in his earlier reports and the calculation involved is a simple multiplication of data that Bayer had known of for several months, with

a calculated margin similar to the margin disclosed in Bateman's earlier reports. The only difference is that this particular calculation is for lost milling hours, rather than lost milling volume.

In addition, Bayer has more than sufficient time to respond to this new calculation. The cases are not set for trial, the deadlines have been changed several times before for good reasons, and I have vacated the previous discovery deadlines and asked the parties to provide a new schedule. Plaintiffs have also offered to make Bateman available for additional deposition questioning regarding his recent reports.

Accordingly,

**IT IS HEREBY ORDERED** that Bayer's motion to strike Dr. Bateman's addendum reports and his July 2, 2010 report [#3171] is DENIED.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 1st day of November, 2010.