UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE GENETICALLY MODIFIED RICE LITIGATION | ) ) | 4:06MD1811 CDP |

## **MEMORANDUM AND ORDER**

This order deals with the motions for summary judgment related to the additional trial pool case scheduled to begin on January 18, 2011. The trial will consider the claims of Mississippi plaintiffs Brian Byrd, Judy Byrd, and Jarett Byrd and Jeremy Byrd, partners of the Byrd Farms Partnership; Peter H. Dulaney and Virginia V. Dulaney, partners of Peter Dulaney Farms; Gary Pongetti, Pongetti Farms, Inc., and EBP, Inc., partners of Pongetti Farms Partnership II; and Phillip E. Rizzo, Phillip A. Rizzo, Paul R. Rizzo, John Michael Rizzo, Kimball Lake, Inc., Snake Creek, Inc., and Bogue, Inc., partners of Rizzo Farms Joint Venture.

The parties have filed a number of motions for summary judgment and to exclude or limit expert testimony. To a large extent, the motions before me are the same as the motions I ruled on in the bellwether trials, in general, and the Mississippi bellwether trial, in particular. The parties have referenced their previous motions and my previous orders, and I will do the same in this order. I have, however, considered the issues anew and with regard to the appropriate

Mississippi law. Although I have not changed the substance of any of the previous rulings, there are some differences.

These plaintiffs seek damages for alleged violations of the North Carolina Unfair Trade Practices Act. They also each seek to impose liability under negligence *per se* theories based on alleged violations of the federal Plant Protection Act and its accompanying regulations, as well as state law. The complaint also seeks damages under theories of negligence and public and private nuisance based on alleged violations of Mississippi laws.

For the reasons that follow and for the reasons that were described in more detail in my October 9, 2009 Memorandum and Order [docket #1604] and my Memorandum and Order dated December 9, 2009 [#2075], I will grant the motions in part and deny them in part. I will grant defendants' motions for summary judgment on plaintiffs' claims under the North Carolina Unfair Trade Practices Act and on plaintiffs' claims for negligence *per se* and for public nuisance, and I will grant plaintiffs' motions for summary judgment directed to certain affirmative defenses. I have determined as a matter of law that the regulations under the Plant Protection Act do not allow for low level or adventitious presence of regulated genetically modified rice in the commercial rice supply, and so I will not allow any of defendants' expert witnesses to opine to the contrary. I have limited the

testimony of various expert witnesses in other relatively minor ways. Otherwise, I have denied the remaining motions.

> 1. **<u>Violations of Statutes or Regulations</u>**

In the October 9, 2009 Memorandum and Order, I determined that neither the Plant Protection Act, 7 U.S.C. § 7701 *et seq*., nor the regulations issued under that act, 7 C.F.R. § 340 *et seq*., allow any level of adventitious presence of regulated articles such as LLRICE 601 and LLRICE 604 in the commercial rice supply. That ruling applies equally here, and has the same consequences that it had in the Mississippi bellwether.

> 2. **<u>North Carolina Unfair Trade Practices Act</u>**

The Bayer defendants have moved for summary judgment on plaintiffs' claims under the North Carolina Unfair Trade Practices Act, N.C. Gen. Stat. § 75-1.1 *et seq*. (West 2009). It is undisputed that these Mississippi plaintiffs have no North Carolina operations. The question presented by this motion is whether the Act provides a remedy to an out-of-state plaintiff to recover for out-of-state injuries allegedly resulting from unfair acts that occurred in North Carolina. The analysis for this claim is identical to the analysis of the same claim discussed in my October 9, 2009 order. For the same reasons that I concluded that the North Carolina Act did not apply to the Missouri plaintiffs, I also conclude that the Act

does not provide a cause of action to these Mississippi plaintiffs.       3.

   3.   **<u>Economic Loss Doctrine</u>**

Bayer claims that the Mississippi plaintiffs' tort claims are barred by the economic loss doctrine. As discussed in my December 9, 2009 order, the economic loss doctrine does not bar plaintiffs' claims because Bayer has not shown that it had a contractual or purchaser-seller relationship with these plaintiffs, that plaintiffs can assert breach of warranty or contract claims to recover for their losses, or that plaintiffs claim damages to property that was the subject of a contract with Bayer.

   4.   **<u>Public and Private Nuisance</u>**

The Bayer defendants have moved for summary judgment on the Mississippi plaintiffs' claims for public and private nuisance. In the public nuisance claim (Count 13), these plaintiffs allege that Bayer has unreasonably interfered with the public's right to expect compliance with the federal laws and the public's right to expect that the rice sold to the general public is free from contamination. In the private nuisance claims (Count 14), plaintiffs allege that Bayer's contamination of the rice supply interferes with and impairs plaintiffs' rights to grow rice on their land.

Mississippi recognizes claims for both public and private nuisances. *See*

*e.g.*, *Comet Delta, Inc. v. Pate Stevedore Co.*, 521 So. 2d 857, 859-861 (Miss. 1988). A public nuisance is one that interferes with the rights of the whole community. *See id.* "To be considered public, the nuisance must affect an interest common to the general public, rather than peculiar to one individual, or several." *Id.* To sue for public nuisance a plaintiff must have "sustained harm different in kind, rather than in degree, than that suffered by the public at large." *Id.* at 861.

In contrast, "[a] private nuisance is a nontrespassory invasion of another's interest in the use and enjoyment of his property." *Biglane v. Under The Hill Corp.*, 949 So.2d 9, 14 (Miss. 2007). Liability for private nuisance attaches:

> only when [the] conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land and that invasion is either (a) intentional and unreasonable, or (b) unintentional but otherwise provides the basis for a cause of action for negligent or reckless conduct or for abnormally dangerous conditions or activities."

*Biglane v. Under The Hill Corp.*, 949 So.2d 9, 14 (Miss. 2007).

There is no evidence in the record showing the sort of public harm or negative effect on an interest common to the entire community that public nuisance law was developed to remedy. However, there is a genuine dispute of fact regarding whether Bayer's use of its cooperators' land interfered with the plaintiffs' use of their land. Plaintiffs state that because of the contamination they

could not plant rice or certain types of rice on their land, and this is an interference with plaintiffs' land sufficient to allow a claim for private nuisance to proceed to trial. As a result, I will deny Bayer's motion with respect to plaintiffs' private nuisance claims, but I will grant summary judgment to Bayer on the public nuisance claims.

### 5. Negligence *Per Se*

In Mississippi, negligence *per se* is a "breach of a statute or ordinance [which] renders the offender liable in tort without proof of a lack of due care." *Palmer v. Anderson Infirmary Benevolent Ass'n*, 656 So. 2d 790, 796 (Miss. 1995). As discussed in more detail in the October 9, 2009 order, the APHIS regulations cannot provide a basis for a negligence *per se* claim because those performance standards do not provide a standard of care. Defendants are therefore entitled to summary judgment on the negligence *per se* claims based on alleged APHIS violations (Count 17).

Plaintiffs' negligence *per se* claims based on state law fail for the same reason described in my December 9, 2009 order ruling on the motions for summary judgment in the Mississippi bellwether. Mississippi Code § 69-49-1 provides that "Any person or entity who willfully and knowingly damages or destroys any field crop . . ." is liable for double damages. Miss. Code Ann. § 69-

49-1 (West 2009). This statute on its face requires intentional, knowing conduct, and cannot be the basis for a negligence action. I will therefore grant summary judgment to Bayer on Count 16.

### 6. **Punitive Damages**

The Bayer defendants have moved for summary judgment on plaintiffs' claim for punitive damages. "When deciding whether to submit the issue of punitive damages to a trier of fact, the trial court looks at the totality of the circumstances, as revealed in the record, to determine if a reasonable, hypothetical trier of fact could find either malice or gross neglect/reckless disregard." *Bradfield v. Schwartz*, 936 So.2d 931, 936 (Miss. 2006); Miss. Code. Ann. § 11-1-65(1)(a). As discussed more fully in the summary judgment order for the Mississippi bellwether dated December 9, 2009, plaintiffs have presented evidence from which a factfinder could conclude that Bayer was aware it had not taken reasonable steps to prevent an escape, even though it knew that the resulting contamination would have a severe impact on the market. Therefore Bayer is not entitled to summary judgment on plaintiffs' claims for punitive damages.

### 7. **Affirmative Defenses 11 and 13**

Because adventitious presence is not allowed, I will grant plaintiffs'

motions for summary judgment on defendants' affirmative defenses 11 and 13.[1]

The undisputed facts show that the performance standards were not met here because the required result was not met: there was a release into the environment and the regulated article or its offspring has persisted in the environment.

### 8. Affirmative Defense 14 - Industry Standards

Plaintiffs are entitled to summary judgment on Bayer's affirmative defense 14, which alleged that it was not liable because it complied with state-of-the art industry standards. Bayer agrees that this defense only applied to the strict liability claims, which plaintiffs have withdrawn.

### 9. Affirmative Defense 4 - Intervening Cause

Bayer asserts in affirmative defense 4 that it cannot be held liable "due to the intervening and/or superseding acts or omissions of parties or non-parties to this action for whose acts or omissions the BCS Defendants and Bayer Corporation are not liable." The Mississippi plaintiffs are entitled to summary judgment on this defense.

Under Mississippi law, "an original actor's negligence may be superceded [*sic*] by a subsequent actor's negligence, if the subsequent negligence was

---

[1] Bayer's affirmative defense 13 and Starlink's affirmative defense 11 assert that defendants are not liable for any injuries because they "complied fully with all applicable statutes and regulations regarding genetically modified crops."

unforeseeable." *Entrican v. Ming*, 962 So. 2d 28, 35 (Miss. 2007). However, if the subsequent negligence is reasonably anticipated or should have been anticipated by the defendant under the circumstances, the negligence is foreseeable and "does not break the chain of events between the negligence of the first actor and the injury." *Causey v. Sanders*, 998 So. 2d 393, 405 (Miss. 2008).

The evidence reveals that the negligence of third parties, if any, was foreseeable and reasonably anticipated by defendants. As the "responsible party" allowed to introduce LL601 and LL604 into the environment, Bayer had a duty to introduce those products without negligence. Contamination of non-GM rice by LL601 and LL604 is the known and foreseeable risk that Bayer had a duty to prevent. As a matter of law, plaintiffs are entitled to summary judgment on defendants' affirmative defense of intervening cause.

### 10. Agency and Successor Liability

The analysis of the Mississippi plaintiffs' summary judgment motion seeking to establish the status of various defendants as successors, partners and agents of one another is essentially the same as in my October 9 order for the Missouri plaintiffs. And, as I concluded in that order, I conclude that genuine disputes of fact remain as to agency and joint venture liability, but certain facts are established without dispute.

### a. Undisputed Facts Established for Trial

The following facts are not genuinely disputed, and are therefore established for the upcoming trial:

a. Bayer CropScience AG, as the survivor of its April 1, 2007, merger with Bayer CropScience GmbH ("BCS GmbH") assumed all assets and liabilities of BCS GmbH, including any liabilities which arose regarding the activities related to LibertyLink rice at issue in this litigation, and therefore is the successor to BCS GmbH, including the time periods when BCS GmbH was previously known as Aventis CropScience GmbH ("ACS GmbH") or Hoechst Schering AgrEvo GmbH ("AgrEvo GmbH"), and as successor is subject to liability for the acts of its predecessors;

b. BBS NV, as the successor by name change to Bayer CropScience NV ("BCS NV"), Aventis CropScience NV ("ACS NV"), and Plant Genetic Systems NV ("PGS"), is subject to liability for any acts which occurred regarding the activities related to LibertyLink rice at issue in this litigation during the time periods in which it was known as BCS NV, ACS NV and/or PGS;

c. BCS LP, as the successor by name change to ACS USA LP, is subject to liability for the activities related to LibertyLink rice at issue in this litigation during the time period in which it was known as ACS USA LP and for any such liability assumed by or transferred to ACS USA LP from AgrEvo USA Company ("AgrEvo USA") or its general partners;

d. ACS USA LP, and thus BCS LP, assumed and had transferred to it all liabilities incurred by AgrEvo USA and its general partners regarding their activities related to LibertyLink rice at issue in this litigation during the period in which they conducted those activities;

e. Starlink, as the successor by name change to Aventis CropScience USA Holding Inc. ("ACS USA Holding"), is subject to

liability as general partner of ACS USA LP related to LibertyLink rice at issue in this litigation during the period from December 1999 to December 2001;

f.      BCS Holding Inc., as the successor by name change to Aventis CropScience USA Holding II Inc. ("ACS Holding II Inc."), is subject to liability as general partner of BCS LP related to LibertyLink rice at issue in this litigation;

g.      BCS Inc., as the successor by merger and name change from Rhone Poulenc Ag Company Inc. is subject to liability of AgrEvo USA and its general partners, AgriVet, Inc. ("AgriVet") and NOR-AM Chemical Company ("NOR-AM"), related to LibertyLink rice at issue in this litigation and which may have arisen during the time such activities were undertaken by AgrEvo USA prior to the formation of ACS USA LP.

### b.      Joint Venture and Agency

The parties state that their arguments regarding joint venture and agency are identical to the arguments they made in the Mississippi bellwether. Accordingly, the analysis and conclusions in this case are identical to those described in my December 9, 2009 order. Genuine disputes of material fact remain on the issues of agency and joint venture under Mississippi law, and so I will deny the plaintiffs' motions on these issues.

### 11.     *Daubert* **Motions**

Both plaintiffs and defendants again seek to exclude each others' experts under *Daubert*. These objections are substantially similar to those made to the

same experts and the same testimony in the bellwether trials. With minor exceptions, the parties admit that their arguments are identical to their previous arguments. Because the parties' arguments, old and new, are sufficiently addressed in the October 9 order, I will not recite them here.

Rule 702 permits expert testimony if it "will assist the trier of fact to understand the evidence or to determine a fact in issue . . . ." Fed. R. Evid. 702. The key inquiries are the (1) factual basis of the opinion, (2) reliability of the method and application, and (3) the relevance of the testimony. *Id.*; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993).

The parties' witnesses in this case qualify as experts through education and experience. *See* Fed. R. Evid. 702. They may state their opinions within the subject of their expertise, so long as it was disclosed in their expert reports, it is based in fact, and a proper foundation is laid at trial. *Id.*; Fed. R. Civ. P. 26. While they may not testify on matters outside of their expertise or beyond the scope of their reports, they may apply the results of another expert's calculations, if a foundation is laid showing that they are qualified to do so. *See Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002); *see also Beck's Office Furniture & Supplies, Inc. v. Haworth, Inc.*, Nos. 95-4018, 95-4029, 1996 WL 466673, at *7-8 (10th Cir. Aug. 16, 1996). For instance, a rice-growing

expert may testify about the reasonableness of Bayer's growing practices, even though he may not testify about market damages. An accountant may apply the results of an economist's market damages calculations to a particular farm, but the accountant may not give an opinion on the accuracy of the economist's calculations. Experts may also critique the methodology of other experts, provided that they do so in their role as an expert based on a reliable method of analysis.

Experts may not draw legal conclusions or interpret laws or regulations. *See Garrett v. Albright*, No. 06-CV-4137-NKL, 2008 WL 697590, at * 4 (W.D. Mo. Mar. 11, 2008). No witness may testify that the regulations allow adventitious presence or that Bayer violated or complied with a standard of care prescribed by the regulations. Nor may witnesses testify that Bayer is liable because it is listed as the "responsible party" in its USDA filings. The experts may not recite hearsay, such as conversations with the USDA, APHIS, or the U.S. Rice Federation. *See* Fed. R. Evid. 802. Finally, expert testimony is limited to issues that are relevant to this trial. Fed. R. Evid. 402. For example, an expert's opinion about Bayer or LSU's growing practices in 2007 or 2009 is not relevant or helpful to assist the jury in understanding whether Bayer was negligent during the LLRICE 601 and 604 field trials.

## Conclusion

To summarize the decisions discussed above, I am granting summary judgment to defendants on the Mississippi plaintiffs' Counts 13 (public nuisance), Counts 16 and 17 (negligence *per se*), and Count 33 (North Carolina Unfair and Deceptive Trade Practices Act). I am granting plaintiffs' motion for summary judgment on agency and successor liability only to the extent that certain uncontested facts are deemed established for trial. I am granting plaintiffs' motions for summary judgment on defendants' affirmative defenses 11 and 13 (compliance with regulations) and on their affirmative defense 4 (intervening cause). Defendants concede that affirmative defense 14 (compliance with industry standards) only applied to plaintiffs' withdrawn strict liability claims. I am denying all other motions for summary judgment.

I have denied the *Daubert* motions, except that I have limited some areas of testimony, as set out above.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion for summary judgment on defendants' affirmative defenses nos. 4 and 14 [#3522] is granted.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment [#3532] is granted in part and denied in part.

**IT IS FURTHER ORDERED** that defendants' motion to exclude testimony under Rule 702 [#3538] is granted only to the extent set out above and in the October 9, 2009 Order [#1604] and are denied in all other respects.

**IT IS FURTHER ORDERED** that plaintiffs' motions to exclude testimony of Alan McHughen [#3546], Nicholas Kalaitzandonakes [#3528], Ronnie Helms [#3526], and Cheryl Shuffield [#3519] are granted only to the extent set out above and are denied in all other respects.

**IT IS FURTHER ORDERED** that plaintiffs' motion for partial summary judgment on successor, general partner and agency status [#3515] is granted only to the extent that certain facts as set out above are deemed established for trial; the motions are denied in all other respects.

**IT IS FURTHER ORDERED** that plaintiffs' motion for partial summary judgment on defendants' affirmative defense nos. 11 and 13 [#3530] is granted.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 6th day of December, 2010.