UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE GENETICALLY MODIFIED RICE LITIGATION | ) ) ) | 4:06MD1811 CDP |

**This Order Relates To:**

**First Remand Group (Texas and Louisiana)**

*Leland Vidrine, et al.*
*v. Bayer CropScience LP, et al.*      4:07CV223 CDP

*Glenden Marceaux, et al.*
*v. Bayer CropScience LP*      4:07CV482 CDP

*Aswell Farms, Inc.*
*v. Bayer CropScience LP*      4:07CV499 CDP

*Mitchell W. Deville*
*v. Bayer CropScience LP*      4:07CV503 CDP

*Stafford P. Fontenot, et al.*
*v. Bayer CropScience LP*      4:07CV622 CDP

*Verona M. Courville*
*v. Bayer CropScience LP*      4:07CV637 CDP

*Lonesome Dove Plantation, LLC*
*v. Bayer CropScience LP*      4:07CV647 CDP

*Jody David Fontenot, et al.*
*v. Bayer CropScience LP*      4:07CV651 CDP

*Gloria B. Fontenot*
*v. Bayer CropScience LP*      4:07CV692 CDP

*Mitchell Ray Soileau*
*v. Bayer CropScience LP*      4:07CV696 CDP

*Troy Fruge*
*v. Bayer CropScience LP*                     4:07CV711 CDP

*Robert Allen Benoit*
*v. Bayer CropScience LP*                     4:07CV759 CDP

*Miller Brothers Farm, et al.*
*v. Bayer CropScience LP*                     4:07CV782 CDP

*Keith Hensgens*
*v. Bayer CropScience LP*                     4:07CV792 CDP

*Darrel Wayne Attales, et al.*
*v. Bayer CropScience LP*                     4:07CV1030 CDP

*Jessie C. Fontenot*
*v. Bayer CropScience LP*                     4:07 CV1765 CDP

*Thomas A. Sarver*
*v. Bayer CropScience LP*                     4:07CV1768 CDP

*Black River Rice Co.*
*v. Bayer CropScience LP*                     4:07CV1777 CDP

*Randy Stutes*
*v. Bayer CropScience LP, et al.*             4:07CV1806 CDP

*Roger Leblanc*
*v. Bayer CropScience LP*, et al.             4:07CV1808 CDP

*Brodney Mouton, et al.*
*v. Bayer CropScience LP, et al.*             4:07CV1809 CDP

*Mark J. Simon, et al.*
*v. Bayer CropScience LP, et al.*             4:07CV1838 CDP

*Jim Wiese, et al.*

*v. Bayer CropScience LP, et al.*                    4:08CV877 CDP

*Rosemary W. Wied, et al.*
*v. Bayer CropScience LP, et al.*                    4:08CV887 CDP

*Walter E. Dutcher, et al.*
*v. Bayer CropScience LP, et al.*                    4:08CV889 CDP

*Benny Wleczyck, et al.*
*v. Bayer CropScience LP, et al.*                    4:08CV1254 CDP

*Tim Anderson, et al.*
*v. Bayer CropScience LP, et al.*                    4:08CV1257 CDP

*Brad Engstrom, et al.*
*v. Bayer AG, et al.*                    4:08CV1262 CDP

*David Guthman, et al.*
*v.  Bayer CropScience LP, et al.*                    4:08CV1263 CDP

*Henry J. Hlavinka, et al.*
*v. Bayer CropScience LP, et al.*                    4:08CV1265 CDP

*Darby Hoffman, et al.*
*v. Bayer AG, et al.*                    4:08CV1267 CDP

*John Kramr, et al.*
*v. Bayer AG, et al.*                    4:08CV1268 CDP

*Edward Korenek, et al.*
*v. Bayer AG, et al.*                    4:08CV1269 CDP

*Leon Pavlock, et al.*
*v. Bayer AG, et al.*                    4:08CV1272 CDP

*Rodney Pederson, et al.*
*v. Bayer AG, et al.*                    4:08CV1273 CDP

*Thomas A. Smaistrla, et al.*
*v. Bayer AG, et al.*                          4:08CV1276 CDP

*Rudy Polak, et al.*
 *v. Bayer CropScience LP, et al.*             4:08CV1281 CDP

*David R. Polak, et al.*
*v. Bayer CropScience LP, et al.*             4:08CV1283 CDP

*Terrence Hlavinka Cattle Co., et al.*
*v. Bayer CropScience Inc., et al.*           4:08CV1541 CDP

*Woodsland Farms, et al.*
*v. Bayer CropScience LP, et al.*             4:08CV1543 CDP

*Raymond Franz, et al.*
*v. Bayer CropScience LP, et al.*             4:08CV1544 CDP

## MEMORANDUM AND ORDER

This order deals with the motions for summary judgment related to the first group of cases to be remanded to their transferor courts for trial. This remand group includes cases from Louisiana and Texas. The Texas plaintiffs in the first remand group are Tim Anderson; Henry J. Hlavinka, Sr.; Edward Korenek; David R. Polak; Walter E. Dutcher; Rudy Polak; Thomas A. Smaistrla; Rodney Pederson; Leon Pavlock; Darby Hoffman; Benny Wleczyck; Brad Engstrom; Terrence Hlavinka Cattle Company; John Kramr; Raymond Franz; David Guthman; Rosemary W. Wied; Jim Wiese; and Woodsland Farms.

The Louisiana plaintiffs in this remand group are Aswell Farms, Inc.; Darrel

Wayne Attales and Chrysanna Attales; Robert Allen Benoit; Black River Rice;

Verona M. Courville; Mitchell W. Deville; Gloria B. Fontenot; Jessie C. Fontenot;

Jody David Fontenot and Amy Fontenot; Stafford P. Fontenot and Odile Fontenot;

Troy Fruge; Keith Hensgens; Roger Leblanc; Lonesome Dove Plantation, LLC;

Glenden Marceaux and Marceaux Farms, L.L.C.; Miller Brothers Farm and the

partners of Miller Brothers Farm: Shelton Miller, Bennie P. Miller, and Marcus J.

Miller; Brodney Mouton, Sr.; Thomas A. Sarver; Mark J. Simon and Cynthia L.

Simon; Mitchell Ray Soileau; Randy Stutes; and Leland Vidrine and Leland

Vidrine Farms.

The parties have filed a number of motions for summary judgment. To a

large extent, the motions before me are the same as the motions I ruled on in

previous bellwether trials. I have reconsidered the issues and although I have not

changed the substance of any of my previous rulings, there are some differences

because of the state law and the nature of these particular plaintiffs' claims. The

parties have appropriately referenced their previous motions and my previous

orders, and I will do the same in this order.

For the reasons that follow and for the reasons that were described in more

detail in my orders dated October 9, 2009 [docket #1604], June 7, 2010 [#2981],

and October 4, 2010 [#3495], I will grant the motions in part and deny them in

part.[1]  Both the Louisiana and Texas plaintiffs seek damages for negligence and

for punitive damages.  The Louisiana plaintiffs also seek damages for alleged

violations of the North Carolina Unfair Trade Practices Act and for trespass.

Defendants have moved for summary judgment on both groups of plaintiffs'

negligence claims, arguing that plaintiffs' negligence claims are preempted by the

Plant Protection Act and barred by the economic loss doctrine.  Defendants also

argue that plaintiffs are prohibited from seeking punitive damages as a matter of

law, that the North Carolina Unfair Trade Practices Act does not provide the

Louisiana plaintiffs with a cause of action, and that the Louisiana plaintiffs cannot

prove a trespass to their property.

I will grant defendants' motions for summary judgment on the Louisiana

plaintiffs' claims under the North Carolina Unfair Trade Practices Act, as well as

defendants' motion for summary judgment on the Louisiana plaintiffs' claim for

punitive damages.  However, I will deny defendants' motions directed at both

groups of plaintiffs' claims for negligence, as well as the Texas plaintiffs' claims

for punitive damages and the Louisiana plaintiffs' claims for trespass.

---

[1]In ruling on all the summary judgment motions, I have viewed the facts and inferences in
the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith
Radio Corp.*, 475 U.S. 574, 587 (1986).  The moving party has the burden to establish both the
absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law.
Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v.
Catrett*, 477 U.S. 317, 322 (1986).

The Texas and Louisiana plaintiffs' complaints also assert several other claims based on a variety of legal theories. Plaintiffs, however, either withdraw these claims, or do not oppose Bayer's motions for summary judgment on these claims. As a result, I will grant Bayer's motions for summary judgment on the Louisiana plaintiffs' claims for public and private nuisance, negligence *per se*, and to recover damages for mental anguish. Similarly, I will grant Bayer's motions with respect to the Texas plaintiffs' claims for fraud, fraudulent non-disclosure, tortious interference with contract, and tortious interference with prospective business relations.

Finally, I will grant plaintiffs' motions for summary judgment directed to certain affirmative defenses and I will deny plaintiffs' motions to establish Bayer's liability for the actions of its cooperators under various theories of vicarious liability. I have determined that the Plant Protection Act does not preempt plaintiffs' claims and that the regulations do not allow for low level or adventitious presence of regulated genetically modified rice in the commercial rice supply. Otherwise, I have denied the remaining motions.

### A.    Violations of Statutes or Regulations

In my October 9, 2009 Memorandum and Order, I determined that neither the Plant Protection Act, 7 U.S.C. § 7701 *et seq*., nor the regulations issued under

that act, 7 C.F.R. § 340 *et seq*., allow any level of adventitious presence of regulated articles such as LLRICE 601 and LLRICE 604 in the commercial rice supply. That ruling remains in effect, and has the same consequences that it had in the earlier cases.

### B. North Carolina Unfair Trade Practices Act

The Bayer defendants seek summary judgment on the Louisiana plaintiffs' claims under the North Carolina Unfair Trade Practices Act, N.C. Gen. Stat. § 75-1.1 *et seq*. (West 2009). It is undisputed that these Louisiana plaintiffs have no North Carolina operations. The question presented by this motion is whether the Act provides a remedy to an out-of-state plaintiff to recover for out-of-state injuries allegedly resulting from unfair acts that occurred in North Carolina. The analysis for this claim is identical to the analysis of the same claim discussed in my orders dated October 9, 2009 and June 7, 20101. For the same reasons that I concluded that the North Carolina Act did not apply to the Missouri plaintiffs, I also conclude that the Act does not provide a cause of action to these Louisiana plaintiffs.

### C. Federal Preemption by the Plant Protection Act

Bayer argues that the Plant Protection Act, 7 U.S.C. § 7701 *et seq.* preempts plaintiffs' claims in this case. Bayer supports its argument entirely by

reference to its earlier motions and the plaintiffs respond by reference to their earlier opposition. The Texas plaintiffs also move for summary judgment on this issue, as presented in Bayer's affirmative defense number 12. Because there are no new arguments or evidence, I will deny Bayer's motion for the same reasons stated on the record in the summary judgment hearing held on April 16, 2009. The Plant Protection Act does not preempt plaintiffs' claims in this case because plaintiffs' claims do not attempt to regulate material "in foreign commerce" and because Bayer has not shown that its genetically modified rice constitutes a "plant pest" under the statute.

### D.    Economic Loss Doctrine

Bayer argues that both the Louisiana and the Texas plaintiffs' claims are barred by the economic loss doctrine. Bayer supports its motion by referencing or reiterating its previous arguments. In response, the Texas plaintiffs have similarly referenced past arguments in their own motion for summary judgment on the same issue, arguing that the economic loss doctrine does not bar their claims in this case.

As stated in my earlier orders dated October 9, 2009, June 7, 2010, and October 4th, 2010, the economic loss doctrine does not apply to these plaintiffs' claims. Bayer has not shown that plaintiffs had a contract with Bayer, that they

purchased rice from Bayer, or that plaintiffs could recover for their alleged injuries from a third party under a contract claim, and so the Texas plaintiffs' claims are not barred by the economic loss doctrine.[2]  Similarly, the Louisiana plaintiffs' claims are not barred by the doctrine because plaintiffs are not seeking to recover for damage to the property of someone with whom they have a contract; rather, they seek to recover for their own losses that resulted directly from Bayer's acts.[3] Further, plaintiffs in this case do not seek to recover purely speculative damages. There is a finite, although large, pool of plaintiffs seeking to recover losses on sales that are limited by the amount of rice that they have historically grown and the prices of commodities markets.  As result, I will deny Bayer's motions and

---

[2]Texas recognizes the economic loss doctrine in three scenarios.  *See Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007); *Sterling Chemicals, Inc. v. Texaco Inc.*, 259 S.W.3d 793 (Tex. Ct. App. 2007).  First, the doctrine prevents a plaintiff from asserting tort and breach of contract claims against a defendant for the same injury.  *Lamar*, 242 S.W.3d at 12.  Second, the doctrine bars products liability claims where the buyer may also recover for the same injury under quasi-contract theories, such as for breach of an implied warranty.  *See Sterling Chemicals*, 259 S.W.3d at 793.  Third, the doctrine prevents a plaintiff from asserting a tort claim against a third party, even when there is no contractual privity between the two, so long as the plaintiff could have recovered for the same injury by a contract action against another.  *Id.*

[3]Under Louisiana law, the economic loss doctrine is a subsidiary consideration when considering whether one of the elements of negligence is present.  *See PPG Industries, Inc. v. Bean Dredging*, 447 So.2d 1058 (La. 1984); *Louisiana Crawfish Producers Ass'n-West v. Amerada Hess Corp.*, 935 So.2d 380 (La. Ct. App. 2006); *Phillips v. G & H Seed Co., Inc.*, 10 So.3d 339 (La. Ct. App. 2009); *Desormeaux v. Central Industries, Inc.*, 333 So.2d 431 (La. Ct. App. 1976). Specifically, it is considered when determining whether a tortfeasors actions are the legal cause of the plaintiffs' injuries.  *See PPG Industries*, 447 So.2d at 1061. The purpose of the rule in Louisiana is to prevent the tortfeasor from being held liable, not only to the victim, but to everyone who has a contract with the victim when the tortfeasor was unaware of the contract, or in other words,  to "all people for all damages."  *PPG*, 447 So.2d at 1061.

grant the Texas plaintiffs' motion on this issue.

### E.    Agency, Successor, Joint Venture, and Nondelegable Duty Liability

Both the Louisiana and the Texas plaintiffs seek to establish the status of various defendants as successors, partners and agents of one another, and to establish that the Bayer entities acted in a joint venture and that they had a nondelegable duty to ensure the confinement of its genetically modified rice. The parties do not raise any new arguments or evidence regarding these issues and so my rulings are the same as in my orders dated October 9, 2009, June 7, 2010, and October 4th, 2010. As I concluded in those orders, genuine disputes of fact remain as to agency, joint venture, and nondelegable duty liability, but certain facts are established without dispute.

### 1.    Successor Liability - Undisputed Facts

The following facts are not genuinely disputed, and are therefore established for any trial upon remand to the transferor courts:

> a.    Bayer CropScience AG, as the survivor of its April 1, 2007, merger with Bayer CropScience GmbH ("BCS GmbH") assumed all assets and liabilities of BCS GmbH, including any liabilities which arose regarding the activities related to LibertyLink rice at issue in this litigation, and therefore is the successor to BCS GmbH, including the time periods when BCS GmbH was previously known as Aventis CropScience GmbH ("ACS GmbH") or Hoechst Schering

AgrEvo GmbH ("AgrEvo GmbH"), and as successor is subject to liability for the acts of its predecessors;

b.      BBS NV, as the successor by name change to Bayer CropScience NV ("BCS NV"), Aventis CropScience NV ("ACS NV"), and Plant Genetic Systems NV ("PGS"), is subject to liability for any acts which occurred regarding the activities related to LibertyLink rice at issue in this litigation during the time periods in which it was known as BCS NV, ACS NV and/or PGS;

c.      BCS LP, as the successor by name change to ACS USA LP, is subject to liability for the activities related to LibertyLink rice at issue in this litigation during the time period in which it was known as ACS USA LP and for any such liability assumed by or transferred to ACS USA LP from AgrEvo USA Company ("AgrEvo USA") or its general partners;

c.      ACS USA LP, and thus BCS LP, assumed and had transferred to it all liabilities incurred by AgrEvo USA and its general partners regarding their activities related to LibertyLink rice at issue in this litigation during the period in which they conducted those activities;

d.      Starlink, as the successor by name change to Aventis CropScience USA Holding Inc. ("ACS USA Holding"), is subject to liability as general partner of ACS USA LP related to LibertyLink rice at issue in this litigation during the period from December 1999 to December 2001;

e.      BCS Holding Inc., as the successor by name change to Aventis CropScience USA Holding II Inc. ("ACS Holding II Inc."), is subject to liability as general partner of BCS LP related to LibertyLink rice at issue in this litigation;

f.      BCS Inc., as the successor by merger and name

change from Rhone Poulenc Ag Company Inc. is subject to
liability of AgrEvo USA and its general partners, AgriVet, Inc.
("AgriVet") and NOR-AM Chemical Company ("NOR-AM"),
related to LibertyLink rice at issue in this litigation and which
may have arisen during the time such activities were
undertaken by AgrEvo USA prior to the formation of ACS
USA LP.

## 2.    Agency

Both the Louisiana and the Texas plaintiffs seek to establish that various

Bayer entities, as well as LSU and the other cooperators, were acting as agents for

all or some of the Bayer entities when testing and developing LL Rice.  In Texas, a

principal is liable for the conduct of his agent "based on the principal's control or

right to control the agent's actions undertaken to further the principal's

objectives."  *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 686

(Tex. 2007) (citing *Baptist Mem. Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947

(Tex. 1998)); *McAfee, Inc. v. Agilysys, Inc.*, 316 S.W.3d 820, 829 (Tex. Ct. App.

2010) ("The critical element of an agency relationship is the right to control, and

the principal must have control of both the means and details of the process by

which the agent is to accomplish his task in order for an agency relationship to

exist.").  In Louisiana, a defendant's liability for the conduct of another is

dependent on whether the other is acting as the defendant's agent, employee,

servant, or independent contractor.[4]  *See* La. Civ. Code art. 2320; *Bartholomew v. CNG Producing Co.*, 832 F.2d 326 (5th Cir. 1987).  Whether a person is acting on behalf of a principal is primarily a factual question based on the extent of the principal's right to control the actions of the agent, employee, or contractor. *Hillman v. Comm-Care, Inc.*, 805 So.2d 1157, 1162 (La. 2002).

In this case, the evidence regarding the amount of control that the Bayer entities had over one another, as well as the control they had over LSU and the other cooperators is disputed.  Although plaintiffs have identified several areas in which Bayer CropScience and Bayer AG had influence over the other Bayer entities and LSU, a factual question remains regarding whether this influence amounted to a right to control both the means and the details of their actions.  I conclude that genuine disputes of material fact remain on issues of agency under Texas and Louisiana law, and so I will deny the plaintiffs' motions on this issue.

### 3.    Joint Venture

The Louisiana plaintiffs move to establish that the Bayer entities engaged in a joint venture to create, test, and produce LL Rice.  Under Louisiana law, "the

---

[4]An employer or master is liable for the actions of an agent, employee, or servant if they "might have prevented the act which caused the damage, and have not done it," La. Civ. Code art. 2320, while a principal is liable for the actions of an independent contractor if the principal "exercise[d] operational control over those acts or expressly or impliedly authorize[d] an unsafe practice."  *Coulter v. Texaco, Inc*, 117 F.3d 909, 911-13 (5th Cir. 1997).

fundamental elements of a joint venture are generally the same as those of partnership, and, accordingly, joint ventures are governed by the law of partnership." *Transit Management of Southeast Louisiana, Inc. v. Group Ins. Admin., Inc.*, 226 F.3d 376, 383 (5th Cir. 2000) (citing *Cajun Elec. Power Co-op., Inc. v. McNamara*, 452 So.2d 212, 215 (La. Ct. App. 1984)). As a result, a joint venture "is a juridical person, distinct from its partners, created by a contract between two or more persons to combine their efforts or resources in determined proportions and to collaborate at mutual risk for their common profit or commercial benefit."[5] La. Civ. Code art. 2801 (West 2005). The elements of a joint venture are:

> (1) A contract between two or more persons; (2) A juridical entity or person is established; (3) Contribution by all parties of either efforts or resources; (4) The contribution must be in determinate proportions; (5) There must be joint effort; (6) There must be a mutual risk vis-a-vis losses; (7) There must be a sharing of profits.

*Cajun Elec. Power*, 452 So.2d at 215. If the parties satisfy these elements, a joint venture is formed, regardless of the language used in the agreement and "even if the parties had not thought of such consequences or even sought to avoid certain

---

[5]"The principal difference between a partnership and a joint venture recognized by the jurisprudence is that a partnership is ordinarily formed for the transaction of a general business of a particular kind, while a joint venture is usually limited to a single transaction." *Coffee Bay Investors, L.L.C. v. W.O.G.C. Co.*, 878 So.2d 665, 670 n.4 (La. Ct. App. 2004).

consequences of the relationship." *Gabriel v. Hobbs*, 804 So.2d 853, 855 (La. Ct. App. 2001); *see also Smith v. Scott*, 655 So.2d 582, 585 (La. Ct. App. 1995). Joint venturers are vicariously liable for the torts of the other members of the venture. *Gabriel*, 804 So.2d at 855. The existence of a joint venture is a question of fact. *Cajun Elec. Power*, 452 So.2d at 216.

Plaintiffs have provided some evidence that several of the Bayer entities engaged in a coordinated effort to develop and produce LL Rice. Plaintiffs, however, do not provide sufficient evidence on certain elements of the test to support a finding that all of the identified Bayer entities participated in a joint venture as a matter of law. For instance, plaintiffs have not shown that the Bayer entities shared losses, nor have they sufficiently described the participation of Bayer AG or certain other Bayer entities in the development of LL Rice. Since plaintiffs have not shown that each party actually participated or that any parties shared losses, I cannot find that the Bayer entities participated in a joint venture on this motion.

### 4. Nondelegable Duty

The Texas plaintiffs move to establish that Bayer had a nondelegble duty to contain LL Rice and that, regardless of any agency relationship, Bayer is liable for the harm caused by the contamination. Texas law recognizes that, in some

circumstances, principals may not delegate their responsibility to perform certain duties. *See MBank El Paso, N.A. v. Sanchez*, 836 S.W.2d 151, 153 (Tex. 1992). That is, even if a principal hires an independent contractor to perform one of these nondelegable duties, the principal will be liable if the duty is breached. *Id.* The Texas Supreme Court has adopted the Restatement of Torts rule for statutorily created nondelegable duties and states that: "As a general rule, when a duty is imposed by law on the basis of concerns for public safety, the party bearing the duty cannot escape it by delegating it to an independent contractor." *Id.*; *see also Randall Noe Chrysler Dodge, LLP v. Oakley Tire Co.*, 308 S.W.3d 542, 546-47 (Tex. Ct. App. 2010); Restatement (Second) of Torts § 424 (1965). The nondelegable duty doctrine shifts liability to a principal because of the dangers, or possible dangers, associated with the activity the principal asks its agent to perform. *See MBank El Paso*, 836 S.W.2d at 153. As a result, Texas courts will not find that a public safety statute, such as a public health statute, creates a nondelegable duty in cases where no personal injury is alleged, unless the action in question is inherently dangerous. *See Randall Noe*, 308 S.W.3d at 546-47.

In this case, plaintiffs have not shown physical injury to a person or the potential for use of force or violence that Texas courts appear to require for application of the non-delegable duty doctrine. I therefore conclude that plaintiffs

are not entitled to summary judgment on this issue.

**F.    *Res Ipsa Loquitur***

Bayer moves for summary judgment to prohibit the Louisiana plaintiffs

from submitting the issue of *res ips loquitur* to the jury.  A jury may be instructed

on *res ipsa loquitur* in cases involving only circumstantial evidence if:

> (1) the injury is of the kind which does not ordinarily occur in the
> absence of negligence on someone's part; (2) the evidence
> sufficiently eliminates other more probable causes of the injury, such
> as the conduct of the plaintiff or of a third person; and (3) the alleged
> negligence of the defendant must be within the scope of the
> defendant's duty to the plaintiff.

*Linnear v. CenterPoint Energy Entex/Reliant Energy*, 966 So.2d 36, 43-44 (La.

2007)*.*  A trial judge may submit the issue of *res ipsa* to the jury only after finding

that "reasonable minds could differ as to all three criteria."  *Id.*  "If reasonable

minds could differ as to all three criteria, then the law permits the use of *res ipsa*

*loquitur* to allow the jury to infer negligence if it chooses to do so from all the

circumstances presented, including the incident itself."  *Id.*  Generally, the

decision to submit the issue of *res ipsa* to the jury is made at the close of evidence.

 *Zapalowski v. Campbell*, 988 So.2d 772, 776-77 (La. Ct. App. 2008).

Bayer's motion on this issue is premature.  No evidence has yet been

presented to the jury and, based on the materials presented in the parties' motions,

there are disputed issues regarding whether Bayer was negligent in choosing to conduct its field test at LSU, whether Bayer acted negligently during the testing, and whether the actions of Bayer's cooperators can be attributed to Bayer. Therefore, I will deny Bayer's motion on this issue.

### G.    Landlord and Waterlord Damages

Bayer seeks a summary judgment that the Louisiana plaintiffs may not recover damages for the portion of their crop that plaintiffs will ultimately submit to their landlords or waterlords for rent.  Bayer's arguments are the same as in its motion for summary judgment on this issue in the Louisiana bellwether trial.  For the reasons stated in my order dated June 7, 2010, and because Bayer has not provided sufficient evidence to establish that the Louisiana plaintiffs have the types of leases that are subject to Louisiana Civil Code Articles 2677 and 2706,  I will deny Bayer's motion on this issue.

### H.    Punitive Damages

The Bayer defendants have moved for summary judgment on both the Louisiana and the Texas plaintiffs' punitive, or exemplary, damages claims. The relevant facts and the parties' arguments on these motions are essentially the same as the arguments and facts at issue in the previous bellwether trials.  Under Texas law, exemplary damages are available if the plaintiff can show by clear and

convincing evidence that the alleged harm was caused by defendant's fraud, malice, or gross negligence.  Tex. Civ. Prac. & Rem. §41.003 (2008).

Just as in the earlier Texas bellwether trial, the plaintiffs have provided sufficient evidence to raise an issue of fact regarding whether Bayer was conscious of the risk involved in proceeding with field trials of LL Rice, but proceeded nevertheless.  As a result, I will deny defendants' motion for summary judgment on the Texas plaintiffs' punitive damages claims.

However, as explained in my order dated June 7, 2010, the Louisiana plaintiffs are not entitled to punitive damages in this case.  Under Louisiana law, punitive damages are only available if expressly permitted by statute or the law of the state where the injurious conduct *and* the injury occurred.  *See* La. Civ. Code Ann. art. 3546 (West 1994).  No Louisiana statute permits punitive damages for the conduct here, it is undisputed that the injury occurred in Louisiana, and the Louisiana plaintiffs have not identified any evidence that would warrant the application of another state's punitive damages law.  As a result, I will grant Bayer's motion with respect to the Louisiana plaintiffs.

## I.    Trespass

Bayer moves to dismiss the Louisiana plaintiffs' trespass claims.  In order to succeed on their claim of trespass, plaintiffs will have to show "an unlawful

physical invasion" of their property that caused damage as a consequence of an injury flowing from the act of trespass. *Lacombe v. Carter*, 975 So.2d 687, 688 (La. Ct. App. 2008).[6] Bayer argues for dismissal of this claim because plaintiffs did not perform any tests to determine if their own rice was actually contaminated. However, even if some of the plaintiffs in this Louisiana remand group did not test their own crops, plaintiffs have produced expert testimony that essentially every rice farm in the state experienced some sort of contamination by LL Rice, as well as other similar evidence. This circumstantial evidence could demonstrate to a jury that the plaintiffs' farms were, in fact, contaminated by LL Rice. Although this evidence is disputed, it is sufficient to create a genuine dispute of material fact on this claim. As a result, I will deny Bayer's motion on this point.

---

[6]Generally, a claim of civil trespass requires proof that the defendant intended to invade plaintiff's property. *Hogg v. Chevron USA, Inc.*, 45 So.3d 991, 1002 n.11 (La. 2010). There is some precedent indicating that, even without intent, a claim of trespass may be viable if the plaintiff can show that the defendant was liable under Louisiana's negligence statute. *See, e.g. Terre Aux Boeufs Land Co., Inc. v. J.R. Gray Barge Co.*, 803 So.2d 86, 96 (La. Ct. App. 2001). The Louisiana Supreme Court has expressed skepticism regarding the validity of an exception to the intent requirement for a trespass claim and stated that the preferred method of recovering for an unintentional invasion under Louisiana law is a negligence or a nuisance claim. *Hogg*, 45 So.2d at 1002 n.11. However, the court in that case avoided resolving the issue by noting that there is no meaningful distinction between a trespass claim and a negligence or nuisance claim with respect to a claim based on the unintentional invasion of another's property. *Id.* The court noted that, to the extent that Louisiana recognizes an unintentional invasion of property as a basis for a trespass claim, the analysis is the same as that of negligence and nuisance and therefore it was able to assume that a claim of trespass could lie in the absence of intent, without deciding "this thorny issue." *Id.* Accordingly, the discussion of this issue proceeds under the assumption that a claim of trespass is available to these defendants, even in the absence of a showing of intent, without deciding the issue.

## J.    Intervening and Legal Cause

Both the Texas and the Louisiana plaintiffs move for summary judgment on Bayer's affirmative defense number 4.  In its affirmative defense, Bayer asserts that it cannot be held liable "due to the intervening and/or superseding acts or omissions of parties or non-parties to this action for whose acts or omissions the BCS Defendants and Bayer Corporation are not liable."  In a similar motion, Bayer moves for summary judgment on the Louisiana plaintiffs' negligence claims by arguing that plaintiffs cannot show that Bayer's actions were the legal cause of plaintiffs' injuries.

Under Texas law an intervening cause "supersedes the defendant's negligence by destroying the causal connection between that negligence and the plaintiff's injury thereby relieving that defendant of liability." *Dew v. Crown Derrick Erectors, Inc.*, 208 S.W.3d 448, 450 (Tex. 2006).  "[I]f the intervening force was foreseeable at the time of the defendant's negligence, the force is considered to be a 'concurring cause' of the plaintiff's injuries, and the defendant remains liable for the original negligence." *Id.* at 451 (quotations omitted).  "If, on the other hand, the intervening act is extraordinary under the circumstances, not foreseeable in the normal course of events, or independent of or far removed from the defendant's conduct, it may well be a superseding act." *Id.*

Under Louisiana law "legal cause" is determined based on the facts and circumstances of each case. *Todd v. State Through Dept. of Social Services, Office of Community Services*, 699 So.2d 35, 39 (La. 1997). The proper inquiry for determining legal cause is the "ease of association of the injury with the rule of conduct that is urged." *Todd*, 699 So.2d at 39. Ease of association is determined by considering two factors – the foreseeability of the harm and whether policy considerations indicate that the allegedly breached duty was intended "to protect the particular plaintiff against the particular harm." *See id.*; *Rando v. Anco Insulations, Inc.*, 16 So.3d 1065, 1092-93 (La. 2009). A "determination of legal cause involves a purely legal question." *Todd*, 699 So.2d at 39.

In this case, plaintiffs have provided sufficient evidence to satisfy the Louisiana and Texas standards. There is significant evidence that Bayer could have foreseen the harm caused by the escape of its LL Rice. Bayer's employees stated in deposition testimony that they knew that there was a possibility of escape, that the EU would not accept genetically modified rice, and that the consequences of an escape would be damaging to the EU rice market. Therefore, plaintiffs have shown that Bayer could have foreseen that its negligence would harm the plaintiffs by harming the EU rice market.

In addition, the duty that Bayer allegedly breached – to prevent the escape

of its genetically modified rice – was  intended to prevent harm to these particular plaintiffs.  If LL Rice escaped, the first individuals to be affected would naturally be rice farmers, whose fields would be contaminated with Bayer's genetically modified rice.  The plaintiffs in this case are rice farmers, therefore, they were the type of individuals that the duty of containment was intended to protect.

Similarly, Bayer's duty to contain its genetically modified rice was at least in part intended to prevent the particular kind of harm that plaintiffs allege.  Plaintiffs seek to recover damages based on the harm to the EU rice market caused by the contamination.  Bayer's duty to confine LL Rice is reflected in the Plant Protection Act, 7 U.S.C. § 7701 *et seq.*  The Act was created based on an understanding that "export markets could be severely impacted by the introduction or spread of plant pests or noxious weeds into or within the United States."  7 U.S.C.A. § 7701(6) (West 2010).  Therefore, Bayer's duty to confine its genetically modified rice was at least in part intended to prevent the precise type of harm alleged by plaintiffs in this case.  As a result, I will grant plaintiffs' motions for summary judgment on Bayer's affirmative defense number 4 and I will deny Bayer's motion for summary judgment on the Louisiana plaintiffs' claims for negligence on this issue.

### K.    Affirmative Defense 11 & 13

Because adventitious presence is not allowed, I will grant the Louisiana plaintiffs' motions for summary judgment on defendants' affirmative defenses 11 and 13.  Those defenses assert that defendants are not liable for any injuries because they "complied fully with all applicable statutes and regulations regarding genetically modified crops."  The undisputed facts show that the performance standards were not met here because the required result was not met: there was a release into the environment and the regulated article or its offspring has persisted in the environment.

### L.    Affirmative Defense 14

The Louisiana plaintiffs are entitled to summary judgment on Bayer's affirmative defense 14, which alleged that it was not liable because it complied with state-of-the art industry standards.  Bayer agrees that this defense only applied to the plaintiffs' strict liability claims, which plaintiffs have withdrawn, but renews its position that evidence of industry standards is admissible to rebut plaintiffs' claims that defendants were negligent.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motions for summary judgment in the first remand group for the Louisiana and Texas plaintiffs [##3593,

3605] are granted in part and denied in part.

**IT IS FURTHER ORDERED** that the Texas plaintiffs' motion for summary judgment [# 3597] is granted in part and denied in part.

**IT IS FURTHER ORDERED** that the Louisiana plaintiffs' motion for summary judgment [#3590] is granted in part and denied in part.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 1st day of February, 2011.