UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE GENETICALLY MODIFIED | ) | 4:06MD1811 CDP |
| RICE LITIGATION | ) | May and July 2011 Trials |
| | | (Arkansas Plaintiffs) |

## MEMORANDUM AND ORDER

This order deals with the motions for summary judgment and certain motions to exclude experts related to the additional trial pool cases scheduled to begin on May 16, 2011 and on July 11, 2011. The May trial will consider the claims of four Arkansas farming operations: (1) Frank Binkley; (2) the Eifling plaintiffs (Lynn Gene, Inc., Eifling Investment Co., Sam Don, Inc., Rebecca Lynne, Inc., Clayton Lee, Inc., Don L. Eifling, Inc., and D. Lynn Eifling, Inc. as partners of Don Eifling & Son); (3) the Keeter plaintiffs (Jeffrey Keeter, Robert J. Venable and Robbin V. Tuller, partners of RJR Farms, Keeter Farms, Inc. and and P& K, Inc.); and (4) the Brown plaintiffs (Dennis Brown, Sherry Brown and Coty Brown, partners of Legacy Farms Partnership). The July trial will consider the claims of Arkansas plaintiffs (1) Ronald Catt; (2) the Hufford plaintiffs (Rudy Hufford and Cheryl Hufford, partners of Hufford Farms); (3) the Richey plaintiffs (Gary Richey and Jeremy Richey, Tina Richey, and Vicki Richey, members of Richey Farms, joint venture successor to R & R Farms Joint Venture); and (4) the Williams plaintiffs (Mark Williams and Pamela G. Williams, Guy Brinkley, and

Aylene Williams).

The parties have filed a number of motions for summary judgment and to exclude or limit expert testimony.[1] To a large extent, the motions before me are the same as the motions I ruled on in the bellwether trials, in general, and the Arkansas bellwether trial, in particular. The parties have referenced their previous motions and my previous orders, and I will do the same in this order. I have, however, considered the issues anew and with regard to the appropriate Arkansas law. Although I have not changed the substance of any of my previous rulings, there are some differences.

These plaintiffs seek damages for negligence and negligence *per se*, as well as for alleged violations of the North Carolina Unfair Trade Practices Act and the federal Plant Protection Act and its accompanying regulations. They also seek to impose liability under public and private nuisance.

For the reasons that follow and for the reasons that were described in more detail in my October 9, 2009 Memorandum and Order [docket #1604] and my Memorandum and Order dated December 9, 2009 [#2075], I will grant the motions in part and deny them in part. I will grant defendants' motions for summary

---

[1] There was a separate schedule for *Daubert* motions related to the testimony of Daniel Fischel [see docket # 3996] and I will rule on those motions later.

judgment on plaintiffs' claims under the North Carolina Unfair Trade Practices Act and on plaintiffs' claims for negligence *per se* and for public nuisance, and I will grant plaintiffs' motions for summary judgment directed to certain affirmative defenses. I have determined as a matter of law that the regulations under the Plant Protection Act do not allow for low level or adventitious presence of regulated genetically modified rice in the commercial rice supply, and so I will not allow any of defendants' expert witnesses to opine to the contrary. I have limited the testimony of various expert witnesses in other relatively minor ways. Otherwise, I have denied the remaining motions.

### 1. **Violations of Statutes or Regulations**

In the October 9, 2009 Memorandum and Order, I determined that neither the Plant Protection Act, 7 U.S.C. § 7701 *et seq.*, nor the regulations issued under that act, 7 C.F.R. § 340 *et seq.*, allow any level of adventitious presence of regulated articles such as LLRICE 601 and LLRICE 604 in the commercial rice supply. That ruling applies equally here, and has the same consequences that it had in the Arkansas bellwether.

### 2. **North Carolina Unfair Trade Practices Act**

The Bayer defendants have moved for summary judgment on plaintiffs' claims under the North Carolina Unfair Trade Practices Act, N.C. Gen. Stat. § 75-

1.1 *et seq*. (West 2009). It is undisputed that these Arkansas plaintiffs have no North Carolina operations. The question presented by this motion is whether the Act provides a remedy to an out-of-state plaintiff to recover for out-of-state injuries allegedly resulting from unfair acts that occurred in North Carolina. The analysis for this claim is identical to the analysis of the same claim discussed in my October 9, 2009 order. For the same reasons that I concluded that the North Carolina Act did not apply to the Missouri plaintiffs, I also conclude that the Act does not provide a cause of action to these Arkansas plaintiffs.

### 3. **Economic Loss Doctrine**

Bayer claims that the Arkansas plaintiffs' tort claims are barred by the economic loss doctrine. As discussed in my December 9, 2009 order, Arkansas does not recognize the economic loss doctrine, therefore, it does not bar plaintiffs' claims in this case. In addition, even if Arkansas recognized the doctrine, plaintiffs' claims would not be barred because Bayer has not shown that it had a contractual or purchaser-seller relationship with these plaintiffs, that plaintiffs can assert breach of warranty or contract claims to recover for their losses, or that plaintiffs claim damages to property that was the subject of a contract with Bayer.

### 4. **Public and Private Nuisance**

The Bayer defendants have moved for summary judgment on the Arkansas

plaintiffs' claims for public and private nuisance (Counts 1 and 2).  In the public nuisance claim, these plaintiffs allege that Bayer has unreasonably interfered with the public's right to expect compliance with the federal laws and the public's right to expect that the rice sold to the general public is free from contamination.  In the private nuisance claims, plaintiffs allege that Bayer's contamination of the rice supply interferes with and impairs plaintiffs' rights to grow rice on their land.

In Arkansas, a public nuisance violates rights held by the community as a whole, while a private nuisance violates the rights of an individual.  *Ozark Poultry Products, Inc. v. Garman*, 472 S.W.2d 714, 715-16 (Ark. 1971).  In order to recover under public or private nuisance, an individual must demonstrate an interference with the use and enjoyment of their own private property.  *See Aviation Cadet Museum, Inc. v. Hammer*, 283 S.W.3d 198, 203  (Ark. 2008); *Georgia-Pacific Corp. v. Carter*, 265 S.W.3d 107, 113-14 (Ark. 2007); *Taylor Bay Protective Ass'n v. Ruckelshaus*, 687 F. Supp. 1319, 1325 (E.D. Ark. 1988).  "Nuisance is not centrally concerned with the nature of the conduct causing the damage, but with the nature and relative importance of the interests interfered with or invaded."  *Georgia-Pacific Corp.*, 265 S.W.3d at 113.

Plaintiffs have not sufficiently demonstrated that Bayer interfered with the type of community interest or right necessary to support a claim of public nuisance.

However, plaintiffs have alleged a sufficient interference with their individual rights to create a genuine dispute of fact on their claim of private nuisance. Plaintiffs state that, because of the contamination, they could not plant rice or certain types of rice and that they had to decontaminate their land and equipment, and this is an interference with plaintiffs' land. As a result, I will deny Bayer's motion with respect to plaintiffs' private nuisance claims, but I will grant summary judgment to Bayer on the public nuisance claims.

### 5. Negligence *Per Se*

As described in more detail in my order dated December 9, 2009, I will assume without deciding that Arkansas recognizes a claim of negligence *per se*. However, even under this assumption, I will grant summary judgment to defendants on the Arkansas plaintiffs' claims for negligence *per se*. As discussed in the October 9, 2009 order, the APHIS regulations cannot provide a basis for a negligence *per se* claim because those performance standards do not provide a standard of care. Defendants are therefore entitled to summary judgment on the negligence *per se* claims based on alleged APHIS violations (Count 6).

Plaintiffs' negligence *per se* claims based on state law fail for the same reason described in my December 9, 2009 order ruling on the motions for summary judgment in the Arkansas bellwether. Neither Arkansas Code § 2-15-101 or

Arkansas Code § 2-15-201, *et seq.* provide a standard of care upon which a plaintiff can base a claim of negligence *per se*. In addition, plaintiffs cannot recover under Arkansas Code § 2-15-101 because there is no evidence that Bayer intended to damage plaintiffs' crops in this case. While plaintiffs' claims under Arkansas Code § 2-15-201 fail because this section does not provide a private civil remedy. As a result, I will grant Bayer's motion for summary judgment on Counts 4 and 5 as well.

### 6. **Punitive Damages**

The Bayer defendants have moved for summary judgment on plaintiffs' claim for punitive damages. Plaintiffs' claims for punitive damages survive summary judgment if plaintiffs provide enough evidence so that a reasonable juror could be clearly convinced that the defendants acted with reckless disregard of plaintiffs' rights and interests. *See* Ark. Code Ann. § 16-55-206 (to recover punitive damages, plaintiff must show either that the defendant knew or ought to have known that his conduct "would naturally and probably result in injury" and that he "continued the conduct with malice or in reckless disregard of the consequences, from which malice may be inferred" or that the defendant "intentionally pursued a course of conduct for the purpose of causing injury or damage."); Ark. Code Ann. § 16-55-207 ("A plaintiff must satisfy the burden of

proof required under § 16-55-206 by clear and convincing evidence in order to recover punitive damages from the defendant."). As discussed more fully in the summary judgment order for the Arkansas bellwether dated December 9, 2009, plaintiffs have presented evidence from which a factfinder could conclude that Bayer was aware it had not taken reasonable steps to prevent an escape, even though it knew that the resulting contamination would have a severe impact on the market. Therefore Bayer is not entitled to summary judgment on plaintiffs' claims for punitive damages.

### 7. **Affirmative Defenses 11 and 13**

Because adventitious presence is not allowed, I will grant plaintiffs' motions for summary judgment on defendants' affirmative defenses 11 and 13.[2] The undisputed facts show that the performance standards were not met here because the required result was not met: there was a release into the environment and the regulated article or its offspring has persisted in the environment.

### 8. **Affirmative Defense 14 - Industry Standards**

Plaintiffs are entitled to summary judgment on Bayer's affirmative defense 14, which alleged that it was not liable because it complied with state-of-the art

---

[2]Bayer's affirmative defense 13 and Starlink's affirmative defense 11 assert that defendants are not liable for any injuries because they "complied fully with all applicable statutes and regulations regarding genetically modified crops."

industry standards. Bayer agrees that this defense only applied to the strict liability claims, which plaintiffs have withdrawn.

### 9. Affirmative Defense 4 - Intervening Cause

Bayer asserts in affirmative defense 4 that it cannot be held liable due to the intervening or superseding acts or omissions of parties or non-parties to this action for whose acts or omissions the Bayer defendants are not liable. The Arkansas plaintiffs are entitled to summary judgment on this defense.

Under Arkansas law, an "intervening cause must be such that the injury would not have been suffered except for the act, conduct or effect of the intervening agent totally independent of the acts or omission constituting the primary negligence." *Larson Mach., Inc. v. Wallace*, 600 S.W.2d 1, 9 (Ark. 1980). "The mere fact that other causes intervene between the original act of negligence and the injury for which recovery is sought is not sufficient to relieve the original actor of liability if the injury is the natural and probable consequence of the original negligent act or omission and is such as might reasonably have been foreseen as probable." *Stecker v. First Commercial Trust Co.*, 962 S.W.2d 792, 796 (Ark. 1998).

The evidence demonstrates that the negligence of third parties, if any, was foreseeable and reasonably anticipated by defendants. As the "responsible party"

allowed to introduce LL601 and LL604 into the environment, Bayer had a duty to introduce those products without negligence. Contamination of non-GM rice by LL601 and LL604 is the known and foreseeable risk that Bayer had a duty to prevent. As a matter of law, plaintiffs are entitled to summary judgment on defendants' affirmative defense of intervening cause.

### 10. Share-Rent Landlord Damages

Defendants seek a summary judgment that plaintiffs are not entitled to recover for damages to the portion of plaintiffs' crop that they are required to pay to their landlords. As described in my orders dated October 9 and December 9, I believe that genuine disputes remain regarding this issue. Under Arkansas law, whether a farmer may recover for the landlord's share of the crop depends on whether the parties' agreement shows an intention to become tenants in common. *Harnwell v. Ark. Rice Growers' Co-Op. Ass'n*, 276 S.W. 371, 373 (Ark. 1925). The exact details of the plaintiffs' arrangements with their landowners is a question of fact involving many considerations, including the intent of the parties. Many of these facts remain disputed, and so I will deny the motion for summary judgment.

### 11. Agency, General Partner, and Successor Liability

The parties' arguments regarding Bayer's agency, successor, and general partner liability are identical to their arguments in the previous bellwether trials.

Consequently, the analysis of the plaintiffs' motions on these issues is identical to the analysis in my orders dated October 9 and December 9. As I previously concluded, certain facts, which are listed in those orders, are established without dispute, but genuine disputes of fact remain as to each Bayer entity's liability for the actions of the other Bayer entities, as well as Bayer's liability for the actions of its cooperators.

## 12. *Daubert* Motions

The parties' *Daubert* motions are essentially the same as their motions regarding the same testimony and the same experts in the previous bellwether trials. Both plaintiffs and defendants again seek to exclude each others' experts under *Daubert*. Because the parties' arguments are sufficiently addressed in my orders dated October 9 and December 9, I will not recite them here.

The only entirely new issue is raised by Bayer. Bayer seeks to exclude testimony based on Dr. Carter's recent supplemental reports. However, Bayer has not demonstrated that Carter is unqualified, that his method of analysis is unreliable, or that the core of his opinion is based on an unreliable application of his method of analysis. Instead, Bayer merely alleges that Carter has altered some of his opinions based on new data and that Carter has failed to perform certain calculations that Bayer has not shown are necessary. This is not a sufficient basis

to exclude Carter's testimony relating to his supplemental reports, therefore, I will deny Bayer's motion on this issue.

## Conclusion

To summarize the decisions discussed above, I am granting summary judgment to defendants on the Arkansas plaintiffs' Counts 1 (public nuisance), Counts 4, 5, and 6 (negligence *per se*), and Count 33 (North Carolina Unfair and Deceptive Trade Practices Act). I am granting plaintiffs' motion for summary judgment on agency and successor liability only to the extent that certain uncontested facts are deemed established for trial. I am granting plaintiffs' motions for summary judgment on defendants' affirmative defenses 11 and 13 (compliance with regulations) and on their affirmative defense 4 (intervening cause). Defendants concede that affirmative defense 14 (compliance with industry standards) only applied to plaintiffs' withdrawn strict liability claims. I am denying all other motions for summary judgment.

I have denied the *Daubert* motions, except that I have limited some areas of testimony, as set out above.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motions for summary judgment on defendants' affirmative defenses nos. 4 and 14 [##3758, 3763] are granted.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment [#3748] is granted in part and denied in part.

**IT IS FURTHER ORDERED** that defendants' motion to exclude testimony under Rule 702 [#3910] is granted only to the extent set out above and in the October 9, 2009 Order [#1604] and are denied in all other respects.

**IT IS FURTHER ORDERED** that plaintiffs' motions to exclude testimony of Alan McHughen [#3908], Nicholas Kalaitzandonakes [#3917], Ronnie Helms [#3913], and Cheryl Shuffield [#3911] are granted only to the extent set out above and are denied in all other respects.

**IT IS FURTHER ORDERED** that plaintiffs' motions for partial summary judgment on successor, general partner and agency status [##3757, 3761] are granted only to the extent that certain facts as set out above are deemed established for trial; the motions are denied in all other respects.

**IT IS FURTHER ORDERED** that plaintiffs' motions for partial summary judgment on defendants' affirmative defense nos. 11 and 13 [##3759, 3762] are granted.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 11th day of March, 2011.