UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE GENETICALLY MODIFIED RICE LITIGATION | ) ) | 4:06MD1811 CDP |

**This Order Relates to**:

| | |
|---|---|
| *Texana Rice Mill, Ltd., et al.* *v. Bayer CropScience LP, et al.* | 4:07CV416 CDP |
| *Kennedy Rice Dryers, LLC* *v. Bayer CropScience LP, et al.* | 4:07CV1773 CDP |
| *Planters Rice Mill, LLC* *v. Bayer CropScience LP, et al.* | 4:07CV1795 CDP |
| *Gulf Pacific Rice Co., Inc., et al.* *v. Bayer CropScience LP, et al.* | 4:08CV1545 CDP |

## MEMORANDUM AND ORDER

This order deals with motions for summary judgment filed in four cases brought by rice mills and others, referred to in this litigation as "non-producer" cases. The *Kennedy* and *Planters* cases are based on Louisiana law. *Texana* is based on Texas law and the *Gulf Pacific* case has plaintiffs whose claims arise under Arkansas law as well as plaintiffs whose claims arise under Texas law. The parties have filed several motions in each case. Many of the parties' motions incorporate arguments from previous motions in this litigation and stipulate to facts that are no longer reasonably disputed. I have reconsidered the issues and,

although I have not changed the substance of any of my previous rulings, there are some differences because of the state law and the nature of these particular plaintiffs' claims.

For the reasons that follow and for the reasons that were described in more detail in my orders dated October 9, 2009 [docket #1604], March 29, 2010 [#2709], June 7, 2010 [#2981], October 4, 2010 [#3495], February 1, 2011 [#3992] I will grant the motions in part and deny them in part.[1]  I will grant plaintiffs' motions for summary judgment on several of Bayer's affirmative defenses and I will grant Bayer's motion on the Louisiana plaintiffs' claims for punitive damages. I will also grant Bayer's motions on Gulf Pacific and Texana's claims for constructive fraud, negligence per se, and public nuisance.  Otherwise, I will deny the remaining motions.

### 1. Agency, General Partner, & Successor Liability

The parties' arguments regarding Bayer's agency, successor, and general partner liability are identical to their arguments in the previous bellwether trials. Consequently, the analysis of the plaintiffs' motions on these issues is identical to

---

[1] In ruling on all the summary judgment motions, I have viewed the facts and inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

the analysis in my orders dated October 9, 2009 and December 9, 2009.  As I previously concluded, certain facts, which are listed in those orders, are established without dispute, but genuine disputes of fact remain as to each Bayer entity's liability for the actions of the other Bayer entities, as well as Bayer's liability for the actions of its cooperators.

> 2.   *Daubert* **Motions**

The parties move to exclude or limit the expert testimony of Ronnie Helms, Alan McHughen, Rene Van Acker, Jeffrey Stein, and Mark Halsey.  The parties' motions are supported exclusively by reference to their arguments in the previous bellwether trials.  As a result, I will renew my rulings from those trials.  Because the parties' arguments are sufficiently addressed in my orders dated October 9, 2009 and December 9, 2009, I will not address them here.

> 3.   **Public Nuisance, Constructive Fraud, & Negligence Per S**e

Bayer moves for summary judgment on Gulf Pacific and Texana's claims for public nuisance, constructive fraud and negligence per se.  The parties address these issues by reference to previous motions in this litigation.

First, Bayer moves to dismiss plaintiffs' negigence *per se* claim, which is based on Bayer's failure to comply with 7 C.F.R. § Part 340.  As discussed in more detail in the October 9, 2009 order, the regulations do not provide a basis for a

negligence *per se* claim because those performance standards do not provide a standard of care. Bayer is therefore entitled to summary judgment on Gulf Pacific and Texana's negligence *per se* claims.

Second, Bayer moves to dismiss plaintiffs' public nuisance claims. As stated in my orders related to the Texas and Arkansas bellwether trials dated December 9, 2009 and October 4, 2010, there is no evidence in the record showing the sort of public harm or negative effect on the entire community that public nuisance law was developed to remedy and the plaintiffs here cannot support a separate claim for public nuisance, therefore, I will grant Bayer's motion with respect to this issue.

Third, Bayer moves to dismiss plaintiffs' claims for constructive fraud. As stated in my order dated March 18, 2010, a plaintiff must generally demonstrate that the defendant owed it a fiduciary duty or must demonstrate the existence of some other special circumstance in order to assert a claim of constructive fraud. *See Evans Indus. Coatings, Inc. v. Chancery Court of Union County, Third Div.*, 870 S.W.2d 701, 703-04 (Ark. 1994); *see also In re Estate of Kuykendall*, 206 S.W.3d 766, 770-71 (Tex. Ct. App. 2006). Gulf Pacific and Texana have not attempted to demonstrate that Bayer owed them a fiduciary duty or that some other special circumstance warrants the application of this doctrine in this case. As a

result, I will grant Bayer's motion on this issue.

### 4. Punitive Damages

Bayer has moved for summary judgment on both the Louisiana and the Texas plaintiffs' punitive, or exemplary, damages claims and the plaintiffs have primarily responded by incorporating previous arguments. The relevant facts and the parties' arguments on these motions are essentially the same as the arguments and facts at issue in the previous bellwether trials.

Under Texas law, exemplary damages are available if the plaintiff can show by clear and convincing evidence that the alleged harm was caused by defendant's fraud, malice, or gross negligence. Tex. Civ. Prac. & Rem. §41.003 (2008). Just as in the earlier Texas bellwether trial, the plaintiffs have provided sufficient evidence to raise an issue of fact regarding whether Bayer was conscious of the risk involved in proceeding with field trials of LL Rice, but proceeded nevertheless. As a result, I will deny defendants' motion for summary judgment on the Texas plaintiffs' punitive damages claims.

However, similarly to the explanation in my order dated June 7, 2010, the Louisiana plaintiffs are not entitled to seek punitive damages in this case. Under Louisiana law, punitive damages are only available if expressly permitted by statute or the law of the state where the injurious conduct *and* the injury occurred.

*See* La. Civ. Code Ann. art. 3546 (West 1994). No Louisiana statute permits punitive damages for the conduct here, it is undisputed that the injury occurred in Louisiana, and the Louisiana plaintiffs have not identified any evidence that would warrant the application of another state's punitive damages law. As a result, I will grant Bayer's motion with respect to the Louisiana plaintiffs.

### 5. Legal and Proximate Cause

Bayer moves for summary judgment on plaintiffs' negligence claims by arguing that the Louisiana non-producer plaintiffs cannot show legal cause and that the Texas and Arkansas non-producer plaintiffs cannot show proximate cause. Although the non-producers claim different injuries and seek different damages than the producer plaintiffs, the analysis of whether plaintiffs' can prove causation is largely the same as in those cases and the result is the same.

Under Louisiana law "legal cause" is determined based on the facts and circumstances of each case. *Todd v. State Through Dept. of Social Services, Office of Community Services*, 699 So.2d 35, 39 (La. 1997). The proper inquiry for determining legal cause is the "ease of association of the injury with the rule of conduct that is urged." *Todd*, 699 So.2d at 39. Ease of association is determined by considering two factors – the foreseeability of the harm and whether policy considerations indicate that the allegedly breached duty was intended "to protect

the particular plaintiff against the particular harm." *See id.*; *Rando v. Anco Insulations, Inc.*, 16 So.3d 1065, 1092-93 (La. 2009). Under Texas law, "[t]he components of proximate cause are (1) cause in fact and (2) foreseeability." *Holloway v. Texas Elec. Utility Const., Ltd.*, 282 S.W.3d 207, 211 (Tex. Ct. App. 2009). "The test for cause in fact is whether the negligent act or omission was a substantial factor in bringing about the injury and without which the injury would not have occurred."[2] *Id.* at 211-12. "To prove foreseeability, the plaintiff must establish that a person of ordinary intelligence should have anticipated the danger created by the negligent act or omission."[3] *Id.* Under Arkansas law, "Proximate cause is that which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred." *Graftenreed v. Seabaugh*, 268 S.W.3d 905, 375 (Ark. Ct. App. 2007). "The original act is not eliminated as a proximate cause by an intervening act unless the latter is in itself sufficient to stand as the cause of the injury, and the intervening cause must be such that the injury would not have been

---

[2]"The word 'substantial' in this context means, the actor's conduct has such an effect in producing harm as to lead reasonable men to regard it as a cause." *Brown v. Holman*, 335 S.W.3d 792, 795 (Tex. Ct. App. 2011) (quotations omitted).

[3]"Foreseeability requires only that (1) the injury be of such a general character as might reasonably have been anticipated, and (2) the injured party be so similarly situated in relation to the wrongful act that the injury to him or to someone similarly situated might reasonably have been foreseen." *Id.*

suffered except for the act, conduct, or effect of the intervening cause totally independent of the acts or omissions constituting the primary negligence." *Id.*

Plaintiffs have provided sufficient evidence to satisfy the Louisiana, Arkansas, and Texas standards. There is evidence that Bayer could have foreseen the harm caused by the escape of its LL Rice. Bayer's employees stated in deposition testimony that they knew at least the following: that there was a possibility of escape, that the EU would not accept genetically modified rice, and that the consequences of an escape would damage the EU rice market. Bayer representatives spoke with representatives of the rice mills and other non-producers about the potential of an escape and the impact that genetically modified rice might have on the rice market. Therefore, plaintiffs have shown that the harm was foreseeable.

In addition, the duty that Bayer allegedly breached – to prevent the escape of its genetically modified rice – was intended to prevent harm to these plaintiffs. The non-producer plaintiffs in this case are rice mills, rice dryers, and rice transport companies. These non-producers are an integral part of the U.S. and global rice markets and they, in turn, are heavily dependent on the other actors in these markets. If LL Rice escaped, it would naturally affect the mills and dryers that prepare U.S. rice for transport and consumption and any disruption to the rice

market would affect these companies' operations.

Similarly, Bayer's duty to contain its genetically modified rice was at least in part intended to prevent the particular kind of harm that plaintiffs allege. Plaintiffs seek to recover damages based, at least in part, on the harm to the EU rice market caused by the contamination. Bayer's duty to confine LL Rice is reflected in the Plant Protection Act, 7 U.S.C. § 7701 *et seq.* The Act reflects an understanding that "export markets could be severely impacted by the introduction or spread of plant pests or noxious weeds into or within the United States." 7 U.S.C.A. § 7701(6) (West 2010). Bayer's duty to confine its genetically modified rice was at least in part intended to prevent harms arising from market disruptions. The majority of plaintiffs' claims are based on damages arising from market disruptions caused by the contamination. As a result, plaintiffs have satisfied all of the elements of causation and I will deny Bayer's motion for summary judgment on the Texas, Arkansas, and Louisiana plaintiffs' claims for negligence on this issue.

### 6. Economic Loss Doctrine

Bayer continues to argue that plaintiffs' claims in this litigation are barred by the economic loss doctrine. However, as stated in my earlier orders dated October 9, 2009, December 9, 2009, June 7, 2010, and October 4th, 2010, the

economic loss doctrine does not apply to these plaintiffs' claims.

Arkansas does not currently recognize the economic loss doctrine as a bar to recovery in cases like this. *See Farm Bureau Ins. Co. v. Case Corp.*, 878 S.W.2d 741, 743-744 (Ark. 1994). Therefore, the Arkansas plaintiffs' claims are not barred by the doctrine.

Louisiana does not apply the economic loss doctrine as a bright line rule, but only considers it when determining whether a plaintiff has demonstrated legal cause. *See PPG Industries, Inc. v. Bean Dredging*, 447 So.2d 1058 (La. 1984); *Wiltz v. Bayer CropScience, Ltd. P'ship*, No. 10–30516, 2011 WL 2535552, at *4 (5th Cir. June 28, 2011)*; Louisiana Crawfish Producers Ass'n-West v. Amerada Hess Corp.*, 935 So.2d 380 (La. Ct. App. 2006); *Phillips v. G & H Seed Co., Inc.*, 10 So.3d 339 (La. Ct. App. 2009); *Desormeaux v. Central Industries, Inc.*, 333 So.2d 431 (La. Ct. App. 1976).[4] As stated above, the Louisiana non-producer

---

[4]Bayer argues that a recent Fifth Circuit opinion, *Wiltz v. Bayer CropScience, Ltd. P'ship*, No. 10–30516, 2011 WL 2535552, at *4 (5th Cir. June 28, 2011), indicates that Louisiana courts have adopted the economic loss doctrine as a categorical rule, but I read the opinion differently. The Louisiana Supreme Court provided the current standard for analyzing claims for indirect economic losses in *PPG Industries*. *See PPG Industries, Inc. v. Bean Dredging*, 447 So.2d 1058, 1060-62 (La. 1984). In *PPG Industries*, the court considered whether a plaintiff was entitled to damages for indirect economic losses using the standard analysis of legal cause under Louisiana law – it did not apply a categorical "economic loss rule." *Id.* Similarly, the Fifth Circuit in *Wiltz* relied on the method of analysis used in *PPG Industries*. *See Wiltz*, 2011 WL 2535552 at *4-10. The court in *Wiltz* decided the issue based on whether the injury was foreseeable and easily associated with the alleged negligent conduct – the standard elements of legal cause under Louisiana law – despite the fact that the court engaged in an extended discussion of the "distinguished lineage" of the economic loss doctrine before deciding the issue.

plaintiffs have sufficiently demonstrated legal cause to avoid summary judgment and so the doctrine does not bar their claims.

Texas recognizes the economic loss doctrine in three scenarios, all of which require either a contract or a quasi-contract between plaintiff and defendant, or a contract between plaintiff and a third party that would allow the plaintiff to recover from the third party for the claims it asserts against defendant. *See Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007); *Wolf Hollow I, L.P. v. El Paso Marketing, L.P.*, 329 S.W.3d 628, 644 (Tex. Ct. App. 2010) ("In Texas, the economic loss rule has been applied to preclude tort claims in two related contexts: (1) where the losses sought to be recovered are the subject matter of a contract between the parties; and (2) when the claims are for economic losses against the manufacturer or seller of a defective product where the defect damaged only the product and did not cause personal injury or damage to other property. Once the other parameters are established, the rule bars recovery even if the parties are not in contractual privity."); *Sterling Chemicals, Inc. v. Texaco Inc.*, 259 S.W.3d 793 (Tex. Ct. App. 2007) (applying the economic loss doctrine when the plaintiff and defendant were not in contractual privity, but the plaintiff could have recovered for the same injury from a third-party with which it had a contract). Bayer has not shown that plaintiffs had a contract with Bayer, that they purchased

rice from Bayer, or that plaintiffs could recover for their alleged injuries from a third party under a contract, and so the Texas plaintiffs' claims are not barred by Texas' economic loss rule.

### 7.      Affirmative Defense 4 - Intervening Cause

Bayer asserts in its affirmative defense 4 that it cannot be held liable "due to the intervening and/or superseding acts or omissions of parties or non-parties to this action for whose acts or omissions the BCS Defendants and Bayer Corporation are not liable." The non-producer plaintiffs, like the producer plaintiffs, are entitled to summary judgment on this defense.

Under Texas law an intervening cause "supersedes the defendant's negligence by destroying the causal connection between that negligence and the plaintiff's injury thereby relieving that defendant of liability." *Dew v. Crown Derrick Erectors, Inc.*, 208 S.W.3d 448, 450 (Tex. 2006). "[I]f the intervening force was foreseeable at the time of the defendant's negligence, the force is considered to be a 'concurring cause' of the plaintiff's injuries, and the defendant remains liable for the original negligence." *Id.* at 451 (quotations omitted). Under Louisiana and Arkansas law "[a]n intervening cause is one which comes into play after the defendant's negligent conduct has ceased, but before the plaintiff suffers injury." *See Adams v. Rhodia, Inc.*, 983 So.2d 798, 808 (La. 2008); *see also*

*Graftenreed v. Seabaugh*, 268 S.W.3d 905, 375 (Ark. Ct. App. 2007). A tortfeasor "will not be relieved of the consequences of his or her negligence unless the intervening cause superceded the original negligence and alone produced the injury." *See Adams*, 983 So.2d at 808; *see also Graftenreed v. Seabaugh*, 268 S.W.3d at 375. If the intervening cause "could or should have reasonably" been foreseen, the initial tortfeasor will be liable "notwithstanding the intervening cause." *Adams*, 983 So.2d at 808.

The evidence adduced by Bayer reveals that the negligence of third parties, if any, was foreseeable and reasonably anticipated by defendants. Bayer introduced LL601 and LL604 into the environment and Bayer had a duty to introduce those products without negligence. Contamination of non-GM rice by LL601 and LL604 and a resulting disruption of the U.S. and global rice markets are the known and foreseeable risks that Bayer had a duty to prevent. As a matter of law, plaintiffs are entitled to summary judgment on defendants' affirmative defense of intervening cause.

### 8. Affirmative Defenses 6 and 8 - Comparative Fault

The Gulf Pacific plaintiffs move for summary judgment on Bayer's affirmative defense number six, which claims that plaintiffs' claims are barred by their own negligence, and on affirmative defense number 8, which asserts that

plaintiffs failed to mitigate their damages. I will deny the motion as to both.

Both Texas and Arkansas law recognize comparative fault. Ark. Code Ann. § 16-64-122 (2011); Tex. Civ. Prac. & Rem. Code § 33.001 (2011). In each state, a plaintiff's recovery may be reduced if the plaintiff is partially responsible for its own losses. Bayer has some evidence from which a jury might find that these plaintiffs were negligent by failing to test their rice for contamination before the USDA announcement in 2006, and by certifying to European buyers that their rice was GM free. The evidence is sufficient to raise an issue of fact regarding whether plaintiffs were negligent and whether their negligence contributed to their injuries, so plaintiffs are not entitled to summary judgment on this defense.

"The mitigation of damages doctrine requires an injured party to exercise reasonable care to minimize its damages if damages can be avoided with only slight expense and reasonable effort." *Young v. Thota*, 271 S.W.3d 822, 829 (Tex. Ct. App. 2008) (quotations omitted); *see also Taylor v. George*, 212 S.W.3d 17, 24 (Ark. Ct. App. 2005) ("Reasonable diligence and ordinary care are all that are required."). Disputes of fact also remain on this defense. Bayer points out that Gulf Pacific's expert witness at one point lowered the damage claim because Gulf Pacific found a source to "instantize" rice. Bayer has an expert who will say that Gulf Pacific could have built its own facility to do this. Whether this is a

reasonable position is something the jury can consider, and I will not grant summary judgment to plaintiff on this defense.

### 9.     Affirmative Defenses 11 & 13

Because adventitious presence is not allowed, I will grant plaintiffs' motions for summary judgment on defendants' affirmative defenses 11 and 13.[5]  The undisputed facts show that the performance standards were not met here because the required result was not met: there was a release into the environment and the regulated article or its offspring has persisted in the environment.

### 10.     Affirmative Defense 14 - Industry Standards

Plaintiffs are entitled to summary judgment on Bayer's affirmative defense 14, which alleged that it was not liable because it complied with state-of-the art industry standards.  Bayer concedes that this is not a defense, but argues that it should be allowed to introduce evidence of industry standards as evidence of reasonable standards of conduct.  While Bayer may or may not be correct about what might be admissible at trial as showing negligence, it is undisputed that compliance with industry standards does not necessarily absolve a defendant of liability.  I will therefore grant this motion for summary judgment.

---

[5]Bayer's affirmative defense 13 and Starlink's affirmative defense 11 assert that defendants are not liable for any injuries because they "complied fully with all applicable statutes and regulations regarding genetically modified crops."

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motions for summary judgment on defendants' affirmative defenses nos. 4 and 14 [## 4189, 4191, 4193, 4204; # 84 in *Texana*; #36 in *Kennedy*; # 44 in *Planters*; # 41 in *Gulf Pacific*] are granted.

**IT IS FURTHER ORDERED** that defendants' motions for summary judgment [## 4172, 4176, 4188, 4199] are granted in part and denied in part.

**IT IS FURTHER ORDERED** that the parties' joint motions incorporating previous arguments [## 4184, 4187, 4197, 4207] are granted in part and denied in part.

**IT IS FURTHER ORDERED** that the Gulf Pacific plaintiffs' motion for summary judgment on defendants' affirmative defenses nos. 6 and 8 [#4198; # 44 in *Gulf Pacific*] is denied.

**IT IS FURTHER ORDERED** that the motions to exceed page limits [#87 in *Texana*; # 47 in *Gulf Pacific*] are granted.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 21st day of October, 2011.