UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DON M. DOWNING, et al., | ) |
| Plaintiffs, | ) ) ) |
| vs. | ) Case No. 4:13CV206 CDP ) |
| GOLDMAN PHIPPS PLLC, et al., | ) ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

This case is a fight among various plaintiffs' lawyers over attorneys' fees. Plaintiffs in this case ("the Downing Group") seek to recover funds arising out of their legal representation of plaintiffs in a multidistrict litigation case handled in this district, *In re Genetically Modified Rice Litigation*, 4:06MD1811 CDP ("Rice MDL"). The Downing Group brings claims of unjust enrichment and quantum meruit against a group of attorneys (the "Phipps Group" and "the Murray Group") who represented plaintiffs from other states in some of the MDL cases and similar state-court cases. I conclude that this court lacks personal jurisdiction over these lawyer-defendants. I also conclude that the remaining count in the complaint – for interpleader – fails to state a claim, so I will dismiss this case in its entirety.

The multidistrict litigation related to the claims of rice producers and other entities in the rice business, who alleged that Bayer Corporation and related entities

negligently contaminated the United States rice supply with non-approved genetically modified strains of rice.  The MDL itself contained over 350 cases, which had originally been filed in Missouri, Arkansas, Texas, Louisiana, and Mississippi.  But there were also a number of cases that proceeded in the state courts of Arkansas, Texas, Louisiana, and Mississippi.  The Phipps Group and the Murray Group represented plaintiffs in some of the cases that remained in state court, as well as in some cases that were filed in those states and then removed to federal court and transferred here as part of the MDL.  Almost all the cases were ultimately resolved through a global settlement.

In the MDL case, I ordered the creation of a common benefit trust fund to compensate attorneys for work performed to benefit all plaintiffs, but it only applied to funds recovered in federal court proceedings.  The named plaintiffs in this case served as co-lead counsel in the MDL case, and they seek to represent a class of individuals that paid for or provided common benefit services and expenses.  The Downing Group's complaint alleges one count of unjust enrichment and one count of quantum meruit against the Phipps Group and one count of unjust enrichment and one count of quantum meruit against the Murray Group.  The complaint also alleges an interpleader claim against only the Phipps Group.

The Phipps Group and the Murray Group originally filed all of their rice cases in the state courts, in states other than Missouri.  Over their objections, many

of those cases were removed to federal court and then later incorporated into the MDL pending here. Because I lack personal jurisdiction over the Phipps Group and the Murray Group for the unjust enrichment and quantum meruit claims, and because the Downing Group has failed to state a claim in the interpleader count, I will grant the motions to dismiss.[1]

## Background

In 2006, the USDA announced that the rice supply in the United States had been contaminated by Bayer's genetically modified rice. Thousands of rice producers and non-producers filed suit against various Bayer entities in federal and state court. The Phipps Group and the Murray Group represented many of those plaintiffs in the federal and state cases. The Judicial Panel on Multidistrict Litigation (JPML) transferred all pending federal cases to this court, and the named plaintiffs were appointed as plaintiffs' co-lead counsel. Over the course of the next several years, the Downing Group and various other attorneys and firms invested considerable time and resources into these cases, providing substantial benefits to other plaintiffs in the litigation.

On February 24, 2010, I issued an order creating a common benefit trust fund to compensate co-lead counsel and those attorneys working with co-lead

---

[1] This case was consolidated to a limited extent with two other cases filed by the Downing Group, Case No. 4:13CV321 CDP and Case No. 4:13CV349 CDP. This memorandum and order only applies to this individual civil case.

counsel, who had provided common benefit services to the other plaintiffs in this litigation.  It required Bayer to hold back 8% of any gross recovery by producer plaintiffs for attorneys' fees and an additional 3% of any gross recovery for common benefit costs and expenses.  At that time, I concluded that I did not have jurisdiction to order holdbacks in the state-court cases, but I urged those plaintiffs and their counsel to participate in the common benefit fund to avoid being unjustly enriched by the efforts of common benefit attorneys.

In July 2011, the parties reached a global settlement of almost all of the federal and state court cases.  On September 4, 2012, the Downing Group filed a motion for allocation and distribution of common benefit fees and expenses, which I granted on December 6, 2012, after reviewing the parties' briefs and the report and recommendation of the special master.  Some of the attorney defendants here objected to the disbursement of those funds, and all of these defendants subsequently appealed that order to the Eighth Circuit Court of Appeals.

In this case, the Downing Group seeks to certify a class of all persons and entities that provided or paid for common benefit services, materials, or expenses, as well as a subclass of persons and entities that provided common benefit services.  On behalf of the class, the Downing Group asserts in Count I that the

Phipps Group Defendants[2] were unjustly enriched by the work of the common benefit attorneys, and they seek restitution in the amount of 11% of the gross recovery each of their clients obtained from Bayer. They raise similar claims in Count III on the basis of quantum meruit and seek the same recovery. Similarly, on behalf of the proposed subclass, they assert an unjust enrichment claim (Count II), against the Murray Defendants[3] and seek restitution in the amount of 8% of their clients' gross recovery, and in Count IV assert a claim against the Murray defendants for quantum meruit. In Count V the Downing Group, in their capacity as Co-Trustees of the common benefit fund, seek interpleader of that portion of the funds that were collected for common benefit expenses from the Phipps Group's federal Rice MDL clients, but are due to be reimbursed to those clients because the total amount collected for common benefit expenses exceeded the expenses actually incurred. The complaint alleges that this amount is approximately $1,429,393.87.

The Phipps Group and the Murray Group have filed numerous motions to dismiss this case. All defendants filed a motion to dismiss Counts I through IV of

---

[2] Based on the complaint, references to the "Phipps Group Defendants" or the "Phipps Group" include the following defendants: Goldman Phipps PLLC, Goldman Pennebaker & Phipps, P.C., Mikal C. Watts, P.C., Keller Stolarczyk PLLC, Martin J. Phipps, Mikal C. Watts, Banks Law Firm PLLC, and Charles A. Banks.

[3] Based on the complaint, references to the "Murray Defendants" or the "Murray Group" include defendants Stephen B. Murray, Sr. and Murray Law Firm.

the complaint for lack of personal jurisdiction. The individual defendants – Martin J. Phipps, Mikal C. Watts, Charles A. Banks, and Stephen B. Murray, Sr. – also filed a motion to dismiss each count for failure to state a claim against them individually. As to the interpleader claim, the Phipps Group has filed a motion to dismiss for failure to state a claim.[4]

## Motion to Dismiss for Lack of Personal Jurisdiction

The Phipps Group and the Murray Group argue for dismissal of Counts I through IV for lack of personal jurisdiction. None of the attorney defendants has employees or attorneys working in Missouri, maintains an office in Missouri, or is registered to do business in Missouri. All of the Phipps Group's and the Murray Group's alleged contacts are related only to the Rice MDL case pending in this district. For that reason, none of the defendants has a systematic and continuous presence in Missouri, so this court does not have general jurisdiction over any of the defendants. *See Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011) (differentiating between general and specific personal jurisdiction). Therefore, the inquiry is whether this court can exercise

---

[4] The Phipps Group and the Murray Group originally filed a motion to dismiss the interpleader claim for failure to state a claim (Doc. No. 60), as well as a separate motion to dismiss the interpleader claim for lack of subject matter jurisdiction (Doc. No. 62). However, they subsequently refiled the motion to dismiss for lack of subject matter jurisdiction as a motion to dismiss for failure to state a claim. Therefore, I will consider the motions together as one combined motion to dismiss for failure to state a claim.

- 6 -

specific jurisdiction over the Phipps Group and the Murray Group based on their actions taken in Missouri relevant to this case.

In ruling on a motion to dismiss, a court must view the facts alleged in the complaint in the light most favorable to the plaintiff.  *Toombs v. Bell*, 798 F.2d 297, 298 (8th Cir. 1986).  When personal jurisdiction is challenged by a defendant, the plaintiff bears the burden to show that jurisdiction exists.  *K-V Pharm. Co. v. J. Uriach & CIA, S.A*, 648 F.3d 588, 591-92 (8th Cir. 2011).  To successfully survive a motion to dismiss challenging personal jurisdiction, a plaintiff must make a prima facie showing of personal jurisdiction over the challenging defendant.  *Id.* at 591.

For a federal court to exercise personal jurisdiction over a non-resident defendant, two prerequisites must be satisfied.  *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010).  First, the forum state's long-arm statute must be satisfied. *Viasystems*, 646 F.3d at 593.  Second, the Court must determine whether the defendant has sufficient contacts with the forum state to satisfy the Due Process Clause of the Fourteenth Amendment.  *Johnson*, 614 F.3d at 794.  The due process and long-arm statute inquiries should be analyzed separately.  *Viasystems*, 646 F.3d at 593 n.2.

Missouri's long-arm statute provides for personal jurisdiction over any person or firm who, *inter alia*, either in person or through an agent transacts

business, makes a contract, or commits a tort within Missouri. Mo. Rev. Stat. § 506.500.1(1)-(3). It also provides jurisdiction over extraterritorial acts that produce "actionable consequences" in Missouri, *see Noble v. Shawnee Gun Shop, Inc.*, 316 S.W.3d 364, 371 (Mo. Ct. App. 2010), so long as those consequences are a result of some purposeful conduct by the defendant directed at the forum state. *See J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2789 (2011).

The requirement of minimum contacts is based on the notion that "those who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts as a general matter." *Nicastro*, 131 S.Ct. at 2787. Due process requires that a plaintiff show that a non-resident has "minimum contacts" with the forum state and that the maintenance of the lawsuit does not offend "traditional notions of fair play and substantial justice." *Id.* A defendant's contacts with the forum state must be sufficient so that a non-resident defendant should reasonably anticipate being haled into court there. *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980). The demand for sufficient minimum contacts "requires some act by which the defendant 'purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Nicastro*, 131 S.Ct. at 2787 (internal quotation marks and citation omitted). That is, "jurisdiction is viable only if the injury giving rise to the lawsuit occurred within or had some connection to the

forum state." *Romak USA, Inc. v. Rich*, 384 F.3d 979, 984 (8th Cir. 2004) (internal citations omitted).

The Eighth Circuit Court of Appeals established a five-factor test to determine the sufficiency of a non-resident defendant's contacts with the forum state. *Romak USA*, 384 F.3d at 984. The five factors are: 1) the nature and quality of contacts with the forum state; 2) the quantity of the contacts; 3) the relation of the cause of action to the contacts; 4) the interest of the forum state in providing a forum for its residents; and 5) convenience of the parties. *Id.* The first three factors are of "primary importance," while the last two factors are of "secondary importance" and as such are not determinative of personal jurisdiction. *Id.*

In response to the Phipps Group and the Murray Group's motion to dismiss for lack of personal jurisdiction, the Downing Group first argues that the Phipps Group and the Murray Group waived their right to challenge personal jurisdiction when they previously filed and withdrew an initial Rule 12(b) motion. Under Federal Rule of Civil Procedure 12(g), "a party that makes a motion under [Rule 12] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." The Phipps Group and the Murray Group filed a joint motion to dismiss the interpleader claim for lack of subject matter jurisdiction on March 13, 2013. (Doc. No. 51). The following day, the Phipps Group and the Murray Group filed a motion to withdraw

that motion to dismiss "in order to allow defendants to preserve and not effect a waiver of other separate defenses and relief available to them by Rule." (Doc. No. 53). I granted that motion to withdraw before the Downing Group filed their response. Because the Phipps Group and the Murray Group withdrew the motion before the Downing Group filed a response or the court expended any resources, and because they specifically sought to withdraw their motion in order to avoid waiving other defenses, I conclude that the Phipps Group and the Murray Group did not waive their right to challenge this court's jurisdiction over them.[5]

The Downing Group next argues that the Phipps Group and the Murray Group waived their right to contest personal jurisdiction based on their conduct in this case. Specifically, the Downing Group argues that they waived a personal jurisdiction objection because they entered appearances without stating that they were doing so for the purpose of contesting personal jurisdiction; opposed the Downing Group's motion to consolidate filed in the MDL case; and sought a court order finding good cause to withdraw their original motion to dismiss. None of this conduct amounts to a waiver of the Phipps Group and the Murray Group's right to challenge personal jurisdiction.

---

[5] The Downing Group also raises this same waiver argument regarding the individual defendants' motion to dismiss for failure to state a claim. For the same reasons discussed herein, defendants also did not waive their right to file that motion to dismiss.

The Phipps Group and the Murray Group's entries of appearance in the case, without any relation to the merits of the dispute, is not enough to submit themselves to this court's jurisdiction.  Furthermore, although the Phipps Group and the Murray Group did object to consolidation of these cases into the Rice MDL case, they specifically argued in a footnote that the court does not have personal jurisdiction over them.  Unlike cases such as *TLC Vision (USA) Corp. v. Freeman*, No. 4:12CV1855, 2013 WL 230254 (E.D. Mo. Jan. 22, 2013), in which the defendants participated in court proceedings and raised arguments on the merits of the dispute before they filed the motion to dismiss, the Phipps Group and the Murray Group's participation in these proceedings up to this point consisted of filing a motion to dismiss and then filing a motion to withdraw that motion to dismiss the following day, for the stated purpose of preserving other defenses under Rule 12(b).  On this factual basis, I conclude that the Phipps Group and the Murray Group have not sufficiently availed themselves of the court's procedures to waive their right to contest personal jurisdiction.

As to the first prong of the personal jurisdiction analysis – whether the Missouri long-arm statute is satisfied – the Downing Group must demonstrate that the Phipps Group and the Murray Group transacted business in Missouri within the meaning of that statute.  "Missouri courts construe 'transaction of any business' broadly."  *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d

472, 476 (8th Cir. 2012).  However, they require "some activity, directly or indirectly related to the transaction in question, on the part of the nonresident defendant in Missouri," as well as requiring "that the nonresident defendant's activities within the state give rise to the cause of action asserted in the litigation." *Scullin Steel Co. v. Nat'l Ry. Utilization Corp.*, 676 F.2d 309, 312 (8th Cir. 1982). The Phipps Group and the Murray Group argue that they have not transacted business in Missouri, and even if they have, it did not give rise to the causes of action asserted in the Downing Group's complaint.

The Downing Group alleges that the Phipps Group and the Murray Group transacted business in Missouri, supporting a finding of personal jurisdiction, through the following types of acts in Missouri:  traveling to Missouri to attend MDL bellwether trials; obtaining transcripts and briefing from the Rice MDL case, which they later used in their state cases; telephonically attending several depositions that took place in Missouri; traveling to St. Louis to attend hearings, mediations, and settlement meetings; and filing motions and briefs in the Rice MDL case.  There is no doubt that the Phipps Group and the Murray Group have undertaken a variety of actions in the state of Missouri.  But the Downing Group has not demonstrated that these actions gave rise to the allegations in the complaint, which is essential for a determination that the long-arm statute

- 12 -

encompasses these actions. Moreover, the lawyers did not willingly or purposefully come to Missouri.

The complaint alleges that the Phipps Group and the Murray Group unlawfully used the Downing Group's information and materials in their state court cases. According to the complaint, at least some of the information and materials were created in Missouri. However, I agree with the Phipps Group and the Murray Group that even if the materials were created in Missouri, and even if they obtained that information in Missouri, any *improper usage* of those materials occurred in other states, where the underlying trials took place. There was nothing wrongful alleged about the Phipps Group and the Murray Group gathering the information; it was the later use of that information that allegedly unjustly enriched them. This supports a finding of personal jurisdiction in those states where the information was actually used, as opposed to in Missouri, where some of the information may have been created.

All of the Missouri actions alleged by the Downing Group related directly to the Phipps Group and the Murray Group's representation of their clients in the Rice MDL case. As stated above, these lawyers opposed removal of their cases to federal court in the states where they were originally filed, and did not voluntarily join in the MDL or come to Missouri. The placement of the Rice MDL case into this district was a decision of the JPML, not by any voluntary actions on behalf of

the Phipps Group and the Murray Group.  At most, these actions demonstrate that they "transacted business" in Missouri only to the extent that they represented clients in a case in Missouri, a location that was not by their choice.

The actions alleged in the complaint are necessarily related to the Rice MDL case, as they involve parties involved in the Rice MDL case and a common benefit fund set up in that case.  However, the specific allegations of unjust enrichment and quantum meruit are personal allegations against the Phipps Group and Murray Group attorneys and law firms, as opposed to allegations directly related to their involvement in the Rice MDL, which consisted of serving as attorneys for many federal and state plaintiffs.  The actions that the Downing Group cites in support of personal jurisdiction are actions taken on behalf of clients, as opposed to actions taken by the attorneys and law firms for their own benefit.  The Downing Group has not demonstrated that there is a nexus between the actions the Phipps Group and the Murray Group took in Missouri on behalf of their clients and the allegations of unjust enrichment and quantum meruit.  Therefore, I find that the Missouri long-arm statute is not satisfied, and so this court does not have personal jurisdiction over the Phipps Group and the Murray Group for the unjust enrichment and quantum meruit claims.

Furthermore, even if the Missouri long-arm statute was satisfied, the Phipps Group and the Murray Group do not have sufficient contacts with Missouri to

satisfy the Due Process Clause. Defendants' contacts with Missouri appear to be limited only to actions directly related to their representation of clients in the Rice MDL case. As described above, that case was placed in Missouri through no actions on the part of them or their clients. Although those contacts may have been frequent and substantial, they are not sufficiently related to the cause of action alleged in the Downing Group's complaint to comport with the requirements of due process.

Although Missouri does have an interest in providing a local forum for its residents to pursue these unjust enrichment and quantum meruit claims, it appears that much of the putative class consists of individuals residing outside of the state of Missouri, and so this factor does not carry much weight. Additionally, the convenience of the parties is not a strong factor in this case. All of the parties were able to litigate the Rice MDL case in Missouri, but the Phipps Group and the Murray Group, as well as their witnesses, reside outside of Missouri. Thus, the convenience of the parties does not strongly support any of the parties' positions regarding personal jurisdiction.

In summary, I do not believe that the Phipps Group and the Murray Group could have reasonably anticipated being haled into court in the state of Missouri, based on their legal representation of clients that reside outside of Missouri, as attorneys licensed in states other than Missouri and in cases that were not

originally filed in Missouri, but were transferred to Missouri by the JPML. Therefore, I conclude that it would offend due process to exercise personal jurisdiction over the Phipps Group and the Murray Group, and so I will grant the motion to dismiss Counts I through IV for lack of personal jurisdiction.

### Motion to Dismiss Interpleader Count for Failure to State a Claim

The Downing Group seeks to interplead over $1.4 million of the funds that were collected for common benefit expenses from the Phipps Group's federal Rice MDL clients, which is due to be reimbursed to those clients because the total amount collected for common benefit expenses exceeded the expenses actually incurred. The Phipps Group argues that the interpleader claim contained in Count V of the complaint should be dismissed for failure to state a claim. Under 28 U.S.C. § 1335(a), a district court has jurisdiction to hear an interpleader claim if (1) the plaintiff has possession of property with a value of $500 or more; (2) two or more adverse claimants of diverse citizenship claim rights to the money or property; and (3) the plaintiff has deposited the disputed money or property, or a bond equivalent to the value of the property, into the court registry. 28 U.S.C. § 1335(a). The purpose of an interpleader proceeding is to free a stakeholder of property "from the threat of multiple liability and/or the vexation of multiple lawsuits." *Gaines v. Sunray Oil Co.*, 539 F.2d 1136, 1141 (8th Cir. 1976). An interpleader action therefore contemplates that the adverse claims be "mutually

- 16 -

exclusive – *i.e.*, multiple claims on a single obligation." *Weiss v. Rickert*, No. 4:10CV949 CEJ, 2011 WL 3100248, at *3 (E.D. Mo. July 25, 2011).

In this case, the total amount collected by the 3% holdbacks from federal plaintiffs' recoveries exceeded the actual expenses incurred by common benefit attorneys. The $1.4 million in disputed property consists of the contributions into that expense fund from the federal plaintiffs that were represented by the Phipps Group. The Downing Group argues that in past filings with the court in the Rice MDL case and in an appeal from that case to the Eighth Circuit Court of Appeals, the Phipps Group has alleged that the reimbursement of those funds is owed to them directly – as opposed to their clients – because of underlying fee agreements.[6] As the basis for their assertion that there are adverse claims to this portion of the fund, the Downing Group alleges that some of the class members that it seeks to represent in Counts I through IV are demanding the money not be returned so that it could be used to satisfy a judgment they hope to receive:

> Plaintiffs, in their capacity as Co-Trustees of the CBF Trust, have received notice from some Class members that the Disputed 3% CBF Cost Funds should not be distributed to Defendants, but rather held and then applied in partial satisfaction of the Unjust Enrichment and Quantum Meruit claims. In particular, because the Disputed 3% CBF Cost Funds are claimed by some or all of the Phipps Group

---

[6] Notably, the Phipps Group have filed disclaimers of any personal interest to these "overpayments." However, the Downing Group correctly argues that I cannot consider these disclaimers without converting this motion to dismiss into a motion for summary judgment. I conclude that converting this motion to a motion for summary judgment is not necessary because the interpleader count fails to state a claim, even without considering these disclaimers.

- 17 -

> Defendants, and not any of their clients, Plaintiffs and other Class members who have paid or borne the 3% cost assessment are entitled to the increase in their proportionate shares of any reimbursement of a portion of the 3% cost assessment funds by application and recovery of the Disputed 3% CBF Cost Funds.

(Doc. #11, at 23-24).

If all of the contributors to the common benefit fund – including the Phipps Group's clients – are merely seeking a return of their proportionate share of the excess funds, which appears to be the case, there are not any adverse claims to these funds. The only basis for the Downing Group's interpleader claim therefore appears to be objections from some of the class members to the portion of the money contributed by the Phipps Group's clients being returned. The Co-Trustees have not asserted that they do not intend to comply with the provisions of the trust and the orders of the court. Rather, they would like this money to be held by the court so it could be used to satisfy a judgment the class hopes to receive against the Phipps Group. The Phipps Group is correct that, in substance, this amounts to nothing more than an attempt at a pre-judgment attachment of these funds. The Downing Group has not presented any argument or factual basis for issuing a pre-judgment attachment, and an interpleader claim may not be used for this purpose.

The Downing Group's additional grounds in support of their position that adverse claims to these funds have been asserted are similarly without merit. The Downing Group argues that there are questions of fact as to who has ownership

- 18 -

interests in the funds – the Phipps Group or their clients – but the clients have not made competing claims to the Downing Group regarding these funds.  However, that dispute, if it arises in the future, is solely an issue involving the fee agreements between those attorneys and their clients, not between those attorneys and any parties in this lawsuit.  Similarly, if issues arise in the future between the Phipps Group and some unknown creditors, that dispute would be outside the proper scope of an interpleader action.

Because I conclude that the Downing Group has failed to establish that there are adverse claims to the money held in the common benefit fund, the interpleader count fails to state a claim.  I will dismiss Count V of the complaint.  It therefore cannot support any exercise of supplemental personal jurisdiction.  I will dismiss the complaint in its entirely.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to dismiss for lack of personal jurisdiction [#56] is granted, and plaintiffs' claims against defendants in Counts I through IV are dismissed without prejudice.

**IT IS FURTHER ORDERED** that defendants' motions to dismiss the interpleader claim for failure to state a claim [#60; #62; #95] are granted, and plaintiffs' claim against defendants in Count V is dismissed.

**IT IS FURTHER ORDERED** that all other pending motions are denied as moot.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 13th day of May, 2013.