UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DON M. DOWNING, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:13CV321 CDP |
| | ) | |
| RICELAND FOODS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

# **ORDER AND MEMORANDUM**

This case comes before me on two related motions. Riceland seeks dismissal of the case on the grounds that the court lacks subject-matter jurisdiction, because CAFA's 100-plaintiff threshold has not been met. Plaintiffs seek leave to amend their complaint to substitute named plaintiffs and add two claims by Trustees on behalf of the common benefit trust fund that I ordered established to compensate those who had provided legal services as part of the genetically modified rice litigation. Riceland opposes the amendment; it asserts the same CAFA argument and also alleges that the Trustees lack standing to bring the amended claims. Because Riceland fails to show that there are fewer than 100 plaintiffs, and because I find that the Trustees have power under the Trust to bring

the two amended claims, I will deny Riceland's motion to dismiss and will grant plaintiffs' motion to amend the complaint.[1]

## 1. **Background**

In 2006, the USDA announced that the rice supply in the United States had been contaminated by Bayer's genetically modified rice. Thousands of rice producers and non-producers filed suit against various Bayer entities in federal and state court. The Judicial Panel on Multidistrict Litigation transferred all pending federal cases to this court, and I appointed Don Downing and Adam Levitt as Co-Lead Counsel of a leadership group of attorneys. Over the course of the next several years, the leadership group and various other attorneys and firms invested considerable time and resources into these cases, providing substantial benefits to other plaintiffs in the litigation.

In the MDL case, I ordered that a common benefit trust fund (the Fund) be established to compensate attorneys for services rendered on behalf of all the plaintiffs.[2] This order required that a portion of any recovery obtained by plaintiffs in federal court be set aside and contributed to the Fund. It also allowed contributions to the Fund to be made in state court cases if ordered by the state court or if plaintiffs in those cases agreed to the contributions.

---

[1] Plaintiffs' motion to dismiss Riceland's counterclaim remains pending.
[2] *See In re Genetically Modified Rice Litigation*, 4:06MD1811, 2010 WL 716190 (E.D. Mo. Feb. 24, 2010).

In coordination with my order establishing the Fund, a trust deed was executed establishing the Genetically Modified Rice Common Benefit Qualified Settlement Fund (the Trust). The Trust named Don Downing and Adam Levitt as trustees (the Trustees) and set forth the purpose of the Trust:

> [t]o provide for the compensation and litigation-related expenses of attorneys who have provided services for the common benefit of all plaintiffs in the [Multi-District Genetically Modified Rice] Litigation, . . . [and] to provide for the payment of any excess administrative costs and expenses of the [Fund] established by this same Court.
> . . .
> The purpose of the [Trust] is limited to the matters set forth herein, and this Agreement shall not be construed to confer on the Trustee any authority to carry on any business or activity for profit.

The Trust also listed five express powers of the Trustees: pay taxes and expenses, manage the assets of the Fund, hire accountants, execute documents of transfer and conveyance, and ensure compliance with Internal Revenue Code § 468B. Additional powers could be ordered by the court after hearing upon notice to all parties.

Riceland was a plaintiff in both Arkansas state court and as part of the federal MDL. However, it did not consent to contribute to the Fund in its state court cases. The leadership group brought this class action against Riceland on behalf of all persons and entities that provided or paid for common benefit services or expenses. The complaint alleges that Riceland benefited at the expense of the

class by using common benefit services during its state court claims and asserts claims against Riceland for unjust enrichment and *quantum meruit*.

Plaintiffs now seek to amend their class action complaint to add counts for unjust enrichment and *quantum meruit* by the Trustees on behalf of the Trust and to substitute named class plaintiffs. Riceland opposes the amendment of the claim on the grounds that (1) the court lacks subject-matter jurisdiction to hear the complaint in its entirety; (2) the co-trustees lack standing because the amended counts represent a collateral attack on an earlier order by the court;[3] (3) the amended counts exceed the powers granted to the co-trustees and are, therefore, *ultra vires*; and (4) the co-trustees lack standing because Riceland's recovery against Bayer is not trust property and so the trustees cannot assert a property right against that recovery.

Riceland also filed a motion to dismiss the complaint in its entirety for lack of subject-matter jurisdiction. This motion also alleges that the court would lack subject-matter jurisdiction over Counts III and IV of the proposed amended complaint. This order will first address the subject-matter jurisdiction over the

---

[3] Riceland makes no substantive argument on this point but merely cites my Order of February 11, 2011, in which I declined to enforce the terms of the Trust over Riceland's claims against Bayer in state court. *See In re Genetically Modified Rice Litig.*, No. 4:06MD1811 CDP, 2011 WL 601627 (E.D. Mo. Feb. 11, 2011) (Doc. 4033). There, the issue was one of jurisdiction, whereas here, the issues deal with independent actions for unjust enrichment and *quantum meruit*. Because the issues are not identical to those decided in that Order, collateral estoppel is not appropriate.

case as a whole and will then examine the parties' arguments relative to the proposed amended complaint.

## 2. Motion to Dismiss for Lack of Subject-matter Jurisdiction

Under the Class Action Fairness Act of 2005 (CAFA), district courts have original jurisdiction over any civil class action in which there is (1) an aggregate amount in controversy of at least $5,000,000, exclusive of interest and costs, and (2) minimal diversity, that is, where at least one plaintiff and one defendant are citizens of different states. 28 U.S.C. § 1332(d)(2), (6). CAFA also establishes narrow exceptions to its jurisdiction, only one of which is relevant here: a court does not have jurisdiction where "the number of members of all proposed plaintiff classes in the aggregate is less than 100." 28 U.S.C. § 1332(d)(5); *see also Mississippi ex rel. Hood v. AU Optronics Corp.*, 134 S. Ct. 736, 740 n.1 (2014) (noting exceptions to CAFA). The number of proposed class members may be determined from the face of the complaint. *See Brown v. Mortg. Elec. Registration Sys., Inc.*, 738 F.3d 926, 932 (8th Cir. 2013).

CAFA retained the general rule that the proponent of federal jurisdiction bears the burden of establishing jurisdiction. *See Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010). Once CAFA's initial jurisdictional requirements have been established, the objecting party bears the burden of proving the applicability of any exception. *See id.* Any doubts as to the

applicability of an exception are resolved against the party seeking to establish an exception to jurisdiction. *Id.*

Plaintiffs bring a class action claim on behalf of "all persons or entities that provided or paid for common benefit services, materials, and/or related expense items . . . ." A district court may take judicial notice of its own orders and records. *Cravens v. Smith*, 610 F.3d 1019, 1029 (8th Cir. 2010). As I have previously stated that there are "approximately five thousand plaintiffs" in the MDL,[4] I will take judicial notice that the number of potential class members exceeds 100.[5] Plaintiffs have carried their initial burden of establishing subject-matter jurisdiction.

Riceland contends that the class must have fewer than 100 members because any rice producer that settled with Bayer necessarily released all claims against Riceland, including those brought in this action. However, a release is a contract-based affirmative defense, and an affirmative defense does not strip a court of its subject-matter jurisdiction. *See Jerez v. Holder*, No. 10-CV-4498 (JRT/LIB), 2011 WL 7637808, at *14 (D. Minn. Sept. 1, 2011) ("Just like parties cannot confer federal jurisdiction through a contract, parties cannot limit a court's jurisdiction through a contract) (citing *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de*

---

[4] *See In re Genetically Modified Rice Litig.*, 4:06 MD 1811 CDP, 2010 WL 716190 (E.D. Mo. Feb. 24, 2010) (Doc. # 2574).
[5] Because I find that the number of class members exceeds 100 when counting MDL plaintiffs alone, I need not make findings as to the number of attorneys that compose the class.

*Guinee*, 456 U.S. 694, 702 (1982) ("[N]o action of the parties can confer subject-matter jurisdiction upon a federal court . . . .")). Moreover, Riceland does not provide any evidence – even when excluding producers who signed releases – that the number of proposed class members is less than 100. Riceland has failed to carry its burden of showing that there are fewer than 100 plaintiffs in the proposed class, and I will deny Riceland's motion to dismiss under CAFA.

### 3. <u>Motion to Amend Complaint</u>

Rule 15(a) of the Federal Rules of Civil Procedure vests the court with discretion whether or not to grant leave to amend. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330–32 (1971). Factors to consider in determining whether leave to amend should be granted include, but are not limited to, (1) whether the motion was filed in bad faith or with dilatory motive; (2) whether the motion was filed with undue delay; (3) whether leave to amend would be unduly prejudicial to the opposing parties; and (4) whether the proposed amendment would be futile. *See Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 224 (8th Cir. 1994). A determination that an amendment is futile means the court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of

the Federal Rules of Civil Procedure. *Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 781–82 (8th Cir. 2008).

If the court lacks subject-matter jurisdiction, it cannot rule on a motion to amend. *See Buttram v. Cent. States, Se. & Sw. Areas Health & Welfare Fund*, 781 F. Supp. 1429, 1431 (E.D. Mo. 1992) (citing *Pressroom Unions-Printers League Income Sec. Fund v. Cont'l Assur. Co.*, 700 F.2d 889, 893–94 n.9 (2d Cir. 1983)). Article III of the Constitution limits federal jurisdiction to cases or controversies; if a plaintiff lacks standing to sue, the district court has no subject-matter jurisdiction. *ABF Freight Sys., Inc. v. Int'l Broth. of Teamsters*, 645 F.3d 954, 958 (8th Cir. 2011). To establish standing, a plaintiff must show (1) an injury-in-fact that (2) can be fairly traced to the defendant's action and (3) will likely be redressed by a favorable court decision. *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

The proposed amended complaint substitutes the named plaintiffs in Counts I and II. In its opposition to those counts, Riceland reasserts the CAFA arguments I rejected above. The analysis remains largely the same, and I find that I would retain jurisdiction under CAFA as to Counts I and II of the Amended Complaint.

Riceland next contends that I should deny plaintiffs' attempts to add Counts III and IV. It bases this argument on the premise that the trustees lack standing to

bring their unjust enrichment and *quantum meruit* claims, because such claims are *ultra vires* – that is, that they go beyond the powers granted by the trust.

The Trust was established primarily "to provide for the compensation and litigation-related expenses of attorneys who have provided services for the common benefit of all plaintiffs" in the MDL, with the proviso that the Trust did not confer on the Trustee the authority to carry on business for profit. The Trust provided that it would be funded in accordance with an order I entered, which required all MDL plaintiffs to contribute a share of their recovery to the Fund. The Trust's property would also derive from any related state case where the parties were ordered or agreed to make contributions, as well as from funds contributed pursuant to subsequent orders by this court.

Missouri law sets forth general powers that trustees may exercise except where limited by the terms of the trust. These include "(a) all powers over the trust property which an unmarried competent owner has over individually owned property; (b) any other powers appropriate to achieve the proper investment, management, and distribution of the trust property; and (c) any other powers conferred by [Missouri law]." R.S. Mo. § 456.8-815. Included among other powers granted by Missouri law is the ability to "prosecute or defend an action, claim, or judicial proceeding in any jurisdiction to protect trust property and the trustee in the performance of the trustee's duties." R.S. Mo. § 456.8-816 (24).

The only clause in the Trust that might be read to affirmatively limit the powers of a trustee is one that limits the purpose of the trust as discussed above and prohibits Trustees from "carry[ing] on any business or activity for profit." However, the unjust enrichment and *quantum meruit* claims alleged by the Trustees further the Trust's purpose, because they would bolster the Trust's ability to compensate the beneficiaries. Moreover, the Trustees will only "profit" from this suit insofar as they are also beneficiaries of the Trust, as they provided common-benefit litigation services in the MDL. The Trust does not expressly prohibit a Trustee from bringing a claim to protect trust property, and so, under Missouri law, the Trustees have the power to bring the claims on behalf of the Trust.

Riceland also contends that by bringing those claims, the Trustees are changing the nature of the use of the trust property. However, the Trustees are not changing the use of the property; rather, they are performing their statutory duty by attempting to increase the *res*. *See* § 456.8-809 ("A trustee shall take reasonable steps to take control of and protect the trust property . . . ."); *see also Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 572 (1985) (noting common law duty of asset preservation includes determining what property forms the subject matter of the trust) (quotation omitted) (citing G. Bogert & G.

Bogert, *Law of Trusts and Trustees* § 582, p. 355 (2d rev. ed. 1980)). The Trustees' actions are not *ultra vires*.

Riceland argues that the proceeds of its settlement with Bayer are not trust property, and so the Trust was not injured through Riceland's failure to contribute a portion of the settlement. But the Trustees do not assert that Riceland's settlement proceeds are trust property; rather, the complaint alleges that the facts underlying the unjust enrichment and *quantum meruit* claims form the basis of the Trust's injury. In other words, the Trustees do not seek the actual money paid to Riceland by Bayer; they seek "an amount equal to 10%" of the gross recovery. As discussed above, the Trustees have standing to bring those claims on behalf of the Trust.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion for leave to file an amended class action complaint [# 27; # 5219] is granted, and the proposed amended complaint is deemed filed today.

**IT IS FURTHER ORDERED** that defendant's motion to dismiss for lack of subject-matter jurisdiction [# 38; # 5237] is denied.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 31st day of March, 2014.