UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DON M. DOWNING, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:13CV321 CDP |
| | ) | |
| RICELAND FOODS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM AND ORDER</u>

This case comes before me on plaintiffs' motion for class certification under

Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. The proposed

class members are lawyers and their clients who undertook a collective effort to

litigate their claims against Bayer related to contamination of the United States rice

supply by Bayer's genetically modified rice. Plaintiffs allege that defendant

Riceland Foods used some of their litigation work product in prosecuting its own

claim against Bayer. The plaintiffs seek to certify a class of all "persons and

entities that provided or paid for common-benefit services, materials, and/or

related expense items (except Defendant)." They assert claims for unjust

enrichment and quantum meruit.

I conclude that Missouri law governs this case: Missouri has the most significant relationship to both claims. The proposed class satisfies Rule 23(a) and plaintiffs have shown that a Rule 23(b)(3) class is appropriate because common issues predominate over individual issues. The central common issue in this case is whether and to what extent Riceland was unjustly enriched, and because of the way the class plaintiffs arranged their collective litigation efforts in the underlying rice litigation, that common question predominates over any questions specific to individual class members. This action is uniquely suitable for class certification, and that form of litigation is superior to any other form. I will grant the motion for class certification.

## I. <u>Background</u>[1]

This dispute has its origin in the continuing multi-district litigation (MDL) that began after the introduction of Bayer's genetically modified rice into the United States domestic rice supply.[2] Thousands of Arkansas, Louisiana, Mississippi, Missouri and Texas rice farmers (referred to as "producers") and others involved in the rice business (referred to as "non-producers") filed suit against various Bayer entities in federal and state court. Riceland Foods was named as a defendant along with Bayer in more than 200 federal and state cases.

---

[1] This background is stated only for the purposes of ruling on this motion and does not relieve any party of its duty to prove facts at a later date.

[2] *See, generally,* *In re Genetically Modified Rice Litigation*, Case No. 4:06MD1811 CDP.

Riceland was also a plaintiff, in that it filed cross-claims and at least one separate federal suit against Bayer. Riceland won a multi-million dollar verdict against Bayer in an Arkansas state court case. Bayer and Riceland ultimately settled the case for $92 million, and it is part of that recovery that plaintiffs seek in this case.

To make the MDL more manageable for the plaintiffs, this court appointed Don Downing and Adam Levitt as Co-Lead Counsel of a leadership group of attorneys. A common-benefit trust fund (the Trust) was ordered established to compensate attorneys for services rendered on behalf of all the plaintiffs; Downing and Levitt were named as Co-Trustees of the Trust. That order required that a portion of any recovery obtained by plaintiffs in federal court cases be set aside and contributed to the Trust. Non-producer plaintiffs, like Riceland, were to contribute seven percent of any gross recovery for common-benefit attorney's fees and an additional three percent for common-benefit costs.[3] The order allowed contributions to the Trust to be made from recoveries in state court cases only if ordered by the state court or if plaintiffs in those cases consented.

The Co-Lead Counsel and additional attorneys at their request (collectively, the common-benefit attorneys) were directed to manage pretrial proceedings on behalf of all MDL plaintiffs. Over the course of five years, the common-benefit attorneys performed a variety of work, including, among other things, drafting a

_____
[3] Producer plaintiffs were assessed eight percent for fees and three percent for costs.

master consolidated complaint against Bayer under the laws of five states; successfully opposing Bayer's dispositive motions, reviewing, coding, and managing more than 2.8 million pages of documents; and taking or defending 167 depositions across the United States and internationally. They also conducted three bellwether trials in this court; the trials resulted in plaintiffs' verdicts under the laws of Missouri, Arkansas, Mississippi, and Louisiana.

Riceland did not oppose establishment of the Trust. Initially the common-benefit attorneys asked that I require state court plaintiffs to contribute to it, and some parties – but not Riceland – filed briefs opposing that. I ultimately decided that I lacked jurisdiction to order the state-court parties to contribute to the fund. At one point, Riceland negotiated to obtain some of the common-benefit attorneys' work product for use in its state cases in exchange for a share of its recovery against Bayer. The negotiations over this "Joint Prosecution Agreement" occurred between Riceland's counsel and the MDL leadership group in St. Louis, Missouri, as well as via email and telephone; the negotiations ultimately ended without execution of a final agreement.

On December 6, 2012, this court ordered that the common-benefit attorneys' expenses be paid from the Trust. Those expenses totaled less than the amount collected by the fund's three-percent cost assessment, and the Co-Lead Counsel have proposed distributing the surplus on a pro-rata basis to the contributing

parties.[4]  On the same date as the expenses order, this court also awarded up to $72 million in attorneys' fees.  However, only approximately $56.5 million of that potential award has been obtained by the Trust.

The named Class Plaintiffs are three law firms who incurred legal fees and advanced expenses while performing common-benefit work.[5]  They seek to represent not only other law firms but also any other persons (such as clients) who paid for common-benefit services and expenses.[6]  In addition to the law firm Class Plaintiffs, the Co-Trustees of the Trust are also plaintiffs, suing on behalf of the Trust itself.

The Co-Trustees and Class Plaintiffs sued Riceland for unjust enrichment and quantum meruit.[7]  They allege that Riceland benefited from the common-benefit attorneys' work and seek restitution in the amount of ten percent of Riceland's gross recovery against Bayer.  The Class Plaintiffs now ask that I certify the following class:

---

[4] *See* Downing Decl., July 18, 2014, ECF Doc. 71-1 at ¶ 28.

[5] The law firms named as Class Plaintiffs are Gray, Ritter & Graham, P.C., of St. Louis, Missouri; Wolf Haldenstein Adler Freeman & Herz, LLC, with offices in Illinois, New York, New Jersey, Connecticut, and California; and Looper Reed & McGraw, P.C., a Texas law firm.

[6] Some law firms passed the expenses on to the clients and some did not.  *See, e.g.*, Chaney Decl., ECF Doc. 71-2 at ¶ 4 (stating firm paid three-percent cost assessment for at least one client and so will its seek share of the surplus from the three-percent cost holdback).

[7] The Court has jurisdiction over the case based on the Class Action Fairness Act, 28 U.S.C. §1332(d)(2).  *See* ECF Doc. 51, Order dated March 31, 2014.

All persons and entities that provided or paid for common benefit services, materials, and/or related expense items (except Defendant).

Defendant contends that the class certification is not appropriate because, it argues, plaintiffs will be required to prove, on a plaintiff-by-plaintiff and item-by-item basis, "what mix of Plaintiff(s) and class member(s) originated or paid for each item of Alleged Work Product."[8]

## II.  <u>Discussion</u>

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.  To come within the exception, a party seeking to maintain a class action must affirmatively demonstrate his compliance with Rule 23."  *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (citations omitted); *see also Luiken v. Domino's Pizza, LLC*, 705 F.3d 370, 372 (8th Cir. 2013) (citation omitted) ("[A] plaintiff has the burden of showing that the class should be certified and that the requirements of Rule 23 are met.").  Rule 23 contains two subsections that must be satisfied.

Rule 23(a) sets out four threshold requirements for class certification:  (1) sufficiently numerous parties, (2) common questions of law or fact, (3) typicality of claims or defenses, and (4) adequacy of representation.  A class action plaintiff

---

[8] Riceland brief opposing class certification, ECF Doc. 75 at p. 2.

"must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast Corp.*, 133 S. Ct. at 1432.

## A.  Rule 23(a) Requirements

### A.1.  Numerosity

Rule 23(a)(1) requires that "the class be so numerous that joinder of all members is impracticable."  To be "impracticable" does not mean that joinder must be impossible, but it does require a showing that it would be extremely difficult or inconvenient to join all members of the class."  *Morgan v. United Parcel Serv. of Am., Inc.*, 169 F.R.D. 349, 355 (E.D. Mo. 1996).  The Eighth Circuit has established no specific rule as to the necessary size of a class, but it has directed courts to consider several factors in determining whether joinder is feasible: the number of persons in the class, the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the class members.  *Emanuel v. Marsh*, 828 F.2d 438, 444 (8th Cir. 1987), *vacated on other grounds*, 487 U.S. 1229 (1988).

Upon consideration of these factors, I conclude that the proposed class satisfies the numerosity requirement.  There are over 30 law firms that provided common-benefit legal services, and over 5000 rice producers and non-producers who had part of their settlements deposited into the Fund to pay for fees and expenses.  All would be members of the class.  It is clear that joining each of the

putative plaintiffs individually and trying separate suits for each would be wasteful, duplicative, and time consuming. Joinder is impracticable, and so the numerosity requirement of Rule 23(a)(1) is satisfied.

### A.2. Commonality

The commonality required by Rule 23(a)(2) is that "there are questions of law or fact common to the class." The mere presence of factual differences will not defeat the maintenance of a class action if there are common questions of law uniting the class members' claims. *DeBoer v. Mellon Mort. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995); *Glen v. Fairway Indep. Mortg. Corp.*, 265 F.R.D. 474, 478 (E.D. Mo. 2010). As the Eighth Circuit held in *Paxton v. Union Nat'l. Bank*, commonality "does not require that every question of law or fact be common to every member of the class . . . and may be satisfied, for example, where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." 688 F.2d 552, 561 (8th Cir. 1982) (internal citations and quotation omitted). While plaintiffs must show that there are questions of law or fact common to the class, they need not show that all issues raised by the dispute are common. *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1334 (8th Cir. 1974).

Applying these standards to plaintiffs' proposed class, the court finds that it satisfies the commonality component. Here, all plaintiffs will face a common legal

question: whether an unjust enrichment or quantum meruit action may be based upon the use of an attorney's work product by a non-client. They also will face the common issue of whether collateral estoppel will attach to this court's previous statement that Riceland "received a substantial benefit" from the common-benefit work.[9] The fact issues regarding whether Riceland used and benefitted from the common-benefit work and the value of that work will be identical for each plaintiff.

### A.3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." This requirement is closely tied with commonality. *Cf. Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982) ("The commonality and typicality requirements of Rule 23(a) tend to merge."). "Typicality" means that there are "other members of the class who have the same or similar grievances as the Plaintiff[s]." *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977) (citations omitted). The named plaintiffs and the class members may be said to have similar grievances if they have been subjected to the same allegedly unlawful treatment. *Rentschler v. Carnahan*, 160 F.R.D. 114, 116 (E.D. Mo. 1995).

---

[9] *See In re Genetically Modified Rice Litig.*, No. 4:06MD1811 CDP, 2011 WL 601627, at *1 (E.D. Mo. Feb. 11, 2011).

Here, each of the proposed class members would have essentially the same grievances as the named plaintiffs – that Riceland had unjustly benefitted from work for which they had paid or provided. I find that typicality has been established.

### A.4. Adequate Representation

The adequacy of representation requirement under Rule 23(a)(4) seeks to discover conflicts of interest between named representatives and the class they seek to represent. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997). A class representative must be part of the class, possess the same interest, and suffer the same injury as the prospective class members. *East Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977).

Here, the Class Plaintiffs have allegedly suffered the same harm and have the same interests as the prospective class members: they have provided services and/or paid for legal expenses as part of a pooled litigation group, and have not been reimbursed for the use of those materials by Riceland. The Class Plaintiffs have retained a third-party law firm with a record of successful complex-litigation experience to represent the class in this suit, and there are no allegations of a conflict of interest between the Class Plaintiffs and the proposed class. I find that the adequacy component of Rule 23(a)(4) is satisfied.

## B. Rule 23(b) Requirements

Plaintiffs assert that this class is appropriate for certification under either Rule 23(b)(3) or 23(b)(1). To certify a class action under Rule 23(b)(3), the court must find that: 1) common questions predominate over any questions affecting only individual members; and 2) class resolution is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). Defendants argue that 23(b)(3) is inappropriate because individualized issues of fact predominate over any common issues.

When determining whether common questions predominate, the court must conduct a "limited preliminary inquiry" to gauge whether, if the plaintiffs' allegations are true, common evidence could establish a prima facie case for the class. *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005) (citations omitted). If making a prima facie case requires that members of the proposed class must present different evidence for each member, then it is an individual question. *Id.*

This prima facie inquiry, in turn, requires the court to first conduct a limited choice of law analysis to determine which state's law will apply. *See E. Maine Baptist Church v. Union Planters Bank, N.A.*, 244 F.R.D. 538, 545 (E.D. Mo. 2007). *Compare In re St. Jude Med., Inc.*, 425 F.3d 1116, 1120 (8th Cir. 2005) (overruling district court's order certifying a class because the district court did not

conduct a sufficient conflicts of law analysis before certifying the class), *and Thompson v. Bayer Corp.*, No. 4:07CV00017 JMM, 2009 WL 362982, at *7 (E.D. Ark. Feb. 12, 2009) (holding individual issues predominated where each plaintiff's prima facie case depended upon state of citizenship).

This analysis is only necessary where the laws of the forum state materially conflict with the laws of the other potential jurisdictions; without such a conflict, there would be no constitutional harm in applying the forum state's laws. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 816 (1985); *see also In re St. Jude Med.*, 425 F.3d at 1120. For the purposes of this analysis, I will assume that the laws of the various states conflict.[10] *Cf. Rapp v. Green Tree Serv'g, LLC*, 302 F.R.D. 505, 513–14 (D. Minn. 2014) (reciting differences among states' approaches to unjust enrichment); *Salmon v. Atkinson*, 137 S.W.3d 383, 385 (Ark. 2003) (adopting Illinois approach and allowing quantum meruit claims by contingency-fee attorney discharged prior to trial; noting different law in Missouri); Dittfurth, David, *Appendix: The Unjust Enrichment Cause of Action by State*, 54 S. Tex. L. Rev. 265, 265 (2012) (reciting the elements of unjust enrichment for each state but Texas "because [of] the unsettled law of that state").

---

[10]   Almost all of the Class Plaintiffs, their producer and non-producer clients, and Riceland are from five states: Missouri, Texas, Arkansas, Mississippi, and Louisiana. The Wolf Haldenstein Class Plaintiff and Co-Trustee Adam Levitt, and potentially some of the other class-member lawyers, are from other states, and so it is plausible that the law of one or more other states might be invoked if this action were split into individual suits.

B.1.  <u>Choice of Law</u>

A federal court sitting in diversity applies the choice-of-law approach of the forum state.  *Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1393 (8th Cir. 1997); *see also Cicle v. Chase Bank USA*, 583 F.3d 549, 553 (8th Cir. 2009) (applying same rule in CAFA case).  Missouri courts use the most significant relationship test, as set forth in the Second Restatement of Conflicts of Laws.  *See Dorman v. Emerson Elec. Co.*, 23 F.3d 1354, 1358 (8th Cir. 1994).  "Under this test, the identity of the state having the most significant relationship will depend upon the nature of the cause of action and upon the particular legal issue in dispute."  *Id.*

In the absence of governing state law, the Restatement sets forth seven non-exclusive factors that should be considered when determining which state's laws to apply:

(a)  the needs of the interstate and international systems,
(b)  the relevant policies of the forum,
(c)  the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d)  the protection of justified expectations,
(e)  the basic policies underlying the particular field of law,
(f)  certainty, predictability and uniformity of result, and
(g)  ease in the determination and application of the law to be applied.

Restatement (Second) of Conflicts of Laws § 6(2) (1971).  These factors are given different weight and are applied to different contacts, depending upon the cause of action.  *See id.* at cmt. on subsec. (2)(c).

B.1.a.  *Missouri Law Applies to the Unjust Enrichment Claim*

Missouri treats unjust enrichment as an action in restitution.  *Title Partners Agency, LLC v. Devisees of Last Will & Testament of Dorsey*, 334 S.W.3d 584, 587–88 (Mo. Ct. App. 2011).  I therefore look to § 221 of the Restatement to consider the following contacts when applying the factors from § 6:

> (a)  the place where a relationship between the parties was centered, provided that the receipt of enrichment was substantially related to the relationship,
> (b)  the place where the benefit or enrichment was received,
> (c)  the place where the act conferring the benefit or enrichment was done,
> (d)  the domicil, residence, nationality, place of incorporation and place of business of the parties, and
> (e)  the place where a physical thing, such as land or a chattel, which was substantially related to the enrichment, was situated at the time of the enrichment.

Restatement (Second) of Conflict of Laws § 221 (1971); *see also Flynn v. CTB, Inc.*, No. 1:12-CV-68 SNLJ, 2013 WL 28244, at *6 (E.D. Mo. Jan. 2, 2013) (applying Restatement § 221 to unjust enrichment claim).

The contacts favor Missouri.  The most important contact is the center of the parties' relationship.  *See* Restatement (Second) of Conflict of Laws § 221 cmt. on subsec. (2).  The Class Plaintiffs' and proposed class members' relationship with one another and with Riceland is based in Missouri, for that is the state in which the MDL occurred and the state in which the MDL plaintiffs agreed (and were ordered) to jointly share the work of preparing the cases.  Riceland's  relationship

with the class members, at least for the purpose of this action, arose from the MDL case and from Riceland's status as a plaintiff in the MDL.[11]  Riceland's receipt of the enrichment substantially relates to its status as an MDL plaintiff.  The factors set forth in § 6 of the Restatement support a decision to give the relationship contact increased weight.  For example, the interstate system needs a fair and uniform method of determining which state's laws should apply in circumstances such as this, where parties were brought from disparate states into one district and there made to litigate their claims together.

Choosing the governing law according to the relationship contact also simplifies the determination of which law should apply.  Restatement § 6 (g) instructs the court to consider the "ease in the determination and application of the law to be applied."  In this case, the legal work by which Riceland is alleged to have been unjustly enriched occurred piecemeal across several states and internationally.  Under those facts, it would be taxing on the court to determine precisely where the benefit was conferred or received.  Accordingly, those contacts are attributed little weight.

Contact (d) of the Restatement §221, which deals with location of the parties, has little significance to the legal issue in dispute.  The parties are from

---

[11] Riceland asserts that many plaintiffs are members of its cooperative, based in Arkansas, but even so, the relationship as it relates to this case arose from the MDL, not from their cooperative membership.

varied states, all of which except Missouri and Arkansas share little connection to the other contacts. *See* Restatement (Second) of Conflict of Laws § 221cmt. on subsec. (2) (according significance based upon the grouping of all parties in a single state). Missouri has the most significant contacts with the plaintiffs' unjust enrichment action. Having determined that Missouri's laws will apply to the unjust enrichment claim, I now look to which law will govern the plaintiffs' quantum meruit claims.

### B.1.b.  *Missouri Law Applies to the Quantum Meruit Claim*

Missouri courts apply § 188 of the Restatement to determine which state's laws should apply to a claim for quantum meruit, as such an action is treated as quasi-contractual in that state. *See Sachs Elec. Co. v. HS Const. Co.*, 86 S.W.3d 445, 454–55 (Mo. Ct. App. 2002); *see also Fowler v. Scott*, 164 S.W.3d 119, 120 (Mo. Ct. App. 2005) ("Quantum meruit is a remedy for enforcement of quasi-contractual obligations."). Section 188 emphasizes five contacts to be considered alongside the § 6 factors: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties. Restatement (Second) of Conflict of Laws § 188 (1971).

Most of these contacts bear little significance to the legal issue in dispute. The parties are from varied states, all of which except Missouri and Arkansas share little connection to the other contacts, and so Contact (e), which deals with location of the parties, does not favor a particular state. *Cf.* Restatement (Second) of Conflict of Laws § 188 cmt. e (according significance based upon the issue and extent grouped with other contacts). The record does not show that any actual contract was entered between Riceland and any of the Class Plaintiffs or proposed plaintiffs. Although the unexecuted Joint Prosecution Agreement stated that work product materials would be provided between the Leadership Group and Riceland, it does not show where the performance was to occur. Nor does the "location of the subject matter of the contract," favor any one state. This contact gains significance where the contract deals with a "specific physical thing", such as a land or chattel, or protects against a "localized risk," in which case a particular state will have an interest in the contract. *See* § 188 cmt. on subsec. (2). Nothing in the record ties the work product materials or other subjects of the Joint Prosecution Agreement to a particular state. These contacts are accorded little significance.

At one point, Riceland negotiated the terms of the Joint Prosecution Agreement in Missouri. Riceland's Missouri-based counsel also communicated with various parties based in Missouri and other states by telephone and email.

This contact favors Missouri, although its weight is diminished because of the subsequent cross-state telephonic and email communications. *See* Restatement (Second) of Conflict of Laws § 188 cmt. e. Nonetheless, because Missouri has the most substantial relationship to the only contact attributed any significance, I will apply Missouri law to the quantum meruit claims.

## B.2. Evidence to Establish a Prima Facie Case

### B.2.a. *Issues Common to Plaintiffs' Unjust Enrichment Claim Predominate over Individual Issues*

Having determined that Missouri's law will apply to the plaintiffs' unjust enrichment claim, I will now look to whether each element of the claim can be established through common evidence. To establish a right to restitution for unjust enrichment, the plaintiff must prove (1) that the defendant was enriched by the receipt of a benefit; (2) that the enrichment was at the expense of the plaintiff; and (3) that it would be unjust to allow the defendant to retain the benefit. *Title Partners Agency, LLC v. Devisees of Last Will & Testament of Dorsey*, 334 S.W.3d 584, 587–88 (Mo. Ct. App. 2011). "Unjust enrichment permits restitution based upon the value of the benefit received." *Koepke Constr. v. Woodsage Constr.*, 844 S.W.2d 508, 516 (Mo. App. 1992).

Riceland argues that plaintiffs must first identify which particular attorney created each piece of work product and then identify which particular class member paid for that particular piece of work. I do not agree that this kind of

piece-by-piece fact-finding will be required.  By pooling their resources, the MDL

plaintiffs and their lawyers achieved a great deal of efficiency in the prosecution

and ultimate settlement of all their MDL claims; because they undertook this joint

approach to the underlying litigation, they will not have to show that each

individual class member paid for specific things – instead they can show that they

jointly incurred the expenses that conferred a benefit on Riceland.

This case is easily distinguished from *Harvell v. Goodyear Tire & Rubber*

*Co.*, 164 P.3d 1028, 1036 (Okla. 2006), relied on by Riceland.  That case involved

a failed attempt to certify a class of plaintiffs defined as consumers who had each

contracted for oil changes and been charged a set fee for supplies, regardless of

what actual supplies had been used.  *Id.* at 1031.  The court held that individual

issues predominated, because the unjust enrichment claim required plaintiff-

specific inquiries into what supplies were used, the cost of the supplies, what the

customer was told and whether the customer agreed to pay the fee, among others.

*Id.* at 1036.   The plaintiffs in *Harvell* had not pooled their resources when they

took their cars in to be serviced.

The *Harvell* inquiries necessarily dealt with each plaintiff on an individual

basis.  Here, individual attorneys and law firms created work product, but each

service was provided as part of a collective effort on behalf of all the MDL

plaintiffs to prosecute the MDL.  To the extent that Riceland used any particular

piece of work product, the plaintiffs need only show that it was created by the common-benefit attorneys as part of that collective effort. The same may be said for the common-benefit expenses. So far as any particular plaintiff was harmed by Riceland's use of the materials, the entire class was harmed.

Riceland is correct that the unjust enrichment claim will require a great number of factual determinations related to its use of work product and value received, but those inquiries will not focus on what each individual plaintiff paid. Rather, they will focus on what Riceland did and what benefit it received – issues that are common to the class. Plaintiffs have established that common issues of fact predominate.

### B.2.b. *Issues Common to Plaintiffs' Quantum Meruit Claim Predominate over Individual Issues*

"Quantum meruit is a remedy for the enforcement of a quasi-contractual obligation and is generally based on the principle of unjust enrichment." *Lucent Techs., Inc. v. Mid-W. Elecs., Inc.*, 49 S.W.3d 236, 241 (Mo. Ct. App. 2001) (citation omitted). The essential elements are (1) benefit conferred by one party on another, (2) appreciation or recognition by the receiving party of the fact that what was conferred was a benefit, and (3) acceptance and retention of the benefit in circumstances that would render that retention inequitable. *Id.*

The parties' briefs do not discuss quantum meruit separately from unjust enrichment. The same reasoning applies as above, and I find that common issues predominate.

### B.3. Superiority of Class Resolution

The final inquiry to certify a class under Rule 23(b)(3) looks to whether class resolution is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). Factors include (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. *Id.*

These factors demonstrate the superiority of class resolution. The class members lack any interest in individually prosecuting separate actions, and the only other litigation involving the parties was filed by Riceland against some of the original plaintiffs in state court after this action had commenced. The MDL is based in this court, and I am familiar with my own common-benefit orders upon which the class plaintiffs base many of their arguments. Finally, any difficulties in managing this class action pale in comparison to the alternative.

I will certify this class under Rule 23(b)(3), and so I do not need to reach the Rule 23(b)(1) arguments.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion for class certification [# 70] is granted.

**IT IS FURTHER ORDERED** that Class Plaintiffs Gray, Ritter & Graham, P.C., Wolf Haldenstein Adler Freeman & Herz, LLC, and Looper Reed & McGraw, P.C., are appointed as class representatives to represent the following class:

> All persons and entities that provided or paid for common benefit services, materials, and/or related expense items (except Defendant).

**IT IS FURTHER ORDERED** that Patrick J. Stueve, Todd E. Hilton and Bradley T. Wilders, of Stueve Siegel Hanson LLP, 460 Nichols Rd. Suite 200, Kansas City, MO 64112, are appointed as Class Counsel.


CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 19th day of March, 2015.