# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE GENETICALLY MODIFIED RICE LITIGATION, | ) ) | 4:06MD1811 CDP |

## MEMORANDUM AND ORDER
## APPLYING COMMON BENEFIT ORDER
## TO RICELAND/BAYER SETTLEMENT

Presently pending before me is the motion of the plaintiffs' leadership group of attorneys to enforce the common benefit order and compel Riceland Foods, Inc. to contribute to the common benefit trust a portion of the recovery obtained through its February 2013 settlement with Bayer. Alternatively, the leadership group seeks an order compelling Bayer to make the contribution to the trust. With respect to non-producer plaintiffs, such as Riceland, the common benefit order required defendants to contribute 10% of any settlement or judgment to the fund. Bayer and Riceland argue that the $92 million settlement Bayer paid Riceland is not governed by the order because it settled only a state-court case, and the common benefit order explicitly applies only to the federal MDL cases. But the Riceland/Bayer Settlement Agreement also resolved the pending federal litigation between the two parties, so the common benefit order applies to it. I will grant the motion [Doc. # 5360] and require the contribution.

A.  Relevant Background

Beginning in 2006, approximately 7000 plaintiffs – rice farmers and others in the rice business – filed lawsuits claiming that they were damaged because of contamination of the long-grain rice supply by Bayer's unapproved genetically modified (GM) rice. About 300 federal cases, involving claims of approximately 5000 plaintiffs, were transferred to this Court by the Judicial Panel on Multidistrict Litigation (JPML) for consolidated handling of pretrial matters. Many other plaintiffs had cases pending in state courts.

This dispute arises from the resolution of one such state-court suit filed by farmers against Bayer and Riceland, among others. In *Meins, et al. v. Bayer AG, et al.*,[1] Riceland filed a cross-claim against Bayer on January 20, 2009.[2] On that same date, Riceland filed a separate federal suit against Bayer in the United States District Court for the Eastern District of Arkansas.[3] That case was transferred to this district as part of the MDL case.[4] Riceland was also named as a defendant in a number of MDL farmer cases, so it was both a plaintiff and a defendant in the MDL proceedings.

---

[1] Arkansas Co., Ark. Cir. Ct. CV-2008-108. Doc. # 5372, Exh. L.
[2] Doc. # 5372, Exh. M. Bayer likewise filed a cross-claim against Riceland. *Id.*, Exh. N.
[3] Doc. # 5372, Exh. O. The claims raised in Riceland's federal suit against Bayer are the same as the claims it asserted against Bayer in *Meins*, and are "affirmative claims." While Riceland also raised a contribution and indemnity claim against Bayer in *Meins*, the trial court found the claim moot, and Riceland proceeded only on its affirmative claims for independent damages. *Id.*, Exh. F. Riceland and Bayer had earlier filed cross-claims for contribution and indemnification in other MDL suits where they were both named as defendants.

On February 24, 2010, I ordered the MDL leadership group to establish a common benefit trust for the purpose of holding funds to compensate attorneys for services rendered for the plaintiffs' common benefit and to reimburse them for expenses incurred in conjunction with those common benefit services.[5] The common benefit order required the Bayer defendants to hold back and place into the trust certain percentages of recoveries owed to plaintiffs, whether by settlement or judgment, in relation to each federal MDL case. I determined in that order that this Court did not have jurisdiction to order hold-backs and contributions from state cases. However, the order specifically applied to and allowed contribution for any state case where either the parties agreed or the state court having jurisdiction ordered contribution to the trust. Although some parties objected to the establishment of the trust, Riceland did not.

In February 2011, the *Meins* case proceeded to trial in Arkansas state court on Riceland's cross-claim for damages against Bayer and on Bayer's cross-claim for contribution and indemnity against Riceland.[6] The *Meins* jury found in favor of Riceland on its claims against Bayer as well as on Bayer's claim for contribution and awarded verdicts of $16.9 million in actual damages and $125 million in punitive damages. The trial court apportioned the amount of actual damages to

---

[4] *Riceland Foods, Inc. v. Bayer AG, et al.*, case number 4:09CV433 CDP (E.D. Mo.).
[5] Doc. # 2574 (order dated Feb. 24, 2010).
[6] The farmer-plaintiffs had previously settled and dismissed their claims against Bayer and Riceland prior to trial.

reflect the jury's verdict regarding fault, reduced the amount of punitive damages as required by then-existing Arkansas law, and entered final judgment on June 20, 2011, in the amount of $12,903,292. Bayer appealed. While that appeal was pending, the Arkansas Supreme Court ruled (in another Bayer GM rice case) that the cap on punitive damages was unconstitutional.[7] After Bayer and Riceland finished briefing the appeal in the fall of 2012, they asked the Arkansas Supreme Court to stay oral argument so they could pursue settlement.[8] On February 26, 2013, Riceland and Bayer entered into the Settlement Agreement that is the source of the present dispute.[9]

*Terms of Settlement Agreement*

The preamble of the Settlement Agreement briefly recites the general history regarding the contamination of the commercial rice supply by Bayer GM rice. The preamble specifically identifies the *Meins* litigation and Riceland's claims against Bayer raised in that action, as well as another action pending in Arkansas state court, *BASF Corp., et al. v. Bayer AG, et al.,* in which Bayer had filed claims against Riceland for contribution. The preamble then concludes:

> WHEREAS, Riceland and Bayer (collectively "the Parties") mutually desire to fully and finally resolve any and all suits and/or claims that have been or may be asserted by Riceland against Bayer or that have been or may be asserted by Bayer against Riceland relating

---

[7] *Bayer CropScience LP v. Schafer,* 385 S.W.3d 822, 831 (Ark. 2011).
[8] Doc. # 5371, Exhs. A-D.
[9] Doc. # 5369, Exh. A – hereafter referred to as "Settlement Agreement."

to the presence of Bayer GM rice in the commercial rice supply.
(Settlement Agreement, preamble.) The agreement then recites the specific terms of the settlement whereupon, "[i]n exchange for the payment by Bayer to Riceland in the amount of [$92,000,000.00]" Riceland agreed to release the Bayer defendants

> of and from any and all claims, demands, causes of action, liabilities, sums of money, damages (including, but not limited to, punitive damages), loss of service, expenses, compensation, costs and losses, of any type, kind, nature, description or character whatsoever, . . . which Riceland now has or which may hereafter accrue on account of or in any way growing or arising out of the presence in the United States rice supply of Bayer GM Rice, against any Bayer Released Party or any Additional Release Party. This specifically includes, but is not limited to, the claims brought in the *Scott Meins, et al. v. Bayer AG, et al.* case including any and all claims for damages Riceland has or may have allegedly caused by the presence of Bayer GM Rice in the commercial rice supply.

(*Id.*, para. 1.) In exchange for Riceland's release set out above, Bayer released Riceland from all claims and causes of action that Bayer currently had or that could thereafter accrue on account of or in any way growing out of the presence in the United States rice supply of Bayer GM rice. The Settlement Agreement specified that Bayer's release "specifically includes, but is not limited to, the claims brought in the *BASF Corporation v. Bayer AG* case." (*Id.*, para. 2.)

The Settlement Agreement also contains a provision that Bayer would indemnify Riceland for and assume Riceland's defense of claims arising out of the contaminated rice supply by Bayer GM rice. (Settlement Agreement, para. 3.)

This indemnity provision specifically identifies and excludes from its terms, however, an action pending in this district against Riceland relating to disputes involving Riceland's benefit from common benefit work, that is, "*Downing, et al. v. Riceland Foods, Inc.,* U.S.D.C., E.D. Mo., Cause No. 4:13-cv-00321[.]" (*Id.*) The indemnity provision also specifically identifies and includes causes of action in which Bayer agreed to include Riceland as a released party in any possible settlement, that is, the "*Soufflet Alimentaire* and *Muller's Muehle GmbH* cases[.]" (*Id.*)

Upon execution of the agreement and payment by Bayer, Riceland agreed to "dismiss with prejudice its causes of action and suit against Bayer with cause number CV-2008-108" (the *Meins* case); the parties agreed to dismiss their respective appeals related to the *Meins* case; and Bayer agreed not to appeal the dismissal of its claims against Riceland in the *BASF* case. (Settlement Agreement, para. 6.) On March 19, 2013, Riceland and Bayer dismissed the *Meins* appeal.[10]

*Other Proceedings*

When Bayer and Riceland entered the Settlement Agreement, they took no action in Riceland's federal MDL case against Bayer, 4:09CV433 CDP (E.D. Mo.), and the case remains on the docket of this MDL Court. Early in the MDL proceedings I had ordered that no further filings be made in any of the individual

---

[10] Doc. # 5371, Exh. F.

cases, and discovery in all individual cases was stayed so the leadership group could conduct consolidated discovery.

Shortly before the *Meins* trial began, the plaintiffs' leadership group sought an order from me that the common benefit order would apply to any recovery in *Meins*. I declined, again citing my belief that I lacked jurisdiction over the state-court suits.[11]

Shortly before Riceland and Bayer signed their Settlement Agreement, plaintiffs' leadership group filed a separate lawsuit against Riceland, seeking to compel Riceland's payment into the trust under theories of unjust enrichment and quantum meruit. *Downing, et al. v. Riceland Foods, Inc.,* 4:13CV321 CDP (E.D. Mo.).[12] As stated above, that case was specifically excluded from the indemnification portion of the Settlement Agreement. It remains pending and the parties are actively litigating it.[13]

After the MDL case was settled, I entered an order adopting the Special Master's recommendation regarding attorneys' fees, providing for payment to the plaintiffs' leadership group and payment of fees to non-leadership plaintiffs'

---

[11] Doc. # 4033 (order dated Feb. 11, 2011).

[12] Riceland also filed a declaratory judgment case in Arkansas state court alleging that it did not have to make the contributions. The plaintiffs' leadership group removed that case to Arkansas federal court, which then transferred it here, and I ultimately remanded it back to Arkansas state court for lack of federal jurisdiction. *Riceland Foods, Inc. v. Gray, Ritter & Graham, P.C., et al.,* 4:14CV81 CDP (E.D. Mo.) (Doc. # 48) (order of remand dated June 20, 2014).

[13] Plaintiffs filed the instant motion only after they obtained the Settlement Agreement during discovery in the pending *Riceland* case.

attorneys who had performed common benefit work on behalf of plaintiffs. Riceland's attorney, Barry Deacon, applied for a fee for work he had done benefitting all the plaintiffs in the MDL, and was awarded a fee of $479,057.41.[14]

B.  Discussion

As an initial matter, contrary to Riceland's argument, the state trial court's entry of "final judgment" in *Meins v. Bayer* in June 2011 did not render Riceland's federal MDL case moot at that time. Although the state trial court's judgment resolved the same claims that Riceland presented in its federal suit, Bayer's appeal of the trial court's judgment kept the issues "live." *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 n.7 (2005); *Myer v. Americo Life, Inc.*, 469 F.3d 731, 733 (8th Cir. 2006; *see also Rogin v. Bensalem Twp.*, 616 F.2d 680, 684 n.11 (3d Cir. 1980) (when other tribunal enters judgment, applicability of judgment may be question of *res judicata*, not mootness). So long as the controversy was ongoing, this Court's exercise of judicial power over Riceland's federal case remained. *See North Carolina v. Rice,* 404 U. S. 244, 246 (1971) (exercise of judicial power under Article III of the Constitution depends upon the existence of a case or controversy); *Bright v. Taylor,* 554 F. 2d 854, 859 (8th Cir. 1977) (same).

Nor did the state trial court's June 2011 entry of final judgment in *Meins*

---

[14] Doc. # 4935 (order dated Dec. 6, 2012); Doc. # 4908-1, Exh. B-1.

automatically render the federal MDL case a nullity under the doctrine of *res judicata*. "Identical cases between the same parties can be pending in a federal district court and a state court at the same time." *Mountain Pure, LLC v. Turner Holdings, LLC*, 439 F.3d 920, 924 (8th Cir. 2006). In such instances, the first forum to dispose of the case enters a final judgment that is binding on the parties. *Id.* Under Arkansas law,[15] "[a] judgment may be final for purposes of *res judicata* even if an appeal is taken." *Hall v. Equity Nat'l Life Ins. Co.*, 730 F. Supp. 2d 936, 943 n.5 (E.D. Ark. 2010) (citing *Crockett & Brown, P.A. v. Wilson*, 864 S.W.2d 244, 246 (Ark. 1993)). As such, the trial court's final judgment in *Meins* had preclusive effect on Riceland's federal MDL case upon its entry. However, contrary to Riceland's and Bayer's argument, this Court's jurisdiction over Riceland's federal MDL case did not terminate automatically on the entry of final judgment by the Arkansas trial court. *Exxon Mobil Corp.*, 544 U.S. at 293. While this Court would be required to give preclusive effect to the state court judgment, "[p]reclusion, of course, is not a jurisdictional matter." *Id.* Instead, the *res judicata* effect of a prior judgment must be raised by the party seeking its protection and may be deemed waived if it is not so raised. *See United States v. Metropolitan St. Louis Sewer Dist.*, 952 F.2d 1040, 1043 (8th Cir. 1992). A review of the record shows that at no time prior to Riceland's and Bayer's execution of the

---

[15] The *res judicata* effect of the first forum's judgment is governed by the first forum's law, not

February 2013 Settlement Agreement did any party request this Court to give preclusive effect to the Arkansas trial court's June 2011 judgment in *Meins*. Riceland and Bayer did not come to this Court and assert *res judicata* or otherwise ask this Court to take any action on the case, and so they have waived their argument that the *res judicata* effect of the *Meins* June 2011 judgment rendered Riceland's federal MDL case a nullity at that time.

Riceland's argument that I could have reached out and *sua sponte* dismissed its MDL suit upon the entry of the *Meins* judgment is misplaced. Although courts are permitted to dismiss actions *sua sponte* on *res judicata* grounds, such dismissals are limited to those cases where both actions were brought before the same court, *see Boone v. Kurtz*, 617 F.2d 435, 436 (5th Cir. 1980) (per curiam), or where all the relevant data and legal records are before the court and the demand of essential justice mandates invocation of the doctrine, *Nagle v. Lee*, 807 F.2d 435, 438-39 n.2 (5th Cir. 1987).[16] Neither circumstance is present here.

Because Riceland's federal MDL case remained a live controversy before me and remained pending on my docket when Riceland and Bayer executed the Settlement Agreement on February 26, 2013, I must determine whether the terms of the agreement encompass the pending federal case such that a percentage of

---

by the law of the second forum. *Myer,* 469 F.3d at 733 n.7.
[16] In addition to *Boone*, Riceland cites *Wallin v. Dycus*, No. 07-CV-00318-WDM, 2010 WL 924232 (D. Colo. Mar. 10, 2010), *aff'd*, 420 Fed. Appx. 787 (10th Cir. 2010), to support its argument that the court may *sua sponte* dismiss an action on *res judicata* grounds. As in *Boone*,

Riceland's gross recovery under the settlement is required to be placed into the common benefit trust in accordance with the common benefit order. I conclude that it does.

Arkansas law governs the terms of the Settlement Agreement. Settlement Agreement at para. 4 ("This Agreement is contractual and shall be governed by and construed in accordance with the laws of the State of Arkansas, without regard to conflict of law principles."); *Connect Commc'ns Corp. v. Southwestern Bell Tel., L.P.*, 467 F.3d 703, 708 (8th Cir. 2006).

Under Arkansas law, when contracting parties express their intention in a written instrument in clear and unambiguous language, it is the court's duty to construe the written agreement according to the plain meaning of the language employed. *Artman v. Hoy*, 257 S.W.3d 864, 869 (Ark. 2007); *C. & A. Constr. Co. v. Benning Constr. Co.*, 509 S.W.2d 302, 303 (Ark. 1974) (citing *Miller v. Dyer,* 423 S.W.2d 275 (Ark. 1968)). Courts will not go beyond the four corners of the instrument unless the language of the contract is uncertain, doubtful, or ambiguous. *Parham v. Worthen Bank & Trust Co.*, 933 S.W.2d 384, 387 (Ark. 1996). *See also Johnson v. Missouri Pac. R. Co.*, 214 S.W. 17, 19 (Ark. 1919) (contract to be read and considered from its four corners); *Stacy v. Williams*, 834 S.W.2d 156, 159 (Ark. Ct. App. 1992) (court looked to four corners of the agreement to discern

---

however, both actions in *Wallin* were pending before the same court.

intent).  The determination of whether a contract is ambiguous is a question of law. *All-Ways Logistics, Inc. v. USA Truck, Inc.*, 583 F.3d 511, 516 (8th Cir. 2009) (applying Arkansas law).  A contract is unambiguous when its terms are not susceptible to more than one equally reasonable construction.  *Id.*

The terms of the Settlement Agreement here are not ambiguous.  In the preamble of the agreement, Riceland and Bayer express their mutual "desire to fully and finally resolve *any and all suits and/or claims that have been* or may be *asserted by Riceland against Bayer* . . . relating to the presence of Bayer GM Rice in the commercial rice supply." (Settlement Agreement, preamble.  Emphasis added.)  Such desire is achieved through the specific terms of the agreement whereby, in exchange for $92 million, Riceland agreed to release Bayer "from *any and all claims, demands, causes of action . . . , which Riceland now has* or which may hereafter accrue on account of or in any way growing or arising out of the presence in the United States rice supply of Bayer GM Rice . . . *against any Bayer Released Party*[.]" (*Id.*, para. 1.  Emphasis added.)  When the settlement agreement was executed in February 2013, Riceland's federal suit against Bayer remained live and pending before this Court and thus fell within the parameters of "any and all suits . . . that have been asserted by Riceland against Bayer" as well as "any and all claims, demands, causes of action . . . , which Riceland now has against any Bayer Released Party[.]"  When given their ordinary meaning, the

terms "any and all suits" and "any and all claims, demands, causes of action" create no uncertainty or doubt that Riceland settled *all* of its claims and lawsuits against Bayer arising out of the rice contamination by Bayer GM rice. Because the pending federal MDL case was one of Riceland's suits against Bayer arising out of the Bayer GM rice contamination, it is included among "all suits" and "causes of action" settled by Riceland in this agreement.

Riceland avers that "the release specifically identifies the *Meins* lawsuit as the case in which Riceland released Bayer" and thus that "the settlement agreement expressly applies only to Riceland's claims in *Meins*."[17] Giving ordinary meaning to the language used in the release belies Riceland's contention. As set out above, the release language included any and all claims and causes of action that Riceland then had against Bayer. While the agreement could have restricted its applicability to *Meins*, it plainly did not. Instead, the *Meins* case was "included" among "all claims" and "causes of action" that were released by Riceland pursuant to the terms of the agreement. This is evident by the release's language that Riceland's release of all claims and causes of action "specifically includes, *but is not limited to*, the claims brought in the *Scott Meins, et al v. Bayer AG, et al.* case[.]" (Settlement Agreement, para. 1. Emphasis added.)

The parties were clearly aware that they could exclude certain actions from

---

[17] Doc. # 5372 at p. 11.

the applicability of the agreement's terms, as demonstrated by the specific exclusion of *Downing, et al. v. Riceland Foods, Inc.,* from the indemnity provision. They could have easily excluded the federal MDL case from the agreement's terms as well, but they did not do so. "To have the court now make a new contractual provision, which could easily have been inserted at the time of contracting, is improper." *Lee v. Bolan*, 374 S.W.3d 718, 726 (Ark. Ct. App. 2010). *See also C. & A. Constr.*, 509 S.W.2d at 304 (where contracting parties were knowledgeable and certainly capable of reducing their negotiations to unambiguous written terms, court cannot interfere and alter the terms of a clearly unambiguous written agreement).

Finally, Riceland's contention that the agreement's lack of specific reference to the federal MDL case demonstrates its lack of applicability to the federal case is dispelled by its own statement that "the WHEREAS and release language quoted by Co-Lead Counsel was intended to apply to the several other Arkansas state court cases wherein Bayer had sued Riceland for contribution and/or indemnity[.]"[18] I find it incongruous to argue on the one hand that the Settlement Agreement did not apply to the federal MDL case because the case was not named in the agreement, and then argue on the other hand that the agreement was intended

---

[18] Doc. # 5372 at p. 13. Riceland also filed cross-claims against Bayer in several state court cases. *See id.* at pp. 4-5.

to apply to numerous other unnamed lawsuits.

Although Riceland and Bayer make a number of arguments regarding their intent as to the scope of the agreement and rely on outside evidence to support their arguments, a review of the plain language of the complete Settlement Agreement shows that it includes and applies to any and all of Riceland's claims, lawsuits, and causes of action against Bayer arising out of the contamination of the United States' rice supply by Bayer GM rice, which includes the federal MDL case brought by Riceland against Bayer. While Riceland and Bayer accord a different construction to the agreement, it is not an equally reasonable one. *See All-Ways Logistics*, 583 F.3d at 516-17. Therefore, I will not look to extrinsic evidence outside the four corners of the agreement. *See In re Stevens*, 307 B.R. 124, 129 n.4 (Bankr. E.D. Ark. 2004) (citing *Coble v. Sexton*, 27 S.W.3d 759, 761 (Ark. Ct. App. 2000)).

Accordingly, I find that the February 26, 2013, settlement between Riceland and Bayer relates to Riceland's federal MDL case, 4:09CV433 CDP (E.D. Mo.), which remained a live controversy and pending before me at the time of the settlement. The terms of the common benefit order therefore apply to the February 2013 settlement between Riceland and Bayer and 10% of Riceland's recovery obtained from Bayer by way of the settlement must be placed into the common benefit trust. Enforcing the common benefit order to this settlement is equitable

based on my previous finding that all of the non-producer plaintiffs, including Riceland, have benefitted substantially from the work performed by the leadership counsel.[19] Nothing Riceland and Bayer have produced in response to this motion convinces me otherwise, and plaintiffs have pointed out at least two pieces of evidence that support the conclusion: the leadership group's successful litigation of the preemption issue which benefitted everyone who sued Bayer, and Barry Deacon's seeking common benefit fees, which shows that Riceland's counsel coordinated their actions with those of the other plaintiffs' counsel much more extensively than it now argues.

Because the common benefit order imposes upon the Bayer defendants the duty to hold back and set aside the respective percentages of a plaintiff's recovery by settlement for placement into the common benefit trust, it shall continue to be Bayer's duty and responsibility to comply with the common benefit order in relation to the February 26, 2013, settlement of Riceland's federal MDL claims and cause of action.

C.  Attorneys' Fees and Costs as Sanctions

The leadership group "suggests" that I assess its attorneys' fees and costs against Riceland as a sanction for its bad faith conduct in violating the common

---

[19] *See* Doc. # 2574 at pp. 12-14 (order dated Feb. 24, 2010); Doc. # 4033 at pp. 2-3 (order dated Feb. 11, 2011).

benefit order.[20] I do not agree that sanctions are appropriate. Courts must exercise their inherent power to impose sanctions "with restraint and discretion" – the primary aspect of which is "the ability to fashion an appropriate sanction for conduct that abuses the judicial process." *Chambers v. Nasco, Inc.*, 501 U.S. 32, 44-45 (1991). The parties have been actively litigating this issue for years, and although the answer now appears fairly obvious to me, I do not believe sanctions are appropriate.

D.   Impact on Other Litigation

Two cases that remain pending on my docket are directly affected by this Order. As set out above, the MDL case, *Riceland v. Bayer*, 4:09CV433 CDP, did not just magically disappear when Riceland and Bayer entered the Settlement Agreement. Because the parties have indicated that the case is fully resolved, I will enter an order in that case giving them thirty days to file dismissal papers.

The unjust enrichment/quantum meruit case, *Downing, et al. v. Riceland Foods, Inc.*, 4:13CV321 CDP, is not only pending, it is set for trial in the near future and the parties are briefing extensive dispositive motions. I will enter an order in that case staying the remaining deadlines, and will order the parties to inform me, within thirty days, whether they can agree to a procedure for resolving it, and if not, to propose how it should proceed. It may be that the most

---

[20] Doc. # 5360 at p. 13.

appropriate course of action is to stay the case and hold it in abeyance pending any appeal of this Order, or perhaps some other course of action is more appropriate.

Accordingly,

**IT IS HEREBY ORDERED** that the motion of plaintiffs' leadership group to enforce the common benefit order [# 5360] is GRANTED.

In accordance with the common benefit order,

**IT IS FURTHER ORDERED** that the Bayer defendants shall cause to be placed into lead counsel's common benefit trust:

(i)  7% of the gross recovery obtained by non-producer plaintiff Riceland by way of the February 26, 2013, settlement, for attorneys' fees; and

(ii)  an additional 3% of the gross recovery obtained by plaintiff Riceland by way of the February 26, 2013, settlement, for common benefit costs and expenses incurred by attorneys providing a common benefit.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 29th day of June, 2015.